UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA, | : : : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : : | 302CV408(GLG) |
| TIG INSURANCE COMPANY, | : : | |
| Defendant. | : | March 24, 2004 |

### AFFIDAVIT IN OPPOSITION OF MOTION TO COMPEL

I, Peter M. Nolin, do hereby depose and say:

1. I am over 18 years of age and believe in the obligations of an oath.

2. I am attorney of record for the Plaintiff Travelers Casualty & Surety Company of America ("Travelers") in the above-referenced matter.

3. I submit this Affidavit in response to the Motion to Compel filed by TIG Insurance Company ("TIG"), dated March 3, 2004, and to provide additional information omitted from the Affidavit of Calum B. Anderson in his Affidavit Pursuant to Fed. R. Civ. P. 37(a)(2)(A) and Local Rule 37(a)(2), also dated March 3, 2004. As set forth herein, the issue in TIG's Motion to Compel is now moot because Travelers has provided the discovery responses referenced in that motion.

4. The underlying dispute in this matter concerns an agreement by TIG with Travelers from October 1997 to split the costs of defending an insured, the Weitz Company LLC, in certain construction litigation in Connecticut known as the Shoreline litigation.

5. TIG agreed to join with Travelers to defend Weitz starting in October 1997, in the Shoreline litigation, inasmuch as Weitz was identified as an additional insured on policies issued by these two insurance companies to Janazzo Heating and Air Conditioning, Inc., ("Janazzo") of Milldale, Connecticut, a Weitz subcontractor.

6. After successfully defending Weitz through trial and a potential appeal in 2003, Travelers was unable to recoup any of the defense costs from TIG because TIG claimed it had the right to unilaterally withdraw from its agreement to split defense costs with Travelers.

7. Travelers commenced this action in 2002, but shortly thereafter Weitz commenced a separate action against both Travelers and TIG in Iowa concerning certain coverage issues and defense costs. on a related portion of the underlying Shoreline litigation.

8. For a period of time, neither TIG nor Travelers actively pursued discovery in this case while awaiting the outcome of developments in Weitz's action in Iowa.

9. Pursuant to discovery requests served by Weitz in the Iowa action, Travelers apparently transmitted its original claim files to its Iowa.

10. On or about October 14, 2003, TIG propounded a set of interrogatories and request for production of documents to Travelers in this action.

11. Travelers requested several extensions of time within which to respond to TIG's discovery to which TIG's counsel in Connecticut consented. Because of a change of personnel

handling this file for Travelers, I was initially was unable to locate the files sought by TIG in this case until I was that the original claim files at issue had been shipped to Iowa.

12. Finally, in January 2004, I was able to obtain copies of the complete claims files that had previously been delivered to Iowa counsel.

13. As I assisted Travelers in formulating responses to TIG's interrogatories and request for production in this action, however, it became apparent that while the claims files were complete, material on the two other issues for which TIG sought discovery were not contained with these claims files.

14. Apparently Travelers had not collected and produced to Iowa counsel either its audit files concerning the work done by the defense counsel, the Connecticut firm of Milano & Wanat which had represent Weitz in the underlying Shoreline action or the complete billing files pursuant to which Travelers had paid Milano & Wanat for representing Weitz in that action.

15. Accordingly, on January 20, 2004, I produced a complete copy of the claims files relating to both Weitz and Janazzo, withholding of course those documents which were privileged, and I timely filed Travelers formal objections to TIG's discovery requests. At that time. I produced for Travelers more than 3500 pages of documents.

16. At that time, I advised counsel for TIG in writing that additional responses, including Travelers answers to the interrogatories, would be forthcoming as soon as the audit and billing files were located.

17. On or about March 3, 2004, I received a call from Attorney Calum B. Anderson inquiring as to the status of production and whether it would be necessary to file a Motion to Compel.

18. I explained to Attorney Anderson in that telephone call that the audit files had just been located and delivered to me and that I was in the process of reviewing them for privilege at that time. I further advised Attorney Anderson that the additional files had been located and that I had plans to obtain them from Travelers the following week to obtain the documents and formulate Travelers' formal discovery responses. I indicated that, therefore, it would be unnecessary to file a Motion to Compel, that answers to the discovery along with the additional pertinent documents would be produced shortly, once I had, copied and reviewed all of the documents.

19. On Friday, March 19th, I sent a federal express package to Attorney Anderson with Travelers' signed interrogatory responses, a copy of which are attached hereto as Exhibit A. As part of that package I also included the supplemental documents that Travelers had just located. This supplemental production included a full box of documents containing more than an 3,000 pages. This production included Travelers' billing files for the underlying defense of Weitz as well as Travelers' audit files of the work performed by Milano & Wanat in that defense.

4

20. I have completed the 49 page Privilege Log for all of the documents withheld and have transmitted a copy of that log by federal express to Attorney Anderson on this date. A copy of that Privilege Log is attached hereto as Exhibit B.

21. With the formal interrogatory responses and supplemental document production, I served on Attorney Anderson on March 19, 2004, I requested in writing that TIG withdraw its Motion to Compel as such motion was now unnecessary. Despite that request, I received no response from Attorney Anderson.

22. TIG has now received formal responses to its discovery requests as well as all documents Travelers has been able to locate which are responsive to their request for production and not subject to any privilege. These documents consist of the Travelers' claims files for the Weitz and Janazzo defense of the Shoreline litigation, documents Bates Nos. Trav 0001-3763; Travelers' audit files on the work performed by Milano & Wanat in the defense of Weitz, Bates Nos. Trav 4000-5431; and the billing files pursuant to which Travelers paid Milano & Wanat for its services, Bates Nos. Trav 9003-11274. TIG has also received a Privilege Log in accordance with the Federal Rules as to those documents which have been withheld.

23. Accordingly, I believe that the Motion to Compel by TIG was unnecessary as production was well under way when it was filed and that the Motion to Compel has now been mooted by Travelers comprehensive response to the discovery served by TIG.

       /s/ Peter M. Nolin  
Peter M. Nolin (ct 06223)

Subscribed and sworn to before me,  
this 24th day of March, 2004.

__/s/ Patricia R. Faubel___  
Notary Public  
My Commission Expires: 9/30/06  
~~Commissioner of the Superior Court~~

6

## **CERTIFICATION**

I certify that a copy of the foregoing was affidavit sent via federal express on this 24th day of March, 2004 to:

Calum B. Anderson (ct07611)
Danaher, Lagnese & Neal, P.C.
Capitol Place
21 Oak Street
Hartford, CT 06106

     /s/ Peter M. Nolin
Peter M. Nolin (ct06223)

7