## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **TRAVELERS CASUALTY & SURETY** | : | |
| **COMPANY OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION  NO.** |
| **v.** | : | **302CV408 (AWT)** |
| | : | |
| **TIG INSURANCE COMPANY,** | : | |
| | : | |
| **Defendant.** | : | **NOVEMBER 10, 2004** |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The Plaintiff, Travelers Casualty & Surety Company of America ("Travelers"),

pursuant to Local Rule 56 of the Local Rules of Civil Procedure, respectfully submits this

Memorandum of Law in Support of its Motion for Summary Judgment.  Travelers seeks a

determination and declaration that the Defendant TIG Insurance Company, f/k/a

Transamerica Insurance Group ("TIG"), entered into an oral agreement with Travelers to pay

fifty percent (50%) of the legal fees associated with defending The Weitz Company, LLC

("Weitz"), in an action brought by Shoreline Care, Limited Partnership ("Shoreline") in the

Connecticut Superior Court for the Judicial District of New Haven, Docket Number CV-94-

0155982-S (the "Shoreline Action"), in which Weitz was cited in as an additional defendant

in 1996.  Travelers seeks a determination and declaration that the oral agreement between

TIG and Travelers is an enforceable oral contract and that TIG has breached the contract by

failing to pay its fifty percent share of the costs incurred in the defense of Weitz.  Travelers

also seeks a determination that TIG falsely represented that it would honor its commitment to

pay fifty percent of the defense costs incurred in the Weitz defense and then failed to pay its fifty percent share of the defense costs incurred on behalf of Weitz.

Furthermore, Travelers seeks a determination that because TIG's promise to pay fifty percent of the legal fees associated with the Weitz defense induced Travelers to rely on TIG's promise, TIG is estopped from withdrawing its promise to Travelers to pay fifty percent of the Weitz defense costs and from withdrawing its defense of Weitz. Finally if the Court determines that there was no enforceable contract between the parties, Travelers seeks a determination that in equity TIG owes Travelers a share of the money expended in the defense of Weitz.

This Memorandum will state the reasons why, as a matter of law on the undisputed facts, Travelers is entitled to summary judgment because there are no genuine issues of material fact in dispute as to whether TIG has breached its oral agreement with Travelers, that TIG repeatedly misrepresented that it would honor its oral agreement with Travelers, and that TIG was estopped from reneging on its oral agreement with Travelers and from withdrawing its defense of Weitz or in equity owes a share of the defense costs to Travelers.

On the basis of the undisputed factual record, Travelers seeks damages based on the defense costs TIG has failed or refused to pay, 50% of $887,256.00, or $443,628.00, together with interest and punitive damages as the Court deems warranted by TIG's conduct.

## FACTS AND BACKGROUND

In or around 1989, Weitz, of Des Moines, Iowa, entered into a general contractor construction contract with Shoreline, of North Branford, Connecticut, for the construction of a continuing care retirement community in North Branford, Connecticut, called Evergreen Woods.  In 1990, Weitz subcontracted with Janazzo, of Milldale, Connecticut, to provide heating, ventilation and air conditioning work for Evergreen Woods.  On information and belief, TIG provided general liability and other insurance coverage to Janazzo for the period from September 1, 1991 through September 1, 1992, under Transamerica Insurance Group commercial general liability policy No. 30790261 (the "TIG Policy").  Janazzo, pursuant to the contract between them, agreed to indemnify Weitz from certain claims and legal actions arising out of the work to be performed by Janazzo under the contract.  Janazzo also agreed that Weitz would be named as an additional insured on Janazzo's policies for general liability and that such coverage would be primary to any insurance carried by Weitz.

On information and belief, in 1991 and 1992, Mathog and Moniello, the insurance agent which obtained coverage for Janazzo, provided certificates of insurance to Weitz which confirmed that Weitz was an additional insured on the TIG Policy.  *See* Travelers Rule 56(a)1. Statement of Material Facts Not In Dispute,  ¶¶ 71 & 72 ( Hereinafter "Rule 56" at). From September 1, 1992 through September 1, 1995, Aetna Casualty & Surety Company of America ("Aetna") provided general liability and other insurance coverage to Janazzo under policy numbers 007 ACM 22549565, 23584577, and 24387637 (the "Aetna Policies"). Weitz is named as an additional insured on the Aetna Policies.  Beginning in 1996, Travelers became the successor-in-interest to all of Aetna's rights and obligations under the Aetna

Policies.  (*See* Affidavit of Gerald Zwick at ¶4, Attached to *Plaintiff's Motion for Summary Judgment*, as Exhibit B.  *See* Rule 56 at ¶ 9).

In 1994, Shoreline brought an action in the Connecticut Superior Court for the Judicial District of New Haven, Docket Number CV-94-0155982-S, against Jansen & Rogan Consulting Engineers (the "Shoreline Action").  Thereafter, Shoreline cited Weitz into the Shoreline Action as an additional defendant in an amended complaint dated May 9, 1996.  In August 1996, Travelers agreed to provide Weitz with a defense of Shoreline's claims subject to a full reservation of rights, and Travelers retained the Connecticut firm of Milano & Wanat to defend Weitz in the Shoreline Action.  (*See* Affidavit of Gerald Zwick at  ¶ 8,  Rule 56 at ¶ 10).   By letter dated September 6, 1996, TIG, through its then counsel, Mark P. Bailey of Morrison, Mahoney & Miller, informed Weitz that it would provide Weitz with a defense in the Shoreline Action subject to TIG's full reservation of rights.  (*See* the "Morrison Letter" a copy of which is attached as Tab 1 in the Plaintiff's Appendix To Local Rule 56(A)1. Statement Of Material Facts Not In Dispute In Support Of Plaintiff's Motion For Summary Judgment**,** herein after "Appendix").

In the Morrison Letter, TIG asserted:

> "With respect (sic) the Shoreline lawsuit which TIG has agreed to defend subject to a reservation of rights, one or more of the other carriers which insured Weitz during the relevant periods may also agree to defend Weitz.  If so, TIG anticipates working with those insurers to coordinate Weitz's defense. Such coordination may include an agreement to share the costs of Weitz's defense in some equitable manner and to select counsel to defend Weitz in the lawsuit."

The Morrison Letter was copied to F. Lee Yeager ("Yeager") of TIG.  During the summer of 1996, Travelers assigned Gerald Zwick ("Zwick"), Senior Technical Specialist at Travelers Property Casualty, to handle Weitz's claim concerning the Shoreline Action.  (*See* Affidavit

of Gerald Zwick at ¶¶ 6-7, Rule 56 at ¶ 14).  During the summer of 1996, Zwick received a

copy of the Morrison Letter from Weitz and thereby became aware that TIG anticipated

coordinating the defense and possibly sharing costs with Travelers in as much as Travelers

had also agreed to provide Weitz a defense under a reservation of rights.  (*See* Affidavit of

Gerald Zwick at ¶ 11, Rule 56 at ¶ 15).  Sometime in September of 1996, Zwick on behalf of

Travelers and Yeager on behalf of TIG discussed by telephone sharing the cost of defending

Weitz in the Shoreline Action under their respective reservations of rights, and in that call

Zwick and Yeager agreed that Travelers and TIG would split the defense costs on behalf of

Weitz on a 50/50 basis.  (*See* Affidavit of Gerald Zwick at ¶ 13, Rule 56 at ¶ 16).

From September 1996 through 1999, TIG repeatedly affirmed that it would honor its

commitment to pay fifty percent of the legal fees associated with the Weitz defense but

would limit its indemnification to the attorneys' actual, documented, time spent working on

the Weitz defense.  (*See* Appendix Tabs 18, 21, & 30,.  Rule 56 at ¶¶ 26, 34, 38, ).  TIG

never advised Travelers that it was reserving any right to rescind or retroactively withdraw

from its agreement to pay fifty percent of the costs of defending Weitz.  In connection with

such affirmations, TIG repeatedly sought detailed records on the cost and nature of the Weitz

defense so that TIG could evaluate the amount of time and the reasonableness of defense fees

incurred on behalf of Weitz.  (*See* Appendix Tabs 6, 9, 10, 18, 21, 25,    , Rule 56 at ¶¶ 22,

25, 26, 34, 38, 48, 50, 52, 56).  From 1996 through 2000, TIG repeatedly stated in

correspondence to Travelers, Weitz, and Weitz's defense counsel, that Weitz was an

additional insured on the TIG Policy.  (*See* Appendix Tabs 1, 28, 30, 31, 36, 37, & 38, Rule

56 at ¶¶ 11, 12 , 45, 47, 49, 51, 61, 62, 63).  From 1996 to April 2001, Travelers, in response

to TIG's requests, sent TIG detailed time records evidencing the hours worked and services

provided by Milano & Wanat in defense of Weitz and records of other defense costs. (*See* Appendix Tabs 16, 25, 30, 39, & 44,  Rule 56 at ¶¶ 32, 52, 53, 56, 64, 67, 70).  From 1996 to April 2001, TIG acted as a defending insurer working in coordination with Travelers, and in such capacity, TIG sought and received detailed confidential and privileged communications from Travelers, Weitz, and Weitz's defense counsel and participated in the defense of Weitz in the Shoreline Action. [1]

By letter dated April 6, 2001, addressed to Milano & Wanat and copied to Travelers, TIG purported to rescind its agreement to split the costs of the defense of Weitz in the Shoreline Action and purported to withdraw its defense of Weitz. (*See* Appendix Tab 47, Rule 56 at ¶ 73).  As of April 6, 2001, Travelers had incurred and has subsequently paid defense costs of $491,728.33, and despite repeated demands, TIG has failed and refused to reimburse Travelers for its fifty percent share of the $491,728.33. (*See* Affidavit of Gerard E. Doak attached to *Plaintiff's Motion for Summary Judgment* As Exhibit A, at ¶¶ 6 & 8, Rule 56 at ¶ 75).  TIG's purported withdrawal was based on its claim that it had discovered that TIG never insured Weitz, but as of such date the Court had made no determination that the indemnification provisions contained in the contract between Weitz and Janazzo did not require Janazzo to indemnify Weitz in connection with the Shoreline lawsuit.

After April 6, 2001, Travelers continued to provide a defense to Weitz. and  Milano & Wanat continued to defend Weitz through the completion of a trial in late 2002 and on

---

[1] Because of the nature of the claims and defenses, the Shoreline Action was transferred to the "Complex Litigation Docket" of the Connecticut Superior Court in September 1999, and from that actions inception on September 1, 1996 and through its conclusion after trial, more than 400 pleadings, motions and filings were docketed with the clerk.  Appendix Tab 48.

November15, 2002, obtained a judgment in favor of Weitz after a court trial.  (*See* Affidavit

of Christopher Wanat, Attached to *Plaintiff's Motion for Summary Judgment* as Exhibit C, at

¶ 15, Appendix Tab 48, Rule 56 at ¶ 78).  Travelers incurred and paid legal fees to the firm of

Milano & Wanat and related costs in the defense of Weitz from August 1996 through

January 2003 in the total amount of $887,256.  (*See* Affidavit of Gerard E. Doak at ¶ 7, Rule

56 at ¶ 79).  TIG has refused and failed to pay Travelers for any of the legal fees accrued in

the defense of Weitz.

On March 4, 2002, Travelers brought a five count complaint against TIG with claims

of breach of contract, misrepresentation, declaration of estoppel, and promissory estoppel.

Travelers now seeks summary judgment against TIG because there are no genuine issues of

material fact in dispute as to whether TIG has breached its oral agreement with Travelers, has

misrepresented to Travelers that it would honor its commitment to pay fifty percent of the

costs associated with the Weitz defense, and induced Travelers to rely on its promise to pay

its share of the defense costs associated with the Weitz defense.


## LEGAL ARGUMENT

### I.    STANDARD FOR MOTION FOR SUMMARY JUDGMENT

"The standard for granting a motion for summary judgment is well-established.  A

moving party is entitled to summary judgment 'if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as

a matter of law.' Fed.R.Civ.P. 56(c)."  *Pokorne v. Gary*, 281 F.Supp.2d 416, 419 (D.Conn.

2003).  "The burden of establishing that there is no genuine factual dispute rests with the

moving party. *See Gallo v. Prudential Residential Services, Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir.1994)." *Id.* "At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. . .  In doing so, the court is mandated to resolve 'all ambiguities and draw all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide.' *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992)." *Underkofler v. Community Health Care Plan, Inc.*, 1999 WL 464530 at *2-3 (D.Conn. Jun 17, 1999).  "Hence, '[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper.' *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991)." *Id.* at *3.  "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact...Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.' [*Anderson v.*] *Liberty Lobby, Inc.,* 477 U.S. [242] at 247-48, 106 S.Ct. 2505 [(1986)]. (emphasis in original)."  *Conte v. U.S. Alliance Federal Credit Union***,** 303 F.Supp.2d 220, 225 (D.Conn. 2004).

Where, as here, "both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party. *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993). Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration. *Schwabenbauer v. Bd. of*

*Educ.,* 667 F.2d 305, 314 (2d Cir.1981)." *Pokorne v. Gary*, 281 F.Supp.2d at 420. Here the facts asserted by Travelers cannot be disputed. The existence of the cost splitting agreement is reflected in an affidavit from Travelers, in correspondence, in TIG's internal notes and reports, and in numerous other documents from TIG. Likewise, TIG's active participation in the defense of Weitz is witnessed by an affidavit of lead defense counsel for Weitz, Christopher Wanat, correspondence to and from TIG, and by numerous reports from TIG's own files.

## II.   TRAVELERS AND TIG ENTERED INTO AN ENFORCEABLE ORAL AGREEMENT TO SPLIT THE COSTS OF DEFENDING WEITZ IN THE SHORELINE ACTION.

### A.    An oral agreement is enforceable as an oral contract.

It is well-settled under Connecticut law that an enforceable, binding contract may be made orally. "A promise may be stated in words either oral or written. RESTATEMENT (SECOND) OF CONTRACTS § 4. The threshold question with regards to the existence of an oral contract is not what intention existed in the minds of the parties but what intentions were expressed in the language used. *Bria v. St. Joseph's Hosp.,* 153 Conn. 626, 631, 220 A.2d 29 (1966)." *L.G. Defelice, Inc. v. Fireman's Ins. Co*., 41 F.Supp.2d 152, 159 (D.Conn.1998). "It is axiomatic that the 'intention of the parties manifested by their words and acts is essential to determine whether a contract was entered into and what its terms were.' *Hess v. Dumouchel Paper Co.,* 154 Conn. 343, 347, 225 A.2d 797 (1966). 'This determination requires a finding of mutuality of obligation.' *Id.*" *Wizard Programming, Inc. v. Superstar/Netlink Group LLC*, 1997 WL 644082 at *6 (D.Conn. Oct 10, 1997).

"'A contract is formed when there is an offer and acceptance based on a mutual understanding between the parties.' *L.G. Defelice, Inc. v. Fireman's Ins. Co.,* No. 3:97cv18(PCD), 1998 WL 910167, at *4 (D.Conn. Sept. 21, 1998) (citation omitted)." *CLT*

*Telecommunications Corp. v. Colonial Technologies Corp.*, 1999 WL 200700 at *5 (D.Conn. Mar 21, 1999). "Under Connecticut law, in order for a contract to be enforceable the agreement 'must be definite and certain as to its terms and requirements.' *Dunham v. Dunham,* 204 Conn. 303, 313 (1987) (quoting *Augeri v. C.F. Wooding Co.,* 173 Conn. 426, 429-30 (1977)), *overruled on other grounds by Santopietro v. New Haven,* 239 Conn. 207 (1996)." *Id.*

      **B.**     **TIG's statements to Travelers that it would split the costs for defending Weitz in the Shoreline Action constituted an oral agreement that is enforceable as an oral contract.**

TIG and Travelers entered into an enforceable oral contract in September of 1996 when they orally agreed that Travelers and TIG would split the costs of defending Weitz in the Shoreline Action on a 50/50 basis. The September 1996 telephone conversation between Yeager on behalf of TIG and Zwick on behalf of Travelers in which they discussed and agreed that Travelers and TIG would split the costs of defending Weitz in the Shoreline Action on a 50/50 basis constituted an oral agreement (the "Oral Agreement"). (Affidavit of Gerald Zwick at ¶ 13, Rule 56 at ¶ 16). The Oral Agreement is an oral contract because the language used by Yeager and Zwick during their September 1996 telephone conversation clearly expressed their intentions on behalf of TIG and Travelers respectively that they would share the costs incurred in defending Weitz in the Shoreline Action. *See L.G. Defelice, Inc. v. Fireman's Ins. Co.*, 41 F.Supp.2d 152, 159 (D.Conn.1998).

"'Consideration has been defined as a benefit to the party promising, or a loss or detriment to the party to whom the promise is made.' *Finlay v. Swirsky,* 103 Conn. 624, 131 A. 420, 423 (1925). An exchange of promises is sufficient consideration to support a

contract. *See Osborne,* 218 A.2d at 531. *See also Town of Trumbull v. State of Connecticut,* 206 Conn. 65, 73, 537 A.2d 431 (1988)." *Sartor v. Town of Manchester***,** 312 F.Supp.2d 238, 244 (D.Conn. 2004)  There is sufficient consideration to support the Oral Agreement as an oral contract because Travelers and TIG exchanged promises to each pay fifty percent of the costs of defending Weitz in the Shoreline Action and each agreed to let the other participate in the defense of Weitz.

There was a mutual understanding exchanged between Yeager and Zwick that TIG and Travelers were each obligated to each other to each pay their fifty percent share of the costs incurred in defending Weitz. *See CLT Telecommunications Corp. v. Colonial Technologies Corp.*, 1999 WL 200700 at *5 (D.Conn. Mar 21, 1999).  Both Yeager and Zwick recorded their recollection of the Oral Agreement made during their September 1996 telephone conversation.  Yeager recorded in a TIG Claim Evaluation Report dated September 28, 1996 that "TIG is defending G.C. [Weitz]. . .," "Defense afforded to Weitz under R.O.R. on advice of counsel & per TIG authorization" and "Aetna will participate in the defense [of Weitz]."  (*See* Appendix Tab 2, Rule 56 at ¶ 17).  In a file note dated October 30, 1996, Zwick recorded on behalf of Travelers that he had a discussion with Yeager in which Yeager on behalf of TIG agreed to split the cost of defending Weitz in the Shoreline Action and that the agreement was for TIG and Travelers to split defense costs on a 50/50 basis.  (Appendix Tab 3, Rule 56 at ¶ 19).  Moreover, Zwick confirmed that agreement in February 1998 by letter and Yeager subsequently acknowledged that agreement in writing in March 1998. (Appendix Tabs 16 & 18, Rule 56 at ¶ 32 & 34).  Thereafter through 2000, Travelers and TIG remained in constant communication about the status of Weitz's defense in the

Shoreline Action and about the costs associated with it, and at no time did TIG give any indication that it would renege on the Oral Agreement.

Consideration for the Oral Agreement exists and is based on not only the exchange of promises between TIG and Travelers to each pay fifty percent of the Weitz defense costs but is also based on Travelers' performance under the terms of the Oral Agreement. "To be enforceable, a contract must be supported by valuable consideration. *Gruber v. Friedman,* 102 Conn. 34, 36-37, 127 A. 907 (1925). 'The doctrine of consideration is fundamental in the law of contracts, the general rule being that in the absence of consideration an executory promise is unenforceable.' *State National Bank v. Dick,* 164 Conn. 523, 529, 325 A.2d 235 (1973)." *Hipsky v. Allstate Ins. Co*., 304 F.Supp.2d 284, 289 (D.Conn. 2004).

> Section 71 of the Restatement (Second) of Contracts relates the familiar legal sense of the term "consideration": "(1) To constitute consideration, a performance or a return promise *must be bargained for.* (2) A performance or return promise is bargained for *if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise."* 1 Restatement (Second), Contracts § 71, p. 172 (1981) . . .

*Id.* As will be demonstrated in the next section of this Memorandum, Travelers has performed its promise under the Oral Agreement. In fact, Travelers has performed more than it promised to do under the Oral Agreement because since 1996 it has incurred and subsequently paid all of the costs associated with the Weitz defense. TIG has failed to perform under the Oral Agreement by failing to pay any of the Weitz defense costs let alone pay its fifty percent share of the defense costs.

III.    **TIG HAS BREACHED ITS ORAL AGREEMENT WITH TRAVELERS BY FAILING TO PAY ITS FIFTY PERCENT SHARE OF THE COSTS INCURRED IN THE WEITZ DEFENSE.**

The evidence produced in this case clearly shows that there is no genuine issue of material fact as to whether TIG breached its Oral Agreement with Travelers by failing to pay its fifty percent share of the costs incurred in the defense of Weitz.

A.    **Elements of a breach of contract claim.**

"In order to state a breach of contract claim, the plaintiffs must allege (1) the formation of an agreement; (2) performance by one party; (3) breach of the agreement by the other party; and (4) damages. *Maloney v. Connecticut Orthopedics, P.C.*, 47 F.Supp.2d 244, 249 (D.Conn.1999) (citing *Posner v. Minnesota Mining & Manufacturing Co.,* 713 F.Supp. 562 (E.D.N.Y.1989))." *Timmons v. City of Hartford*, 283 F.Supp.2d 712, 718 (D.Conn. 2003). "In asserting a breach of contract claim, the complaint must allege the provisions of the contract upon which the claim is based. *Posner,* 713 F.Supp. at 563." *Id.* "The plaintiff has the burden to prove each element by a preponderance of the evidence." *Underkofler v. Community Health Care Plan, Inc.*, 1999 WL 464530 at *3 (D.Conn. Jun 17, 1999). Here it is clear that Travelers has proved a valid breach of contract claim. As is set forth in detail below, TIG agreed and promised to pay 50% of the costs in defending Weitz in the Shoreline Litigation. Thereafter, TIG repeatedly represented it would pay its share while all the while participating in the defense of Weitz. Travelers relied upon TIG's promises and paid defense costs but has received no contribution from TIG.

**B.**   **From 1996 to 2000, TIG repeatedly represented to Travelers that it would honor its commitment to pay half the costs of the Weitz defense.**

**1.**   **In 1997, TIG repeatedly represented that it was participating in the Weitz defense on a cost sharing basis with Travelers.**

In reliance upon TIG's representations that it was participating in the Weitz defense on a cost sharing basis with Travelers, Travelers provided TIG with detailed records on the costs and activities of Weitz's defense counsel and permitted TIG to obtain copies of confidential attorney-client and work product communications between Weitz, Travelers and Milano & Wanat.  Yeager, on behalf of TIG, in a letter dated January 27, 1997 to Attorney Murphy of Milano & Wanat, asked for Aetna's initial analysis of the defenses afforded to Weitz and for a short term plan for the Shoreline Action.  Per Yeager's request, Attorney Murphy sent Yeager a January 22, 1997 letter that Wanat had sent to Zwick which provided an update and overall report on the Shoreline Action, and Attorney Murphy advised Yeager of the process of drafting a third party complaint by Weitz against Janazzo.  (Appendix Tabs 3 and 4, Rule 56 at ¶¶ 22 -23).  In one of Yeager's letters, for TIG, to Attorney Murphy dated August 13, 1997, Yeager specifically stated that "TIG is participating in the defense of the insured with the Aetna Insurance Company on a cost sharing basis . . ." and requested copies of all reports generated by Milano & Wanat in the defense of Weitz in the Shoreline Action.  (Appendix Tab 10).  By September 8, 1997, Yeager at TIG had received correspondence from the Shoreline Action which had previously been submitted to Aetna/Travelers, including an August 21, 1997 letter from Attorneys Murphy and Wanat to Zwick at Travelers.  (Appendix Tab 11,  Rule 56 at ¶ 27).  During 1997, Yeager was regularly recording in TIG Claim Evaluation Reports that TIG was defending Weitz and that the defense was being shared with Aetna.  (*See* Appendix Tabs 8 & 14, Rule 56 at ¶¶  24 & 30).

TIG knew or reasonably should have known that its statements that it was participating in the defense of Weitz on a cost sharing basis with Travelers would cause Travelers to rely upon them. TIG never gave any indication that it intended to renege on the Oral Agreement. (*See* Affidavit of Gerald Zwick at ¶ 21).Travelers would not have shared its plans for the defense of Weitz or provided TIG with confidential attorney-client and work product communications if it knew, or even suspected, that TIG was only seeking such information to determine whether or not it would defend Weitz and if it did defend Weitz, whether it would share costs with Travelers. To Travelers, TIG's intentions as expressed in its communications with Milano & Wanat were clear that it would follow through on its Oral Agreement with Travelers.

> **2.      In 1998, TIG reconfirmed its Oral Agreement with Travelers but failed to pay its fifty percent share of the costs Travelers incurred in defending Weitz.**

In 1998, TIG reconfirmed its Oral Agreement with Travelers and represented that it would honor its commitment to pay half of the costs of the Weitz defense upon a review of the detailed records and hourly billing information on Milano & Wanat's fees, so Travelers continued to provide TIG with records of costs and activities and confidential information regarding the Weitz defense. Yeager recorded in a TIG Claim Evaluation Report dated March 19, 1998 that TIG was defending Weitz and was sharing defense costs with Travelers. (Appendix Tab 17, Rule 56 at ¶ 33). By February 1998, Travelers had incurred $64,161.33 in defense costs for the defense of Weitz in the Shoreline Action, so Zwick wrote a letter to Yeager indicating that Travelers has expended this amount in defense of Weitz and that Travelers was seeking reimbursement in the amount of $32,080.66 from TIG. (Appendix

Tab 16, Affidavit of Gerald Zwick at ¶ 18, Rule 56 at ¶ 32).  Through a letter dated April 2,

1998, Yeager on behalf of TIG responded to Zwick and questioned the amount of the defense

costs incurred, sought detailed billing records and correspondence and stated "On receipt of

this documentation, TIG will honor its commitment, but will limit its indemnification to

actual time incurred as supported by pertinent documentation."  (Appendix Tab 18, Rule 56

at ¶ 34).  Even though as of April 1998 TIG failed to reimburse Travelers for the $32,080.66

that it owed, Yeager on behalf of TIG continued to request consultation with defense counsel,

recommendations for further defense after Milano & Wanat's summary judgment motion

was denied, and an analysis of the Weitz's exposure as a result of the Court's rulings.  (See

Appendix Tabs 19-21, Rule 56 at ¶¶ 35 - 39).

 The Oral Agreement which Yeager and Zwick entered into on behalf of TIG and

Travelers was clear and unambiguous, as were the representations of TIG in 1998 when it

reconfirmed the Oral Agreement.

> ... Where the language of the contract is clear and unambiguous, the contract is to  be
> given effect according to its terms. A court will not torture words to import ambiguity
> where the ordinary meaning leaves no room for ambiguity. *Id.* at 357, 727  A.2d 1260.
> "[A]ny ambiguity in a contract must emanate from the language used in the
> contract rather than from one party's subjective perception of the terms." *Levine v.
> Massey,* 232 Conn. 272, 279, 654 A.2d 737 (1995).

*MacKay v. Rayonier, Inc*., 75 F.Supp.2d 22, 26 (D.Conn.1999).  There is nothing subjective

about TIG's clear and unambiguous statement that it would "honor its commitment" to split

defense costs with Travelers on a 50/50 basis.  In reliance on TIG's representations,

Travelers complied with TIG's request and provided it with detailed records and hourly

billing information on Milano & Wanat's fees, believing that TIG, after reviewing the

records, would reimburse Travelers.  However, TIG failed to reimburse Travelers in 1998

and would fail to do so in 1999 and 2000.

3.      **In 1999 and 2000, TIG repeatedly represented that it was participating in the defense of Weitz on a cost sharing basis with Travelers but continued to fail to pay its fifty percent share of the costs incurred in defending Weitz.**

In 1999 and 2000, TIG requested status updates and billing information on the Weitz defense.  It also continued to characterize Weitz as an additional insured.  But TIG failed to pay fifty percent of the costs Travelers had incurred in the Weitz defense.  In late September 1999, TIG reassigned responsibility for the Weitz claim from Yeager to Janice Orlowski, CPCU, Claims Specialist ("Orlowski"), and she notified both Milano & Wanat and Travelers that she had taken over responsibility for the file at TIG.  (Appendix Tabs 25 & 28, Rule 56 at ¶¶ 44 – 45).  In Orlowski's Catastrophic Loss Report for TIG dated October 7, 1999 she stated in the Analysis section of the report that on December 10, 1998 Travelers advised TIG that legal expenses totaled approximately $152,453 and that although Travelers had put TIG on notice regarding equitable sharing of this legal expense, TIG had not reimbursed Travelers for any of the legal expenses.  (Appendix Tab 30, Rule 56 at ¶ 47).  Orlowski also stated therein that TIG had requested that Travelers provide TIG with detailed billing invoices for TIG's review. (Id.).

From October to December 1999, Orlowski on behalf of TIG continued to have discussions with attorneys at Milano & Wanat and with Travelers regarding the status of the case and regarding the status of the legal bills accrued for the Weitz defense.  (Appendix Tabs 25 & 32, Rule 56 at ¶¶ 50 – 53).  On December 20, 1999 she wrote a note regarding Weitz which stated that TIG had obtained a legal opinion which "in essence stated that TIG has a responsibility to provide a total defense to Weitz."  (Appendix Tab 25, Rule 56 at ¶ 55).  As of December 31, 1999, TIG had paid no part of the defense costs incurred on behalf of

Weitz in the Shoreline Action, in direct contravention of its oral agreement to do so. (*See* Affidavit of Gerard E. Doak at ¶ 8).

In 2000, TIG through its "coverage counsel" and through other hired resources, continued to identify Weitz as an additional insured and sought otherwise privileged status reports, correspondence, and pleadings in the Shoreline Action as well as payment summaries, an auditor's report, and invoices submitted to Travelers for payment by defense counsel. Between January and June 2000, Attorney Chad B. Wootton of Charlston, Revich & Williams LLP ("Attorney Wootton") wrote to Attorney Paelet of Milano & Wanat three times, each time naming Weitz as "Additional Insured," seeking information on the plaintiff's claim in the Shoreline Action, any documents Attorney Paelet believed would assist TIG in its evaluation of the exposure in the case, all status reports, correspondence, and pleadings in the case as well as a copy of the auditor's report Travelers had performed on defense costs incurred on behalf of Weitz. (See Attorney Wootton's January 18 and June 16, 2000 letters to Attorney Paelet, Appendix Tabs 36-37, Rule 56 at ¶¶ 61 – 63).

TIG was kept fully aware of the costs that Travelers had incurred in the defense of Weitz. In a July 7, 2000 letter, Deborah M. DellaCamera, the Billing Administrator for Milano & Wanat, wrote to Attorney Wootton enclosing information on the amounts Milano & Wanat had billed in the defense of Weitz ($347,578.30) and indicated that the balance owed by Travelers was $55,729.54. (Appendix Tab 39, Rule 56 at ¶ 64). TIG never indicated in any manner that it was going to renege on the Oral Agreement; to the contrary, all of TIG's correspondence, through its coverage counsel, to Travelers and to Milano & Wanat always referenced the fact that TIG would be contributing to the defense costs for the Weitz defense. (See the July 21, 2000 letter from Attorney Joanne M. Wendell and the

November 9, 2000 letter from Ingrid Marsh, Appendix Tabs 40 & 41, Rule 56 at ¶¶ 65-66).

In December 2000, Travelers had advised TIG's coverage counsel, Charlston, Revich &

Williams LLP, and Ingrid Marsh of Riverstone Resources who was hired by TIG to handle

the Shoreline Action, that Travelers had paid approximately $350,000 in defense costs for

Weitz and that it was seeking reimbursement for half of the defense costs from TIG.

(Appendix Tab 42, Rule 56 at ¶ 67).  Thereafter,  Travelers provided copies of Milano &

Wanat's bills for the period from March 1997 through August 2000, with the total paid

amount of $393,390.00. (Appendix Tab 44, Rule 56 at ¶ 70).   As of December 31, 2000,

TIG still had paid no part of the defense costs incurred on behalf of Weitz in the Shoreline

Action. (*See* Affidavit of Gerard E. Doak at ¶ 8).


   **4.**  **In 2001, TIG breached the Oral Agreement when it declared that it had determined that TIG had never insured Weitz and therefore would rescind its agreement with Travelers to participate in the defense of Weitz.**

   In 2001, all of TIG's representations that it would honor its commitment to pay fifty

percent of the Weitz defense costs culminated in TIG breaching the Oral Agreement by

declaring that TIG had determined that it had never insured Weitz and therefore would

retroactively rescind its agreement with Travelers to participate in the Weitz defense.  In

December of 2000, TIG through its coverage counsel inquired from Travelers whether there

was any evidence that TIG had issued additional insured endorsements to Weitz.  (Appendix

Tab43, Rule 56 at ¶ 68).  At TIG's request, Milano & Wanat provided TIG with copies of

three different certificates of insurance dated March 12, 1992, September 12, 1991, and

November 15, 1991, issued by Mathog and Moniello to Janazzo that named Weitz as an

additional insured under TIG's policy.  (Appendix Tab 46, Rule 56 at ¶ 72).  In a letter dated

April 6, 2001 Attorney Joanne Wendell of Charlston, Revich & Williams LLP wrote to Attorney Wanat, with a copy directed to Travelers, that TIG had determined that it never insured Weitz and therefore would rescind its agreement to participate in the defense of Weitz. (Appendix Tab 47, Rule 56 at ¶ 73). As of April 6, 2001, Travelers had incurred and subsequently paid attorneys fees and disbursements in the defense of Weitz to Milano & Wanat in the amount of $491,728.33. TIG has failed and refused to pay Travelers fifty percent of the $491,728.33. (*See* Affidavit of Gerard E. Doak at ¶ 6., Rule 56 at ¶ 75). Nor has TIG paid any part of the total cost incurred by Travelers in defending Weitz through trial. (*See* Affidavit of Gerard E. Doak at ¶ 8).

      **C.**    **As a result of TIG's breach of the Oral Agreement by failing to pay fifty percent of the costs incurred in the Weitz defense, Travelers has suffered substantial monetary damages.**

All of the evidence shows that there is no genuine issue of material fact as to whether TIG breached its Oral Agreement with Travelers by failing to pay fifty percent of the costs incurred in the Weitz defense. TIG never showed any basis to rescind the Oral Agreement. TIG has breached the Oral Agreement to pay fifty percent of the Weitz defense costs, by representing repeatedly during the period from September 1996 through April 2001 that TIG would contribute its committed 50% share toward the reasonable costs of the Weitz defense, subject to a review of the hourly time records for Milano & Wanat, and by then refusing in April 2001 to pay any defense costs or to continue sharing in the defense of Weitz.

Travelers has suffered substantial monetary damages as a result of TIG's breach of contract in an amount equal to fifty percent of the costs incurred by Travelers in defending Weitz. As of April 6, 2001 when TIG reneged on the Oral Agreement, Travelers had incurred and subsequently paid attorneys' fees and disbursements in the defense of Weitz to

Milano & Wanat in the amount of $491,728.33.  After TIG's April 6, 2001 letter, Milano &

Wanat continued to defend Weitz through the completion of a trial in late 2002.  On

November 15, 2002, Milano & Wanat obtained a judgment in the favor of Weitz after a court

trial.   (*See* Affidavit of Christopher Wanat at ¶ 15). (Appendix Tab 48, Rule 56 at ¶ 78).

Travelers incurred and paid legal fees to the firm of Milano & Wanat and related costs in the

defense of Weitz from August 1996 through January 2003 in the total amount of $887,256.

(*See* Affidavit of Gerard E. Doak at ¶ 7, Rule 56 at ¶ 79).  To this day, TIG has paid no part

of the defense costs incurred and paid by Travelers on behalf of Weitz.  (*See* Affidavit of

Gerard E. Doak at ¶ 8).


**IV.    TRAVELERS JUSTIFIABLY AND DETRIMENTALLY RELIED UPON TIG'S FALSE REPRESENTATIONS THAT IT WOULD PAY FIFTY PERCENT OF THE COSTS INCURRED IN THE WEITZ DEFENSE.**

The evidence in this case shows that there is no genuine issue of material fact as to

whether TIG misrepresented to Travelers that it would honor its commitment pay fifty

percent of the costs incurred in defending Weitz, that TIG knew or should have known that

its representations were false when made, and that Travelers would rely on these

representations.


**A.    Elements of a misrepresentation claim.**

"The elements of a claim of intentional misrepresentation are: 1) that a false

representation was made as a statement of fact, 2) that it was untrue and known to be untrue

by the party making it, 3) that it was made to induce the other party to act, and 4) that the

latter did so act to its injury.  *Wesconn Co. v. ACMAT Corp.,* No. CV990594760S, 2001 WL

438711, at *3 (Conn.Super. Ct. April 11, 2001) (citing *Miller v. Appleby,* 183 Conn. 51, 54-

55, 438 A.2d 811 (1981)).” *Zimmerman v. Cohen*, 2004 WL 877853 at *3 (D.Conn. Apr 23,

2004). “A negligent misrepresentation is actionable even if the declarant did not know it to

be untrue ‘if the declarant has the means of knowing, ought to know, or has the duty of

knowing the truth.’ *Updike, Kelly and Spellacy, P.C. v. Beckett,* 269 Conn. 613, 643, 850

A.2d 145 (2004) (citations and internal quotation marks omitted).” *Craig v. Colonial Penn*

*Ins. Co*., 335 F.Supp.2d 296, 310 (D.Conn. 2004).

 “A cause of action for negligent misrepresentation under Connecticut law is

consistent with the standard articulated by the Restatement (Second) of Torts which provides

that:

> ‘One who, in the course of his business, profession or
> employment ... supplies false information for the guidance of
> others in their business transactions, is subject to liability for
> pecuniary loss caused to them by their justifiable reliance upon
> the information, if he  fails to exercise reasonable care or
> competence in obtaining or communicating  information.’
> *Williams Ford, Inc. v. Hartford Courant Co.,* 232 Conn. 559,
> 575 (1995)(quoting Restatement (Second) of Torts § 552
> (1977)).

*CLT Telecommunications Corp. v. Colonial Technologies Corp*., 1999 WL 200700, at *6

(D.Conn. Mar 21, 1999).  “Intent need not be demonstrated to make out a cause of action for

negligent misrepresentation. *See id.; see also Foy v. Pratt & Whitney Group,* 127 F.3d 229,

233 (2d Cir.1997).” *Id.* at *7. “Thus, to establish such a claim a plaintiff must demonstrate

that (1) the defendant made a misrepresentation; (2) the defendant knew, or reasonably

should have known that the statement was untrue; and (3) the plaintiff’s reliance on the

misrepresentation was both justifiable and detrimental. *See Foy,* 127 F.3d at 233.” *Id.*  “In

order to recover for . . . negligent misrepresentation, plaintiffs must allege injury that is the

direct and proximate result of the alleged misconduct. *Chanoff v. U.S. Surgical Corp.,* 857

F.Supp. 1011, 1017 (D.Conn.), *aff'd,* 33 F.3d 50 (2d Cir.), *cert. denied,* 513 U.S. 1058, 115

S.Ct. 667, 130 L.Ed.2d 601 (1994); . . ." *Johnson v. Chesebrough-Pond's USA Co***.,** 918

F.Supp. 543, 548 (D.Conn. 1996).

     "'[N]o special relationship is required to state a claim of negligent misrepresentation.'

*Williams Ford, Inc. v. Hartford Courant Co.,* 232 Conn. 559, 575, 657 A.2d 212, 221

(Conn.1995)." *MM Global Services, Inc. v. Dow Chemical Co.***,** 283 F.Supp.2d 689, 706

(D.Conn. 2003). "In the context of the *negligent* misrepresentation claim, . . ., the standard is

that of the hypothetical reasonable person, . . . . *See* Restatement (Second) of Torts § 552A

cmt. a (1977) ('[W]hen the misrepresentation is not fraudulent but only negligent ... the

plaintiff is held to the standard of care, knowledge, intelligence and judgment of a reasonable

man, even though he does not possess the qualities necessary to enable him to conform to

that standard.'); *see also Williams Ford, Inc.,* 232 Conn. [559] at 576-78, 657 A.2d at 221-22

[1995] (rejection of 'sophisticated commercial parties' defense to claim of negligent

misrepresentation)." *Omega Engineering, Inc. v. Eastman Kodak Co.*, 908 F.Supp. 1084,

1098 (D.Conn. 1995).

     "Even an 'innocent misrepresentation of fact' 'may be actionable if the declarant has

the means of knowing, ought to know, or has the duty of knowing the truth.' *D'Ulisse-Cupo*

*v. Board of Directors of Notre Dame High School,* 202 Conn. 206, 217, 520 A.2d 217

(1987)." *Ruffalo v. CUC Intern., Inc***.,** 989 F.Supp. 430, 434 (D.Conn. 1997). "'It is

sufficient to allege that the representations contained false information.' *Id.* at 218, 520 A.2d

217." *Id.* "In order to succeed on [an innocent misrepresentation] claim, [plaintiff] must

prove that defendant failed to exercise reasonable care or competence in obtaining or

communicating information to [the plaintiff] on which he relied to his detriment." *Johnson v. Chesebrough-Pond's USA Co*., 918 F.Supp. at 548.

**B.    As a result of TIG's false representations that it would pay fifty percent of the costs incurred in the Weitz defense, Travelers has suffered substantial monetary damages.**

After agreeing to pay half of the costs of the Weitz defense, TIG repeatedly represented that it would honor its commitment to pay half of the costs of the Weitz defense upon a review of the detailed records and hourly billing information on Milano & Wanat's fees.  However, TIG was in fact delaying its payment of its share of the defense costs, while it sought a basis to try to renege upon its agreement to pay fifty percent of the Weitz defense costs.  From September 1996 through 1999, TIG repeatedly represented that it would honor its commitment to pay fifty percent of the legal fees associated with the Weitz defense but would limit its indemnification to the attorneys' actual, documented, time spent working on the Weitz defense.  (*See* Appendix Tabs 10, 18, 21, Rule 56 numbers 26, 34, 38).  TIG never advised Travelers that it was reserving any right to rescind or withdraw retroactively from its agreement to pay fifty percent of the costs of defending Weitz.  In connection with its representations, TIG repeatedly sought detailed records on the cost and nature of the Weitz defense so that TIG could evaluate the amount of time and the reasonableness of defense fees incurred on behalf of Weitz.  (*See* Appendix Tabs 6, 9, 10, 13, 18, 20, 21, 25, 31, 36, 37, 38, 40, 41 & 43,  Rule 56 at ¶¶ 22, 25, 26, 29, 34, 37, 38, 48, 49, 50, 51, 61, 62, 63, 65, 66, 68).  TIG knew or should have known that its representations were false when made and that Travelers would rely on these false representations.

From 1996 to 2001 when it got notice of TIG's decision to renege upon its agreement with Travelers, Travelers justifiably relied upon TIG's false representations that it would honor its commitment to pay fifty percent of the Weitz defense costs.  In reliance upon TIG's representations, Travelers advanced funds for the defense of Weitz from August 1996 through January 2003, for a total amount of $887,256.  (*See* Affidavit of Gerard E. Doak at ¶ 8, Rule 56 at ¶ 79).  Also, in reliance upon TIG's representations and in response to TIG's requests, Travelers provided TIG with copies of confidential attorney-client and work product communications as well as with detailed time records evidencing the hours worked and services provided by Milano & Wanat in defense of Weitz and records of other defense costs.  (*See* Appendix Tabs 7, 11, 12, 15, 19, 22, 23, 24, 25, 26, 29, 32, 33, 35, 39, 42, 44 & 46, Rule 56 at ¶¶  23, 27, 28, 31, 36, 39, 40, 41, 42, 43, 46, 53, 57, 60, 64, 67, 70, 72).  TIG never stated or indicated to Travelers that it was seeking the status reports, pleadings, defense counsel communications, bills and invoices for the Weitz defense for any reason other than to participate in the Weitz defense and to pay its fifty percent share of the costs.  As a direct and proximate result of TIG's misrepresentations, Travelers has suffered substantial monetary damages because of TIG's failure to pay fifty percent of the $887,256 that Travelers has incurred and paid to date for the defense of Weitz.

**V.    TIG IS ESTOPPED FROM WITHDRAWING ITS PROMISE TO PAY FIFTY PERCENT OF THE COSTS  OF DEFENDING WEITZ AND FROM WITHDRAWING ITS DEFENSE OF WEITZ BECAUSE TRAVELERS CHANGED ITS POSITION IN RELIANCE ON TIG'S PROMISE.**

**A.    Elements of a promissory estoppel claim.**

"In order to prevail on a claim for promissory estoppel, [one] must establish 1) a clear and definite promise, 2) a change in position in reliance on the promise, and 3) resulting injury. *See D'Ulisse-Cupo v. Bd. of Directors of Notre Dame High School,* 520 A .2d 217,

221 (Conn.1987). The promise must be sufficiently clear and definite such that the promisor could reasonably expect to induce reliance. *See id.* at 221." *Hood v. Aerotek, Inc.*, 2002 WL 294762 at *5 (D.Conn. Feb 19, 2002). "'A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promise or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' Restatement (Second) of Contracts § 90(1)." *Redgate v. Fairfield University*, 862 F.Supp. 724, 730-1 (D.Conn.1994).

**B.     TIG is estopped from withdrawing its defense of Weitz and from withdrawing its promise to pay fifty percent of the costs associated with the Weitz defense because in reliance on TIG's clear and definite promise, Travelers altered its position in the Weitz defense and suffered injuries as a result.**

TIG is estopped from withdrawing its promise to pay fifty percent of the legal fees associated with the Weitz defense and from withdrawing its defense of Weitz because TIG's promise was clear and definite such that TIG should have reasonably expected its promise to induce Travelers' reliance on the promise. The evidence shows that TIG repeatedly stated in its communications to Milano & Wanat and Travelers that it would honor its commitment to pay fifty percent of the legal fees associated with the Weitz defense. There was nothing unclear or indefinite about TIG's promise, and TIG should reasonably have expected that its promise would induce Travelers' reliance on the promise.

From 1996 to 2001, TIG repeatedly represented in its communications to Milano & Wanat and Travelers that Weitz was an additional insured and that it was participating in the defense of Weitz on a cost sharing basis with Travelers. In reliance on TIG's promise, Travelers altered its position in the Weitz defense by providing TIG with privileged and confidential information, permitting TIG to assist in guiding the defense, and by not seeking

26

any reimbursement or contribution from Weitz for the costs of the defense of Weitz.  For over four years, TIG reaped the benefits of its Oral Agreement with Travelers while refusing and failing to provide anything in return.  As a direct result of its reliance on TIG's promise, Travelers has suffered injuries for which TIG is liable.  TIG's promise to Travelers is binding because injustice can only be avoided by enforcement of the promise.  Injustice will occur if TIG does not reimburse Travelers for fifty percent of the $887,256 that Travelers incurred and paid in legal fees to Milano & Wanat and in related costs in the defense of Weitz from August 1996 through January 2003.  (*See* Affidavit of Gerard E. Doak at ¶ 7, Rule 56 at ¶ 79).  Therefore, the Court should declare that TIG is estopped from withdrawing its promise to pay fifty percent of the legal fees associated with the Weitz defense and from with drawing its defense of Weitz.

## VI.    TRAVELERS IS ENTITLED TO REIMBURSEMENT FOR FIFTY PERCENT OF THE COSTS THAT IT HAS PAID IN THE WEITZ DEFENSE  AND TO OTHER DAMAGES.

Injustice will occur if TIG does not reimburse Travelers for fifty percent of the $887,256 that Travelers incurred and paid in legal fees to Milano and Want and in related costs in the defense of Weitz from August 1996 through January 2003.  (*See* Affidavit of Gerard E. Doak at ¶ 7). Rule 56 at ¶ 79).  As of April 6, 2001 when TIG reneged on the Oral Agreement, Travelers had incurred and subsequently paid attorneys' fees and disbursements in the defense of Weitz to Milano & Wanat in the amount of $491,728.33.  At a minimum, TIG should pay Travelers fifty percent of the $491,728.33 incurred and paid by Travelers as of April 6, 2001.  (*See* Affidavit of Gerard E. Doak at ¶ 6).  Furthermore, Travelers is entitled to punitive damages under the common law, costs, and statutory prejudgment interest under Connecticut General Statutes Section 37a-3a(a) at rate of ten percent a year, at a

minimum from April 6, 2001 to date, as damages for the detention of money after it becomes

payable.  Section 37a-3a(a) provides:

> (a) Except as provided in sections 37-3b, 37-3c and 52-192a, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable.

Conn. Gen. Stat. Sec. 37a-3a(a).


**VII.    IN THE ALTERNATIVE, SHOULD THE COURT FIND THAT THERE IS NO ENFORCEABLE CONTRACT CLAIM, TIG IS RESPONSIBLE FOR ITS EQUITABLE SHARE OF THE COSTS INCURRED IN DEFENDING WEITZ.**

In equity, from September 1996 through April 2001, TIG thought it was the

defending insurer, acted as the defending insurer, represented it was a coinsurer, and agreed

to defend Weitz through April 2001.  Therefore, should the Court find that there is no

enforceable contract claim, TIG is liable for its equitable fifty percent share of the Weitz

defense costs incurred from September 1996 through April 2001.

**A.    The doctrine of equitable contribution.**

"Equitable contribution is ... the right to recover ... from a co-obligor who shares such

liability with the party seeking contribution.  In the insurance context, the right to

contribution arises when several insurers are obligated to indemnify or defend the same loss

or claim, and one insurer has paid more than its share of the loss or defended the action

without any participation by the others. . ."  *Lexington Ins. Co. v. General Acc. Ins. Co. of

America*, 338 F.3d 42, 49 (1st Cir. 2003).  "Equitable contribution permits reimbursement to

the insurer that paid on the loss for the excess it paid over its proportionate share of the

obligation, on the theory that the debt it paid was equally and concurrently owed by the other

insurers. *Truck Ins. Exch. v. Unigard Ins. Co.,* 79 Cal.App.4th 966, 974, 94 Cal.Rptr.2d 516 (2000); *see also Hartford Cas. Ins. Co. v. Argonaut-Midwest Ins. Co.,* 854 F.2d 279, 283 (7th Cir.1988)." *Id.* "The right of equitable contribution does not depend on an express agreement between the parties to indemnify each other, but, rather, rests upon equitable principles that imply an obligation to contribute ratably toward the payment of a common obligation. *Ohio Cas. Ins. Co. v. State Farm Fire & Cas. Co.,* 262 Va. 238, 546 S.E.2d 421, 423 (2001)." *Id.* at 49-50. "[A]n insurer has a right in equity to collect a ratable contribution from any other insurer who is also liable for the same loss. *See . . . National Union Fire Ins. Co. of Pittsburgh, Pa. v. Hartford Ins. Co. of the Midwest,* 248 A.D.2d 78, 85, 677 N.Y.S.2d 105, 110 (1st Dep't 1998) ('Where two or more insurers bind themselves to the same risk and one pays the whole loss, the paying insurer has a right of action against his coinsurers for a ratable portion of the amount paid.')." *International Multifoods Corp. v. Commercial Union Ins. Co*., 309 F.3d 76, 89 (2nd Cir. 2002).

Connecticut courts follow the doctrine of equitable contribution. In *Security Insurance Co. of Hartford v. Lumbermens Mutual Casualty Co.*, 264 Conn. 688, 713-714 (2003), the court upheld the trial court's reasoning that "'[t]he doctrine of equitable contribution guides the court in allocating the defense costs among the potentially responsible parties.' The trial court further found that '[t]he general rule [in Connecticut] that all insurers providing primary coverage to an insured are duty bound to defend the insured and will be required to contribute their pro rata share of the cost of defense' is derived from the doctrine of equitable contribution. . ."

> "Contribution is a payment made by each, or by any, of several having a *common interest or liability* of his share in the loss suffered, or in the money necessarily paid by one of the parties in behalf of the others.... The right of action for

> contribution, which is equitable in origin, arises when, as between multiple parties *jointly bound* to pay a sum of money, one party is compelled to pay the entire sum. That party may then assert a right of contribution against the others for their proportionate share of the *common* obligation." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Crotta v. Home Depot, Inc.,* 249 Conn. 634, 639-40, 732 A.2d 767 (1999). "Where more than one insurer has issued policies covering the same risk, a court of equity will exercise jurisdiction over the entire controversy to resolve the rights of all the interested parties, particularly where the issues between the insurers and the insured are similar. See 1 John Norton Pomeroy, A Treatise on Equity Jurisprudence § 261s (5th ed.1941)." *Maryland Casualty Co. v. W.R. Grace & Co.,* 218 F.3d 204, 211 (2d Cir.2000).

*Id.* at 714. "Even were there no oral cost-sharing agreement between the parties, however, plaintiff . . . may nevertheless seek reimbursement from defendant . . ., as a co-insurer of the same risk, for their proportionate share of the amount paid *(Zurich-Am. Ins. Cos. v Atlantic Mut. Ins. Cos.,* 139 AD2d 379, *affd* 74 NY2d 621; *Lumbermens Mut. Ins. Co. v Lumber Mut. Ins. Co.,* 148 AD2d 328)." *Puritan Ins. Co. v. Continental Cas. Co.*, 195 A.D.2d 291, 292 (N.Y.A.D. 1 Dept. Jul 01, 1993).

**B.    At the very least, TIG is liable for its equitable fifty percent share of the Weitz defense costs incurred from September 1996 through April 2001.**

In the event that the Court finds that there is no enforceable contract claim, Travelers has a right in equity to collect from TIG fifty percent of the costs incurred and subsequently paid in the Weitz defense from September 1996 to April 2001 because the costs that Travelers paid were equally and concurrently owed by TIG.  From September 1996 to April 2001, TIG agreed to defend Weitz, thought it was the defending insurer, represented that it was a coinsurer, and acted as a defending insurer of Weitz working in coordination with Travelers.  In such capacity, TIG sought and received detailed confidential and privileged

communications from Travelers, Weitz, and Weitz's defense counsel and participated in the

defense of Weitz in the Shoreline Action.  The amount that Travelers paid for the Weitz

defense costs from September 1996 to April 2001 exceeded its proportionate share of the

obligation to defend Weitz.  Therefore, under the equitable contribution doctrine, TIG should

reimburse Travelers for fifty percent of the $491,728.33 that Travelers incurred and

subsequently paid in attorneys' fees and disbursements in the defense of Weitz to Milano &

Wanat from September 1996 to April 2001.  (*See* Affidavit of Gerard E. Doak at ¶ 6).

## CONCLUSION

Based on the clear record before this Court, Travelers has demonstrated as a matter of

law that TIG entered into an enforceable oral agreement with Travelers to share costs

incurred in defending Weitz in the Shoreline Action on a 50/50 basis and that TIG has

breached this oral agreement.  The record clearly demonstrates that TIG breached its oral

agreement with Travelers by failing to pay fifty percent of the costs incurred in the Weitz

defense.  The record also demonstrates that TIG falsely represented that it would honor its

commitment to pay fifty percent of the costs incurred in the Weitz defense and then failed to

honor its commitment to the detriment of Travelers which justifiably relied upon TIG's false

representations.  Furthermore, because Travelers changed its position in the defense of Weitz

in reliance upon TIG's promise to pay fifty percent of the Weitz defense costs, TIG is

estopped from withdrawing its promise to pay fifty percent of the Weitz defense costs and

from withdrawing its defense of Weitz.  Therefore this Court should grant Travelers

summary judgment in this action.


**THE PLAINTIFF,**
**TRAVELERS CASUALTY &**
**SURETY COMPANY OF AMERICA**


By_____**/S/**_____
Peter M. Nolin (ct 06223)
**Sandak Hennessey & Greco LLP**
707 Summer Street
Stamford, CT  06901-1026
(203) 425-4200
(203) 325-8608 (fax)
pnolin@shglaw.com

## **CERTIFICATION**

I certify that a copy of the foregoing was sent via Federal Express on this 10th day of

November, 2004 to:

Louis G. Corsi (ct 26157)
Landman Corsi Ballaine & Ford P.C.
120 Broadway, 27th Floor
New York, NY 10271

Jeffrey J. Tinley
Tinley Nastri Renehan & Dost LLP
60 North Main Street, 2nd floor
Waterbury, CT 06702-1403

_____**/S/**_____
Peter M. Nolin