**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA, | : : : | |
| Plaintiff, | : : | CIVIL ACTION NO.: 3:02CV408(AWT) |
| v. | : : : | |
| TIG INSURANCE COMPANY, | : : | |
| Defendant. | : | NOVEMBER 10, 2004 |

**PLAINTIFF'S LOCAL RULE 56(a)1.
STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Plaintiff, Travelers Casualty & Surety Company of America submits this Local Rule 56(a)1 Statement of Material Facts Not In Dispute in support of Plaintiffs' Motion for Summary Judgment, dated November 10, 2004.

1. Plaintiff, Travelers Casualty & Surety Company of America ("Travelers") is incorporated under the laws of Connecticut with a principal place of business in Hartford, Connecticut. (*See* Defendants Answer ¶ 1).

2. Defendant TIG Insurance Company ("TIG") is incorporated under the laws of California with a principal place of business in Urban, Texas. (*See* Defendants Answer ¶ 2).

1

3. Travelers and TIG are both in the business of providing insurance, including liability insurance to businesses and individuals, including businesses and individuals located in Connecticut. (*See* Defendants Answer ¶ 3-4).

4. TIG issued to Janazzo Heating & Air Conditioning ("Janazzo") TIG Policy No. 30790261 for the policy period September 1, 1991 to September 1, 1992. (*See* Defendants Answer ¶ 9).

5. In 1994, Shoreline Care Limited Partnership ("Shoreline") brought an action in the Connecticut Superior Court for the District of New Haven, Docket No. CV-94-0155982-S against Jansen & Rogan Consulting Engineers, concerning claimed defects in the construction of project known as Evergreen Woods in Connecticut. (*See* Defendants Answer ¶ 15).

6. In 1996, Shoreline cited The Weitz Construction Company Inc., of Des Moines Iowa ("Weitz") into the Shoreline Action as an additional defendant. (*See* Defendants Answer ¶ 16). Weitz was the general contractor on the Evergreen Woods project and Janazzo was Weitz's HVAC subcontractor on that project.

7. From September 1, 1992 through September 1, 1995, Aetna Casualty & Surety Company of America ("Aetna") provided general liability and other insurance coverage to Janazzo under Policy No. 007 AC 22549565, 23584577 and 24387637 (the "Aetna Policies"). (S*ee* Affidavit of Gerald Zwick at ¶ 5 attached as Exhibit B to *Plaintiff's Motion for Summary Judgment*).

8. Weitz was an additional insured on the Aetna Policies. (*See* Affidavit of Gerald Zwick at ¶ 6).

9. Beginning in 1996 Travelers became the successor-in-interest to all of Aetna's rights and obligations under the Aetna Policies. (*See* Affidavit of Gerald Zwick at ¶ 4).

10. In August 1996, Travelers agreed to provide Weitz with a defense of Shoreline's claims subject to a full reservation of rights, and Travelers retained the Connecticut firm of Milano and Wanat to defend Weitz in the Shoreline Action. (*See* Affidavit of Gerald Zwick at ¶ 8).

11. By letter dated September 6, 1996, TIG, through its then counsel, Mark P. Bailey of Morrison, Mahoney & Miller of Boston Massachusetts ("Attorney Bailey"), informed Weitz that TIG would provide Weitz with a defense in the Shoreline Action subject to TIG's full reservation of rights (the "Morrison Letter" a copy of which is attached at Tab 1 in the *Plaintiff's Appendix to Local Rule 56(a)1 Statement of Material Facts Not in Dispute In Support of Plaintiff's Summary Judgment Motion,* hereinafter "Appendix").

12. In the Morrison Letter, TIG asserted:

> "With respect (sic) the Shoreline lawsuit which TIG has agreed to defend subject to a reservation of rights, one or more of the other carriers which insured Weitz during the relevant periods may also agree to defend Weitz. If so, TIG anticipates working with those insurers to coordinate Weitz's defense. Such coordination may include an agreement to share the costs of Weitz's defense in some equitable manner and to select counsel to defend Weitz in the lawsuit."

13. The Morrison Letter was copied to F. Lee Yeager of TIG.

14. During the summer of 1996, Travelers assigned Gerald Zwick, Senior Technical Specialist at Travelers Property Casualty ("Zwick") to handle the claim from Weitz concerning the Shoreline Litigation. (*See* Affidavit of Gerald Zwick at ¶¶ 6-8).

15.     During the summer of 1996, Zwick received a copy of the Morrison Letter from Weitz and thereby became aware that TIG anticipated coordinating the defense and possibly sharing costs with Travelers in as much as Travelers had also agreed to provide Weitz a defense under a reservation of rights. (*See* Affidavit of Gerald Zwick at ¶¶ 10 & 11).

16.     Sometime in September 1996, Zwick on behalf of Travelers and Yeager on behalf of TIG discussed by telephone sharing the cost of defending Weitz in the Shoreline Litigation under their respective reservations of rights and in that call Zwick and Yeager agreed that Travelers and TIG would split the defense costs on behalf of Weitz on a 50/50 basis. (*See* Affidavit of Gerald Zwick at ¶ 13).

17.     In a TIG Claim Evaluation Report dated September 28, 1996, Yeager recorded "TIG is defending G.C." . . . . "Defense afforded to Weitz under R.O.R. on advice of counsel & per TIG authorization" and "Aetna will participate in the defense". Appendix Tab 2 (Bates TIG489).

18.     On or about October 6, 1996, Zwick on behalf of Travelers conferred with Attorney Bailey about the defense of Weitz in the Shoreline Action. Attorney Bailey expressed concerns as to why Travelers had not consulted TIG about the selection of defense counsel for Weitz. Zwick advised him that Travelers had proceed to have counsel file an appearance to protect Weitz interests and that the Travelers selected defense counsel Chris Wanat of Milano and Wanat ("Attorney Wanat") would be less expensive then using Weitz's previously retained counsel, Barry Waters of Murtha Cullina and Richter. Zwick gave Attorney Bailey the address and telephone number for Attorney Wanat and invited him to discuss any potion of the defense strategy in handling the claim. Appendix Tab 3 (Bates Trav 1908-1909). (*See* Affidavit of Gerald Zwick at ¶ 14).

19. In a file note dated October 30, 1996, Zwick on behalf of Travelers recorded that he had had a discussion with Yeager in which Yeager on behalf of TIG agreed to split the cost of defending Weitz in the Shoreline Action, Appendix Tab 3 (Bates Trav 1909), and Zwick recalls that the agreement was for AIG and Travelers to split defense costs on a 50/50 basis. (See Affidavit of Gerald Zwick at ¶ 15).

20. By letter dated October 22, 1996, David Strut General counsel of Weitz confirmed to Attorney Stephen G. Murphy at Milano & Wanat ("Attorney Murphy") that a meeting with Weitz was scheduled for November 7, 1996, and that letter shows that copies were sent to Attorney Bailey and Yeager on behalf of TIG and Zwick on behalf of Travelers. Appendix Tab 4 (Bates TIG1010).

21. By letter dated November 22, 1996, Sandra L. Discher a paralegal at Milano & Wanat requested from Yeager at TIG policy information relevant to the Shoreline action. Appendix Tab 5 (Bates TIG576).

22. By letter dated January 27, 1997, Yeager for TIG wrote to Attorney Murphy at Milano & Wanat and stated "TIG and the AETNA Insurance Companies are affording the defense to Weitz under Janazzo's policies of insurance" and Yeager requested "your initial analysis of the defenses afforded to Weitz in the litigation and your short-term action plan for the conduct of the defense of this litigation." Appendix Tab 6 (Bates TIG576).

23. By letter Dated February 4, 1997, and received by TIG on February 10, 1997, Attorney Murphy responded to Yeager at TIG by providing a January 22, 1997 letter that Wanat had sent to Zwick which provided an update and overall report on the Shoreline litigation and Attorney Murphy also advised Yeager of the process of drafting a third party complaint by Weitz against Janazzo. Appendix Tab 7 (Bates TIG575 and TIG 553-563).

5

24. In a TIG Claim Evaluation Report dated March 19, 1997, Yeager made the following entries: "TIG is defending G.C."; . . . . "costs of defense may be substantial (over $300,000 in rel. file); . . . . "Defense is being afforded to Weitz under R.O.R. We will conduct discovery & consider MSJ on coverage. Defense being shared w/Aetna who is "lead" carrier." Appendix Tab 8 (Bates TIG488).

25. By letter dated May 27, 1997, Yeager for TIG wrote to Attorney Murphy requesting recent correspondence and a report on developments on the Shoreline Litigation and Yeager stated therein: "TIG and the AETNA Insurance Companies are affording the defense to Weitz under Janazzo's policies of insurance." Appendix Tab 9 (Bates TIG904).

26. By letter dated August 13, 1997, Yeager on behalf of TIG wrote to Attorney Murphy requesting a response to his prior letter of May 27, 1997 and Yeager stated:

> TIG is participating in the defense of the insured with the Aetna Insurance Company on a cost sharing basis. As such, TIG is entitled to copies of all reports generated by appointed defense counsel. If you do not wish to furnish me with the reports, I will discuss with Aetna and The Weitz Company whether it is appropriate to continue with your representation of the defense of The Weitz Company.

Appendix Tab 10 (Bates TIG903).

27. By letter dated September 5, 1997 and received on September 8, 1997, Attorney Murphy forwarded to Yeager at TIG, correspondence on the Shoreline Litigation which had previously been submitted to Aetna/Travelers, including an August 21, 1997 letter from Attorneys Murphy and Wanat to Zwick at Travelers. Appendix Tab 11 (Bates TIG905 and TIG979-984.

28. By letter dated September 15, 1997, Attorney Murphy advised Zwick and Yeager of the postponement of the scheduled mediation of the Shoreline Litigation. Appendix Tab 12 (Bates TIG978).

29. By letter dated September 17, 1997, Yeager on behalf of TIG renewed his requests for information from Attorney Murphy. Appendix Tab 13 (Bates TIG902).

30. In a TIG Claim Evaluation Report dated September 19, 1997, Yeager made the following entries: "TIG is defending G.C. (Weitz)"; . . . . "Costs of defense substantial"; . . . . "Defense is being afforded to Weitz under R.O.R upon advice of counsel.. We will conduct discovery & consider MSJ. Defense being shared w/Aetna who is "lead" carrier." Appendix Tab 14 (Bates TIG487).

31. By letter dated January 13, 1998, Attorney Murphy wrote to Zwick on behalf of Travelers and Yeager on behalf of TIG with updates on the motion for summary judgment that Milano and Wanat had made on behalf of Weitz. Appendix Tab 15 (Bates TIG977).

32. By letter dated February 26, 1998, Zwick wrote to Yeager and stated in part:

> My notes reflect that your carrier and the Travelers, because of overlapping coverage, were to split the costs of defense in this matter. To date we have expended the sum of $64,161.33 in the defense of this most involved case.
>
> Since it is my recollection that your carrier would agree to share defense costs in this matter, please advise your carrier that we are seeking reimbursement in the amount of $32,080.66 to be made payable to The Travelers Property Casualty Company.

Appendix Tab16 (Bates TIG965). (See Affidavit of Gerald Zwick at ¶ 18).

33. In a TIG Claim Evaluation Report dated March 19, 1998, Yeager made the following entries: "TIG is defending G.C. (Weitz)"; . . . . "Costs of defense substantial—

7

shared w/ Travelers Ins. Co."; . . . . "Defense is being afforded to Weitz under R.O.R upon advice of counsel". Appendix Tab 17 (Bates TIG486).

34. By letter dated April 2, 1998, Yeager on behalf of TIG responded to Zwick at Travelers in a letter in which he questioned the amount of defense costs incurred, sought detailed billing records, and correspondence from defense counsel and also stated:

> On receipt of this documentation, TIG will honor its commitment, but will limit its indemnification to actual time incurred as supported by pertinent documentation.

Appendix Tab 18 (Bates TIG964). (*See* Affidavit of Gerald Zwick at ¶ 19).

35. As of April 2, 1998, TIG had not paid <u>any</u> of the costs incurred in the defense of Weitz in the Shoreline Litigation. (*See* Affidavit of Gerald Zwick at ¶ 18).

36. By letter dated April 22, 1998, Attorney Murphy advised Carol Griz, a Claim Representative at Travelers ("Griz"), and Yeager on behalf of TIG that the trial court had denied the summary judgment motion that Milano & Wanat had filed on behalf of Weitz. Appendix Tab 19 (Bates TIG900).

37. By letters dated June 5, and July 30, 1998, Yeager on behalf of TIG wrote to Attorney Murphy requesting consultation with defense counsel, recommendations for further defense and analysis of Weitz's exposure as a result of the Court's rulings. Appendix Tab 20 (Bates TIG896 and TIG895).

38. By letter dated September 23, 1998, Yeager on behalf of TIG wrote to Attorney Wanat requesting a response to his two previous letters and Yeager stated "As you are aware, Milano and Wanat will be looking to TIG for payment of a proportionate share of the defense costs incurred in this litigation. TIG expects to receive timely and informative reports from all defense counsel." Appendix Tab 21 (Bates TIG894).

39. By letter dated November 13, 1998 and received on November 18, 1998, Attorney Murphy responded to Yeager at TIG, with an update on the status and current strategy counsel was pursuing on the Shoreline Litigation. Murphy also provided a transcript of the oral argument on the summary judgment motion and discovery which had been served on behalf of Weitz.   Appendix Tab 22 (Bates TIG795-797).

40. By letter dated December 11 1998 and received on December 14, 1998, Attorney Murphy forwarded to Yeager at TIG, a July 20, 1998, letter that Attorney Lawrence D. Paelet of Milano & Wanat ("Attorney Paelet") had sent to Zwick at Travelers with an attached legal analysis memorandum dated July 9, 1998. Appendix Tab 23  (Bates TIG 798 & 934-962).

41. By letter dated March 10 1999 addressed to Zwick and received on March 15, 1999,  by Yeager, Attorney Paelet provided TIG with a copy of the plaintiff Shoreline's discovery responses and analyzed those responses.. Appendix Tab 24 (Bates TIG804-893) and  Appendix Tab 25 (Bates TIG512).

42. By letter dated May 25 1999 and received on May 27, 1999, Attorney Paelet provided Yeager at TIG with a  an updated status report on the Shoreline Litigation.   Appendix Tab 26 (Bates TIG804-893) and  Appendix Tab 25 (Bates TIG513).

43. By letter dated September 2, 1999 and received on September 7, 1999, Attorney Paelet provided Yeager at TIG with a further update on the status of the  Shoreline Litigation and the plan to move the litigation to the Connecticut Superior Court  complex Litigation Docket.  Appendix Tab 27 (Bates TIG804-893) and  Appendix Tab 25 (Bates TIG513).

44.	In late September 1999, TIG reassigned responsibility for the Weitz claim from Yeager to Janice Orlowski, CPCU, Claims Specialist ("Orlowski") and she then contacted Attorney Paelet and Mary Ann Moody the Technical Specialist at Travelers who had taken over handling the claim for Travelers ("Moody").  Appendix Tab 25 (Bates TIG515-517).

45.	By letter dated September 28, 1999, Orlowski at TIG notified Attorney Paelet that she had taken over responsibility for the file at TIG and the "Re" section of that letter provided: "Your Client/Additional Insured : Weitz Company".  Appendix Tab 28 (Bates TIG906).

46.	By letter dated October 5, 1999,  Paelet  provided Orlowski with a memorandum on trial preparations and plans for future handling of the Weitz case. Appendix Tab 29 (Bates TIG582-591).

47.	Orlowski prepared a Catastrophic Loss Report for TIG dated October 7, 1999, which identified Weitz as "Additional Insured" and the report also states: "it has been confirmed that Weitz met the criteria of an additional insured".  Under the "Analysis" section of the report Orlowski stated:

> The Weitz Corporation is represented by the Law office of Milano& Wanat, which was retained by Travelers Insurance, Janazzo's insurer subsequent to TIG.  At the present time, Travelers has been funding the entire bill for this law firm, although Travelers has put TIG on notice regarding equitable sharing of this legal expense. On December 10, 1998, Travelers advised TIG that legal expenses totaled approximately $152,453, and they were anticipated to go significantly higher due to the complexity of the claim.  As of this date, TIG has not reimbursed Travelers for any of the aforementioned legal expenses. We have requested that Travelers provide us with detailed billing invoices for our review.

> We have discussed this with the Travelers claim representative, who advises that a full accounting of all legal bills would be provided to TIG, subsequent to an audit by Travelers Home Office for accuracy. We anticipate an equitable sharing of those expenses.

Under the Section of the report titled Reserve Analysis, Orlowski states:

> The Current Reserve is $50k.
>
> Since we are sharing the potential obligation with one additional insurer, this amount should be adequate to provide the indemnity unless we receive verification that the covered damages exceed $200k. The current reserve reflects both the cross file, and a pro-rata sharing of %50 with the other insurer, Travelers.

Appendix Tab 30 (Bates TIG497-498).

48. On October 14, 1999, Orlowski reviewed a report from Milano & Wanat dated October 5, 1999, on discovery and then discussed the status of the case with Attorney Paelet, including a discussion that "once discovery heats up—multiple depos., complex litigation, the cost of defense will rise substantially." Appendix Tab 25 (Bates TIG505) .

49. By letter to Attorney Paelet dated October 15, 2004, Orlowski requested that information on the file should also be copied to Al Freudenheim in TIG's Chicago office and that letter in the "Re" section provides: "Additional Insured : **The Weitz Company**". Appendix Tab 31 (Bates TIG906).

50. On October 25, 1999, Orlowski made notes of call with Attorney Paelet in which they reviewed the Litigation, discussed a budget and referenced a previously prepared Shoreline Litigation plan. Appendix Tab 25 (Bates TIG509).

51. On November 15, 1999, Orlowski made notes of telephone messages she left for David Strutt, General Counsel of Weitz and Moody at Travelers and a return message she

11

received from Moody on the status of the Shoreline Litigation.  In one of those notes Orlowski identified Weitz as "ADD'L INSD".   Appendix Tab 25 (Bates TIG500).

  52. On December 13, 1999, Orlowski made notes of telephone message she received from Moody at Travelers, which provides:

> "THE LEGAL BILLS FROM COUNSEL DEFENDING JANAZZO/WEITZ HAVE GOTTEN VERY HIGH. SHE RECEIVED THE MOST RECENT BILL REPRESENTING LEGAL SERVICES FROM MAY TO ?, IN EXCESS OF $15,000. WHE ( sic SHE) IS GOING TO PAY 50% AND SEND ME THE ENTIRE BILL TO PAY DIRECT OUR SHARE. TO DATE TRAVELERS HAS BEEN PAYING 100% AND INTENDS TO SUBMIT TO TIG FOR REIMBURSEMENT.  UPON RECEIPT OF BILL, I WILL REVIEW AND HANDLE AS NECESSARY."

Appendix Tab 25 (Bates TIG500-501).

  53. By letter dated December 14, 1999, Moody wrote to Orlowski with a group of bills from Milano & Wanat. Appendix Tab 32 (Bates TIG307-449).

  54. On December 20, 1999, Orlowski made notes of telephone conference with Moody at Travelers. Appendix Tab 25 (Bates TIG501).

  55. On December 20, 1999, Orlowski made notes concerning Weitz as follows:

> IN A REVIEW OF THE OLD VOLUMES, IT BECAME APPARENT THAT THE AI CLAUSE IN THIS OLD POLICY IS MUCH LESS RESTRICTIVE THAN THOSE WHICH I HAVE PREVIOUSLY WORKED WITH. WE ALREADY OBTAINED A LEGAL OPINION, WHICH STATED IN ESSENCE THAT INDEED TIG HAS A RESPONSIBILITY TO PROVIDE A TOTAL DEFENSE TO WEITZ.

Appendix Tab 25 (Bates TIG502).

  56. On December 20, 1999, Orlowski made notes concerning Weitz as follows:

> RECEIVED CALL FROM ACCOUNT REP FOR DEF COUNSEL FOR WEITZ IN REFERENCE TO PAYMENT

12

>OF LEGAL INVOICE.  I ADVISED THAT WE ARE
>WAITING FOR RESPONSE TO MY LETTER TO
>CORPORATE ANALYST . . . . TRAVELERS HAS PAID
>50% AND THE DEF COUNSEL FOR WEITZ BELIEVES
>WE OWE THE OTHER 50%.  THIS POLICY'S VERBIAGE
>FOR THE ADDITIONAL INSURED ENDORSEMENT
>DOES NOT SPECIFY THAT IT ONLY INVOLVES THE
>DEFENSE OF JANAZZO.

Appendix Tab 25 (Bates TIG503).

57. By letter dated December 23, 1999, Attorney Paelet wrote to Orlowski at TIG with a summary of a status conference before the Connecticut Superior Court complex Docket Judge McWeeney to whom the Shoreline litigation had recently been transferred. Appendix Tab 33 (Bates TIG580-581).

58. As of December 31, 1999, TIG had paid no part of the defense costs incurred on behalf of Weitz in the Shoreline Litigation. (*See* Affidavit of Gerard E. Doak at ¶ 8 attached as Exhibit A to *Plaintiff's Motion for Summary Judgment*).

59. By letter dated January 17, 2000, Attorney Wanat wrote to Moody at Travelers and requested payment of TIG share of the defense costs noting that Orlowski on behalf of TIG "was simply not helpful." Appendix Tab 34 (Bates TRAV 0137).

60. By letter dated January 18, 2000, Attorney Paelet wrote to Orlowski at TIG with discovery information from the plaintiff in the Shoreline Litigation, which purported to support plaintiff's damage claim in excess of $1,000,000. Appendix Tab 35 (Bates TIG606-794).

61. By letter dated January 18, 2000, Attorney Chad B. Wootton of Charlston, Revich & Williams LLP ("Attorney Wootton") wrote to Attorney Paelet and advised that as coverage counsel to TIG he was seeking information on the claim including the complaints, defect lists and costs to repair prepared by the plaintiff, matrixes showing all subcontractors

13

involved and "any documents you believe would assist TIG in its evaluation of the exposure presented by this matter." Appendix Tab 36 (Bates TRAV 0143-0144). That letter was copied to Orlowski at TIG. In that letter Attorney Wootton identified Weitz in the "Re line" as "Additional Insured."

62. By letter dated June 16, 2000, Attorney Wootton on behalf of TIG wrote to Attorney Paelet and referenced a discussion the prior week on the Shoreline Litigation. Attorney Wootton requested copies of "all status reports and other correspondence of significance on this matter, a written analysis from you addressing the strengths and weaknesses of the plaintiff's case, a discussion of the plaintiff's damages, . . . a discussion of the exposure presented by this matter and your views as to the settlement value of the case", "your motion to dismiss", "your motion for summary judgment" and " the fourth amended complaint ( or the most recent operative pleading" Appendix Tab 37 (Bates TIG595-596). In that letter Attorney Wootton identified Weitz in the "Re line" as "Additional Insured."

63. By letter dated June 16, 2000, Attorney Wootton on behalf of TIG wrote to Moody at Travelers renewing a prior request for documents and seeking a copy of the auditor's report Travelers had performed on defense costs incurred on behalf of Weitz. Appendix Tab 38 (Bates TRAV 0152-153). In that letter Attorney Wootton identified Weitz in the "Re line" as "Additional Insured."

64. By letter dated July 7, 2000, Deborah M. DellaCamera, Billing Administrator for Milano & Wanat wrote to Attorney Wootton enclosing information on the amounts Milano& Wanat had billed in the defense of Weitz ($347,578.30) and indicating the balance owed by Travelers ($55,729.54). Appendix Tab 39 (Bates TIG597-600).

14

65.     In a letter dated July 21, 2000, Attorney Joanne M. Wendell of Charlston, Revich & Williams LLP ("Attorney Wendell") on behalf of TIG wrote to Michael Sullivan at Travelers ("Sullivan") and stated:

> We are in the process of determining the amount of TIG's contribution toward the defense of The Weitz Co., Inc. ("Weitz") in *Shoreline Care*. We would appreciate your assistance toward that end. We cannot recommend the amount of TIG's contribution to this defense until we can review and verify the accuracy of the payments requested by defense counsel and made by Travelers.
> . . . .
> If possible, please provide a summary of payments by date and type of expense, and a copy of the invoices submitted to you for payment by defense counsel. Additionally we would appreciate your providing us with a copy of the auditor's report.

Appendix Tab 40 (Bates TIG928-929).

66.     By letter dated November 9, 2000 Ingrid Marsh, of RiverStone Resources ("Marsh"), wrote to Attorney Paelet indicating she had been retained by TIG to handle the Shoreline Litigation claim and RiverStone had "begun our investigation". She also requested "all relevant documentation to assist us in evaluating the claim." Appendix Tab 41 (Bates TRAV 0187-188).

67.     By letter dated December 4, 2000, Sullivan on behalf of Travelers wrote to Marsh with a copy to Attorney Wendell, and advised that Travelers had paid approximately $350,000 in defense costs for Weitz and was seeking reimbursement for half of the defense costs from TIG. Sullivan also indicated he would provide copies of the bills from Milano & Wanat to Wendell. Appendix Tab 42 (Bates TIG926-927).

68.     By letter dated December 20, 2000, Wendell on behalf of TIG wrote to Sullivan at Travelers seeking additional information on the claim and in particular inquired

15

whether there was any evidence that TIG had issued additional insured endorsements to Weitz. Appendix Tab 43 (Bates TRAV 3746-3747).

69. As of December 31, 2000, TIG had paid no part of the defense costs incurred on behalf of Weitz in the Shoreline Litigation. (*See* Affidavit of Gerard E. Doak at ¶ 8).

70. By letter dated March 16, 2001, Sullivan on behalf of Travelers wrote to Attorney Wendell representing TIG and delivered to her copies of Milano & Wanat's legal bills for services rendered from March 1997 to August 2000. Sullivan advised Attorney Wendell that Travelers had already paid $393,390.00 in fees and disbursements for the defense of Weitz. Appendix Tab 44 (Bates TIG922).

71. In a letter dated October 7, 1991 produced in discovery in this action by TIG, Ellen Thees of Mathog Moniello wrote to Bill Messler at Transamerica and stated:

> Attached is a copy of the certificate of insurance for your new business account, Janazzo. As agreed with Dave LeCuvire, the insured needs a lot of additional insureds and signs a lot of hold harmless clauses and gets involved in subrogation waiver situations which we can just go ahead and do as they come up.

Appendix Tab 45 (Bates TIG 549).

72. At TIG's request, Milano & Wanat provided TIG with copies of thee different certificates of insurance date March 12, 1992, September 12, 1991 and November 15, 1991, respectively, issued Mathog & Moniello to Janazzo that named Weitz as an additional insured under TIG's policy. Appendix Tab 46 (Bates TIG1048-1050).

73. By letter dated April 6, 2001, Attorney Wendell on behalf of TIG wrote to Attorney Wanat with a copy directed to Sullivan at Travelers and stated that TIG had determined it never insured Weitz and therefore would rescind its agreement to participate in the defense of Weitz. Appendix Tab 47 (Bates TRAV 3707-715).

74. As of April 6, 2001, Travelers had incurred and subsequently paid attorneys fees and disbursements in the defense of Weitz to Milano & Wanat of $491,728.33. (*See* Affidavit of Gerard E. Doak at ¶ 6).

75. TIG has not paid Travelers 50% of the $491,728.33 incurred and paid by Travelers as of April 6, 2001. (*See* Affidavit of Gerard E. Doak at ¶ 8).

76. After April 6, 2001 Travelers continued to incur expenses for the defense of Weitz as the Shoreline Litigation moved closer to a ready status for trial.

77. As of December 31, 2001, TIG had not paid any part of the defense costs incurred by Travelers for the defense of Weitz in the Shoreline litigation. (*See* Affidavit of Gerard E. Doak at ¶ 8).

78. Milano & Wanat continued to defend Weitz through the completion of a trial in late 2002 and on November 15, 2002, obtained a judgment in favor of Weitz after a court trial. Appendix Tab 48. (Printout of Connecticut Judicial Website Case Detail Report) (*See* Affidavit of Christopher Wanat at ¶ 15 Attached as Exhibit C to *Plaintiff's Motion for Summary Judgment* ).

79. Travelers incurred and paid legal fees to the firm of Milano & Wanat and related costs in the defense of Weitz from August 1996 through January 2003 in the total amount of $887,256. (*See* Affidavit of Gerard E. Doak at ¶ 7).

80. TIG has paid no part of the defense costs incurred and paid by Travelers on behalf of Weitz. (*See* Affidavit of Gerard E. Doak at ¶ 8).

81. TIG was able to receive confidential attorney client and work product privileged documents from Milano & Wanat and Travelers prior to April 6, 2001, because

TIG had represented repeatedly that it was a defending Weitz and was sharing in the costs of defense with Travelers. *See e.g.*, Appendix Tabs 1, 10, 16 & 18. (*See* Affidavit of Christopher Wanat at ¶ 18).

                              **THE PLAINTIFF,
TRAVELERS CASUALTY &
SURETY COMPANY OF AMERICA**

By_____**/S/**_____
Peter M. Nolin (ct 06223)
**Sandak Hennessey & Greco LLP**
707 Summer Street
Stamford, CT 06901-1026
(203) 425-4200
(203) 325-8608 (fax)
pnolin@shglaw.com