UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TRAVELERS CASUALTY & SURETY : CIVIL ACTION NO.: 302CV408AWT
COMPANY OF AMERICA,                  :
                                                       :
                       Plaintiff,              :
                                                       :
v.                                                    :
                                                       :
TIG INSURANCE COMPANY,          : NOVEMBER 10, 2004
                                                       :
                       Defendant.           :
                                                       :
                                                       :
                                                       :

**DEFENDANT TIG INSURANCE COMPANY'S MEMORANDUM OF
LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, TIG Insurance Company ("TIG"), respectfully submits this

memorandum of law in support of its motion for summary judgment with respect to all five (5)

counts contained in Travelers Casualty & Surety Company of America's ("Travelers") Complaint

dated March 14, 2002 ("Complaint").

## I.    INTRODUCTION

In 1996, Shoreline Care Limited Partnership ("Shoreline Care") named The Weitz Company

("Weitz") as a defendant in the lawsuit Shoreline Care Limited Partnership v. Rogan & Jansen, et

al., pending in the Superior Court for the Judicial District of New Haven (the "Shoreline Action")

which involved alleged defective work on an HVAC system in a construction project.  Local Rule

56(a)1 Statement at ¶8 and Exhibit "A," Complaint at ¶ 16.[1]   Weitz demanded defense and indemnity insurance coverage for that lawsuit from various insurers, including Travelers and TIG.

With respect to Travelers, Weitz had been named as an additional insured on three comprehensive general liability policies issued by Travelers to Janazzo Heating and Plumbing Co. ("Janazzo") which was the subcontractor hired by Weitz to perform the HVAC work on the construction project underlying the Shoreline Action.  By letter dated August 8, 1996, Travelers acknowledged its obligations under those policies and agreed to defend Weitz in the Shoreline Action.  Rule 56 Statement at ¶ 9, and Exhibit "A" Complaint, at ¶¶ 13 and 17; and Exhibit "B," the Travelers Policies; and Exhibit "E", August 8, 1996 letter.

Unlike Travelers, TIG initially determined that it had no obligations to Weitz under a general liability policy TIG had issued to Janazzo, and so notified Weitz.  Rule 56 Statement at ¶ 10  and Exhibit "F," TIG letter dated December 28, 1995.  Subsequently, TIG re-considered its position and offered to defend Weitz in the Shoreline Action.  In doing so, however, TIG reiterated  its right to disclaim coverage and to withdraw from the defense should the facts warrant.  Travelers, which had already acknowledged its independent obligation to defend Weitz and had already hired defense counsel, was provided  with a copy of that letter setting forth TIG's position.  Rule 56 Statement at ¶ 14  and Exhibit "H," letter from TIG's counsel dated September 6, 1996.

TIG continued to review the coverage issues and after further investigation concluded that Weitz did not have insured status under the TIG Policy (in contrast to the confirmed status of Weitz as an additional insured under the Travelers' Policies).  Through counsel, TIG informed Weitz and Travelers that it had no obligation to participate in the defense and disclaimed coverage for Weitz

---

[1]  Hereinafter, all references to TIG's Local Rule 56(a)(1) Statement will be cited as "Rule 56 Statement."

in the Shoreline Action. Rule 56 Statement at ¶ 15 and Exhibit "I," letter dated April 6, 2001. At that time, TIG had not paid any defense costs, and Travelers had paid all defense costs under its policies.

In this lawsuit, Travelers is claiming that TIG's offer to defend Weitz under a reservation of rights constitutes an enforceable contract with Travelers. That position, if allowed to succeed, will reduce by half Travelers undisputed obligation to defend Weitz, or will otherwise shift to TIG an obligation to pay 50% of the defense costs owed by Travelers, even though TIG's policy has no obligation to defend Weitz. Indeed, Travelers seeks to have this Court rule that anytime an insurer offers to defend an alleged insured, it is forever bound to provide coverage even when the undisputable facts subsequently show that no such coverage was ever extended to that alleged insured under the policy. Certainly, there must be instances where Travelers' has found itself in this situation and we doubt that Travelers has voluntarily extended such coverage that was never purchased in those instances.

As described more fully below, the various theories upon which Travelers is relying to secure this windfall are fatally flawed as a matter of law because:

- Travelers insured Weitz and had an independent obligation under its policies to defend Weitz;

- TIG never insured Weitz and Weitz was not left undefended in the Shoreline Action;

- There was never an enforceable contract between Travelers and TIG since TIG's offer to share defense costs was not supported by consideration;

- Even if TIG had mistakenly reimbursed Travelers for any defense costs based on the purported agreement, TIG would have been entitled to recover those

amounts from Travelers on an unjust enrichment theory;

- Travelers never relied to its detriment nor suffered any damages as a result of any offer made by TIG;

- TIG was not estopped from withdrawing its offer to defend Weitz because Weitz was fully defended by Travelers and was not prejudiced;

- Travelers cannot recover under a promissory estoppel theory because Travelers did not change its position in reliance on TIG's offer to participate in Weitz's defense.

II.    **RELEVANT FACTS**

A.    **The Shoreline Action**

In 1989, Weitz entered into a contract with Shoreline Care, agreeing to provide general contractor services in connection with the construction of a continuing care retirement community known as Evergreen Woods. Weitz subcontracted certain HVAC and plumbing work to Janazzo. Rule 56 Statement at ¶ 1 and Exhibit "A," Complaint ¶¶ 7-8.

On November 29, 1994, Shoreline Care commenced the Shoreline Action and asserted claims against Jansen & Rogan Consulting Engineers that the HVAC system was negligently designed and constructed. Shoreline Care added Weitz as a defendant by means of a Third Amended Complaint filed in 1996. Rule 56 Statement at ¶ 8 and Exhibit "A," Complaint ¶16.

The Shoreline Action was tried to the Court in February and March of 2002. On November 21, 2002, the Court filed its Memorandum of Decision of Judgment dismissing the claims against Weitz. Rule 56 Statement at ¶16 and Exhibit "K," Memorandum of Decision and Entry of Judgment.

### B.    The Insurance Policies

The subcontract between Weitz and Janazzo on the Evergreen Woods project required that Janazzo indemnify Weitz for claims and suits arising out of the work to be performed under the contract. The subcontract also required that Janazzo maintain comprehensive general liability coverage and have Weitz named as an additional insured under that coverage. Complaint ¶ 10, annexed hereto as Exhibit "A".

From September 1, 1992 through September 1, 1995, Travelers' predecessor-in-interest, Aetna Casualty & Surety Company of America, provided general liability and other coverage to Janazzo under policy numbers: 007 XS 22549565; 007 ACM 23584577; and 007 ACM 24387637 (the "Travelers Policies").[2]    Weitz is specifically named as an additional insured on all three Travelers Policies. Rule 56 Statement at ¶ 4, and Exhibit "A," Complaint ¶ 13, and Exhibit "B," Travelers Policies.

From September 1, 1991 to September 1, 1992, TIG had provided general liability coverage to Janazzo under policy no. 30790261 (the "TIG Policy"). Janazzo never purchased an endorsement naming Weitz as an additional insured on the TIG Policy. Rule 56 Statement at ¶6 and Exhibit "C," TIG Policy 30790261; Exhibit "D", September 17, 2004 Stipulation, ¶ 10.

Travelers has not alleged in the Complaint that TIG is obligated to share in the defense of Weitz because Weitz is an insured or additional insured under the TIG Policy. Travelers' Complaint only alleges that TIG must share in the defense of Weitz because of the purported agreement with

---

[2] Travelers is the successor-in-interest to all of Aetna's rights and obligations under these policies issued to Janazzo. Exhibit "A," Complaint ¶ 14. For convenience, these policies are referred to as the "Travelers Policies."

Travelers to share the defense costs, or an estoppel theory based on that alleged agreement. See, e.g., Exhibit "A" Complaint, ¶¶ 20, 32, 34, 41, 46, and 51.

### C.    Defense of Weitz In the Shoreline Action

By letter dated August 8, 1996, Travelers agreed to defend Weitz under a reservation of rights, and retained the law firm of Milano & Wanat to provide that defense. Travelers has never claimed that it does not owe Weitz a defense. Rule 56 Statement at ¶ 9 and Exhibit "E," letter dated August 8, 1996, and Exhibit "A," Complaint, ¶ 17.

By letter dated December 29, 1995, TIG advised Weitz that it was not covered under the TIG policy issued to Janazzo. Rule 56 Statement ¶ 10 and Exhibit "F," TIG letter dated December 28, 1995. Subsequently, after Weitz had been named as a defendant in the Third Amended Complaint in the Shoreline Action, coverage counsel for TIG, by letter dated September 6, 1996, advised Weitz that TIG would provide a defense for Weitz under a reservation of rights. TIG offered to share in the defense of Weitz in the Shoreline Action on an "equitable basis" with the other insurers. Rule 56 Statement at ¶ 12 and Exhibit "G" letter dated September 6, 1996. TIG's letter also explicitly reserved the right to withdraw from the defense "should it be established that Shoreline's claim does not fall within the TIG coverage" and:

> TIG's agreement to extend a defense to Weitz is subject to a full reservation of rights, however. **That is, TIG continues to reserve its rights to withdraw from Weitz' defense. . . . should it be established that Shoreline's claim does not fall within the TIG coverage.**

Id. at 1. (Emphasis added.)

On September 6, 1996, TIG's coverage counsel, Morrison, Mahoney & Miller, also faxed a copy of that letter to Travelers' coverage counsel, Cooney, Scully & Dowling. Rule 56 Statement

at ¶ 14 and Exhibit "H," Fax sheet and the September 6, 1996 correspondence.

Thus, even before there had been any communication between TIG and Travelers regarding

sharing the costs of defense, Travelers had:

> (a) already acknowledged to Weitz its obligation to provide a defense in the Shoreline Action, and
>
> (b) retained Milano & Wanat to defend Weitz.

Moreover, the correspondence from TIG's counsel one month later advising that TIG would share

equitably in the cost of Weitz's defense explicitly reserved its right to withdraw from Weitz defense,

"should it be established that Shoreline's claim does not fall within the TIG coverage."

Subsequently, after further review of the coverage issues in this matter by its new coverage

counsel, TIG concluded that Weitz was not an additional insured under the TIG Policy and was not

entitled to coverage for the Shoreline Action. By letter dated April 6, 2001, TIG's new coverage

counsel advised Weitz and Travelers that TIG had no obligations to Weitz under the TIG policy or

to participate in paying for Weitz's defense. Rule 56 Statement at ¶ 15 and Exhibits "I" and "J"

letters dated April 6, 2001; and July 26, 2001 and December 18, 2001, respectively.

Travelers has paid 100% of the Milano & Wanat invoices for defense of Weitz in the

Shoreline Action and is seeking reimbursement from TIG. Exhibit "A" Complaint.

## III.    TRAVELERS' COMPLAINT

Travelers' Complaint consists of five counts.

The first two counts allege breach of contract claims. In the first count (¶¶ 31-35), Travelers

asserts that TIG's statements to Travelers that it would pay 50% of the defense costs for Weitz

constituted an enforceable oral agreement. It also alleges that from 1997 through 1999, TIG told

Travelers that it would pay 50% of the fees, subject only to its review of the hours and

reasonableness of the fees incurred. Travelers claims damages in an amount "not less than $245,864.16". Exhibit "A," Travelers Complaint ¶ 35.

In the second count (¶¶ 36-39), Travelers makes the same general allegations that TIG had agreed to pay 50% of the defense costs. Travelers also alleges that prior to April 2001, "TIG never advised Travelers that it was reserving any right to withdraw from the alleged agreement to pay 50% of the costs of defending Weitz." Exhibit "A," Complaint ¶ 21. Travelers alleges that TIG's breach of contract caused it to suffer monetary damages in an amount not less than $325,000. (Id. ¶ 39).[3]

The third, fourth, and fifth counts generally allege misrepresentation or estoppel theories of recovery. In the third count (¶¶ 40-44), Travelers alleges that in reliance upon TIG's representations that it would pay 50% of the defense, Travelers advanced funds for the defense of Weitz, provided detailed records on costs and activities of Weitz' defense counsel to TIG, permitted TIG to obtain copies of confidential attorney-client and work product communications, and coordinated its defense of Weitz with TIG. Id. ¶ 42. Travelers alleges that TIG knew or should have known that its representations were false and that Travelers would rely on them, and that TIG made the misrepresentations "with a reckless indifference to the right of others or an intentional and wanton violation of those rights." Id. ¶ 43. Travelers has not attempted to quantify the damages caused by TIG's alleged misrepresentations in light of Travelers independent obligation to defend Weitz under the Travelers' Policies.

---

[3] The only difference between these two counts for breach of contract is the amount of the alleged damages; i.e., $245,864.14 in Count I and $325,000 in Count II. $245,864.14 is one-half of $491,728.32, which is the total of the Milano & Wanat legal fees as of April 6, 2001 (the date TIG informed Travelers that it had no duty to participate in the defense of Weitz). $325,000 is one-half of $650,000, which is the total of Milano & Wanat legal fees as of the date that Travelers filed its Complaint. In its discovery responses, Travelers has now asserted that the total defense costs through the conclusion of the Shoreline Action are $887,256.

In the fourth count (¶¶ 45-48), Travelers alleges that TIG is estopped from denying that Weitz was an additional insured under the TIG policy issued to Janazzo because of its earlier offer to defend, <u>Id</u>. ¶ 46. Travelers asserts that TIG is thus obligated to pay 50% of the defense costs incurred by Travelers for the defense of Weitz.

Finally, in the fifth count (¶¶ 49-55), Travelers alleges that Travelers altered its position in the Weitz defense in reliance on TIG's promise to pay 50% of the cost of the defense. As alleged in the Complaint, it appears that the detriment Travelers allegedly suffered was by providing TIG with privileged documents and information, permitting TIG to participate in the defense, and by not seeking any reimbursement or contribution from Weitz for the cost of the defense of Weitz. See, Exhibit "A," Complaint ¶ 51. No where has Travelers attempted to quantify this alleged detrimental reliance.

## IV.    ARGUMENT

### A.    Summary Judgment Standard

When considering a motion for summary judgment, the court must examine all of the evidence in the light most favorable to the nonmoving party. A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 246 (1986). The non-movant may not merely rest on the pleadings to meet this burden. <u>Id</u>. Genuine factual issues must exist that "can be resolved only by a finder of fact

because they may reasonably be resolved in favor of either party." Id. at 43. Summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

**B.    Breach of Contract Claims**

**1.    No Contract Exists Between TIG And Travelers Because The Exchange of Promises Was Not Supported By Consideration**

The undisputed material facts establish that prior to any communications with TIG about sharing the cost of Weitz's defense, Travelers had already committed to meet its independent obligation to provide a defense to Weitz under the Travelers Policies and had retained the firm of Milano & Wanat to defend Weitz. As a result, the subsequent communications between Travelers and TIG concerning sharing defense costs in the Shoreline Action do not create an enforceable contract.

It is a well-established that "a promise is generally not enforceable unless it is supported by consideration." D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 213, 520 A.2d 217, 221 (1987); Stewart v. Cendant Mobility Services Corp., 267 Conn. 96, 837 A.2d 736 (Conn. 2003). "To constitute consideration, a performance or a return promise must be bargained for. A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." Restatement (Second) Contracts, § 71(1) and (2)[4]. "In the typical bargain, the consideration and the promise bear

---

[4] See also, Mandell v. Gavin, 262 Conn. 659, 668-69, 816 A.2d 619, 624-25 (Conn. 2003) citing Calamita v. Tradesmens Nat. Bank, 135 Conn. 326, 64 A2d 46 (1949) "consideration must actually be bargained for as the exchange for the promise."

a reciprocal relation of motive or inducement; the consideration induces the making of the promise and the promise induces the furnishing of the consideration." Id., Comment b.

> For the requirement of a bargain to be met, there must be reciprocity. According to Holmes, an influential advocate of the requirement, what is required is that the promise and the consideration be in 'the relation of reciprocal conventional inducement, each of the other.'[5] In other words, 'the promise and the consideration must purport to be the motive each for the other'; it is not enough that the promise induces the consideration or the consideration induces the promise, 'if the other half is wanting.'[6] The Restatement Second reaffirms this by defining *bargain* to require that the consideration both be *sought* by the *promisor* in exchange for his promise' and be '*given* by the *promisee* in exchange for his promise.'[7]

E. Allan Farnsworth, Farnsworth on Contracts, § 2.6 at 88 (3d ed. 2004) (Emphasis in original).

Applying Connecticut law, Judge Droney of this Court recently granted a defendant's motion for summary judgment because the alleged contract lacked reciprocal consideration. Hipsky v. Allstate Ins. Co., 304 F.Supp. 2d 284 (D. Conn. 2004).[8]

In Hipsky, the plaintiff asserted a claim against Allstate Insurance Co. for an alleged breach of an implied covenant of good faith and fair dealing in the way Allstate had handled a claim. The Court ruled that in order to proceed on such a claim, the plaintiff had to establish a contractual relationship between the plaintiff (who was a claimant in an underlying personal-injury action) and Allstate (as the insurer for the defendant in the personal injury action). 304 F. Supp. 2d at 287–88.

---

[5] Quoting, Oliver Wendell Holmes, The Common Law, 293-94(1881).

[6] Quoting, Wisconsin & M. Ry. Co. v. Powers, 191 U.S. 379, 386 (1903).

[7] Quoting, Restatement (Second) Contracts, § 75.

[8] TIG believes that Connecticut law applies to this dispute and we do not understand Travelers to assert a contrary position.

The plaintiff relied on Allstate's "Quality Service Pledge," which Allstate had sent to the plaintiff, as the binding contract. 304 F. Supp. 2d at 288.

In rejecting that contract claim, the Court focused on the requirement that the plaintiff demonstrate he had provided consideration for the alleged contract. Quoting from <u>Connecticut Nat. Bank v. Voog</u>, 233 Conn. 352, 336, 659 A.2d 172 (1995), the Court noted that "'in the absence of consideration an executory promise is unenforceable.'" 304 F. Supp 2d at 289. The Court determined that the plaintiff in <u>Hipsky</u> had not furnished any consideration in exchange for the promises contained in the Quality Service Pledge:

> Section 71 of the Restatement (Second) of Contracts relates the familiar legal sense of the term 'consideration': '(1) To constitute consideration, a performance or a return promise *must be bargained for, (2)* A performance or return promise is bargained for if *it is sought by the promisor in exchange for his promise and is given by the promise in exchange for that promise.' 1* Restatement (Second), Contracts § 71, p. 172 (1981); see also <u>Calamita v. Tradesmens Nat. Bank</u>, 135 Conn. 326, 64 A.2d 46 (1949) ("'[c]onsideration must actually be bargained for as the exchange for the promise '''); accord <u>State v. Sostre</u>, 261 Conn. 111, 123, 802 A.2d 754 (2002) ("'[t]o constitute consideration, a performance or a return promise must be bargained for.'" The Restatement (Second) of Contracts further defines the term 'bargained for' as follows: 'In the typical bargain, the consideration and the promise bear a reciprocal relation of motive or inducement: *the consideration induces the making of the promise and the promise induces the furnishing of the consideration.* Here, as in the matter of mutual assent, the law is concerned with the external manifestation rather than the undisclosed mental state. . . . [I]t is *not enough that the promise induces the conduct of the promisee* or that the conduct of the promisee induces the making of the promise; both elements must be present, or there is no bargain.' (Citation omitted.)

<u>Id.</u> at 289, quoting <u>Mandell v. Gavin</u>, 262 Conn. 659, 668-69, 816 A.2d 619, 624-5 (2003) (emphasis added by Judge Droney).

In applying these principles to the facts in <u>Hipsky</u>, the Court further explained:

> Hipsky claims that Allstate received a benefit in that Hipsky did not retain an attorney as quickly as he would have in the absence of Allstate's

> representations.  However, there is no indication that Allstate offered
> Hipsky anything in exchange for his forbearance.  The [Quality Service
> Pledge] does not indicate that its promises are conditioned upon the third-
> party claimant not retaining counsel.  In other words, it may be the case that
> Allstate's promise "induced the conduct of [Hipsky]," but because there is
> no question that the conduct did not "induce the making of [Allstate's]
> promise [s]," Hipsky's delay can not constitute consideration.

304 F. Supp 2d at 289.

See, <u>Mandell v. Gavin</u>, *supra,* in which the Connecticut Supreme Court affirmed the trial judge's

grant of summary judgment because "there was no consideration for plaintiffs' transfer of real

property to the company because there was no bargained for exchange. . . . The plaintiff did not

promise to transfer the real property to his company in exchange for any performance or return

promise by the company". <u>Id</u>. at 669.

Under this controlling case law, there was no reciprocal consideration between Travelers

and TIG, and Travelers did not agree to defend Weitz because of an offer by TIG to pay 50% of the

costs.  Travelers had committed to defend Weitz in its August 8, 1996 letter, and by that time it had

already retained Milano & Wanat.  TIG's subsequent offer one month later to participate in the

defense of Weitz on an equitable basis could not have induced Travelers to make those pre-existing

commitments.  Conversely, Travelers did nothing to induce TIG to agree to participate in the defense

of Weitz.  To the contrary, TIG's offer to defend Weitz was based solely on its preliminary views

regarding the scope of its coverage.

Based on these undisputed facts there was no bargained  for exchange of consideration

between TIG and Travelers.  There was no "if you do this, we'll do that."  As Professor Farnsworth

has explained:

> If we assume that there has been an exchange in which a promisor has made
> a promise and the promisee has made a promise or rendered some

performance, the promisor's promise will still lack consideration if the promisee's action was not bargained for. Instances of such exchanges in which bargain is absent fall into two categories: first, those in which the promisor was not seeking to induce action by the promisee, and second, those in which the action that the promisee took was not induced by the promise (i.e., the promisee took the action independently of the promise).

E. Allan Farnsworth, <u>Farnsworth on Contracts</u>, § 2.6 at 89 (3d ed. 2004).

### 2.  <u>Assuming *Arguendo*, That TIG Had An Agreement To Share Costs, TIG Would Be Entitled To Recover Any Payments</u>.

At the time the purported "contract" was made both TIG and Travelers mistakenly believed that TIG owed Weitz a defense in the Shoreline Action. Even if TIG had reimbursed Travelers for any defense costs pursuant to that "agreement," TIG would have been entitled to recover those payments on an unjust enrichment theory. An erroneous payment made under a jointly shared or mutual mistake may be recovered. <u>See</u>, <u>Metropolitan Life Ins. Co. v. Smith</u>, 3 Conn. Cir. Ct. 169, 209 A.2d 693 (Conn. Cir. 1965) (when payor acts under mistake of his rights and duties and is free from any moral or legal obligation to make the payment, and payee, in good conscience, has no right to retain it, the money paid may be recovered whether it was paid under mistake of fact or law); <u>Ficken v. Edward's Inc.</u>, 23 Conn. Supp. 378, 183 A.2d 924 (Conn. Cir. 1962).

In <u>Ficken</u> an action was brought by an owner against a subcontractor to recover money paid by mistake. Both parties and their counsel acted upon the belief that the plaintiff was liable to the defendant, that there was a debt enforceable against the plaintiff, and that unless he paid, a valid mechanic's lien would be filed against the plaintiff's property. However, soon after the payments were delivered, plaintiff's counsel became aware that the defendant's claim was invalid and so notified defendant's counsel. A stop payment was made on one of the checks, however the other check in the amount of $800 had already been cashed.

The Court in <u>Ficken</u> determined that the defendant had no right to a subcontractor's lien and

the issue became whether the defendant could keep the $800 mistakenly paid to it or was obliged to return it to the plaintiff. Citing Stedwell v. Anderson, 21 Conn. 139, 144, the Court stated that "a party, who had paid money under a mistake, as to his rights and duty, which he was under no legal or moral obligation to pay, and which the party receiving it, had no right, in good conscience, to retain, might recover it back, in an action at law, whether the mistake was one of fact or of law." The Court reasoned that the defendant had not given any consideration for the money it received and even if plaintiff had been negligent it did not cause the defendant any harm. Ficken, 23 Conn. Supp. at 382. The Court held that the payment by the plaintiff to the defendant was made under a mistake, and it would be unconscionable for the defendant to retain the money therefore judgment was entered for the plaintiff to recover the $800.

Similarly, had TIG reimbursed Travelers for any payments related to the costs for defending Weitz, which it was not obligated to make, TIG would be entitled to seek repayment from Travelers. TIG had offered to contribute to the defense costs based on a preliminary view, without any consideration from Travelers. When TIG thereafter concluded that Weitz was not an additional insured, TIG informed Travelers immediately. Travelers was not harmed in any way and had TIG made any payments it would be unconscionable for Travelers to keep those payments. Given TIG's entitlement to recover any such payments, Travelers' attempt to pursue a recovery under the purported "agreement" is unwarranted.

Indeed, given the facts here, the equities favor TIG. It is undisputed that Travelers had an obligation to defend Weitz. On the contrary, Travelers is *not* asserting that TIG had an obligation under its policy to defend Weitz.[9] It is only because of TIG's mistaken preliminary coverage

---

[9] See Complaint, ¶¶ 32, 34, 41 and 46.

position that Travelers is claiming an "entitlement" to have its own undisputed obligation reduced by 50%, at the expense of TIG.

The caselaw does not countenance such a windfall for Travelers. For instance, an insurer that has provided a defense to an insured may seek reimbursement of the defense costs expended on uncovered claims. See, Security Ins. Co. of Hartford v. Lumbermens Mut. Cas. Co., 264 Conn. 688, 826 A.2d 107 (2003). Similarly, an insurer can assert a claim of unjust enrichment against another insurer because unjust enrichment is a "broad and flexible remedy" sounding in equity. Imperial Cas. and Indem. Co. v. ITT Hartford Ins. Group Foundation, Inc., 1997 WL 53320 *3-4 (1997). ("No Connecticut case law has been found that prevents an insurance company from asserting a claim of unjust enrichment. Because unjust enrichment is a "broad and flexible remedy" sounding in equity, it may be alleged by one insurance company against another insurance company."). As a result, had TIG made any payments because of the mistaken coverage opinion, it would have been entitled to recover those payments under an unjust enrichment theory of recovery, since Travelers' undisputed obligations to Weitz would have been reduced by TIG's erroneous payments.[10]

---

[10] Further, "where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154." Restatement (Second) Contracts, § 152(1). Section 154 states:

> A party bears the risk of a mistake when: 1) (a) the risk is allocated to him by agreement of the parties, or (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limits knowledge as sufficient, or (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

Both Travelers and TIG assumed that TIG had a duty to defend Weitz. The belief that TIG had a duty to defend was a "basic assumption" of the parties. "Where both parties have a common assumption about a vital existing fact on which they based their bargain and that assumption is false, the transaction can be avoided under certain circumstances." Shoreline Communications, Inc. v. Norwich Taxi, LLC, 2001 WL 477390 (Conn. Super. 2001), quoting Calamari & Perillo, Law of Contracts, § 9.26 (4th ed.); McBurney v. Cirillo, 2003 WL 22234871

## C. The Misrepresentation Claim

### 1. Elements of Fraudulent Misrepresentation.

Count III of the Complaint is entitled "Misrepresentation," but the allegations, more specifically, allege fraudulent misrepresentation.[11] That is, Travelers alleges that TIG "repeatedly represented that it would honor its commitment to pay half the costs of the Weitz defense . . . but in fact TIG was delaying its payment of its share of the defense costs while it sought a basis to try to renege upon its agreement to pay 50% of the defense costs for Weitz." Exhibit "A," Complaint ¶ 41. Travelers further alleges that "TIG knew or should have known that its representations were false when made" and "committed the foregoing conduct with a reckless indifference to the rights of others or an intentional and wanton violation of those rights." ¶ 43.

The elements of a fraudulent misrepresentation claim are "(1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon the false representation to his injury." Citino v. Redevelopment Agency of City of Hartford, 51 Conn. App.

---

(Conn. Super. 2003).

[11] Alleged misrepresentations of intent to perform an act in the future do not sound in negligent misrepresentation. E.g., Thomas v. Talbott Recovery Systems, Inc., 982 F.Supp. 794, 799 (D. Kan. 1997)("[A] negligent misrepresentation cause of action is not appropriate here because the alleged misrepresentation involved a future event. Dr. Talbott cannot have negligently stated an intention to make a change in the treatment model in the future; he either had such intent or he didn't, and thus fraudulent misrepresentation is the only applicable theory of recovery."); Eckholt v. American Business Information. Inc., 873 F.Supp. 526, 532 (D. Kan. 1994) ("[D]efendants either intended to carry out their promises, or they did not. To recognize a claim for negligent promise, on this record, would be to endow every breach of contract with a potential tort claim for negligent promise. The Seventh Circuit recently noted as much in a similar situation: ". . . if one making representations had a present intention not to perform them, the aggrieved party's claim would properly and logically be one for intentional misrepresentation . . . not one based on negligence.' Badger Pharmaceutical Inc. v. Colgate Palmolive Co., 1 F.3d 621, 628 n.7 (7th Cir. 1993).").

262, 275, 721 A.2d 1197, 1207 (1998), quoting Parker v. Shaker Real Estate, Inc., 47 Conn. App.

489, 493, 705 A.2d 210, 213 (1998). "All of these ingredients must be found to exist; and the

absence of any one of the them is fatal to recovery." Citino, supra at 275, quoting Bradley v. Oviatt,

86 Conn. 63, 64, 84 A. 321, 322 (1912); Armin v.White, 2004 WL 615570 (Conn. Super. 2004).

"Additionally, '[t]he party asserting such a cause of action must prove the existence of the first three

of [the] elements by a standard higher than the usual fair preponderance of the evidence, which

higher standard we have described as `clear and satisfactory' or 'clear', precise and unequivocal.'"

Citino, supra at 276, quoting Weisman v. Kaspar, 233 Conn. 531, 540, 661 A.2d 530, 534 (Conn.

1995).[12]

## 2. The Undisputed Facts Demonstrate that Travelers' Misrepresentation Claim Must Fail

As discussed below, the undisputed facts demonstrate that Travelers does not, and cannot,

meet each of the four requirements to establish a misrepresentation claim under Connecticut law

(false representation, knowingly made, to induce reliance, and reliance that resulted in injury). But,

the absence of detrimental reliance alone mandates that Travelers' claim be dismissed without the

---

[12] The elements of a claim for negligent misrepresentation are similar: 1) a false representation was made to the party as a statement of fact, 2) it was made for the guidance of the party, 3) the party making the representation failed to exercise reasonable care in obtaining or communicating the information, and 4) the complaining party justifiably relied on the representation to its detriment. Ocwen Federal Bank, FSB v. Rivas, 2002 WL 442099 (Conn. Super. 2002), citing Beverly Hills Concepts v. Shatz, Ribicoff and Cocton, 247 Conn. 48, 57, 717 A.2d 724, 730 (1998). The governing principles are set forth in Restatement Second of Torts Section 552:

"One who, in the course of his business, profession or employment ... supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

necessity of even analyzing the other factors. Parker, supra, "All of these ingredients must be found to exist and the absence of any one of them is fatal to recovery."

As noted above, an element of a cause of action for fraudulent misrepresentation is that "the other party did act upon the false representation to his injury." Citino, 51 Conn. App. at 275. In the third count of the Complaint, Travelers claims that "[i]n reliance upon TIG's representations, Travelers advanced funds for the defense of Weitz, provided detailed records on the costs and activities of Weitz' defense counsel to TIG, permitted TIG to obtain copies of confidential attorney-client and work product communications between Weitz, Travelers and Milano & Wanat, and coordinated its defense of Weitz with TIG." Complaint ¶ 42.[13] Travelers further alleges that "[a]s a direct and proximate result of TIG's misrepresentations, Travelers has suffered monetary damages." Id. ¶ 44.

Despite these general allegations, the undisputed documentary evidence is to the contrary. There is no evidence that Travelers advanced funds for the defense of Weitz in reliance upon TIG's representations. Travelers advanced funds for the defense of Weitz because it had a duty to defend Weitz in the Shoreline Action under its policies and had committed to do so *before* TIG ever offered to participate in the defense. Exhibit "A," Complaint ¶¶ 17 and 18.

Further, Travelers has offered no explanation of how it suffered monetary loss by "permitt[ing] TIG to obtain copies of confidential attorney-client and work product communications between Weitz, Travelers, and Milano & Wanat, and coordinat[ing] its defense of Weitz with TIG."

---

[13] Although not necessary for the purposes of this summary judgment motion, TIG cannot let this allegation go unanswered. Should it be necessary for this claim to proceed beyond this summary judgment motion and discovery is taken, the evidence will show that TIG repeatedly requested from Travelers and Milano & Wanat copies of invoices, audits, and litigation reports. These requests went unanswered, sometimes for years. For all practical purposes, Milano & Wanat reported almost exclusively to Travelers.

Travelers' sole monetary loss, if any, is reduced to having allegedly "provided detailed records on the costs and activities of Weitz defense counsel to TIG," i.e., copying costs. As the Connecticut Supreme Court has noted in the context of a promissory estoppel claim:

> the asserted reliance, regardless of its form, must result in a detrimental change in the plaintiff's position. 3A. Corbin, supra, at § 8.9, p. 30 ("[T]he action or forbearance must amount to a detrimental change of position. The abandonment of a peppercorn or the turning over of the hand will not be enough."); see also W. v. W., 256 Conn. 657, 661, 779 A.2d 716 (Conn. 2001) (promisee "must actually change his position or do something to his injury which he otherwise would not have done"). Thus, "[t]o 'rely,' in the law of promissory estoppel, is not merely to do something in response to the inducement offered by the promise. There must be a cost to the promisee of doing it." Cosgrove v. Bartolotta, 150 F.3d 729, 733 (7th Cir. 1998).

Stewart v. Cendant Mobility Service Corp., supra, 267 Conn. at 112, 837 A.2d at 746-47.

Thus, given the absence of detrimental reliance, it is not necessary for the Court to consider the other factors, since in Travelers' claim must fail. Citino, supra, 51 Conn. App. at 275. But review of the remaining factors confirms that Travelers' misrepresentation claim must be dismissed on summary judgment grounds.

For instance, Travelers alleges that several individuals on behalf of TIG made fraudulent representations that TIG would pay 50% of the Weitz defense costs. Travelers allegations fail, however, because there is no evidence from which a fact finder could reasonably conclude that those individuals did not intend what they said.[14] "A representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention." Bassetti v. East Haven

---

[14] As demonstrated in this memorandum, TIG is entitled to dismissal of Travelers' claims based upon the law, as applied to the undisputed material facts. Travelers is also serving a cross-motion for summary judgment on its claims against TIG. TIG will respond separately to that cross-motion and TIG reserves the right to oppose that cross motion on the grounds that it has raised disputed issues of fact. See, e.g., Heublin, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993); A.W. by Ms. C. v. Marlborough Co., 25 F. Supp. 2d 27, 29 (D. Conn. 1998).

Bd. of Educ., 2001 WL 811702, *4 (Conn. Super. 2001), citing Restatement (Second) Torts § 535. "If, however, the statement is honestly made and the intention in fact exists, one who acts in justifiable reliance upon it cannot maintain an action of deceit if the maker for any reason changes his mind or refuses to carry out his expressed intention into effect." Restatement (Second) Torts § 530, Comment b.

Further, Travelers has provided no evidence that the TIG representatives knew that the representation was false or that they intended to deceive Travelers thereby.  Mellon Bank Corp. v. First Union Real Estate Equity and Mortg. Inv., 951 F.2d 1399, 1409 (3rd Cir. 1991) (affirming grant of summary judgment because plaintiff failed to set forth evidence sufficient to create a genuine issue of material fact on the intent element of misrepresentation); Zimmerman v. Cohen, 2004 WL 877853 (Conn. Super. 2004) (granting summary judgment where plaintiff offered no evidence to support misrepresentation claim); Thomas v. Talbott Recovery Systems, Inc., 982 F. Supp. 794, 800 (D. Kan. 1997) (granting summary judgment where plaintiff offered no evidence to support claim that defendant did not intend to carry out representation); Whitten v. Farmland Industries, Inc., 759 F. Supp. 1522, 1542 (D. Kan. 1991) (summary judgment appropriate where there was no evidence of declarant's knowledge of their falsity or wrongful intent).

The fact that TIG subsequently concluded that it had no obligation to participate in the defense is not sufficient to establish the requisite intent.  Milwaukee Auction Galleries, Ltd. v. Chalk, 13 F.3d 1107, 1109 (7th Cir. 1994); Mellon BankCorp., 951 F.2d at 1410 (3d Cir. 1991) ("Nonperformance does not by itself prove a lack of present intent."); Thomas Talbott, supra, 982 F. Supp. at 799 ("Where a claim of fraud is predicated on a promise or statement concerning further events, there must be more than mere nonperformance to show fraudulent intent."); Restatement (Second) Torts, § 530, comment d.

Lastly, there is no evidence that TIG sought to induce Travelers to assume an obligation that was not already imposed on Travelers by the terms of its policies. Similarly, there is no evidence that TIG benefitted from fraudulently representing that it would participate in the defense. As noted above, Travelers agreed to defend Weitz *before* TIG mistakenly agreed to participate, therefore Travelers cannot claim that TIG induced them to act based on their mistake.

**D.  The Estoppel Claim**

In the fourth count of the Complaint, Travelers asserts that because TIG participated in the defense of Weitz for over four years,[15] it is now estopped from denying that it never insured Weitz; therefore TIG is obligated to pay 50% of the defense costs.

Travelers is wrong. An insurer is <u>not</u> estopped from withdrawing a defense if it has reserved the right to withdraw and withdrawal does not cause prejudice to the insured. The general rule is that an insurer, which defends under a reservation of its right to withdraw its defense, is not estopped from later withdrawing, if the withdrawal results in no prejudice to the insured.

> Plaintiff argues that having once undertaken plaintiff's defense in the original action and then continued that defense for two years . . . Defendant should be estopped from discontinuing at this point. . . . The common law remedy of equitable estoppel may be available in situations where insurance carriers undertake the defense of policyholders without reserving their rights to disclaim coverage in advance of undertaking the defense. . . This remedy may be available even where the insurer would not be liable for uncovered conduct under normal contract law principles. . . . Estoppel thus serves to protect insureds who might otherwise be given the false impression that coverage is present. . . ., lose control of their defenses, . . . or be prejudiced by the actions of insurers who assumed, then withdrew their defense. . . . But where the insurance carrier expressly reserves its rights under the policy, the original decisions to undertake and continue the defense of a policyholder do not normally estop the insurance carrier from discontinuing

---

[15]  As noted above, although not relevant to this motion, Travelers and the defense counsel it appointed to defend Weitz largely ignored TIG, contrary to Travelers' allegations of TIG's participation in the defense.

such defense when the activity is found to lie outside the coverage.

Mongelli v. Chicago Ins. Co., 2002 WL 32096578 (E.D.N.Y.) (citations omitted).  See, Insurance

Co. of North America v. Travelers Ins. Co., 118 Ohio App. 3d 302, 322, 692 N.E.2d 1028, 1041

(1997) ("Ordinarily, an insurer is estopped to deny its duty to defend only when (a) it undertakes the

defense without advising the insured about its disclaimer of coverage, and (b) its withdrawal causes

significant prejudice to the insured who reasonably relied on the insurer's apparent willingness to

defend. See, 14 Couch Cyclopedia of Insurance Law (Anderson ed. 1965), Sec. 51.80; Transamerica

Ins. Group v. Chubb & Son, Inc., 16 Wash. App. 247, 554 P.2d 1080 (Wash. App. 1976)."); General

Acc. Ins. Co. v. 35 Jackson Ave. Corp., 258 A.D. 2d 616, 685 N.Y.S. 2d 774 (1999).  See also,

Cardinal v. Long Island Power Authority, 309 F.Supp.2d 376 (E.D.N.Y 2004) (insurer cannot be

compelled to defend if there is no legal or factual allegation in the underlying complaint for which

the for which the insured may eventually have to indemnify the insured) .

TIG's September 6, 1996 reservation of rights letter  set forth  a comprehensive

reservation of rights, including the right to withdraw from the defense. "TIG's agreement to extend

a defense to Weitz is subject to a full reservation of rights, however.  That is, TIG continues to

reserve its rights to withdraw from Weitz defense, and to refuse to indemnify Weitz for all or any

part of damages that may be assessed against Weitz in the lawsuit, should it be established that

Shoreline's claim does not fall within the TIG coverage."   Rule 56 Statement ¶ 13, Exhibit G, at 1.

"TIG also reserves its right to withdraw from Weitz' defense or to decline to indemnify Weitz

for any damages that may be assessed against Weitz, if it is determined that Weitz was not included as an insured under the TIG policy. . . ." Id. p. 3.

TIG's withdrawal of its offer to participate in the defense did not prejudice Weitz. Weitz was not left without a defense, nor forced to continue its own defense by hiring personal counsel. See, Insurance Co. of North America, 118 Ohio App. 3d at 331, 692 N.E.2d at 1040 (1997). Consequently, TIG is not estopped from withdrawing from the defense.

### E. The Promissory Estoppel Claims

#### 1. Promissory Estoppel Requires That Travelers Must Have Changed Its Position In Reliance On TIG's Actions, Thereby Incurring Some Injury.

The Connecticut Supreme Court recently reiterated the elements of estoppel:

> We [have] recognized that estoppel always requires proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief, and the other party must change its position in reliance on those facts, thereby incurring some injury.

Union Carbide Corp. v. City of Danbury, 257 Conn. 865, 873, 778 A.2d 204, 209 (2001). Thus, Travelers cannot recover under general estoppel principles unless Travelers can show that it changed its position in reliance upon something TIG did, which is simply not the case.

Travelers claims that "in reliance on TIG's promise, Travelers altered its position in the Weitz defense (1) by providing TIG with privileged and confidential information, permitting TIG to assist in guiding the defense, and (2) by not seeking any reimbursement or contribution from Weitz for the cost of the defense of Weitz." Complaint, ¶ 51.

In asserting that TIG obtained confidential privileged information from Weitz, Travelers and (Milano & Wanat) and "participated in the defense of Weitz for more than four years" (between

September 6, 1996[16] and April 6, 2001[17] ), Travelers has not explained how it suffered damages as a result of those limited commitments. Further, Travelers' assertion that in reliance upon TIG's promise to pay 50% of the Weitz defense costs, it altered its position "by not seeking any reimbursement or contribution from Weitz" Complaint, ¶ 51, is contradicted by the facts. Even after TIG disclaimed responsibility to participate in the defense, Travelers continued to pay 100% of Weitz' defense costs. As of June 6, 2001, Milano & Wanat invoices totaled $491,728.32; yet, even after TIG disclaimed, Travelers continued to pay 100% of the Milano & Wanat invoices, eventually totaling $897,256.

And, even if Travelers had refrained from seeking reimbursement from Weitz because of TIG's representations, that does not constitute injury. Assuming that Travelers has a valid contribution claim against Weitz, it could have made it in June of 2001. TIG did nothing to cause Travelers to lose that right. Therefore, even if Travelers did initially refrain from seeking contribution from Weitz because of TIG's representations, that did not result in monetary damage.

### 4. Travelers' Remedy Based On Promissory Estoppel.

Generally, if Travelers were able to prove that TIG's promise induced it to take action or forbear from taking action, then TIG's promise "is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires." Restatement (Second) Contracts § 90(1). As previously discussed, Travelers' only act of reliance was to copy Milano & Wanat litigation reports and invoices and forward them to TIG. As one

---

[16] September 6, 1996 is the date that TIG, through Morrison, Mahoney & Miller, communicated to Weitz that it would participate in the defense of the Shoreline Action.

[17] April 6, 2001 is the date that TIG's coverage counsel, Charleston, Revich & Williams LLP, communicated to Weitz' defense counsel, Milano & Wanat, and to Travelers that TIG has no obligation to participate in defending or indemnifying Weitz.

commentator has noted, and which has been cited with approval by the Connecticut Supreme Court, on a promissory estoppel claim, "[T]he action or forbearance must amount to a detrimental change of position.  The abandonment of a peppercorn or the turning over a land will not be enough." 3A Corbin, Contracts § 8.9 p. 30, cited in Stewart v. Cendant Mobility Services, Corp., supra, 267 Conn. at 112, 237 A.2d at 746-47.  Thus, Travelers' alleged detrimental reliance, is simply not enough to sustain a promissory estoppel claim under Connecticut law.

## V.  **CONCLUSION**

For all of the foregoing reasons set forth herein, TIG Insurance Company respectfully moves that the Court grant its motion for summary judgment as to all five counts of Travelers' Complaint.

Respectfully submitted,

FOR THE DEFENDANT
TIG INSURANCE COMPANY,

By _____
Louis G. Corsi (ct 26157)
LANDMAN CORSI BALLAINE & FORD P.C.
120 Broadway - 27th Floor
New York, New York  10271-0079
Tel (212) 238-4800
Fax (212) 238-4848
E-Mail: lcorsi@LCBF.com

## CERTIFICATION

I hereby certify that on November 9, 2004 a copy of the foregoing **TIG INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was sent by overnight messenger, for delivery on November 10, 2004  to:

> Peter M. Nolin
> Sandak Friedman Hennessey & Greco, LLP
> 970 Summer Street
> Stamford, CT 06905
>
> Jeffrey Tinley
> Tinley Nastri Renehan & Dost, LLP
> 601 North Main Street, 2nd Floor
> Waterbury, Connecticut 06702

_____
Louis G. Corsi