# EXHIBIT E

Not Reported in A.
2001 WL 811702 (Conn.Super.), 30 Conn. L. Rptr. 69
(Cite as: 2001 WL 811702 (Conn.Super.))

Page 1

c

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

John A. BASSETTI et al.,
v.
EAST HAVEN BOARD OF EDUCATION et al.

No. 410872.

June 19, 2001.

CONSOLIDATED MEMORANDUM OF DECISION RE DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT (Motion No. 119 in File No. 410872; Motion No. 118 in File No. 410873 & Motion No. 117 in File No. 410874)

BLUE.

I. *INTRODUCTION*

*1 The consolidated motions now before the court present important questions involving the law of tortious misrepresentation. To simplify the matter considerably, the problem is this. A municipal board of education offers an early retirement plan to teachers in its employ. The board's agents tell the teachers that the plan is "a one shot deal." The teachers accept the offer and retire. A year later, the board changes its mind and offers a new, nearly identical early retirement plan-- unavailable to teachers who have already retired. Under these circumstances, has the tort of misrepresentation occurred? For the reasons that follow, in light of the evidence submitted, a claim can be made for the tort of negligent misrepresentation but not the tort of innocent misrepresentation.

II. *THE FACTUAL SUBMISSIONS*

This matter comes before the court on consolidated motions for summary judgment filed by the defendants. The parties have filed numerous affidavits and other documents in connection with these motions. These submissions cover a great deal of common ground. There is no dispute that the defendant East Haven Board of Education (the "Board") offered two nearly identical early retirement plans to its teachers approximately one year apart. There is also no dispute that, at the time the Board offered the first plan, it had no existing (or at least provable) intention to offer the second. (There is no claim of actual fraud.) The principal factual disputes between the parties involve the precise representations given to the teachers at the general time in which the first plan was offered and the state of the Board's knowledge at the time of those representations. For purposes of resolving the pending motions, the court must construe the submissions concerning this dispute in the light most favorable to the parties opposing the motion (i.e. the plaintiffs). *United States v. Diebold,* 369 U.S. 654, 655 (1962). The legal question that must be resolved is whether, with the facts in dispute construed in the light most favorable to them, the plaintiffs have made a showing sufficient to establish the existence of the elements essential to their case, on which they will bear the burden of proof at trial. If the necessary elements are not established, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Conn. Gen.Stat. § 10-183jj(a) provides in relevant part that, "A local ... board of education may establish a retirement incentive plan for teachers ... in its employ who are members of the teachers' retirement system. The plan shall provide for purchase by the board of education of additional credited service for such members who choose to participate in the plan and for payment by the board of education of the entire cost of such additional credited service ... Any such plan shall have a two month application period."

*2 On January 23, 1996, the Board adopted

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



Not Reported in A.
(Cite as: 2001 WL 811702, *2 (Conn.Super.))

Page 2

an early retirement incentive plan for teachers in its employ. The details of this plan (which, as it turned out, was soon to be abandoned) are not in evidence, but it is referred to in later minutes of the Board as the "Ohio Plan." At about this time (the exact date is unclear), the then-Superintendent of Schools Martin L. DeFelice and Raymond L. Moore, the Board's Director of Fiscal Management, held a number of informational meetings with teachers. A dispute of fact exists as to what DeFelice and Moore said at these meetings. The evidence most favorable to the plaintiffs is that DeFelice and Moore told them, "It's now or never. It's a one-shot deal."

On March 12, 1996, the Board rescinded its earlier adoption of the Ohio Plan and adopted a new early retirement incentive plan (the "1996 Plan"). The 1996 Plan was offered to all teachers in the Board's employ who were members of the Teacher's Retirement System. It called for the Board to purchase three years of additional credited service for each eligible participant. The enrollment period was to commence March 13, 1996 and end May 15, 1997. Teachers were eligible to participate if they were over fifty and would qualify for immediate retirement with the added benefits.

The plaintiffs are teachers who chose to become participants in the 1996 Plan. They allege that they chose to participate in the 1996 Plan because they concluded from DeFelice's earlier remarks that this would be "a one-shot deal." While there is plainly much grist for the fact-finder's mill here--the evidence arguably suggests that the remarks attributed to DeFelice actually concerned the Ohio Plan rather than the 1996 Plan--the evidence at this stage must be considered in the light most favorable to the plaintiffs. Although it is something of a stretch, the court will assume that the plaintiffs were entitled to consider DeFelice's remarks as covering any plan the Board might adopt in the early months of 1996.

At some point during the following year, DeFelice left his post, and the Board hired a new Superintendent of Schools, Dr. Denise Hexom.

On March 25, 1997, the Board adopted yet another early retirement incentive plan (the "1997 Plan"). The terms of this plan were virtually identical to those of the 1996 Plan. The 1997 Plan, of course, only applied to teachers still in the Board's employ, and the plaintiffs, having retired the previous year, did not qualify. If they had not been retired, they would have been eligible for the 1997 Plan. Because they chose to retire in 1996 they missed a year of salary and benefits.

The Board adopting the 1997 Plan consisted of the same members as the Board adopting the 1996 Plan except for one member who was present at the time of the 1996 vote and absent at the time of the 1997 vote. Both votes were unanimous.

III. *THE PLEADINGS*

The plaintiffs, all of whom are teachers who retired under the 1996 Plan, commenced these actions by service of process on March 10, 1998. Each action names three different teachers as plaintiffs. The defendants are the Board, Moore, Hexom, and DeFelice.

*3 The plaintiffs' Second Revised Complaint in each file consists of twelve counts--four for each plaintiff. The causes of action asserted by each plaintiff are: (1) innocent misrepresentation; (2) negligent misrepresentation; (3) violation of Conn. Gen.Stat. § 10-183jj; and (4) violation of Conn. Gen.Stat. §§ 31-72 and 31-76k.

On October 19, 2000, the defendants filed the motions for summary judgment now before the court. The motions seek judgment on all counts. The motions were heard on May 7, 2001. The matter was submitted, following post-hearing briefs, on June 18, 2001.

The causes of action asserted by the plaintiffs must now be reviewed in light of the submitted evidence.

IV. *DISCUSSION*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



A. *Innocent Misrepresentation*

Connecticut has long recognized the tort of innocent misrepresentation. The doctrinal roots of the tort lie in the law of warranty for the sale of goods. *Bartholomew v. Bushnell,* 20 Conn. 271 (1850), is a classic case. Bushnell sold Bartholomew a pair of horses, allegedly stating that they were sound. The horses were, in fact, blind in both eyes. A verdict for the plaintiff was reversed because of an erroneous jury charge, but in reaching its decision, the Court reasoned that if Bushnell had stated that the horses were sound, the purchaser could "*rely upon the contract* ... whether the vendor did, or did not, know of the unsoundness of the horse." *Id.* at 275. (Emphasis in original.) Over a century later, the Court relied on *Bartholomew* in holding that Connecticut recognizes the tort of "strict liability for innocent misrepresentation." *Johnson v. Healy,* 176 Conn. 97, 101, 405 A .2d 54 (1978). The tort, *Johnson* explains, "is based on principles of warranty, and ... is not confined to contracts for the sale of goods." *Id.* at 102.

More recently, in *Gibson v. Capano,* 241 Conn. 725, 730, 699 A .2d 68 (1997), which like *Johnson* involved the sale of a house, the Court adopted § 552C of the Second Restatement of Torts. That provision states that:
> One who in a sale, rental or exchange transaction with another, makes a misrepresentation of a material fact for the purpose of inducing the other to act or to refrain from acting in reliance upon it, is subject to liability to the other for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation, even though it is not made fraudulently or negligently.

3 RESTATEMENT (SECOND) OF TORTS § 552C(1) (1977). There are serious problems in the application of § 552C to the facts of the present case.

To begin with, it is not at all clear that this is "a sale, rental or exchange transaction" to which § 552C is meant to apply. The doctrinal roots of § 552C, as mentioned, lie in transactions like the sale of horses in *Bartholomew* and the sale of houses in *Johnson*

and *Gibson*. Those sales occurred in the world of commerce. The transactions at issue here did not. The plaintiffs point out that an economic transaction is nevertheless involved because, pursuant to Conn. Gen.Stat. § 10-183jj(a), an early retirement incentive plan must "provide for *purchase* by the board of education of additional credited service." (Emphasis added.) The problems with this analysis are twofold. First, this is not a commercial "purchase" to which the theory of enterprise liability--a theory that underpins much of modern tort law--sensibly applies. There is no commercial market for credited service, as there is for horses and houses, and the costs of imposing this kind of liability cannot be so easily borne by the marketplace.

*4 Second, the plaintiffs, by the terms of their economic analysis, are attempting to impose liability on a *purchaser* rather than on a seller. The typical § 552C scenario involves a seller who misrepresents an item being sold to a purchaser. While it is possible for a purchaser to make an actionable misrepresentation, such representations usually involve the purchaser's willingness or ability to pay. I cannot, knowing that I am a pauper, take a diamond ring on loan from Tiffany's saying that I will pay for it next week. Such a representation would be a case of actionable fraud. Imposition of liability for innocent misrepresentation in these circumstances is much more problematic. Suppose I take the same diamond ring on loan from Tiffany's, saying with perfect innocence that I will pay for it next week, at a time when the stock market is flush and my consumer confidence is high, only to have the market collapse the next day leaving me penniless. Tiffany's can doubtless sue me for breach of contract, but imposition of tort liability for innocent misrepresentation would be a tremendous stretch in this scenario.

The asserted misrepresentation here involves neither the item being sold (here, the teachers' credited service) nor the purchaser's ability to pay. There is no suggestion either that the teachers were misled about the item being purchased or that the purchaser was unable to pay for it. The asserted

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



misrepresentation was instead that the statement that the Board would not repeat this offer in the future. Although the representation proved to be inaccurate, the imposition of tort liability for this type of conduct (innocent conduct for purposes of this claim) would take us far from the core of the tort. Every judge who has ever conducted a pretrial settlement conference (not to mention everyone who has ever purchased an automobile) knows that the notion of a "final offer" is, in practice, a somewhat plastic idea. Actors in the marketplace make assertedly final offers with some frequency. Although intentional fraud and negligent conduct in this area may be actionable in appropriate circumstances, only innocent conduct is asserted with respect to this claim. Application of the doctrine of innocent misrepresentation in this context would be problematic in the extreme.

The key to this problem is the distinction between representations as to existing facts and representations as to future facts. "[T]he general rule is that a misrepresentation must relate to an existing or past fact." *Paiva v. Vanech Heights Construction Co.*, 159 Conn. 512, 515, 271 A.2d 69 (1970). On the other hand, "a promise to do an act in the future, when coupled with a present intent not to fulfil the promise, is a false representation." *Id.* In the language of the Second Restatement, "A representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention." 3 RESTATEMENT (SECOND) OF TORTS, *supra*, § 530(1). The Second Restatement makes it clear that the crucial intention is that of the speaker at the time the words in question are spoken. *Id.* cmt. d.

*5 A fraudulent misrepresentation of present intention is plainly actionable. No such intentional misrepresentation is alleged here. *D'Ulisse-Cupo v. Board of Directors*, 202 Conn. 206, 520 A.2d 217 (1987), holds that the tort of negligent misrepresentation can exist in such a context. That case will be discussed in connection with the plaintiffs' allegations of negligent misrepresentation, *infra*. But the question of *innocent* misrepresentation is different. The tort of innocent misrepresentation is grounded in the theory "that the defendant is chargeable with deceit when he makes an unqualified assertion of a fact that is susceptible of knowledge, and the assertion turns out to be untrue." Alfred Hill, *Damages for Innocent Misrepresentation*, 73 COLUM.L.REV. 679, 690 (1973). Assertions concerning intention, unlike assertions concerning the characteristics of an item sold on the marketplace, are not readily "susceptible of knowledge." The imposition of what is, essentially, strict liability for inaccurate prognostication would carry the tort of innocent misrepresentation too far from its doctrinal roots. Even when the evidence submitted is considered in the light most favorable to the plaintiff, the tort is not established here.

B. *Negligent Misrepresentation.*

*D'Ulisse-Cupo v. Board of Directors, supra,* establishes that misrepresentation of future plans can amount, under appropriate circumstances, to the tort of negligent misrepresentation. *D'Ulisse-Cupo*, like the present case, involved a representation given by school authorities to a teacher. The plaintiff alleged "that the defendants made unconditional representations of their plans to rehire the plaintiff, when in fact the defendants knew or should have known that hiring plans would be contingent upon student enrollment levels for the following year." 202 Conn. at 218. (Footnote omitted.) This was held sufficient to allege the tort of negligent misrepresentation. "In pleading this tort, "[i]t is sufficient to allege that the representations contained false information." *Id.* This holding is in keeping with the very well established proposition that a negligent statement may, in certain circumstances, render the person making the statement liable for the economic loss by his negligence. *See Ultramares Corp. v. Touche,* 174 N.E. 441 (N.Y.1931) (Cardozo, J.).

Although the question is a close one, the plaintiffs have asserted sufficient evidence to permit their claim of negligent misrepresentation to give rise to a genuine issue of material fact on this issue. The factual

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



question is what the Board's spokepersons knew or should have known at the time they told the plaintiffs that the 1996 Plan was "a one shot deal." The plaintiffs have submitted deposition testimony of defendant Moore that, at the time the representations in question were given, "it was being discussed at the Board table to be offered again." This statement, if true, may simply refer to the 1996 Plan that quickly followed the Ohio Plan. But, giving the plaintiffs the benefit of every inference, a factfinder could find that the plan being discussed was the 1997 Plan and conclude that a reasonable person in the speaker's position should have known that the "one shot deal" representations in question were false.

*6 The defendants argue that predictions about future governmental conduct must always be taken with a grain of salt because legislative bodies necessarily reserve to themselves the implicit power to change their minds in the future. *See Fennell v. City of Hartford,* 238 Conn. 809, 816, 681 A.2d 934 (1996); *Pineman v. Oechslin,* 195 Conn. 405, 414, 488 A.2d 803 (1985). The Board unquestionably retained such a power here. The Board is not, however, free to misrepresent its present intention. When it makes representations concerning present intentions, in the context presented here, it must do so in the exercise of due care. A genuine issue of material fact exists on whether the Board and its spokespersons did so here.

There is, however, no evidence of negligent misrepresentation as to defendant Hexom. The evidence submitted establishes that she did not enter the picture (in her capacity as the new Superintendent of Schools) until well after the asserted misrepresentations had been made. There is no evidence establishing her liability on this cause of action. Summary judgment must consequently enter in favor of defendant Hexom on the negligent misrepresentation counts.

C. Conn. Gen.Stat. § 10-183jj

The 1996 plan provided that a teacher applying for participation in the Plan "waives any and all other benefits, except medical insurance benefits, to which the [teacher] may otherwise be entitled upon retirement or separation from service pursuant to any collective bargaining agreement or other employment contract." The plaintiffs allege that this provision violated the requirement of Conn. Gen.Stat. § 10-183jj(a) that an early retirement incentive plan "shall provide ... for payment by the board of education of the entire cost of such additional service." The viability of this claim is a question of law to be decided by the court.

The threshold question that must be addressed is whether § 10-183jj confers a private right of action on the plaintiffs. The statute does not expressly provide a private remedy. The issue is whether it provides such a remedy by implication. In Connecticut, this issue is resolved by application of a three-factor test. "First, is the plaintiff one of the class for whose ... benefit the statute was enacted ... ? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?" *Napoletano v. CIGNA Healthcare of Connecticut, Inc.,* 238 Conn. 216, 249, 680 A.2d 127 (1996), *cert. denied,* 520 U.S. 1103 (1997) (quoting *Cort v. Ash,* 422 U.S. 66, 78 (1975)). These factors will be considered in turn.

First, the plaintiffs (all of them retired teachers) are not members of the class for whose benefit the statute was enacted. The legislative history of § 10-183jj, first enacted in 1989; Conn. Acts 89-233, § 1; makes it clear that the statute was enacted for the benefit of school districts. *See* S. Proc., 1989 Sess. pp. 2167-68, remarks of Senator Sullivan ("The purpose of this is to make this option available to all school districts which choose to participate, and I underline the word choose to participate in a voluntary program ... [T]he additional advantage of this bill is the potential for significant cost savings to the school districts through early retirement"); H.R. Proc., 1989 Sess., pp. 7849, remarks of

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



Representative Ward ("It is enabling legislation. It will leave it up to the local school board as to what plan they do or do not want to adopt, but I think it's important to give them that flexibility"). No teacher has a right to participate in an early retirement incentive program if the school district employing that teacher chooses not to offer such a program. The voluntary nature of the program (as to school districts) emphasizes that the school districts are the intended beneficiaries of the statute.

*7 Second, the legislative history implies a legislative intent to deny a private right of action. The legislative remarks quoted above establish that the program was designed to give the school districts maximum flexibility. The legislature plainly did not intend the creation of a cause of action that would entangle school districts in litigation.

Third, the underlying purpose of the legislative scheme does not imply such a remedy. The underlying purpose of the legislative scheme is to offer school districts a voluntary, flexible tool to reduce their costs. This purpose implies no private remedy on the part of the teachers.

Application of the three-factor *Napoletano* test thus indicates that § 10-183jj does not establish a private right of action. "Statutory intent on this ... point is determinative ... Without it, a cause of action does not exist and courts may not create one." *Alexander v. Sandoval,* 121 S.Ct. 1511, 1519-20 (2001).

Even if a private right of action existed under § 10-183jj, the plaintiffs' statutory claim advanced here could not be sustained. The problem is not with the merits of the plaintiffs' statutory claim but with its procedural posture.

On the merits, the defendants rely on an informal opinion of the State Teachers' Retirement Board that, under § 10-183jj, a "co-payment" could not be required but "[l]ocal boards of education ... are free to provide new benefits or modify existing benefits through appropriate collective bargaining channels ."

Letter from William J. Sudol, Administrator, State Teachers' Retirement Board to Attorney Natale V. DiNatale (August 25, 1999) (filed with the court by the defendants). In the opinion of the State Teachers' Retirement Board, waiver of other benefits by a teacher applying for early retirement does not conflict with the statute. *Id.* This opinion cannot be reconciled with the governing statutory language.

Sec. 10-183jj(a) requires that an early retirement incentive plan "shall provide ... for payment by the board of education of the entire cost of such additional service." (Emphasis added.) In economic terms, the "cost" of an item is the amount that the person obtaining that item forgoes or gives up to obtain it. *Riverside Research Institute v. United States,* 860 F.2d 420, 422 (Fed.Cir.1988). There is no economic difference between a requirement that a teacher make a co-payment of $5,000 to obtain early retirement and a requirement that the same teacher waive her rights to already-accrued benefits worth $5,000 to obtain the same retirement. The economic sacrifice in each case is the same. Neither requirement can be reconciled with the clear language of the controlling statute.

The problem facing the court here is the procedural posture of the case. This is not an injunctive action brought to stay or alter the terms of the 1996 Plan during that plan's application period. Nor is it an action brought to rescind an assertedly illegal contract. It is, instead, an action brought to recover the monetary value of the benefits waived by the plaintiffs when they elected to receive the benefits of the plan. The plaintiffs thus seek to retain all of the benefits they bargained to receive while recovering part of the consideration they paid to receive those benefits. This asks the court to rewrite the bargain in a way designed to benefit only one side. This would not be an equitable decision. The required waiver was simply one of the terms of the offer of the 1996 Plan. The plaintiffs were free to either accept that offer or refuse it. They accepted it. Having accepted that offer and having additionally accepted

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



the benefits of the 1996 Plan, the plaintiffs cannot now go back to the drawing board and rewrite the terms of the offer. Their statutory cause of action cannot succeed.

D. Conn. Gen.Stat. §§ 31-72 & 31-76k

*8 The plaintiffs' final cause of action alleges a violation of Conn. Gen.Stat. §§ 31-72 & 31-76k, involving the payment of fringe benefits. They allege that the requirement of the 1996 Plan that teachers applying for the plan waive other benefits violated these provisions. At argument, the plaintiffs agreed that if they could not succeed in their statutory claims under Conn. Gen.Stat. § 10-183jj, they could not succeed in their claims predicated on § 31-72 & 31-76k. For reasons already explained, the plaintiffs' claims under § 10-183jj cannot succeed. For that reason, the claims raised under § 31-72 and 31-76k are concededly doomed to failure.

V. *CONCLUSION.*

For the reasons stated above, the motions for summary judgment are granted as to the defendant Hexom on all counts.

The motions are granted as to the remaining defendants on all counts except those counts alleging the tort of negligent misrepresentation.

In each case, the motion for summary judgment is thus granted with respect to all defendants as to the First, Third, Fourth, Fifth, Seventh, Eighth, Ninth, Eleventh, and Twelfth Counts of the Second Revised Complaint. The motion is granted with respect to defendant Hexom only, and denied with respect to all other defendants, as to the Second, Sixth, and Tenth Counts of the Second Revised Complaint.

2001 WL 811702 (Conn.Super.), 30 Conn. L. Rptr. 69

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

