# EXHIBIT A

COPY

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TRAVELERS CASUALTY & SURETY )
COMPANY OF AMERICA )
       Plaintiff )
)
v. )     302CV408 (LG
)
TIG INSURANCE COMPANY )
)
)
)
       Defendant. )     MARCH 4, 2002

## COMPLAINT

### I. PARTIES

1.    The Plaintiff, Travelers Casualty & Surety Company of America ("Travelers"), is incorporated under the laws of Connecticut with its principal place of business at One Tower Square in Hartford, Connecticut.

2.    The Defendant TIG Insurance Company f/k/a Transamerica Insurance Group ("TIG") is incorporated under the laws of California with its principal place of business located in Urban, Texas.

3.    Travelers is in the business of providing insurance, including liability insurance, to businesses and individuals.

4.    TIG is in the business of providing insurance, including liability insurance, to businesses and individuals, including businesses and individuals located in Connecticut.

### II. JURISDICTION AND VENUE

5.    Jurisdiction in this Court is founded upon diversity under 28 U.S.C. § 1332, in that (1) plaintiff is a citizen of Connecticut and the defendant is a citizen of California and Texas;

-1-

and (2) the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c), as Plaintiff is a citizen of Connecticut, the contract was made and to be performed in Connecticut, and Defendant is subject to personal jurisdiction in the District of Connecticut based on its numerous contacts with Connecticut.

## III. BACKGROUND

7.      In or around 1989, The Weitz Company ("Weitz"), of Des Moines, Iowa, entered into a general contractor construction contract, as thereafter amended, with Shoreline Care, Limited Partnership ("Shoreline"), of North Branford, Connecticut, for the construction of a continuing care retirement community in North Branford, Connecticut, to be known as Evergreen Woods.

8.      In 1990, Weitz subcontracted with Janazzo Services Corporation f/k/a Janazzo Heating and Air Conditioning, Inc. ("Janazzo"), of Milldale, Connecticut, to provide heating, ventilation and air conditioning work for Evergreen Woods.

9.      On information and belief TIG provided general liability and other insurance coverage to Janazzo for the period from September 1, 1991 through September 1, 1992, under Transamerica Insurance Group commercial general liability policy No. 30790261 ( the "TIG Policy")

10.      As part of its contract, Janazzo agreed to indemnify Weitz from certain claims and legal actions arising out of the work to be performed under the contract. Janazzo also agreed that Weitz would be named as an additional insured on Janazzo's policies for general liability and that such coverage would be primary to any insurance carried by Weitz.

11.      On information and belief, in 1991 and 1992, Mathog & Monielo, the insurance agent which obtained coverage for Janazzo, provided certificates of insurance to Weitz which confirmed that Weitz was an additional insured on the TIG Policy.

-2-

12.     From September 1, 1992 through September 1, 1995, Aetna Casualty & Surety Company of America ("Aetna") provided general liability and other insurance coverage to Janazzo under policy numbers 007 ACM 22549565, 23584577, and 24387637 ( the "Aetna Policies").

13.     Weitz is named as an additional insured on the Aetna Policies.

14.     Travelers is the successor in interest to all of Aetna's rights and obligations under the Aetna Policies.

15.     In 1994, Shoreline brought an action in the Connecticut Superior Court for the Judicial District of New Haven, Docket Number CV-94-0155982-s against Jansen & Rogan Consulting Engineers (the "Shoreline Action").

16.     Thereafter, Shoreline cited Weitz into the Shoreline Action as an additional defendant in an amended complaint dated May 9, 1996.

17.     In August 1996, Travelers agreed to provide Weitz with a defense of Shoreline's claims subject to a full reservation of rights, and Travelers retained the firm of Milano and Wanat to defend Weitz in the Shoreline Action.

18.     By letter dated September 6, 1996, TIG, through its then counsel, Mark P. Bailey of Morrison, Mahoney & Miller, informed Weitz that it would provide Weitz with a defense in the Shoreline Action subject to TIG's full reservation of rights (the "Morrison Letter" a copy of which is attached hereto as Exhibit A).

19.     In the Morrison Letter, TIG asserted:

> "With respect (sic) the Shoreline lawsuit which TIG has agreed to defend subject to a reservation of rights, one or more of the other carriers which insured Weitz during the relevant periods may also agree to defend Weitz. If so, TIG anticipates working with those insurers to coordinate Weitz's defense. Such coordination may include an agreement to share the costs of Weitz's defense in some equitable manner and to select counsel to defend Weitz in the lawsuit."

20.     On or about October 30, 1996, TIG stated to Travelers that they agreed to split the

-3-

cost of defending Weitz in the Shoreline Action on a 50/50 basis.

21.     From October 1996 through 1999, TIG repeatedly affirmed that it would honor its commitment to pay fifty percent (50%) of the legal fees associated with the defense but would limit its indemnification to the attorneys' actual, documented, time spent working on the Weitz defense.  TIG never advised Travelers that it was reserving any right to rescind or retroactively withdraw from its agreement to pay 50% of the costs of defending Weitz.

22.     In connection with such affirmations, TIG repeatedly sought detailed records on the cost and nature of the Weitz defense so that TIG could evaluate the amount of time and the reasonableness of defense fees incurred on behalf of Weitz.

23.     From October 1996 through 1999, TIG repeatedly stated in correspondence to Travelers, Weitz, and Weitz's defense counsel, that Weitz was an additional insured on the TIG Policy.

24.     From October 1996 to April 2001, Travelers, in response to TIG's requests, sent TIG detailed time records evidencing the hours worked and services provided by Milano and Wanat in defense of Weitz and records of other defense costs.

25.     From October 1996 to April 2001, TIG acted as a defending insurer working in coordination with Travelers, and in such capacity, TIG sought and received detailed confidential and privileged communications from Travelers, Weitz, and Weitz's defense counsel and participated in the defense of Weitz in the Shoreline Action.

26.     As of April 6, 2001, Travelers had incurred and has subsequently paid defense costs of $491,728.33, and despite repeated demands, TIG has failed and refused to pay Travelers its 50% share of the $491,728.33.

27.     By letter dated April 6, 2001, addressed to Milano and Wanat and copied to Travelers, TIG purported to rescind its agreement to split the costs of the defense of Weitz in the Shoreline Action and purported to withdraw its defense of Weitz.  On information and belief TIG

has never directly communicated the withdrawal of its defense to Weitz. TIG's purported withdrawal was based on its claim that it had discovered that it never insured Weitz, but as of such date the Court had made no determination that the "indemnification provisions contained in the contract between Weitz and Janazzo Heating and Air Conditioning, Inc. do not require Janazzo to indemnify Weitz in connection with the Shoreline lawsuit."

28.    Because of the nature of the claims and defenses, the Shoreline Action was transferred to the "Complex Docket" of the Connecticut Superior Court and since September 1, 1996, more than 220 pleadings, motions and filings have been docketed with the clerk.

29.    Since April 6, 2001, Travelers has continued to provide a defense to Weitz and total defense costs as of February 4, 2002 were approximately $650,000.   Milano and Wanat projects that total defense costs through the completion of the Shoreline Action will exceed $750,000, and the trial of the Shoreline Action, which has now been completed except for post trial motions and briefing, has involved 15 trial days and testimony from 15 witnesses including expert testimony from 4 expert witnesses.

30.    TIG has continued to fail and to refuse to pay Travelers for any of the legal fees accrued in the defense of Weitz.


**First Count** (Breach Of Contract)

31.    Plaintiff hereby repeats and realleges paragraph 1 through 30.

32.    TIG's statements to Travelers that it would split the defense costs for Weitz with Travelers constituted an oral agreement with Travelers to pay half of the reasonable costs of the defense of Weitz in the Shoreline action.

33.    During 1997 through 1999 TIG repeatedly told Travelers it would honor its commitment to pay its 50% share of the fees subject only to its review of the hours and reasonableness of the fees incurred, but to date TIG has never disputed the reasonableness of the

-5-

fees or costs charged by Milano and Wanat in the defense of Weitz.

34.     TIG has breached its agreement with Travelers by refusing to pay its 50% share of the defense costs incurred on behalf of Weitz.

35.     Travelers has incurred monetary damages as a result of TIG's breach of its agreement in an amount not less than $245,864.16.

**Second Count** (Breach of Contract)

36.     Plaintiff hereby repeats and realleges paragraphs 1 through 35 of the First Count.

37.     TIG has never shown any basis to withdraw from its agreement with Travelers to 50% of the costs of defending Weitz.

38.     By agreeing to pay half the costs of the defense of Weitz in October 1996, by representing repeatedly during the period from October 1996 through 1999 that TIG would contribute its committed share toward the reasonable costs of the defense of Weitz subject to a review of hourly time records for Milano and Wanat, and by then refusing in April 2001, to pay any defense costs or to continue sharing in the defense of Weitz, TIG has breached its agreement with Travelers.

39.     Travelers has suffered monetary damages as a result of TIG's breach of contract in an amount equal to 50% of the costs incurred and to be incurred by Travelers in defending Weitz, which amount is not less than $325,000.

**Third Count** (Misrepresentation)

40.     Plaintiff hereby repeats and realleges paragraphs 1 through 39 of the Second Count.

41.     After agreeing to pay half the costs of the defense of Weitz, TIG, from October 1996 through 1999, repeatedly represented that it would honor its commitment to pay half the costs of the Weitz defense upon a review of the detailed records and hourly billing information on Milano and Wanat's fees, but in fact TIG was delaying its payment of its share of the defense

-6-

costs, while it sought a basis to try to renege upon its agreement to pay 50% of the defense costs for Weitz

42.    In reliance upon TIG's representations, Travelers advanced funds for the defense of Weitz, provided detailed records on the costs and activities of Weitz's defense counsel to TIG, permitted TIG to obtain copies of confidential attorney-client and work product communications between, Weitz, Travelers and Milano and Wanat, and coordinated its defense of Weitz with TIG.

43.    TIG knew or should have known that its representations were false when made and that Travelers would rely on these false representations.  TIG committed the foregoing conduct with a reckless indifference to the rights of others or an intentional and wanton violation of those rights.

44.    As a direct and proximate result of TIG's misrepresentations, Travelers has suffered monetary damages.

**Fourth Count** (Declaration of Estoppel)

45.    Plaintiff hereby repeats and realleges paragraphs 1 through 44 of the Third Count

46.    As a result of TIG's conduct in agreeing to defend Weitz, in agreeing to share 50% of defense costs, in obtaining confidential privileged information from Weitz, Travelers and defense counsel, in participating in the defense of Weitz, for more than 4 years, TIG is estopped from now denying it insured Weitz as an additional insured under the TIG policy provided to Janazzo and was therefore obligated to defend Weitz.

47.    Because TIG is estopped from denying that it Weitz was an additional insured on the TIG policy for Janazzo and had an obligation to defend Weitz, TIG remains obligated to pay 50% of the defense costs incurred by Travelers for the defense of Weitz.

48.     Travelers has been damaged to the extent Weitz has refused to pay 50% of the costs of defending Weitz through the conclusion fo the Shoreline Action.

**Fifth Count** (Promissory Estoppel)

49.     Plaintiff hereby repeats and realleges paragraphs 1 through 48 of the Fourth Count.

50.     TIG's promise to pay 50% of the legal fees associated with the defense of Weitz was clear and unambiguous.

51.     In reliance on TIG's promise, Travelers altered its position in the Weitz defense by providing TIG with privileged and confidential information, permitting TIG to assist in guiding the defense, and by not seeking any reimbursement or contribution from Weitz for the costs of the defense of Weitz.

52.     TIG's promise to pay 50% of the legal fees associated with the Weitz defense was clear and definite such that TIG should reasonably have expected to induce Travelers to rely on its promise.

53.     As a direct result of its reliance on TIG's promise, Travelers has suffered injuries for which TIG is liable.

54.     If TIG is permitted to renege on its promise an injustice will occur.

55.     Based on this conduct, TIG is estopped from withdrawing its promise to pay 50% of the legal fees associated with the Weitz defense and from withdrawing its defense of Weitz.

-8-

WHEREFORE, plaintiff Travelers prays for:

1. Compensatory damages in an amount not less than $245,864;

2. Punitive damages under the common law;

3. A declaration that TIG is estopped from withdrawing its coverage and defense of Weitz;

4. Interest;

5. Costs; and

6. Such other and further equitable relief as the Court may allow.

THE PLAINTIFF,
TRAVELERS CASUALTY & SURETY
COMPANY OF AMERICA,

Peter M. Nolin (ct06223)
Stephanie A. McLaughlin (ct22774)
Sandak, Friedman, Hennessey &
      Greco, LLP
970 Summer Street
Stamford, CT 06905
(203) 425-4200
(203) 325-8608 facsimile