# EXHIBIT F

01/24/00  MON 10:33 FAX                                                              ☒019


# TIG INSURANCE

December 28, 1995

                         **CERTIFIED MAIL**
                         **RETURN RECEIPT REQUESTED**

Barry J. Waters, Esquire
Murtha, Cullina, Richter & Pinney
Whitney Grove Square
Two Whitney Avenue
New Haven, Connecticut 06503-0740

| Re: | Our Insured: | Janazzo Heating & Air Conditioning, Inc. |
|---|---|---|
| | Claimant: | Shoreline Care Limited Partnership, Inc. as Owner of Evergreen Woods Retirement Community |
| | Our Claim Number: | A95070418LY |
| | Policy Number: | 30790261 |

Dear Mr. Waters:

Reference is made to our letter of May 31, 1995, in response to yours of May 9, 1995, on behalf of your client, The Weitz Company, Inc. ("Weitz") in connection with its work as a contractor for Shoreline Care Limited Partnership ("Shoreline"). In our letter, we advised you that Transamerica Insurance Group ("TIG") was reserving all rights available to it, including the right to deny coverage for claims arising out of Weitz's work for Shoreline, while TIG conducted its further review and investigation.

The purpose of this letter is to inform you that, after carefully considering this matter, we have determined that the above-referenced policy issued by TIG to Janazzo affords no coverage for Weitz in connection with the claims asserted against Weitz by Shoreline. Our determination is based upon, but not limited to, the following grounds.

Shoreline has initiated an arbitration proceeding against Weitz in which Shoreline alleges that the HVAC system installed by Weitz's subcontractor, Janazzo, is underdesigned in terms of heating capacity and is under a negative air pressure. Shoreline also alleges that Janazzo should have known of the faulty HVAC design before installing the system and that it was negligent in failing to alert Shoreline of the system's apparent deficiency. Moreover, Shoreline alleges that Janazzo failed to perform its air balancing report duties faithfully, which would have uncovered the design problem. Finally, Shoreline alleges that the HVAC system did not comply with the relevant codes. Shoreline alleges that as a result of the deficiencies in the HVAC system, several residents moved out of the retirement home. In addition, Shoreline alleges that the cost to repair the HVAC system is approximately $1,000,000.

December 28, 1995
Barry J. Waters, Esquire
Murtha, Cullina, Richter & Pinney
Page Two

Our investigation reveals that Weitz was never added as an "additional insured" on the policy issued by TIG to Janazzo. Although Janazzo may have provided Weitz with a "Certificate of Insurance", such certificate "is issued as a matter of information only and confers no rights upon the certificate holder." Accordingly, Weitz does not qualify as an insured despite the fact that Janazzo may have contractually agreed to add Weitz to the policy as an additional insured.

In addition, although the policy issued by TIG to Janazzo provides coverage for liability which Janazzo assumed under a contract, coverage is not available to Janazzo for Weitz's indemnification claims brought pursuant to the contractual hold harmless agreement due to the presence of certain policy exclusions.

Exclusion "m" provides that the insurance does not apply to:

> "Property damage" to "impaired property" or property that has not been physically injured, arising out of
>
> (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

The policy defines "impaired property" as:

> tangible property, other than "your product" or "your work" that cannot be used or is less useful because:
>
> a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
> b. You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by:
>
> a. The repair, replacement, adjustment or removal of "your product" or "your work;" or
> b. Your fulfilling the terms of the contract or agreement.

The policy defines "your work", in pertinent part as:

> a. Work or operations performed by you or on your behalf; and

December 28, 1995
Barry J. Waters, Esquire
Murtha, Cullina, Richter & Pinney
Page Three

    b.    Materials, parts or equipment furnished in connection with such work or operations.

The policy defines "your product" as:

    a.    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (1)    You...

In the present case, Exclusion "m" applies to preclude coverage for Weitz's indemnification claim asserted against Janazzo because it is alleged that Janazzo's faulty work or product has caused property damage (i.e., loss of use of the Shoreline facility).

To the extent Weitz's indemnification claims against Janazzo are for loss of use of the HVAC system, including costs associated with the repair or replacement of the HVAC system, exclusions "k" and "l" of the policy issued to Janazzo would preclude coverage.

Exclusion "k" precludes coverage for " 'property damage' to 'your product' arising out of it or any part of it." Exclusion "l" precludes coverage for " 'property damage' to 'your work' arising out of it or any part of it and include in the 'products-completed operations hazard.' " (The definitions of "your product" and "your work" are set forth above). "Product-completed operations hazard" is defined as including:

    a.    ... all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work"....

    b.    "Your work" will be deemed completed at the earliest of the following times:

        (1)    When all of the work called for in your contract has been completed.

        (2)    When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

        (3)    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

December 28, 1995
Barry J. Waters, Esquire
Murtha, Cullina, Richter & Pinney
Page Four

We also wish to point out that the TIG policy issued to Janazzo only provides coverage for property damage which "occurs during the policy period," and that property damage attributable to loss of use of property which has not been physically injured is deemed to occur at the time of the "occurrence" (defined as "an accident, including continuous or repeated exposure to conditions" that caused it). The TIG policy was effective from September 1, 1991 through September 1, 1992. To the extent that no "occurrence" took place within TIG's policy period, there would be no coverage.

We also note that Coverage B of the CGL policy provides coverage for claims involving "personal injury". "Personal injury" is defined to include such things as false arrest, malicious prosecution, wrongful eviction by a landlord, and libel or the publication of material that violates a person's right of privacy. Advertising injury includes, in addition, misappropriation of business ideas and infringement of copyright. Because neither "personal injury" nor "advertising injury" are being claimed by Weitz or Shoreline in this case, Coverage B will not apply.

For all of the foregoing reasons, TIG will not defend Weitz nor pay any award or judgment which might be rendered against Weitz in this matter. Moreover, Janazzo is not entitled to coverage under the TIG policy for Weitz's indemnification claim against Janazzo. Weitz should notify its own insurer, if any, of the claims brought by Shoreline against Weitz.

The foregoing in no way constitutes, nor should it be considered, a waiver or relinquishment by TIG of any and all other defenses and rights available to it under applicable laws and statutes and under the terms and provisions of its policy, and no act or acts of TIG, its agents, or attorneys shall be so construed. Additionally, the foregoing in no way restricts or limits TIG from relying upon and asserting other facts or grounds that are, or may become, available to it.

If you disagree with TIG's coverage position as set forth in this letter, are aware of facts which you believe affect TIG's coverage position, or simply have questions or comments concerning anything contained in this letter or concerning coverage under the TIG policy, do not hesitate to contact me. Meanwhile, however, TIG must disclaim coverage for this matter.

Very truly yours,


F. Lee Yeager, Jr.
Executive Claims Representative

FLY/cat/weitz.dis