# EXHIBIT I

LAW OFFICES OF

CHARLSTON, REVICH & WILLIAMS LLP

1840 CENTURY PARK EAST

THIRD FLOOR

LOS ANGELES, CALIFORNIA 90067-2104

TELEPHONE (310) 551-7000

WRITER'S DIRECT DIAL NO.
310-551-7053

WRITER'S E-MAIL ADDRESS
JWENDELL@CRWLLP.COM

FACSIMILE
(310) 203-9321

April 6, 2001

Christopher Wanat, Esq.
**MILANO & WANAT**
471 East Main Street
Branford, CT 06405

Re:   *Shoreline Care LP v. The Weitz Company*
      TIG Claim No.:       A96080729
      TIG Insured:         **Janazzo Heating & Air Conditioning**
      Your Client:         **The Weitz Company**
      Your File No.:       1746

Dear Mr. Wanat:

As you know, our firm is coverage counsel to TIG Insurance Company ("TIG") in the above-entitled matter (the "Action"). Your client, The Weitz Company, Inc. ("Weitz"), tendered its defense in the Action to TIG as an alleged additional insured under a general liability insurance policy TIG issued to Janazzo Heating & Air Conditioning ("Janazzo") bearing policy number 30790261 and issued for the policy period of September 1, 1991, to September 1, 1992 (the "TIG Policy"). We subsequently reviewed all documents made available to us from TIG/Riverstone Resources, Travelers Property & Casualty Co. ("Travelers"), David S. Strutt, Esq., CEO of Weitz, and Dan DeMerchant, Esq., defense counsel for Janazzo. The purpose of this letter is to provide you with the result of our investigation into the propriety of payment by TIG for the defense costs incurred to defend Weitz in the Action. In summary, it is our conclusion that TIG has no obligation to participate in defending or indemnifying Weitz because TIG did not issue an additional insured endorsement named Weitz as an insured.

The position of TIG regarding insurance coverage is based upon the information available to it at this time. The discussion which follows is not exhaustive on the subject of coverage. The fact that this letter does not mention or comment upon provisions, conditions or exclusions set forth in the TIG Policy is in no way intended to be, and shall not constitute, a waiver of the applicability of any provisions, conditions, exclusions or defenses which may also exist but which are not discussed herein.

**The Action**

The Action involves Phase I of the "Evergreen Woods" project. Evergreen Woods is a retirement community / assisted living facility. Phase II of the project was previously settled

2794c.wpd

CHARLSTON, REVICH & WILLIAMS LLP

Christopher Wanat, Esq.
April 6, 2001
Page 2

through arbitration. And, while Phase II was originally at issue in this Action, we understand this aspect of the claim was eliminated by way of motion.

Weitz was the general contractor on this project, and subcontracted with TIG's insured Janazzo Heating & Air ("Janazzo"). There are two subcontracts at issue between Weitz and Janazzo in the Action. The subcontract dated June 22, 1990 (the "June Subcontract") addressed the "Community Center" and the "Nursing Home," but did not involve any residential units. The June Subcontract called for Janazzo to install the HVAC system, including without limitation, heat pumps, as well as all water, condensate and refrigerant piping and all piping insulation, and called for Janazzo to complete its work by July 2, 1991.

The second subcontract at issue between Weitz and Janazzo was dated August 22, 1990 (the "August Subcontract"). This subcontract called for Janazzo to perform all plumbing and HVAC work on Phase I - South Neighborhood Residential Buildings "A" and "B," and called for Janazzo to complete its work by June 17, 1991. The records made available to us state Phase I was completed on either July 22 or September 6 of 1991.

The Action was originally filed on November 29, 1994, and Weitz was not a named defendant at that time. Weitz became a named defendant in the Third Amended Complaint filed on or about October 11, 1996. Weitz filed a Third-Party (i.e., Cross-) Complaint against Janazzo on or about June 6, 1997. We understand Plaintiff's Fourth Amended Complaint ("Complaint") is the operative pleading in this matter (the "Operative Complaint").

The Operative Complaint solely contains two causes of action against Weitz: the seventh count for breach of contract per phase I, and the ninth count for unfair trade practices per Phase I. In the seventh count, Plaintiff claimed the failure by Weitz to recognize and report defects in the design of the HVAC system, and the failure by Weitz to notify plaintiff of a more cost-efficient HVAC system used in a similar facility, constituted breach of contract. Plaintiffs alleged it suffered the following damages as a result of the breach: "costs to repair and or remediate the conditions described above, expenses and legal fees, including but not limited to, expenses for procuring the design and construction of a properly working HVAC system, expenses incurred in taking temporary measures to correct the effects of the faulty HVAC system, increased operating costs, lost and diminished income and reputation, and administrative and overhead expenses to replace said HVAC system and recover expenses." In the ninth count, Plaintiff alleges the failure of Weitz to perform its duties under the contract constituted an unfair business practice, and claimed damage solely in the form of economic loss.

The Action focused on deficiencies in the HVAC system. More specifically, Shoreline Care LP complained of heat loss and various consequences of such heat loss, including frozen water heaters, frozen pipes, and related issues. Plaintiff's response to interrogatories state that problems with the heating system first became manifest in December 1993.

2794o.wpd

CHARLSTON, REVICH & WILLIAMS LLP

Christopher Wanat, Esq.
April 6, 2001
Page 3

Weitz tendered its defense of Phase I to TIG by letter dated March 18, 1996, as a purported "additional insured" under the coverage TIG issued to Janazzo. TIG accepted that tender on September 6, 1996, subject to a full reservation of rights, including without limitation, the right to withdraw its participation in the defense. In later correspondence, TIG again specified that coverage was not available for non-covered property damage.

Weitz also tendered its defense in the Action to Travelers. Travelers issued coverage from September 1, 1992 to September 1, 1993, and from September 1, 1994 to September 1, 1995, and issued a 2010 additional insured endorsement naming Weitz for each of those years as well. Travelers accepted the tender from Weitz and, we understand, has funded its defense in the approximate amount of $363,000.00.

### TIG Policy Provisions

#### Basic Coverage Provisions and Definitions

TIG issued to Janazzo a commercial general liability policy bearing number 30790261, which provided coverage for the period of September 1, 1991, to September 1, 1992, and which has limits of liability of $2,000,000.00. The TIG Policy provides coverage for those sums which the insured becomes legally obligated to pay as damages arising out of an "occurrence" during the policy period, and provides coverage for "Property Damage" as that term is defined therein.

The TIG Policy defines "property damage" as:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

The TIG policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The TIG policy excludes from coverage:

j. "Property damage" to:

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it." Paragraph (6) of this exclusion

CHARLSTON, REVICH & WILLIAMS LLP

Christopher Wanat, Esq.
April 6, 2001
Page 4

does not apply to "property damage" included in the "products-completed operations hazard."

Exclusion "l" by endorsement LB 14917A precludes coverage for:

"Property damage" to "your work" arising out of it or any part of it and included in the "product-completed operations hazard." [1]

The TIG Policy defines "your work" as:

a.    Work or operations performed by you or on your behalf; and
b.    Materials, parts or equipment furnished in connection with
such       work or operations.
"Your work" includes:
a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
b.    The providing of or failure to provide warnings or instructions.

Thus, the TIG Policy does not appear to cover damage to the insured's work (i.e., the HVAC system, the water heating system, the plumbing system, pipe installation and insulation) arising from that work or any part thereof, once the operations are "complete.". Janazzo was to complete its work by July 2 and July 17, 1991. The TIG policy incepted on September 1, 1991. Thus, Janazzo's work was complete before the policy's inception date, and coverage is precluded to the extent the alleged property damage to Janazzo's work arose from the work itself. Moreover, as the policy provides coverage only for completed operations, no coverage would exist to the extent any damage took place prior to the completion of Janazzo's work.

---

[1] The TIG policy states the following with respect to "products-completed operations hazard":

11.a.    "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
(1)    Products that are still in your physical possession; or
(2)    Work that has not yet been completed or abandoned.
b.    "Your work" will be deemed complete at the earliest of the following times:
(1)    When all of the work called for in your contract has been completed.
(2)    When all of the work to be done at the site has been completed if your contract calls for work at more than one site.
(3)    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

2794c.wpd

CHARLSTON, REVICH & WILLIAMS LLP

Christopher Wanat, Esq.
April 6, 2001
Page 5

Further exclusions which apply or which may apply to the Action within the policy TIG issued to Janazzo include:

k.    "Property damage" to "your product" arising out of it or any part of it.

m.    "Property damage" to "impaired property" or property that has not been physically injured, arising out of

(1)    A defect, deficiency, inadequacy, or dangerous condition in "your product" or "your work"; or
(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

The TIG policy defines "impaired property" as "tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
b.    You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by:
a.    The repair, replacement, adjustment or removal of "your product" or "your work;" or
b.    Your fulfilling the terms of the contract or agreement.

**Discussion**

**Our Investigation Has Revealed That TIG Never Insured Weitz, Which Bars Coverage For Weitz**

Our investigation over the past seven months did not yield an additional insured endorsement issued by TIG to Weitz thereunder, despite requests for a copy thereof to the principal of Weitz, to Janazzo's defense counsel, to TIG, and to you. Indeed, you acknowledged to me that you never possessed such an endorsement, as did Dan DeMerchant in his letter to us dated January 8, 2001.

2794c.wpd

CHARLSTON, REVICH & WILLIAMS LLP

Christopher Wanat, Esq.
April 6, 2001
Page 6

Moreover, our file contains a letter from TIG to Weitz's personal counsel dated December 28, 1995, denying tender in the Phase II arbitration (preceding this litigation) because TIG did not issue an AGE to Weitz. Obviously, TIG has no duty to participate in the defense of Weitz in the Action if TIG did not issue an additional insured endorsement to Weitz under the policy issued to Janazzo. After our investigation, it does not appear TIG issued such an endorsement to Weitz.

### Even If TIG Had Insured Weitz, Which It Did Not, Various Exclusions Would Eliminate or Severely Restrict Coverage

#### *Exclusion "l"*

Exclusion "l" [Endorsement LB14917 A] precludes coverage for "property damage" to the insured's work *after* the operations are completed. The Janazzo subcontracts indicate that Janazzo completed its work before the policy incepted. Accordingly, coverage is precluded to the extent plaintiff claims damage to Janazzo's work (i.e., to the HVAC system, water heating system, plumbing system, and piping).

Of note, plaintiff's answer on or about January 8, 1999, to special interrogatory No. 114, page 59, propounded by Weitz, stated the only building which contained failing or failed water heaters is Building "C." According to the June and August subcontracts provided to us, Janazzo did not work on Building "C." Thus, the TIG Policy would not cover property damage to or resulting from the failing water heater(s) in Building "C."

#### *Exclusion "m"*

Exclusion "m(2)" of the TIG policy issued to Janazzo excludes coverage for "property damage" (i.e., "physical injury" or "loss of use") to "impaired property" (i.e., other than the insured's work) resulting from the insured's breach of contract (or defective or inadequate performance), *if the "impaired property" can be restored by correction of the insured's work*. Accordingly, coverage under the TIG policy is not available to the extent plaintiff claims damage to property other than Janazzo's work which can be restored to use by the removal or replacement, etc., of Janazzo's work.

Plaintiff claims it had to replace drywall and/or wall coverings. It does not appear Plaintiff had to replace the sprinkler system or the elevator, and thus it appears such property could be restored by correction of the insured's work. Accordingly, Exclusion "m" of the TIG policy would preclude coverage for damage to the sprinkler system and elevators to the extent plaintiff can restore such items by correcting the insured's work.

2794c.wpd

CHARLSTON, REVICH & WILLIAMS LLP

> Christopher Wanat, Esq.
> April 6, 2001
> Page 7

### *Exclusion "j"*

Exclusion "j" of the TIG policy precludes coverage for damage to "that particular part of *any* property that must be restored, repaired or replaced because "your work" was incorrectly performed on it" [emphasis added]. Therefore, *if* Janazzo's work was performed on the drywall or wall coverings at issue, Exclusion "j" would preclude coverage for the cost of repairing or replacing those items.

### *The TIG Policy Does Not Cover Intentional Conduct*

The Ninth Count of the Complaint against Weitz alleges that Weitz engaged in unfair business practices. An unfair business practice is generally an intentional act. However, in order for coverage to exist under the TIG Policy, the covered loss must result from an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

In *Imperial Caves. and Indemnity Co. v. State*, 246 Conn. 313, 714 A.2d 1230 (1998) (hereafter *"Imperial Casualty"*), the Connecticut Supreme Court held that a policy with an almost identical definition of "occurrence" would "clearly]" "not provide coverage for intentional conduct," without particularized language elsewhere in the policy providing coverage for such conduct.

The TIG Policy does not contain particularized language providing coverage for intentional acts. Accordingly, the TIG policy does not appear to cover intentional acts such as unfair business practices which plaintiff alleges in the ninth cause of action in the Fourth Amended Complaint. Moreover, the TIG Policy may not cover claims for breach of contract, the only other cause of action alleged against Weitz.

### Conclusion

Weitz is not entitled to coverage as an additional insured under the TIG Policy issued to Janazzo primarily because TIG did not issue an additional insured endorsement to Weitz thereunder. Accordingly, TIG has no duty to defend Weitz in the Action, and must rescind its agreement to participate therein. As you know, Weitz has received a complete defense in the Action provided by Travelers, and suffers no prejudice by this position.

If you have any further information which you feel would impact our analysis, please forward that information to us at your earliest convenience and it will be considered.

CHARLSTON, REVICH & WILLIAMS LLP

Christopher Wanat, Esq.
April 6, 2001
Page 8

Nothing contained herein shall constitute a waiver of any claims, rights, causes of action, rights of action, defenses, positions, or remedies possessed by TIG, all of which are expressly reserved.

If you have any questions, please do not hesitate to call me.

Very truly yours,

Joanne M. Wendell for
CHARLSTON, REVICH & WILLIAMS LLP

cc:    Michael F. Sullivan (via facsimile 877-786-5584)
       Ingrid Marsh (via e-mail ingrid_marsh@trg.com)
       Jeffrey A. Charlston, Esq.
       Chad B. Wootton, Esq.

2794c.wpd