# EXHIBIT J

LAW OFFICES OF
## CHARLSTON, REVICH & WILLIAMS LLP
1840 CENTURY PARK EAST
THIRD FLOOR
LOS ANGELES, CALIFORNIA 90067-2104
TELEPHONE (310) 551-7000

WRITER'S DIRECT DIAL NO.
310-551-7053
WRITER'S E-MAIL ADDRESS
JWENDELL@CRWLLP.COM

FACSIMILE
(310) 203-9321

July 26, 2001

Mr. Michael F. Sullivan
**TRAVELERS PROP. & CAS.**
44 Bedford Street; P.O. Box 111
Middleboro, MA 02344-0111

    Re:    *Shoreline Care LP v. The Weitz Co. / Janazzo HVAC*
            Riverstone Claim No.:    TCD80000018
            Travelers Claim No.:    506 ER C8E6917
            Our File No.:    4800.006

Dear Mr. Sullivan:

        We are in receipt of your letter to Ingrid Marsh of Riverstone Resources dated June 26, 2001. Therein, you asked whether the policy issued by TIG Insurance Company ("TIG") to Janazzo Heating and Air Conditioning ("Janazzo") provides contractual liability coverage. The policy does *not* include coverage for contractual liability within any of its coverage grants. Indeed, the TIG Policy expressly excludes coverage for such liability. Although the exclusion contains exceptions, such exceptions do not expand the scope of coverage provided by the insurance policy. A claim must still come within the basic insuring provisions of the policy for coverage to exist for such a claim.

        The TIG policy issued to Janazzo provides coverage for property damage to third parties as a result of an "occurrence," subject to the other terms, conditions, and exclusions in the TIG Policy. The Policy expressly excludes coverage for "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement, except that the exclusion does not apply if the insured would have such liability in the absence of the agreement or the agreement is an "insured contract."

        The exclusion in question provides as follows:

        SECTION I - COVERAGES
        COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE
        LIABILITY

***

3070o.wpd

CHARLSTON, REVICH & WILLIAMS LLP

Mr. Michael Sullivan
July 26, 2001
Page 2

    2.    Exclusions
           This insurance does not apply to:

        ***

    b.    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

        (1)    Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

        (2)    That the insured would have in the absence of the contract or agreement.

***

**SECTION V - DEFINITIONS**

***

    6.    "Insured contract" means:

***

    f.    That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means liability that would be imposed by law in the absence of any contract or agreement.

Whether any contractual commitment to indemnify Weitz would constitute an "insured contract" requires that we review the indemnification clause within the subcontract between Weitz and Janazzo for Phase I. The indemnification clause is as follows:

3070c.wpd

CHARLSTON, REVICH & WILLIAMS LLP

Mr. Michael Sullivan
July 26, 2001
Page 3

II.  HOLD HARMLESS

To indemnify and hold harmless the Contractor against any and all losses, damages, fines, assessments, claims or suits (including expenses, costs and attorney fees) based upon or arising out of damages or injuries (including death) to persons or property caused by or allegedly caused by the Subcontractor or his employees, agents or subcontractors or furnishers of supplies in connection with the performance of this Subcontract Agreement or caused by or allegedly caused by conditions created thereby, or by the failure of the Subcontractor to comply with any terms of this Subcontract Agreement. The Subcontract further agrees to indemnify and hold harmless the Contractor for or from any damages or compensation (including expenses, costs and attorney fees) which it may be subjected to in connection with the death or injury of any and all employees of the Subcontractor. The liability assumed pursuant to this paragraph shall be covered by the Subcontractor for not less than the limits referred to herein and evidence of such insurance shall be submitted to the Contractor prior to performed any work under this Subcontract Agreement. This paragraph is not intended to require indemnification of the Contractor for losses, damages or liabilities of any kind caused by the sole negligence of the Contractor.

It appears that this constitutes an "insured contract." Accordingly, if it is demonstrated that Janazzo is contractually obligated to defend and/or indemnify Weitz, coverage could exist for such liability. However, Weitz has not established any such contractual liability in this case, nor does it appear that it could do so.

The foregoing clause precludes indemnification when Weitz is solely negligent (as between the two entities). It appears in this case, that if anyone was negligent as between Weitz and Janazzo, it was Weitz and Weitz alone. Indeed, Janazzo has now been dismissed from the case. This makes sense because from day one, Shoreline Care has claimed this is a matter of design. The HVAC architect was hired by the general architect who was hired by Shoreline Care (who should therefore shoulder some of the responsibility). Shoreline Care hired Weitz as the general contractor and relied on Weitz to guide the HVAC architect toward a system similar in design to an existing facility known to Shoreline Care and Weitz. Janazzo was not involved in these discussions, nor was Janazzo involved in designing the HVAC system.

Weitz also prepared the subcontract Janazzo was to follow when installing the HVAC system. All parties agree Janazzo performed according to the plans and the terms of the subcontract. This fact, as well as the fact that Janazzo has been dismissed from the case, demonstrate that *if* there was negligence involved, that negligence was solely due to the failure of Weitz to either properly guide the design of the HVAC system, or to accurately guide Janazzo within the subcontract Weitz prepared.

3070c.wpd

CHARLSTON, REVICH & WILLIAMS LLP

Mr. Michael Sullivan
July 26, 2001
Page 4

Next, you asked whether the certificate of insurance attached to your letter for Phase I, the South Neighborhood, would alter our position that coverage is not triggered thereby under the TIG policy. We respectfully answer in the negative. A certificate of insurance expressly by its own terms "is issued as matter of information only and confers no rights upon the certificate holder [and] does not amend, extend, or alter the coverage afforded by the policies [identified thereon]." Moreover, the TIG policy contains no language providing coverage for a certificate holder via issuing the certificate itself.[1]

You also asked whether Wausau had received notice of this matter. Our records indicate Weitz tendered this action to Wausau (as well as to Travelers and to TIG) on March 18, 1996. However, Wausau apparently did not receive a corresponding tender from Janazzo (as did TIG and Travelers on or about April 2, 1996). Wausau denied the tender from Weitz (1) 'because property damage did not occur during the policy period of September 1, 1990, to September 1, 1991'; (2) 'because the property damage alleged does not result from an 'occurrence' as defined under the policy'; (3) 'because the AI endorsement (GL2003) does not provide completed operations coverage,' etc.

In sum, TIG does not appear to have any duty to contribute toward the defense of Weitz in this matter because TIG did not issue a relevant additional insured endorsement to Weitz. Moreover, TIG has no duty to indemnify Weitz because the Phase I subcontract precludes such indemnification if, as is the case here, Weitz but not Janazzo was negligent in the performance of its work.

We will promptly and thoroughly review any additional information or positions you may have or may subsequently discover which could affect our decision. However, we cannot counsel our client to participate in settling this action or to defend Weitz therein based upon the information presently available to us.

The position of TIG regarding insurance coverage is based upon the information available to it at this time. The discussion above is not exhaustive on the subject of coverage. The fact that this letter does not mention or comment upon provisions, conditions or exclusions set forth in the TIG Policy is in no way intended to be, and shall not constitute, a waiver of the applicability of any provisions, conditions, exclusions or defenses which may also exist but which are not discussed herein. Nothing contained herein shall constitute a waiver of any claims, rights, causes of action, rights of action, defenses, positions or remedies possessed by TIG, all of which are expressly reserved.

---

[1] We do not address the certificate attached to your letter for Phase II as Phase II is not at issue in this litigation.

3070c.wpd

CHARLSTON, REVICH & WILLIAMS LLP

Mr. Michael Sullivan
July 26, 2001
Page 5

        As always, if you have any questions, please do not hesitate to contact me.

                              Very truly yours,

                              Joanne M. Wendell for
                              CHARLSTON, REVICH & WILLIAMS LLP

cc:   Ingrid Marsh (*via facsimile* 603-656-2554)
      Jeffrey A. Charlston, Esq.
      Chad B. Wootton, Esq.
      Dan DeMerchant, Esq. (*via facsimile* 860-246-2375)

3070c.wpd

LAW OFFICES OF
# CHARLSTON, REVICH & WILLIAMS LLP
1840 CENTURY PARK EAST
THIRD FLOOR
LOS ANGELES, CALIFORNIA 90067-2104
TELEPHONE (310) 551-7000

WRITER'S DIRECT DIAL NO.
310-551-7053
WRITER'S E-MAIL ADDRESS
JWENDELL@CRWLLP.COM

FACSIMILE
(310) 203-9321

December 18, 2001

*VIA FACSIMILE & U.S. MAIL*
(877) 786-5584

Mr. Michael Sullivan
**TRAVELERS INS.**
44 Bedford St., P.O. Box 111
Middleboro, MA 02344-0111

    Re:    *Shoreline Care LP v. The Weitz Co.*
           Travelers Claim No.:    506 ER C8E6917
           Riverstone Claim No.:    TCD80000018

Dear Mr. Sullivan:

       The purpose of this letter is to respond to your carrier's demand that TIG pay 100% of any judgment against The Weitz Company ("Weitz") in the referenced matter ("*Shoreline Care*"), and 50% of the costs incurred to defend Weitz in same, and to address your carrier's claim for equitable subrogation if TIG does not participate accordingly.

### Cause of Action for Equitable Subrogation

       A viable claim for equitable subrogation requires that Travelers Insurance ("Travelers") have paid "a debt for which [TIG] is primarily liable, and which in equity and good conscience should have been discharged by [TIG]." *Westchester Fire Ins. Co. v. Allstate Ins. Co.*, 236 Conn. 362, 371, 672 A.2d 939 (1996).

       Even if Travelers had a right of equitable subrogation, which as we explain further below it does not, "[a] party subrogated to the rights of an assured under [now Conn. Gen. State. § 38a-321] obtains no different or greater rights against the insurer than the insured possesses and is equally subject to any defense the insurer may have against the assured under the policy." *Brown v. Employers Reinsurance Co.*, 206 Conn. 668, 673, 539 A.2d 138 (1988); *see also Hanover Ins. Co. v. Fireman's Fund Ins. Co., et al.*, 217 Conn. 340, 344, 586 A.2d 567 (1991) (hereinafter "*Hanover*").

21915L.wpd

CHARLSTON, REVICH & WILLIAMS LLP

Mr. Michael Sullivan
December 18, 2001
Page 2

### TIG Has No Direct Duty to Indemnify or Defend Weitz in *Shoreline Care* Under the Definition of "Insured Contract" and in the Absence of a Relevant Endorsement

The definition of an "insured contract" in the TIG policy limits coverage to:

> That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for . . . "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Coverage under the TIG policy relative to an "insured contract" is thus limited to actions brought in tort against Weitz by a third party for "property damage," which the policy defines as physical injury to tangible property and/or loss of use of tangible property. Because the TIG policy does not include "expenses, costs, and attorney fees" (as recited in the indemnification clause of the subcontract between Weitz and Janazzo) in its definition of "property damage," TIG has no direct duty to defend Weitz in *Shoreline Care*. Furthermore, because the underlying plaintiff never brought an action in tort against Weitz,[1] TIG has no direct duty to indemnify Weitz under the definition of an "insured contract."

Further, Weitz has not proven that Janazzo is contractually required to defend or indemnify Weitz under the indemnity agreement. This is mere *potential* exposure Janazzo has to Weitz, and as we have discussed in prior correspondence, Janazzo appears to have various defenses to Weitz's claim for contractual indemnity. Janazzo's potential, future contractual liability to Weitz would create no current, immediate duty from TIG to Weitz, even if it were assumed that the agreement qualifies as an "insured contract."

Second, as you know, neither TIG nor any other party to this matter has evidence of an additional insured endorsement issued by TIG to Weitz. In the absence of that endorsement, Weitz is a "stranger" to the insurance contract between TIG and Janazzo with no direct right thereunder to a defense or to indemnification. *See Keithan v. Mass Bonding & Ins. Co.*, 159

---

[1] The underlying plaintiff probably omitted an action in tort because plaintiff could not bring an action in negligence against Weitz over three years from the act or omission complained of (and not the date plaintiff first discovers an injury) under Conn. Gen. Stat. §52-577. (A three year statute of limitations also applies to CUTPA claims). Phase I (the act or omission complained of) was completed on either July 22 or September 9, 1991. Accordingly, plaintiff had to bring the action against Weitz for negligence no later than September 9, 1994. However, the Third Amended Complaint which names Weitz as a defendant for the first time was belatedly filed on October 11, 1996.

21915t.wpd

CHARLSTON, REVICH & WILLIAMS LLP

Mr. Michael Sullivan
December 18, 2001
Page 3

Conn. 128, 267 A.2d 660 (1970);[2] *Stamford Wallpaper Co. v. TIG Insurance*, 138 F.3d 75 (2nd Cir. 1998).[3]

<u>Travelers Would Have No Greater Rights Than Weitz Under the TIG Policy</u>

Although the subcontract at issue states Janazzo was to acquire broadform coverage, Janazzo in fact acquired non-broadform coverage from TIG under the attached exclusion "I" via endorsement LB 14917A 2-86 [4] which excised the exception for work performed by a subcontractor. A non-broadform policy precludes coverage for all damage to work performed by the insured which arises from the work of the insured. In other words, the TIG policy does not guarantee the workmanship of its insured, but provides coverage solely for consequential property damage to the work of others. See *Hine, et al. v. American Mutual Liability Ins. Co.*, 20 Conn.Supp.455, 139 A.2d 500 (1958).[5]

Accordingly, even if Weitz were an insured under the TIG policy, which it is not, there is no coverage for the loss of use of, or tangible property damage to, work performed by Weitz or Janazzo which arose from the work performed by Weitz or Janazzo. This exclusion appears to include all of plaintiff's alleged damage attributed to the work of Weitz, and 98% of the damage attributed to the work of Janazzo.

---

[2] Wherein the Court held that "[i]f the defendant is neither the named insured nor an omnibus insured there is clearly no obligation to defend regardless of the allegations of the petition and irrespective of the soundness or groundlessness of the claim asserted. To hold otherwise is to completely erase from the policy the qualifying phrase 'against the insured', contained in [the policy]." *Id.* at 141-42.

[3] Wherein the Court held that "[a]lthough the duty to defend is broad, however, it is circumscribed by the language of the insurance contract. The nature of the insurer's duty to defend is purely contractual. There is no common law duty as to which the courts are free to devise rules." *Id.* at 79.

[4] You requested a copy of this endorsement along with LB 17486 3-86 and IL 0260 12-87 in your letter dated October 26, 2001. We have attached a copy of all three endorsements to this correspondence for your review.

[5] Wherein the Court held that "[l]iability cannot be imposed upon the defendant insurance carrier simply because [the policyholder] is legally liable to answer in damages to the plaintiffs. The insurance carrier's liability can arise only because of and under the terms of the insurance contract."
*Id.* at 457.

21915t.wpd

CHARLSTON, REVICH & WILLIAMS LLP

Mr. Michael Sullivan
December 18, 2001
Page 4

### Travelers' Position that Janazzo Has the Obligation to Indemnify Weitz for 100% of Any Recovery Regardless of the Fault of Another Is Without Merit Under Connecticut Law

In the October 26 letter, Travelers claims that, under the subcontract between Weitz and Janazzo, if another entity besides Weitz and Janazzo was negligent, Janazzo must nonetheless indemnify Weitz for 100% of the damage claimed by the plaintiff. Neither the language of the subcontract nor Connecticut law support Travelers' position. To the contrary, where there is more than one tortfeasor, Connecticut tort reform specifically replaced joint and several liability with apportionment for liability actually caused by a particular one of multiple tortfeasors. *Collins v. Colonial Penn Ins. Co., et al.*, 257 Conn. 718, 737-38, 778 A.2d 899 (2001); Conn. Gen. Stat. § 52-572.

Accordingly, a Connecticut court should favor TIG's position that the subcontract language more reasonably contemplates only those parties to the contract in determining whether and to what degree Janazzo may have a duty to indemnify Weitz. In that event, Janazzo would not be liable for consequential damage resulting from the work of third parties (and again, would not be liable for damage found resulting solely from the negligence of Weitz).

### TIG May Properly Withdraw From A Reserved Agreement to Defend Weitz.

Travelers appears to contend in the October 26 letter that TIG does not have the right to withdraw its agreement to participate in the defense originally and erroneously agreed to via the attached letter apparently from TIG's prior coverage counsel to Weitz dated September 6, 1996. Although the previous coverage firm agreed on behalf of TIG to defend Weitz in the September 6 letter, the letter contained multiple express reservations, including without limitation, the right to withdraw its agreement to defend if "it is determined that Weitz was not included as an insured under the TIG policy."

The previous firm also included the following language in the September 6 letter:

Nothing contained in this letter nor any act or acts of the TIG Insurance Company, nor of its officers, employees, agents or attorneys should be construed as a waiver or relinquishment of any right available to TIG under its policy or under applicable law. Among the rights reserved by TIG is the right to disclaim or limit coverage for reasons not set forth in this letter whether those reasons are presently known or knowable.

21915t.wpd

CHARLSTON, REVICH & WILLIAMS LLP

Mr. Michael Sullivan
December 18, 2001
Page 5

Accordingly, although the prior coverage firm was mistaken in its analysis of TIG's obligation to defend Weitz in the September 6 letter,[6] it expressly stated and properly reserved TIG's right to withdraw.

Further, Travelers contended in its October 26 letter that TIG cannot raise the issue of the additional insured status of Weitz under the TIG policy "several years into the defense." TIG had sent an earlier letter dated December 25, 1995, to Weitz counsel Barry Waters, Esq., of Murtha, Cullina, Richter & Pinney wherein TIG denied coverage to Weitz for the Shoreline Care claims, in part, because TIG's "investigation reveal[ed] that Weitz was never added as an 'additional insured' on the policy issued by TIG to Janazzo." Therefore, evidence clearly shows the AI issue had been expressed by TIG to Weitz in a timely manner.

Travelers also appears to assert promissory estoppel against TIG in the October 26 letter, which fails, without limitation, for the following reasons: (1) TIG's reserved agreement to defend Weitz was made with Weitz and not with Travelers, and (2) Travelers had an independent duty to defend Weitz in *Shoreline Care* under dual 2010 additional insured endorsements, regardless of any participation by TIG. Accordingly, Travelers cannot assert it defended Weitz via any agreement Travelers made with TIG or in "reasonable reliance" on any position taken by TIG with Weitz. *See Finley v. Aetna Life and Casualty Co.*, 202 Conn. 190, 205, 520 A.2d 208 (1987) (holding that "under a promissory estoppel theory, a party may maintain a claim for damages based upon a promise which induces the party's action or forbearance, if such action or forbearance is undertaken in reasonable reliance upon the promise"); *Hanover, supra*, at 351.

Moreover, Travelers would fail should it assert TIG waived any right to withdraw its agreement to defend Weitz. In *Hanover, supra*, at 351, the Connecticut Supreme Court held that "[w]aiver is the intentional relinquishment of a known right." TIG never intentionally relinquished its right to withdraw, but in fact expressly retained that right in the September 6 letter if "it is determined that Weitz was not included as an insured under the TIG policy." TIG has determined that Weitz was not included as an insured under the TIG policy, and that TIG had no obligation to defend Weitz in *Shoreline Care*. Thus, TIG may properly withdraw its agreement at this time.

### Conn. Gen. Stat. § 38a-321 Requires A Final Judgment Be Rendered Against The Insured Before A Judgment Creditor May Pursue Subrogation Against The Insurer.

Under Conn. Gen. Stat. 38a-321, "upon the recovery of a final judgment . . . [a] judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his

---

[6] Morrison Mahoney also mistakenly quoted exclusion "l", which had been amended by endorsement LB 14917 A (2-86). This endorsement transposed the initially broadform TIG policy into a non-broadform policy.

21915t.wpd

CHARLSTON, REVICH & WILLIAMS LLP

Mr. Michael Sullivan
December 18, 2001
Page 6

claim against such insurer had such defendant paid such judgment." Accordingly, neither Weitz nor Travelers can pursue TIG under § 38a-321 unless and until a final judgment for monetary damages has been rendered against Janazzo in *Shoreline Care*.

### Conclusion

For the foregoing reasons, Travelers would fail in its pursuit against TIG for participation in the defense, and whole indemnification, of Weitz in *Shoreline Care* under the principles of equitable subrogation. Accordingly, TIG must respectfully decline to participate with Travelers in this matter.

The position of TIG regarding insurance coverage is based upon the information available to it at this time. (Once again, if Travelers is aware of any law in Connecticut which would affect or contravene the positions we have set forth on behalf of TIG, we would be happy to review same and reconsider the relevant issue(s).)

The discussion herein is not exhaustive on the subject of coverage. The fact that this letter does not mention or comment upon provisions, conditions or exclusions set forth in the TIG policy is in no way intended to be, and shall not constitute, a waiver of the applicability of any provisions, conditions, exclusions or defenses which may also exist but which are not discussed herein.

If you have any questions, please do not hesitate to contact me.

Very truly yours,

Joanne Wendell for
CHARLSTON, REVICH & WILLIAMS LLP

Attachments

cc:   Ingrid Marsh (*via facsimile* 603-656-2400; Claim No. TCD 80000018)
      Jeffrey A. Charlston, Esq.
      Chad B. Wootton, Esq.

21915t.wpd