# EXHIBIT K

RECEIVED BY

NOV 1 8 2002

NO. X06-CV-94-0155982 S

SHORELINE CARE LIMITED          :    SUPERIOR COURT
PARTNERSHIP
                                :    JUDICIAL DISTRICT OF WATERBURY
V.
                                :    COMPLEX LITIGATION DOCKET

JANSEN & ROGAN CONSULTING
ENGINEERS, P.C., ET. AL.        :    November 15, 2002


<u>MEMORANDUM OF DECISION AND ENTRY OF JUDGMENT</u>

This litigation arises from the design and construction of
the Evergreen Woods Life Care Community (Evergreen Woods)
located in North Branford, Connecticut.  Evergreen Woods is a
retirement community, providing a nursing care component,
communal dining, and related facilities.  The apartments and
common facilities are laid out in wings, which are connected by
enclosed, heated walkways, also referred to as "links."  All
residents of Evergreen Woods are senior citizens, and many
require ambulatory assistance, including wheelchairs.

Evergreen Woods is owned and operated by Shoreline Life
Care, LLC, the successor to Shoreline Care Limited Partnership
(Shoreline), the plaintiff in this action.  Shoreline complains

*Copied to all counsel
of record and reporter
of judicial decisions
on 11/15/02 CmDevlin CO.*

2002 NOV 15 P 12: 25

COMPLEX LITIGATION
300 GRAND ST
WATERBURY CT 06702

in the fifth amended complaint that the defendants negligently designed and installed what it perceives is a defective heating, ventilating and air conditioning system (HVAC) at Evergreen Woods.

The defendant Weitz Company, Inc. (Weitz) contracted with Shoreline on October 5, 1989, to provide "general contractor services" with respect to Phase I of the project, and subsequently contracted with Shoreline on April 30, 1991, to perform similar services for Phase II of the construction. These contracts represented the agreement between Shoreline and Weitz relating to the construction and installation of Evergreen Wood's HVAC system.

The Phase II agreement contained a clause providing that any controversies or claims arising out of the agreement would be settled by arbitration. The Phase I agreement did not contain any arbitration clause.

Weitz hired a subcontractor, Janazzo Heating & Air-Conditioning (Janazzo), to install the HVAC system. Following the commencement of this litigation, Weitz sued Janazzo, and Janazzo remains a third-party defendant in the action.

-2-

TRAV 0739

Shoreline hired Technical Planning Associates, Inc. (TPA) as its architect for Phases I and II of the project. TPA is not a party to this litigation. TPA hired the defendant Jansen & Rogan Consulting Engineers, P.C. (Jansen & Rogan) to provide mechanical and electrical engineering consulting services on the project.

Weitz completed its work in December of 1992 and was paid in full by Shoreline.[1] Shoreline subsequently became aware of what it perceived as defects and inadequacies in the HVAC system, and made claims against Weitz. Following court intervention, Weitz and Shoreline arbitrated the Phase II disputes, but not those involving Phase I. In a memorandum of decision dated July 17, 2000, this court granted, on the basis of res judicata, Weitz' motion for summary judgment on all claims arising out of the Phase II contract. Accordingly, as to Weitz, this litigation is limited to Shoreline's complaints with respect to the Phase I contract.

---

[1]Weitz argues that final payment is acceptance under the contract and therefore precludes Shoreline's claims. The claims of defect not known at the time of final payment do not constitute a waiver. Waiver is the relinquishment of a known right or claim. Wadia Enterprises, Inc. v. Hirschfeld, 224 Conn. 240, 252, 618 A.2d 506 (1992); Breen v. Aetna Casualty & Surety Co., 153 Conn. 633, 647, 220 A.2d 254 (1966).

TRAV 0740

Shoreline's claims against Weitz are contractual in nature, while its complaint against Jansen & Rogan is based on allegations of negligence arising from an alleged breach of the standard of care applicable to the design of a life care facility.

At trial, Shoreline introduced a substantial amount of evidence regarding the problems experienced with maintaining adequate heat in the facility and with the air balancing of the system.[2] Shoreline established that the HVAC system lacks sufficient capacity to maintain a desirable level of heat throughout the facility. Certain areas within the facility, including the entryways, vestibules and the nursing wing corridor, lacked any heat source upon completion of the construction in suit. Shoreline also established that there was improper installation of the HVAC system in the links between the buildings comprising Evergreen Woods, inasmuch as no insulation was applied in certain areas.

This litigation has continued to this date due to the difficulty in assigning responsibility for these problems. The

---

[2]Balancing is a concept of approximately matching the intake air with the exhaust air. A positive or negative airflow may be desirable, depending on the function of the room area.

-4-

TRAV 0741

complaints about the Evergreen Woods' HVAC system center on maintaining an appropriate level of heat in a life care facility in light of, or in spite of, the type of system installed. At the time this litigation commenced, Evergreen Woods was heated by an air to air electric heat pump system. The electric heat pump system is the cheapest heating system to install, but the most expensive heating system to operate.

In its claim for damages, Shoreline seeks all costs of retrofitting Evergreen Woods with a gas powered heating system. Shoreline already has renovated the facility by installing two new gas-fired central boiler units to provide heat in the hallways and patient rooms in each of the nursing wings, and seeks to recover all costs incurred. Shoreline also claims damages for the repair of frozen sprinkler pipes in the links between the buildings and in other common areas. Interest, costs and expenses of litigation also are claimed.

## Claims Against Weitz

Shoreline claims that it incurred these damages because Weitz breached its contractual obligations in the following ways: (1) breach of its duty to advise the plaintiff in the

TRAV 0742

selection of a heating method and use of gas-fired equipment at another life care facility (Essex Meadows), resulting in the selection of the less efficient and more expensive-to-operate electric heating system; (2) failing to have the HVAC system balanced by a certified independent contractor; (3) failing to report design defects and inadequacies in the HVAC system; and (4) failing to perform proper value engineering. Shoreline's major complaint against Weitz relates to the use of its expertise in the design of the Evergreen Woods project.[3]

David Reis is the principal of Shoreline. Evergreen Woods represents Mr. Reis's first embarkment into the construction of a life care facility. In the years since undertaking the Evergreen Woods project, Mr. Reis has successfully developed a number of other life care communities.

### A.   Reliance Claim

Mr. Reis testified that he relied on the expertise of Weitz and its affiliate, Life Care Services, Inc. (LCS), because they were among the largest developers and managers of life care

---

[3]See Shoreline's post-trial brief, page 4: "The problem which generated the largest element of the damage claim arose from a failure of both Weitz and J & R during the design development phase and review process."

-6-

communities in the country.  Weitz and LCS already had developed three projects in Connecticut: Whitney Center in Hamden; Pomperaug Woods in Southbury; and Essex Meadows in Essex.  Mr. Reis claims that they intended to model Evergreen Woods on the successful Essex Meadows project.

Shoreline failed to prove at trial that it elected to install an electric heat pump system, as opposed to other available HVAC systems, based on any representation by Weitz about the HVAC system installed at Essex Meadows.  The evidence instead demonstrated that Mr. Reis preferred an electric rather than gas heat source because of his perception that older residents would be uncomfortable having a gas heat source in their apartments, and because of budgetary concerns about the higher installation cost of a gas-powered system.  The court finds that Shoreline's decision to install an electric heat source was made independently, and was not decided on the basis of any representations by Weitz.

Shoreline also failed to demonstrate that an electric system was not a viable system for a Connecticut facility.  Gary DeFillippo, as Shoreline's expert, testified that a properly installed electric system would perform well in Connecticut.

-7-

Shoreline's lender retained its own consultant, Levien, Rich & Company (Levien-Rich), to evaluate the HVAC system and found it appropriate, although perhaps somewhat undersized. Shoreline's architect, TPA, approved as a reasonable choice the use of electric air to air heat pump units, and Jansen & Rogan's engineer recommended such a system.

Accordingly, the court finds that Weitz has no contractual liability with respect to Shoreline's decision to use an electric heat pump system.

> B. Failure to have air balancing performed by an independent contractor

Shoreline also claims that Weitz violated its contractual obligation by failing to have the HVAC system balanced by an independent certified balancer. Weitz had a certified independent balancing contractor, Richard Gherlone, balance the HVAC system in the community building. The air balancing in the residential areas was performed by Weitz' subcontractor, Janazzo. The decision to use Janazzo's services for this purpose was approved by Shoreline's architect, Brian Ameche. Even though Janazzo was not "independent," Mr. Ameche agreed to allow Janazzo to perform the balancing in order to complete the

-8-

work as soon as possible to allow residents to move into the Phase I south neighborhood.

The air balancing process as described at trial is accomplished by measuring air flow at a given outlet and comparing it to the design criteria for air flow at that outlet. This process was not designed to prevent the defect that Shoreline is complaining about, being an overall negative pressurization in the system, combined with an inadequate amount of heat.

Shoreline also relies on testimony from its air balancing expert, Richard Wing, that the HVAC system had substantial leakage which was due to improper installation. However, the sample data on which Mr. Wing relied at trial does not calculate the system loss or properly attribute any loss to difficulties in the installation of the system. Shoreline also failed to establish that any pressurization problems existed in the Phase I south neighborhood residential apartments air balanced by its subcontractor, Janazzo.

Weitz' deviation from its obligation to use an independent certified balancer was waived by Shoreline through its architect, Brian Ameche. <u>Wadia Enterprises, Inc. v. Hirschfeld,</u>

-9-

supra, 224 Conn. 252.   Shoreline also failed to establish a causation of damages claim with respect to any air balancing performed by Janazzo.   All of Janazzo's balancing reports were approved by the Shoreline's engineer, Jansen & Rogan. Accordingly, the court finds that Weitz has no contractual liability with respect to any alleged failure to have air balancing performed by an independent contractor.

### C.   Weitz' Knowledge of Design Deficiencies

Shoreline claims that Weitz had actual knowledge of defects in the design of the HVAC system, and breached its contract with Shoreline when it did not on its own check the system and report deficiencies to the architect.   This claim arises from language contained in the Phase I contract between Shoreline and Weitz, providing in pertinent part, section 3.2.1, that "[t]he Contractor shall not be liable to the Owner or Architect for damage resulting from errors, inconsistencies or omissions in the Contract Documents *unless the Contractor recognized such error, inconsistency or omission and knowingly failed to report it to the Architect.*"   (Emphasis added.)   The supplementary general conditions appended to the Phase I contract include the following limitation to section 3.2.1: "Any references herein to

-10-

TRAV 0747

'recognized', 'discovered' and 'knowingly' shall mean *actual knowledge* of the General Contractor."    (Emphasis added.) Shoreline argues that the award of the arbitrators on the Phase II project, which award found that Weitz was chargeable with actual knowledge of the defects in the HVAC system, establishes this breach of contract claim.

The Phase II contract, however, did not contain identical general conditions requiring "actual knowledge" by the general contractor.  The Phase II arbitration award (Plaintiff's Exhibit 612) also does not contain a finding that Weitz had actual knowledge of design deficiencies.  A review of the arbitrators' findings, specifically, finding number three, clearly relies on a standard of what "should have been known" to constitute chargeable actual knowledge.  That is not the standard in the contract before this court and is not binding in this proceeding.

Moreover, the lender's independent engineer, Levien-Rich, reported design deficiencies as early as February 9, 1990, by letter advising Mr. Reis that the HVAC system was, perhaps, undersized.  The architect and project design engineer, Jansen & Rogan, re-certified the system and proceeded with the project

-11-

without any change in the HVAC system.  It is difficult to imagine that a different result would have followed a complaint by Weitz regarding the same problem.  As noted above, the basic design decision concerning electric air to air heat pump versus a gas-fired system was made by the owner taking into consideration client concerns and budgetary constraints.  Shoreline has not met its burden of proving that Weitz had actual knowledge that the system was in any way inadequate.

D. <u>Value Engineering</u>

Shoreline also claims that Weitz breached its agreement made in letters and by oral representations to perform value engineering on the project.  Testimony at trial from Weitz employees Gosselink and Tousley explained the value analysis process as one in which the general contractor continually performs estimates during pre-construction to bring the cost of the project within the owner's budget, which would include the contractor suggesting revisions to the owner which would reduce his costs.  The Phase I contract specifically provided that Weitz would "[r]eview the Drawings and Specifications as they are being prepared, recommending alternative solutions whenever

-12-

TRAV 0749

design details affect construction feasibility or schedules *without, however, assuming any of the Architect/Engineer's customary responsibilities for design.*" Article 2, subsection 2.1.4, General Contractor's Services - Coordination of Contract Documents (emphasis added). Weitz did not provide mechanical engineering services in the design phase or construction phase of the project; those duties were assumed by the mechanical engineer, Jansen & Rogan. A contractor cannot be held responsible for loss or damage resulting from defective plans or specifications supplied by the owner or its agents. <u>Southern New England Contracting Co. v. State of Connecticut</u>, 165 Conn. 644, 656, 345 A.2d 550 (1974).

At trial, Shoreline did not point to any term in the contract calling for value engineering by the general contractor, nor was any other writing made evidence that the HVAC system would be engineered by Weitz, in the absence of an evaluation by Shoreline's architect or engineer. Mr. Reis testified that "at the end of the day all the value engineering . . . we really went into the job below budget." The court finds that Weitz performed a value analysis satisfactory to the owner, and it had no contractual obligation beyond that to

-13-

independently redesign the HVAC system.  Accordingly, Shoreline has not proven breach of any contractual duty by Weitz with respect to value engineering.

### E.  Construction Deficiencies

The construction of Evergreen Woods was made in three phases.  Phase III was completed by different contractors and was not the subject of the trial testimony to any great degree. Phase I of the project consisted of the community building and the residential areas known as Adams, Eaton, Russell and Whitfield, along with one of the nursing wings and the A-link between the residences and community building.  Phase II of the project consisted of the Brewster residence, another nursing wing, the A-B link and the C-link, as well as further work on the community building, including the pool.  Phase I is approximately three times as large as Phase II of the project.

Shoreline concedes that it has not specifically broken down damages claimed between Phases I and II; instead, it seeks a proportional breakdown of damages.  The problem with that approach is apparent when one considers that the major construction deficiency is the absence of insulation.  Failure to

-14-

TRAV 0751

insulate primarily occurred in the links.  Two of the three links in question are part of the Phase II contract, which with respect to Weitz is not part of this litigation.

The court finds that as to Weitz, Shoreline has failed to prove its damages arising from construction deficiencies with respect to Phase I of the project.  Accordingly, the fifth amended complaint against Weitz is hereby dismissed.  Inasmuch as Janazzo is in the case only in response to Weitz' third party complaint, the third party complaint also is dismissed.

## Claims Against Jansen & Rogan

Shoreline's claims against Jansen & Rogan contained in the fifth amended complaint lie in negligence, negligent misrepresentation, fraudulent misrepresentation and unjust enrichment.

### A.   Unjust Enrichment

At trial, Shoreline argued that the basis for its unjust enrichment claim is that it allegedly paid for a defective product.  That is not a legal basis for an unjust enrichment claim.  "Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under

-15-

TRAV 0752

a contract, and no remedy is available by an action on the contract. . . ." (Citation omitted; internal quotation marks omitted.) <u>Meaney v. Connecticut Hospital Assn., Inc.</u>, 250 Conn. 500, 511, 735 A.2d 813 (1999). "[L]ack of a remedy under a contract is a precondition for recovery based upon unjust enrichment." (Internal quotation marks omitted.) <u>Paulsen v. Kronberg</u>, 66 Conn. App. 876, 878, 786 A.2d 453 (2001). When there is no allegation of a contractual relationship between the plaintiff and the defendant, the claim for unjust enrichment must fail. <u>Stamboulis v. Sullivan</u>, Superior Court, judicial district of Hartford, Docket No. 806114 (July 30, 2001, *Beach, J.*). Accordingly, the unjust enrichment claim against Jansen & Rogan is dismissed inasmuch as there is no evidence of any contract between Shoreline and this defendant. The existence of the negligence remedy also would preclude the invocation of the equitable doctrine of unjust enrichment. <u>Bershtein, Bershtein and Bershtein v. Nemeth</u>, 221 Conn. 236, 241-42, 603 A.2d 389 (1992).

-16-

B.   <u>Fraudulent Misrepresentation</u>

A fraudulent misrepresentation claim requires that there be a false representation known to be untrue by the party making it, which was relied upon by another party, to its injury. <u>Miller v. Appleby</u>, 183 Conn. 51, 55, 438 A.2d 811 (1981). Fraud also must be proven by a standard more exacting than a fair preponderance of the evidence. <u>Alaimo v. Royer</u>, 188 Conn. 36, 39, 448 A.2d 207 (1982). Shoreline presented no evidence that Jansen & Rogan made false representations while knowing that the system was defective or undersized. This claim is dismissed.

C.   <u>Negligence</u>

As noted above, Shoreline hired TPA as its architect for Phases I and II of the project, TPA hired Jansen & Rogan to provide mechanical and electrical engineering consulting services on the project, and TPA is not a party to this litigation.

Shoreline proved at trial that the HVAC system designed by Jansen & Rogan fails to provide heat in the nursing wing hallways and sufficient heat in the nursing wing patient rooms; provides inadequate heat in the pool area locker rooms and the

-17-

TRAV 0754

hallways leading to the pool; fails to heat the main entrance vestibule to the community building; and fails to provide heat sources in the elevator equipment rooms.

Jansen & Rogan argues that Shoreline failed to provide an expert opinion from a licensed professional engineer regarding the standard of care owed by the engineer to Shoreline. The court finds that Gary DeFillippo, as Shoreline's expert, though not a licensed engineer, is an experienced mechanical contractor whose testimony was sufficient to establish the obligation of the mechanical engineer, and the failure of Jansen & Rogan to comply with that duty.

As a result of Jansen & Rogan's negligence, Shoreline incurred the following expenses, which are reasonably included in its damages:

(1) payments to Enterprise Builders for the installation of gas-fired central boiler units to provide heat in the hallways, in-patient rooms and in each of the nursing wings - $84,789.60;

(2) installation of radiant heating panels in locker rooms and hallways leading to the pool - $6,639;

(3) installation of a heated air curtain system in the main entrance vestibule in the community building - $10,931.38; and

(4) addition of heat in each elevator equipment room - $1,494.

-18-

The remaining problems that Shoreline demonstrated with respect to the under-sizing of the heating system do not require Shoreline's demanded remedy, which would be a substantial upgrade utilizing a gas powered heating system. Jansen & Rogan's expert witness, Michael Salamone, proved that the system could be enhanced to meet all code requirements with respect to heating. According to Mr. Salamone, introducing coils to existing ductwork and replacing existing units with units of slightly larger capacity where needed could be accomplished for a total estimated cost of $125,000.

Accordingly, the court awards damages to Shoreline and against Jansen & Rogan as follows:

| | | |
|---|---|---|
| (1) | Gas-fired central boiler units | $ 84,789.60 |
| (2) | Radiant heating panels in pool area | 6,639.00 |
| (3) | Heating elevator equipment rooms | 1,494.00 |
| (4) | installation of a heated air curtain system in the main entrance vestibule in the community building | 10,931.38 |
| (5) | Cost to have system meet code heating requirements | 125,000.00 |
| | Total Damages: | $228,853.98 |

All other demands by Shoreline are denied.

-19-

## CONCLUSION

Judgment hereby enters in favor of Shoreline and against Jansen & Rogan in the amount of $228,853.98.    Judgment of dismissal enters in favor of Weitz and Janazzo.

So ordered this 15th day of November, 2002.

_____, J.
ROBERT F. McWEENY

TRAV 0757

<u>**CERTIFICATION**</u>

I hereby certify that on November 9, 2004 a copy of the foregoing **LOCAL RULE 56(a) 1 STATEMENT OF TIG INSURANCE COMPANY** was sent by overnight messenger, for delivery on November 10, 2004  to:

Peter M. Nolin
Sandak Friedman Hennessey & Greco, LLP
970 Summer Street
Stamford, CT 06905

Jeffrey Tinley
Tinley Nastri Renehan & Dost, LLP
601 North Main Street, 2nd Floor
Waterbury, Connecticut 06702


_____
Louis G. Corsi