UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA, | : : | CIVIL ACTION NO.: 302CV408AWT |
| Plaintiff, | : : | |
| v. | : : | |
| TIG INSURANCE COMPANY, | : | DECEMBER 1, 2004 |
| Defendant. | : : : : | |

## DEFENDANT TIG INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO TRAVELER'S MOTION FOR SUMMARY JUDGMENT

TIG Insurance Company ("TIG") respectfully submits this memorandum of law in opposition to Travelers Casualty & Surety Company of America's ("Travelers") motion for summary judgment which seeks a determination that TIG is obligated to reimburse Travelers for 50% of the legal fees and costs associated with defending Travelers' insured, Weitz Company, LLC ("Weitz"), in the Shoreline Action.[1]

As demonstrated below, the various general theories of recovery against TIG upon which Travelers is relying do not apply here because of uncontested factual matters that Travelers has ignored in its motion papers. Travelers had a pre-existing and independent contractual obligation to provide a defense to Weitz in the Shoreline Action, which it had already acknowledged, prior to

---

[1]    Unless defined herein, capitalized terms have the same meaning as defined in TIG's memorandum in support of its separate motion for summary judgment to dismiss Travelers' complaint, dated November 10, 2004 ("TIG Memo" or "Memo").

TIG's offer to participate in paying for Weitz's defense under a reservation of rights. Further, TIG had no similar contractual obligation to Weitz. In light of these pivotal facts, the applicable case law, including cases cited by Travelers in its memorandum of law dated November 10, 2004 ("Travelers Memo"), establishes that TIG's offer does not constitute an enforceable contract, nor does that offer support Travelers' claim against TIG based on alternate theories of estoppel, misrepresentation, or equity.

To the contrary, as discussed in TIG's Memo on its separate summary judgment motion, TIG is entitled to summary judgment dismissing all of Travelers' claims.

## I.    PRELIMINARY MATTERS

In constructing its summary judgment motion against TIG, Travelers has not addressed critical facts which, as the case law demonstrates (see below), completely undermine Travelers' motion:

### A.    Travelers' Contractual Obligation To Weitz Arose Prior to and Independent of TIG's Offer to Participate in the Defense.

Travelers' decision to provide a defense to Weitz in the Shoreline Action was based upon its contractual obligation to do so and arose *prior to and was independent* of TIG's subsequent offer to participate in Weitz's defense. Moreover, at all relevant times, Travelers was aware that TIG had reserved the right to withdraw from that proposed participation. The relevant chronology is not subject to fair dispute, although Travelers' motion papers suggest some ambiguity (e.g., Travelers Memo at 4-5, 25; Plaintiff's Local Rule 56(a)1 Statement of Material Facts Not in Dispute at ¶¶ 9-10 ("Travelers Rule 56 Statement") by referring to general time frames rather than specific dates which are clear from the documents:

- By August 8, 1996, Travelers had notified Weitz that it would provide a defense in the Shoreline Action and had already retained counsel to represent Weitz in that litigation. Travelers Rule 56 Statement ¶ 10; TIG Rule 56 Statement ¶ 9 and Exhibit "E."[2]

- On September 6, 1996, almost one month after Travelers had already begun providing a defense to Weitz, TIG independently offered to provide a defense to Weitz under a full reservation of rights and specifically reserved "its rights to withdraw from Weitz' defense . . . ." Travelers Rule 56 Statement ¶ 11 and Tab 1; TIG Rule 56 Statement ¶ 12 and Exhibit "G."

- The evidence is undisputed and, indeed, Travelers has acknowledged that it received the September 6, 1996 letter at the time it was issued. TIG Rule 56 Statement ¶ 14 and Exhibit "H;" Travelers Memo at 5.

In light of these facts, it is wholly unsupported for Travelers to assert repeatedly in its motion papers that, in paying for Weitz's defense, Travelers somehow relied to its detriment (or otherwise) on TIG's offer to participate in that defense and was not aware that TIG had reserved the right to withdraw from that defense. Such assertions do not square either with this chronology, the explicit statement in the September 6, 1996 letter (upon which Travelers otherwise relies), or with Travelers' independent obligation under its policies to provide a defense to Weitz in the Shoreline Action, whether or not TIG subsequently offered to share those expenses. Moreover, as a legal matter, TIG's offer to share in the defense costs on an "equitable basis" was not binding since it was not supported by consideration because of Travelers' pre-existing, independent obligation to provide such a defense which it had already undertaken before TIG offered to participate.

Perhaps understanding the fundamental flaws in its contract claim, Travelers has made

---

[2]    Rather than duplicate the materials already before the Court on TIG's separate motion for summary judgment, TIG will refer to and incorporate herein those submissions in this opposition to Travelers' summary judgment motion.

alternate claims that TIG falsely represented that it would pay 50% of the defense costs incurred in the Weitz defense and that TIG is somehow estopped from withdrawing that offer. To the contrary, TIG merely agreed to do that which it preliminarily (but erroneously) believed it was obligated to do. Once TIG concluded that Weitz did not have insured status under the TIG Policy, it withdrew from the defense as permitted by the reservation contained in its September 6, 1996 letter and informed Travelers. Weitz was fully defended by Travelers and was not prejudiced. Moreover, based on the chronology described above, Travelers cannot demonstrate detrimental reliance, either on a misrepresentation or estoppel claim, because Travelers has admitted that in "August 1996 Travelers agreed to provide Weitz with a defense of Shoreline's claims subject to a full reservation of rights, and Travelers retained the Connecticut firm of Milano and Wanat to defend Weitz in the Shoreline Action." Travelers Rule 56 Statement at ¶ 10. Travelers simply did not change its position in reliance on TIG's offer to participate in Weitz's defense, which came one month later, and cannot establish that it has suffered any damages under any theory.

## B.    Weitz Does Not Have Insured Status under The TIG Policy

This case is *not* based on a claim that TIG was an insurer of Weitz which had wrongfully refused to defend Weitz in the Shoreline Action and, as a result, Travelers (as a co-insurer) was obligated to pay 100% of the defense and is now seeking reimbursement for half of those defense fees and costs. As pleaded in the complaint, *only* Travelers had a contractual obligation under its three policies to Weitz to provide a defense in the Shoreline Action. (Complaint ¶ 13)[3]. Travelers has *not* alleged in the Complaint that TIG is obligated to share in the defense of Weitz because Weitz

---

[3]    A copy of the complaint is attached as Exhibit "A" to TIG's Rule 56 Statement in support of TIG's summary judgment motion.

is an insured or additional insured under the TIG Policy. Travelers' Complaint *only* alleges that TIG must pay for the defense of Weitz because of the purported agreement with Travelers to share the defense costs, or on an estoppel theory. (Complaint, ¶¶ 20, 32, 34, 41, 46, and 51.)

Travelers has made, however, a half-hearted attempt on this motion to fashion an argument that Weitz had such status under the TIG Policy by referring to certificates of insurance allegedly provided to Weitz (*not* by TIG) "which confirmed that Weitz was an additional insured on the TIG Policy." Travelers Memo at 3; and 19-20, and Travelers Rule 56 Statement at ¶¶ 71-72. But Travelers has *not* pointed to any provision in the TIG Policy to establish that Weitz had such insured status under the policy.

Moreover, Travelers' references to alleged certificates of insurance are both inadmissible and irrelevant on this motion. First, the materials attached to Travelers Rule 56 Statement at ¶¶ 71 –72 are inadmissible hearsay, and, at a minimum, TIG is entitled to take discovery concerning the facts and circumstances surrounding the issuance of those certificates of insurance.[4] Further, those certificates are contradicted by the TIG Policy which, as noted above, does not contain any provision conferring such status on Weitz (and Travelers has never cited to any). Perhaps the best evidence that there is no such provision is the fact that Travelers has not even attached a copy of the TIG Policy as an exhibit to its motion for summary judgment.

Second, as Travelers well knows, the law is clear that certificates of insurance are informational only and do not create coverage obligations in the absence of provisions in the policy. See, Vinco Inc. v. Royal Ins. Co. of America, 2002 WL 337988 (Conn. 2002) (General contractor

---

[4]    As reflected in TIG's response required by Local Rule 56(a)(2) ("TIG Rule 56 Opposition Statement"), TIG disputes these statements and certain other purported undisputed factual statements contained in Travelers Rule 56 Statement.

failed to show that subcontractor's insurance broker was acting as agent for subcontractor's liability

insurer when it issued certificate of insurance incorrectly identifying contractor as additional insured

on subcontractor's policy for construction project, and therefore insurer was not bound by certificate,

which was issued at subcontractor's request and was not policy or binder), citing Taylor v. Kinsella,

742 F.2d 709, 711 (2d Cir.1984) ( a certificate of insurance is generally only notice that a policy of

insurance had been issued); Buccini v. 1568 Broadway Associates, 250 A.D.2d 466, 673 N.Y.S.2d

398 (1st Dep't 1998) (certificate of insurance obtained by contractor was evidence of insurer's intent

to provide coverage, but was not contract to insure premises owner and construction manager, nor

was it conclusive proof, standing alone, that contract existed).[5]  On summary judgment, a certificate

is not sufficient, standing alone, to prove coverage as a matter of law. Taylor v. Kinsella, 742 F.2d

709 (2d Cir.1984).

　　　As described more fully below and in TIG's summary judgment motion, this lawsuit and

Travelers' motion are a flawed attempt by Travelers to reduce by half its undisputed obligation to

defend Weitz and otherwise shift to TIG an obligation to pay 50% of the defense costs owed by

Travelers, even though Weitz never had insured status under the TIG Policy. Travelers is asking this

Court to rule that anytime an insurer initially (and erroneously) offers to defend an alleged insured,

it is bound to reimburse 50% of the defense costs to another insurer (which has the sole, independent,

and undisputed obligation to defend its insured). Travelers' assertions are wrong as a matter of law

and equity.

---

[5]　　　17 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 242:33 (3d ed. 2000)
("Where an entity requires another to procure insurance naming it an additional insured, that party
should not rely on a mere certificate of insurance, but should insist on a copy of the policy. A
certificate of insurance is not part of the policy--if it states that there is coverage but the policy does
not, the policy controls.").

## II.    **RELEVANT FACTS**

The *relevant* facts are largely undisputed, although TIG does contest certain specific assertions made by Travelers, as set forth in its opposition to Travelers Rule 56 Statement, as well as the meaning and significance that Travelers seeks to draw from the facts.

In 1989, Weitz entered into a contract with Shoreline Care, agreeing to provide general contractor services in connection with the construction of a continuing care retirement community known as Evergreen Woods. Weitz subcontracted certain HVAC and plumbing work to Janazzo. See, Travelers Rule 56 Statement at ¶ 7; TIG Rule 56 Statement at ¶ 1 and Exhibit "A," Complaint ¶¶ 7-8. The subcontract between Weitz and Janazzo on the Evergreen Woods project required that Janazzo indemnify Weitz for claims and suits arising out of the work to be performed under the contract. The subcontract also required that Janazzo maintain comprehensive general liability coverage and have Weitz named as an additional insured under that coverage. Complaint ¶ 10.

From September 1, 1992 through September 1, 1995, Travelers' predecessor-in-interest, Aetna Casualty & Surety Company of America, provided general liability and other coverage to Janazzo under policy numbers: 007 XS 22549565; 007 ACM 23584577; and 007 ACM 24387637 (the "Travelers Policies").[6]   Weitz is specifically named as an additional insured on all three Travelers Policies. Travelers Rule 56 Statement at ¶ 11; TIG Rule 56 Statement at ¶ 4, and Exhibit "A," Complaint ¶ 13, and Exhibit "B," Travelers Policies.

From September 1, 1991 to September 1, 1992, TIG had provided general liability coverage to Janazzo under policy no. 30790261 (the "TIG Policy"). Janazzo never purchased an endorsement

---

[6]    Travelers is the successor-in-interest to all of Aetna's rights and obligations under these policies issued to Janazzo. Exhibit "A," Complaint ¶ 14. For convenience, these policies are referred to as the "Travelers Policies."

naming Weitz as an additional insured on the TIG Policy. TIG Rule 56 Statement at ¶ 6 and Exhibit "C," TIG Policy 30790261; Exhibit "D", September 17, 2004 Stipulation, ¶ 10.

By letter dated August 8, 1996, Travelers agreed to defend Weitz under a reservation of rights, and retained the law firm of Milano & Wanat to provide that defense. Travelers has never claimed that it does not owe Weitz a defense. Travelers Rule 56 Statement at ¶ 16; TIG Rule 56 Statement at ¶ 9 and Exhibit "E," letter dated August 8, 1996, and Exhibit "A," Complaint, ¶ 17.

As noted above, Travelers has never alleged that TIG is obligated to share in the defense of Weitz because Weitz is an insured or additional insured under the TIG Policy. Travelers' references to certificates of insurance are inadmissable hearsay, and do not otherwise establish that Weitz had insured status under the TIG Policy. (See above at 5-6.)

By letter dated December 29, 1995, TIG advised Weitz that it was not covered under the TIG policy issued to Janazzo. TIG Rule 56 Statement ¶ 10 and Exhibit "F," TIG letter dated December 28, 1995. Subsequently, after Weitz had been named as a defendant in the Third Amended Complaint in the Shoreline Action, coverage counsel for TIG, by letter dated September 6, 1996, advised Weitz that TIG would provide a defense for Weitz under a reservation of rights. TIG offered to share in the defense of Weitz in the Shoreline Action on an "equitable basis" with Weitz's other insurers. Travelers Rule 56 Statement at ¶ 16 and Tab 1; TIG Rule 56 Statement at ¶ 12 and Exhibit "G" letter dated September 6, 1996. TIG's letter also explicitly reserved the right to withdraw from the defense "should it be established that Shoreline's claim does not fall within the TIG coverage" and:

> TIG's agreement to extend a defense to Weitz is subject to a full reservation of rights, however. **That is, TIG continues to reserve its rights to withdraw from Weitz' defense. . . . should it be established that**

**Shoreline's claim does not fall within the TIG coverage.**

Id. at 1. (Emphasis added.)

On September 6, 1996, TIG's coverage counsel, Morrison, Mahoney & Miller, also faxed a copy of that letter to Travelers' coverage counsel, Cooney, Scully & Dowling. Rule 56 Statement at ¶ 14 and Exhibit "H," Fax sheet and the September 6, 1996 correspondence.

Thus, even before there had been any communication between TIG and Travelers regarding sharing the costs of defense, Travelers had:

> (a) already acknowledged to Weitz its obligation under the Travelers Policies to provide a defense in the Shoreline Action, and
>
> (b) retained Milano & Wanat to defend Weitz.

Moreover, the correspondence from TIG's counsel *one month later* advising that TIG would share equitably in the cost of Weitz's defense explicitly reserved its right to withdraw from Weitz defense, "should it be established that Shoreline's claim does not fall within the TIG coverage." Travelers has conceded that it received the September 6, 1996 letter at that time. Travelers Memo at 5 ("During the summer [sic] of 1996, Zwick received a copy of the Morrison Letter from Weitz and thereby became aware that TIG anticipated coordinating the defense and possibly sharing costs with Travelers . . ..").

Thereafter, Travelers paid the Milano & Wanat invoices for the defense of Weitz in the Shoreline Action and requested reimbursement from TIG. Exhibit "A" Complaint. Although there were subsequent communications between Travelers and TIG concerning reimbursement of defense costs, 100% of those costs were paid by Travelers, and none by TIG.

After further review of the coverage issues in this matter by its new coverage counsel, TIG

concluded that Weitz was not an additional insured under the TIG Policy.and was not entitled to

coverage from TIG for the Shoreline Action. By letter dated April 6, 2001, TIG's new coverage

counsel advised Weitz and Travelers that TIG had no obligations to Weitz under the TIG Policy or

to participate in paying for Weitz's defense. Travelers Rule 56 Statement at ¶ 73; Rule 56 Statement

at ¶ 15 and Exhibits "I" and "J" letters dated April 6, 2001; and July 26, 2001 and December 18,

2001, respectively.

In March 2002, Travelers commenced this lawsuit against TIG seeking reimbursement of

50% of the defense costs Travelers had paid in successfully defending Weitz in the Shoreline Action.

## III.    ARGUMENT

### A.    Summary Judgment Standard of Review

At the summary judgment stage,  the Court's function is not to weigh the evidence and

determine the truth of the matter, but rather to determine whether there is a genuine issue for trial.

Underkofler v. Community Health Care Plan, Inc., 1999 WL 464530 at *2 (D. Conn 1999), citing

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  As a Court in Underkofler observed,

on a summary judgment motion, the court is mandated to resolve "all ambiguities and draw all

inferences in favor of the nonmoving party in order to determine how a reasonable jury would

decide." [citation omitted] Hence, "[o]nly went reasonable minds could not differ as to the import

of the evidence is summary judgment proper." [citations omitted]. Underkofler, 1999 WL 464530

at *2.

As discussed above, the **relevant** facts, we submit, are undisputed and mandate dismissal of

Travelers' complaint, for the reasons set forth in TIG's separate motion for summary judgment. To

the extent, however, the Court disagrees, then Travelers' cross-motion must still be denied because

of disputed issues of fact.

For instance, Travelers' assertion that Weitz had insured status under the TIG Policy is a disputed issue of fact that cannot be resolved in Travelers' favor on this motion for summary judgment. The "evidence" that Travelers has presented in support of such an assertion is inadmissible hearsay and is not properly authenticated. See, Devino v. Maryland Casualty, 2004 WL 1965788 (Conn. Super. 2004) (an unauthenticated certificate of insurance is not admissible evidence at trial and may not be used to support a motion for summary judgment).[7]  In any event, those certificates are contradicted by the TIG Policy which does not contain any provision naming Weitz as an insured or additional insured.  In contrast, Travelers has conceded that each of the Travelers' policies contained a specific endorsement listing Weitz as an additional insured.  Travelers Rule 56 Statement at ¶ 8; TIG Rule 56 Statement at ¶ 4, and Exhibit "A," Complaint ¶ 13, and Exhibit "B," Travelers Policies, at ¶ 7. See, Zamora v. Safeco Ins. Co., 1997 WL 785601 *2 (Conn. Super. 1997) ("there is a genuine issue of material fact whether Zamora is an "insured" as defined in the subject policy."). See also, Berkowitz v. City of Stamford, 2001 WL 103971 *2 (Conn. Super. 2001) (since there was a genuine issue of material fact as to whether the insurance policy covers the incident underlying the claim, a motion for summary judgment as to the duty to defend was denied).

Similarly, to the extent that the Court does not deny Travelers' motion as a matter of law, the Court must still deny summary judgment in favor of Travelers because all of the claims turn on

---

[7]     Merry Charters, LLC v. Town of Stonington, 2004 WL 2471524 *6 (D. Conn. 2004) citing Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir.1997), "The principles governing admissibility of evidence do not change on a motion for summary judgment.... Therefore, only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.". See also, Great Country Bank v. Pastore, 241 Conn. 423, 696 A.2d 1254 (Conn. 1997), citing Home Ins. Co. v. Aetna Life & Casualty Co., 235 Conn. 185, 202-203, 663 A.2d 1001 (1995). "Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment. (Internal quotation marks omitted.)."

the intentions and understandings of both Travelers and TIG, which are in dispute. See, Webster Bank v. Acquisitions Un-Ltd., 1998 WL 389258 *1 (Conn. Super. 1998), citing Picataggio v. Romeo, 36 Conn.App. 791, 794, 654 A.2d 382 (1995) ("[a] question of intent raises an issue of material fact, which cannot be decided on a motion for summary judgment").[8] As an example, Travelers asserts that it was never aware that TIG reserved the right to withdraw from the defense of Weitz (Travelers Memo at 5 and 24). The documentary evidence, however, establishes that as early as September 6, 1996, TIG notified Travelers that it reserved the right to withdraw from the defense. Travelers Rule 56 Statement at ¶ 11 and Tab 1; TIG Rule 56 Statement at ¶ 12 and Exhibit "G" letter dated September 6, 1996. At a minimum, the September 6, 1996 letter creates a disputed issue of fact which the Court cannot resolve on summary judgment. See, Continental Cas. Co. v. Bank of Southeastern Connecticut, 1995 WL 871829 *1 (D. Conn. 1995), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("When litigants disagree as to certain facts, summary judgment can be granted only upon a determination that the factual disputes are not genuine, or that the disputed facts are not material. A material fact is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.' A disputed fact is material if it 'might affect the outcome of the suit under the governing law.'). Id. In this regard, TIG is entitled to take discovery of the relevant Travelers personnel concerning their knowledge and

---

[8]     See, Blue Ridge Ins. Co. v. Honegan, 2000 WL 1227307 * 5 (Conn. Super. 2000), "'[i]ntent is clearly a question of fact that is ordinarily inferred from one's conduct or acts under the circumstances of the particular case ... Thus, whether the actor knows the consequences of his or her conduct are certain or substantially certain to result from his or her act and still proceeds with the conduct, so that he or she should be treated by the law as though he or she in fact desired to produce the result, is a question of fact for the jury.' Morascini v. Commissioner of Public Safety, 236 Conn. 781, 809, 675 A.2d, 1340 (1996)." Id. " 'A question of intent raises an issue of material fact, which cannot be decided on a motion for summary judgment.' Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 111, 639 A.2d 507 (1994)." Id."

understanding of the September 6, 1996 letter.

Similarly, to the extent that Travelers is asserting any claim based on intentional wrongdoing, the record here does not permit the Court to resolve those issues on summary judgment except to the extent that they are not properly awarded in breach of contract claims. See, <u>General Elec. Capital Corp. v. DirecTv, Inc.</u>, 94 F.Supp.2d 190 (D. Conn.1999) (defendants' breach of contractual warranty claims do not allege conduct sufficiently outrageous to warrant punitive damages and plaintiffs' motion for summary judgment is denied, except that punitive damages shall not be available as a remedy); <u>In re Infiltrator Systems, Inc.</u>, 248 B.R. 707, 712 (D. Conn. 2000) ("the court, in the exercise of its discretion under Fed.R.Civ.P. 56(f), concludes that summary judgment on the issue of punitive damages is inappropriate and, therefore, denies the debtor's motion on the issue of punitive damages").

From its initial (but erroneous) offer, TIG reserved the right to withdraw from the defense. Nothing that Travelers has presented supports a conclusion that TIG intentionally misled Travelers. Indeed, the TIG internal memoranda referenced by Travelers demonstrates that TIG genuinely continued to question whether Weitz had insured status under the TIG Policy. Travelers Rule 56 Statement at ¶ 24 and Tabs 8, 14, 17; TIG Rule 56 Statement ¶ 10 and Exhibit "F". When TIG later concluded that Weitz did not have insured status under the TIG Policy, TIG notified Travelers and Weitz.

Travelers has not presented any admissible evidence that, on the merits, Weitz is entitled to coverage under the TIG policy, or that TIG's coverage position is incorrect or was asserted in bad faith. Moreover, as discussed below and in TIG's separate motion for summary judgment, even if TIG had paid a portion of the defense costs, it would have been entitled to recover those payments

from Travelers since, on the merits, TIG had no obligation to provide a defense to Weitz.

In short, if Travelers' claims are not denied on the merits as a matter of law, this record simply does not support summary judgment in Travelers favor which requires an evaluation of the parties' intentions and understandings.[9]

## B.    Breach of Contract Claims

### 1.    No Enforceable Contract Exists Between Travelers and TIG Because TIG's Offer Was Not Based on Consideration

Travelers spends considerable time in its memorandum (Travelers Memo at 9-21) arguing that Travelers and TIG had entered into an enforceable oral agreement which was confirmed in subsequent communications, and string-cites a variety of cases without providing any meaningful analysis of the cases in the factual context of this case. In doing so, Travelers has missed a fundamental principle of Connecticut contract law that is fatal to its claim. The undisputed material facts here establish that prior to TIG's September 6, 1996 offer to participate in paying for the defense of Weitz, Travelers was already contractually obligated to provide that defense and had begun to fulfill that obligation by retaining Milano & Wanat to defend Weitz. Connecticut case law, including cases cited by Travelers, is clear that TIG's offer, as well as the follow-up communications between Travelers and TIG, did not create an enforceable contract to share the defense costs in the Shoreline Action because Travelers was already obligated to provide the defense and TIG's

---

[9]    In addition, the amount and reasonableness of the defense fees paid by Travelers are also issues that can not be decided on this motion and are subject to further discovery. See, Connecticut Ins. Guar. Ass'n v. Union Carbide Corp., 217 Conn. 371, 385, 585 A.2d 1216, 1223 (Conn. 1991) (Genuine issue of material fact, precluding summary judgment for insured seeking reimbursement from Insurance Guaranty Association for legal services and other costs); E.R. Squibb & Sons, Inc. v. Lloyd's & Companies, 241 F.3d 154 (2d Cir. 2001) (material issues of fact existed as to whether insurer was obligated to pay insured's defense-related expenses based upon terms of underlying carriers' policies, precluding summary judgment).

*subsequent* "agreement" was not supported by consideration.

This principle is clearly articulated in several of the cases cited by Travelers in its Memo. Those cases dismissed contract claims, as here, because of a pre-existing obligation on the party asserting the breach of contract claim and the absence of consideration. Although citing those cases for general propositions of law, Travelers has inexplicably ignored the underlying analysis and holdings.

For instance, in <u>CLT Telecommunications Corp. v. Colonial Technologies Corp.</u>, 1999 WL 200700 (Conn. 1999), which was cited at pages 9, 11, and 22 of the Travelers Memo, the Court granted the defendant's motion dismissing plaintiff CLT's claims for breach of contract, intentional misrepresentation, negligent misrepresentation, and breach of fiduciary duty. In concluding that CLT had failed to meet the requirements of Connecticut law on its breach of contract claim, the Court reasoned:

> It is well established that an executory promise is unenforceable in the absence of consideration. [citing cases] "Consideration consists of a benefit to the party promising, or a loss to the detriment to the party to whom the promise is made." [citing case]. ***Given that CLT had already invested in G-Tel at this point in time, this alleged promise [by defendant Colonial to provide capital and credit to G-Tel] lacks consideration. Thus, this statement does not provide a basis for CLT's breach of contract claim.***

<u>Id</u>. at *5, n.3 (emphasis added).

Nowhere in Travelers Memo is this holding or analysis distinguished or even discussed.

Similarly, in <u>State National Bank of Connecticut v. Dick</u>, 164 Conn. 523, 325 A.2d 235 (1973), also cited at page 12 of the Travelers Memo, the Connecticut Supreme Court rejected a claim that there was a valid oral agreement to postpone the time within which the bank could demand re-payment of a mortgage loan. In that case, the defendant had asserted that there was an oral extension agreement; the trial court had agreed and concluded it was supported by consideration (an increase

in the interest rate on the loan). Id. at 238. The Supreme Court disagreed and concluded that the defendants "gave no consideration for the alleged oral extension agreement." Id. at 239. The Court pointed out that under the original loan, the defendants had agreed to pay a floating interest rate and "the defendants did at all times pay interest at this floating rate." Id. In light of that fact, the Supreme Court concluded that the oral agreement lacked consideration and the trial court had erred. Id. Again, there is no attempt by Travelers in its motion papers to explain why the decision in State National Bank of Connecticut v. Dick does not bar its contract claim against TIG.

In addition, Travelers also cites at page 12 of the Travelers Memo, Hipsky v. Allstate Ins. Co., 304 F.Supp.2d 284 (D. Conn. 2004). Hipsky was discussed in detail in TIG's Memo (at pages 11-13). The Court in Hipsky rejected the plaintiff's contract claim because it was not supported by "bargained for" consideration. Again, Travelers failed to discuss the holding in Hipsky and only quoted selectively from the decision. (Compare the quotation from Hipsky cited at page 12 of the TIG's Memo with the truncated quotation from Hipsky cited at page 12 of the Travelers Memo.) In addition, missing from the Travelers Memo is any discussion of the Restatement's requirement that the consideration must induce the making of a promise and the promise must induce the furnishing of consideration. Here, as in Hipsky, there was no such reciprocal relationship since Travelers was already obligated to provide a defense to Weitz.

The other cases cited by Travelers provide no support for Travelers' claims, once they are considered in the factual context of this case. Although it is true, as a general matter, that an exchange of promises is sufficient consideration to support a contract, Sartor v. Town of Manchester, 312 F.Supp.2d 238 (D. Conn. 2004), there were no exchanged promises between TIG and Travelers in this case. Travelers had not promised to defend Weitz in exchange for a reciprocal promise by

TIG. As discussed above, Travelers had already committed to meet its independent obligation to provide a defense to Weitz under its policies at least a month before any communication with TIG. Similarly, Travelers did nothing to induce TIG to agree to participate in the defense of Weitz. Independent of Travelers, TIG had preliminarily determined (albeit erroneously) that it had a duty to defend from which it subsequently withdrew once it determined that Weitz was not an insured under its Policy. As a result, given the separate and independent determinations made by both Travelers and TIG, the subsequent communications concerning sharing defense costs in the Shoreline Action did not create an enforceable contract between of those parties.

Moreover, Travelers' assertion that there was sufficient consideration to create an oral contract because both Travelers and TIG exchanged promises to each pay 50 % of the costs of defending Weitz in the Shoreline Action is incorrect and not supported by Connecticut law. "[A] promise to do that which one is already bound by his contract to do is not sufficient consideration to support an additional promise by the other party to the contract." New England Rock Services, Inc. v. Empire Paving, Inc., 53 Conn. App 771, 776, 731 A.2d 784, 786, cert. denied, 250 Conn. 921, 738 A.2d 658 (1999); Stackpole Moore Tryon Co. v. Career Path, Inc., 1990 WL 283913 at*1 (Conn. Super. 1999) ("It is a generally accepted rule of contract law that 'a promise to do that which one is already bound by his contract to do is not a sufficient consideration to support an additional promise by the other party to the contract.' Blakeslee v. Water Commissioners, 106 Conn. 642, 652 (Conn. 1927). For example, an agreement extending the time for payment of a loan must be supported by valid consideration 'and requires the debtor to do, or to promise to do something further than, or different from, that which he is already bound to do.' State National Bank v. Dick, 164 Conn. 523, 529 (Conn. 1973).") Similarly, Travelers was already bound by its policies to

provide a defense to Weitz.  Travelers cannot now claim that TIG's mistaken offer, a month after

Travelers had already hired counsel and agreed to provide a defense to Weitz, constitutes

consideration for Travelers undertaking that defense. Travelers was merely doing that which it was

already bound by its policies to do, which is *not* consideration to create an enforceable contract with

TIG.

### 2.   Travelers Cannot Satisfy its Burden to Prove All the Elements of a Breach of Contract Claim because Travelers Has Not Suffered Any Damages

As Travelers concedes (Travelers Memo at 13),  on a breach of contract claim, a plaintiff has

the burden to prove *all* of the following elements:  1) the formation of an agreement; 2) performance

by one party, 3) breach of the agreement by the other party, and 4) damages resulting from the

breach.  Maloney v. Connecticut Orthopedics, P.C., 47 F.Supp.2d 244, 249 (D. Conn. 1999);

Underkofler v. Community Health Care Plan, Inc., supra, 1999 WL 464530 at *3 (D. Conn 1999)

("the plaintiff has the burden to prove each element by a preponderance of the evidence.").  The

undisputed facts demonstrate that Travelers cannot meet its burden because it has not suffered any

damages.

In Underkofler (cited in Travelers Memo at 13), the defendant's summary judgment motion

seeking dismissal of plaintiff's breach of contract claim was granted because the Court concluded

that the plaintiff failed to produce any evidence showing that he suffered any damages due to the

defendant's alleged breach.  Similar to the situation here, "there is no evidence indicating that the

action of the defendant placed the plaintiff in a position different than he would have been in had the

action not taken place." Underkofler, 1999 WL 464530 at *4.  Although the defendant's action could

be termed a technical breach, the plaintiff was not harmed by it and, therefore, summary judgment

was granted dismissing the breach of contract claim.  <u>Underkofler</u>, 1999 WL 464530 at *4, citing

<u>Waicunas v. Macari</u>, 151 Conn. 134, 139, 193 A.2d 709 (Conn. 1963) ("Even though the failure of

the defendants to do the work might be considered a technical breach of the contract, the plaintiff

has suffered no actual damage, and no injustice was done to him when he was denied recovery on

this aspect of the case.").

Similarly, Travelers has not suffered any actual damages from TIG's offer to participate in

paying for the defense of Weitz because Travelers would have had to pay the defense costs whether

or not TIG made a contribution.  Further, had TIG reimbursed Travelers for any payments related

to the costs for defending Weitz, which it was not obligated to make, TIG would be entitled to

repayment from Travelers (see TIG Memo at 14-16), therefore putting both parties in the same place

they would have been in before any alleged breach.  Given TIG's right to recover any such payments,

Travelers' attempt to pursue a recovery under the purported "agreement" is not supported by

Connecticut law and is an unwarranted attempted by Travelers to obtain a windfall at the expense

of TIG.

Furthermore, Travelers assertion that "TIG never showed any basis to rescind the oral

agreement" (Travelers Memo at 20) is incorrect and does not support Travelers' claim that it suffered

monetary damages.  As discussed above, during all the time this matter has been in dispute,

Travelers has never come forward with evidence to establish that Weitz is an additional insured

under the TIG Policy, despite Travelers' clear self-interest to do so. Moreover, whether or not TIG

had a "basis" to rescind the agreement (which it did and was explained in TIG's counsel's letters[10])

does not prove that Travelers suffered monetary damages.  Regardless of TIG's involvement,

---

[10]    See TIG Rule 56 Statement at ¶ 15and Exhibits "I" and "J."

Travelers was contractually bound to pay the defense costs for Weitz, based on its own insurance policies. The offer by TIG to participate in the defense and subsequent withdrawal did not increase Travelers obligations or otherwise cause monetary damage to Travelers.

### C.    The Misrepresentation Claim

#### 1.    Travelers Cannot Satisfy the Elements of an Intentional or Negligent Misrepresentation Claim

Travelers incorrectly asserts that TIG made a negligent and/or intentional misrepresentation when it offered to participate in the defense of Weitz. However, as set forth in <u>Wesconn Co. v. ACMAT Corp.</u>, 2001 WL 438711 *2 (Conn. Super. 2001), to state a claim for negligent misrepresentation one must allege "1) a false representation was made as a statement of fact, 2) it was made for the guidance of another, 3) the party making the representation fails to exercise reasonable care in obtaining or communicating the information, and 4) another party justifiably relies on the representation to their detriment. <u>Beverly Hill Concepts v. Shatz, Ribicoff, and Cocton</u>, 247 Conn. 48, 57, 717 A.2d 724, 729 (Conn. 1998). A claim of intentional misrepresentation requires the same elements except misrepresentation is made intentionally rather than negligently. <u>Weisman v. Kaspar</u>, 233 Conn. 531, 539, 661 A.2d 530 (1995). " <u>Wesconn</u>, 2001 WL 438711 at *2.

The undisputed facts make clear that Travelers has not, and cannot, meet each of the four requirements to establish a misrepresentation claim under Connecticut law. In any event, the absence of detrimental reliance alone mandates that Travelers' claim be dismissed without the necessity of even analyzing the other three factors.

Although Travelers repeatedly asserts throughout its Memo that Travelers "relied" on TIG's representations (Travelers Memo at 13-4, 24-5, 31), there is no evidence that Travelers advanced

funds for the defense of Weitz in reliance upon TIG's representations. Travelers advanced funds for the defense of Weitz because it had a duty to defend Weitz in the Shoreline Action under its own policies and had committed to do so *before* TIG ever offered to participate in the defense. See, TIG Rule 56 Statement, Exhibit "A," Complaint ¶¶ 17 and 18.

Thus, it is irrelevant that a negligent misrepresentation does not require intent and even an innocent misrepresentation of fact may be actionable, Foy v. Pratt & Whitney Group, 127 F.3d 229, 233 (2d Cir. 1997). There was no detrimental reliance by Travelers based on any representation made by TIG. Moreover, there is no evidence that TIG sought to induce Travelers to assume an obligation that Travelers did not already have by the terms of its policies. Similarly, there is no evidence that TIG benefitted from representing that it would participate in the defense. As noted above, Travelers agreed to defend Weitz *before* TIG mistakenly offered to participate, therefore Travelers cannot claim that TIG induced Travelers to act based on its mistake. See, Craig v. Colonial Penn Insurance Co., 335 F. Supp.2d 296 (D. Conn. 2004) (the Court's review of plaintiff's testimony did not reveal any misrepresentation by defendant about the date of policy inception or existence of coverage for the fire, therefore there was no factual basis for plaintiff's claims of negligent and intentional misrepresentation claims, and summary judgment granted.)

Travelers allegations of intentional misrepresentation are also flawed because there is insufficient evidence from which a fact finder could reasonably conclude that the TIG intended to mislead Travelers. In this regard, the elements of a fraudulent misrepresentation claim (other than damages) "must be proven by the higher standard of 'clear and satisfactory evidence.'" Johnson v. Chesebrough-Pond's USA Co., 918 F. Supp. 543, 548 (D. Conn. 1996)(citation omitted). Further, on this summary judgment motion, all ambiguities and inferences must be drawn in favor of TIG

as the nonmoving party. Underkofler, supra, 1999 WL 464530 at *2. The facts show that TIG agreed to participate with the defense of Weitz under a full reservation of rights because it initially believed it was obligated to do so under its policies. This preliminary conclusion was later discovered to be incorrect and TIG withdrew from the defense as permitted by its reservation of rights letter. This subsequent change in position is not sufficient to establish the requisite intent for a misrepresentation claim. See, TIG's Memo at 20. See also, MacKay v. Rayonier, Inc., 75 F. Supp.2d 22 (D. Conn. 1999) (summary judgment motion granted dismissing a negligent misrepresentation claim because no false statements were made).[11]

Finally, "in order to recover for fraudulent or negligent misrepresentation, plaintiffs must allege injury that is the direct and proximate result of the alleged misconduct." Johnson v. Chesebrough-Pond's USA Co., supra, 918 F. Supp. at 549, citing Chanoff v. U.S. Surgical Corp., 857 F. Supp. 1011, 1017 (D. Conn.), aff'd, 33 F.3d 50 (2d Cir. 1994), cert. denied, 513 U.S. 1058 (1994).[12] Thus, in addition to showing that "but for" TIG's alleged misrepresentations Travelers would not have suffered any alleged damages, Travelers must also show that the misstatements were the reason it suffered these damages. Johnson, supra, 918 F. Supp. at 549. Simply stated, Travelers

---

[11]    As discussed above, to the extent that the Court does not dismiss Travelers's claims on the merits, summary judgment must still be denied because, at a minimum, there are disputed issues of fact concerning the understandings and intentions of the parties.

[12]    "Like any cause of action sounding in negligence, negligent misrepresentation requires a showing of proximate cause." Johnson, supra, 918 F. Supp. at 549, citing Revak v. SEC Realty Corp., 18 F.3d 81, 90 (2d Cir.1994). "The damages to be recovered ...[must be] the natural and proximate consequence of the fraudulent representation complained of; and those results are proximate which must be presumed to have been within the contemplation of the defendant as the probable consequence of his fraudulent representations." Johnson, 918 F. Supp. at 549, citing Kilduff v. Adams, Inc., 219 Conn. 314, 323-324, 593 A.2d 478, 484, quoting Kornblau v. McDermant, 90 Conn. 624, 632, 98 A. 587 (1916).

can not do so.

Travelers reliance on <u>Johnson</u>, <u>supra</u>, 918 F.Supp. 543 is again misplaced.  Travelers Memo at 23-24.  In <u>Johnson</u>, an employee brought an action against his former employer who sought summary judgment dismissing  all eight counts of plaintiff's complaint, one of which was for misrepresentation.  Plaintiff claimed that had he known the truth about a job vacancy, he never would have accepted the position with defendant.  Plaintiff asserted that as a result of the misrepresentations he suffered loss of income, career opportunities, benefits, bonuses and other prerequisites of employment. Plaintiff argued that "but for these misrepresentations, Johnson would not have accepted the job; but for his acceptance of the job, Johnson would not have been terminated from it; and but for his termination, plaintiff would not have suffered these injuries relating to the loss of his employment." <u>Id</u>. at. 549.  The Court rejected these claims because plaintiff could not establish causation. Even if plaintiff could establish that the  representations were false, he could not succeed in proving that these representations were the proximate cause of his injuries because the alleged misrepresentations did not involve the reasons for Johnson's termination. <u>Id</u>.

The same situation is present here. Travelers advanced funds for the defense of Weitz because it had a contractual obligation to defend Weitz in the Shoreline Action under its policies and had committed to do so *before* TIG ever offered to participate in the defense. Even assuming that Travelers can establish negligent misrepresentations (which it cannot), it still cannot establish the required proximate causation. Travelers has provided no explanation as to how it suffered monetary loss by "permitt[ing] TIG to obtain copies of confidential attorney-client and work product communications between Weitz, Travelers, and Milano & Wanat, and coordinat[ing] its defense of Weitz with TIG."  Travelers was already obligated to pay for Weitz's defense, therefore any

expenses Travelers incurred had nothing to do with TIG's participation, thereby negating any causation arising from TIG's offer to participate in the defense.  See TIG Memo at 20.

### D.    The Estoppel Claim

With its estoppel claim, Travelers is trying to take a second bite at the apple because Travelers has failed to prove a claim for breach of contract. [13]  Travelers argues that because TIG was involved with the defense of Weitz for over four years, TIG is now estopped from withdrawing from the defense and is obligated to pay 50% of the defense costs.  However, an insurer is not estopped from withdrawing a defense if it has reserved the right to withdraw and withdrawal does not cause prejudice to the insured.  See, Mongelli v. Chicago Ins. Co., 2002 WL 32096578 (E.D.N.Y. 2002) (citations omitted).  See TIG Memo at 23.

TIG's September 6, 1996 reservation of rights letter set forth  a comprehensive reservation of rights, including the right to withdraw from the defense (Rule 56 Statement ¶ 13, Exhibit G) and TIG's withdrawal of its offer to participate in the defense did not prejudice Weitz.  Weitz was not left without a defense, nor forced to continue its own defense by hiring personal counsel.  See, Insurance Co. of North America, 118 Ohio App.3d at 331, 692 N.E.2d at 1040 (1997).  Consequently, TIG should not be estopped from withdrawing from the defense.

### 1.    Travelers' Promissory Estoppel Claim Fails Because Travelers Cannot Establish That It Changed Its Position Or Suffered Any Injury In Reliance On TIG's Actions.

Travelers also argues that it is entitled to assert an estoppel claim against TIG because

---

[13]    Walker v. KFC Corp., 728 F.2d 1215, 1220 (9th Cir. 1984) ("Promissory estoppel is not a doctrine designed to give a party ... a second bite at the apple in the event it fails to prove a breach of contract."), cited by Hood v. Aerotek, Inc., 2002 WL 294762 *5 (D. Conn. 2002) (dismissing a promissory estoppel claim on summary judgment).

Travelers relied on TIG's "promise." [14] For the reasons discussed at length above in connection with the contract claims and misrepresentation claims, Travelers cannot establish detrimental reliance because Travelers simply did not change its position based on anything that TIG did or did not do. It is beyond any reasonable dispute that Travelers had a pre-existing obligation under the Travelers policies to defend Weitz and had already agreed to do so at the time TIG first offered to participate in the defense in September 1996 under a full reservation of rights, including the right to withdraw from the defense. TIG's offer did not change Travelers' contractual obligation in any way, nor did any communications between the September 1996 and April 2001 when TIG's counsel advised Weitz and Travelers that Weitz was not an insured under the TIG policy and TIG was withdrawing from the defense.

Under Connecticut law, "[i]t is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." Craig v. Colonial Penn Insurance Co., 335 F.Supp.2d 296 (D. Conn. 2004) (plaintiff pointed to no evidence that would indicate that Colonial Penn induced plaintiffs into refraining from filing suit until the 12 month filing deadline had passed therefore court rejected promissory or equitable estoppel claims), citing Chotkowski v. State, 240 Conn. 246, 268, 690 A.2d 368 (Conn. 1997). In the very first communication from TIG, the September 6, 1996 letter, TIG fully reserved its rights concerning coverage for Weitz under the TIG Policy and explicitly

---

[14]    The question of whether statements are promissory is a question of fact..." Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 662 A.2d 89 (Conn. 1995) at *17 n. 6. This is another reason why summary judgment in Travelers' favor must be denied, since there are fact issues that must be explored in discovery.

reserved the right to withdraw from the defense. Nowhere in its motion papers does Travelers explain its understanding of TIG's position, as reflected in that letter. It only argues that this letter unconditionally obligated TIG to participate in the defense. That interpretation is simply contradicted by the text of the letter and, as discussed above, TIG is entitled to explore in discovery the knowledge and understanding of the relevant Travelers personnel concerning this letter.[15]

Travelers also argues that TIG "reaped the benefits of its Oral Agreement with Travelers while refusing and failing to provide anything in return." (Travelers Memo at 27) There is no factual basis for such an assertion. Travelers never explains what benefits TIG received since, as discussed above, Travelers has never provided any evidence that TIG was obligated under its Policy to provide a defense to Weitz. Thus, this is *not* a case in which an insurer (TIG) wrongfully refused to defend its insured and a co-insurer (Travelers) was forced to pay 100% of the costs to protect the common insured, which it is now attempting to recover.

Stripped of the generalizations and rhetoric, by this litigation, Travelers is seeking a windfall in order to reduce by half its contractual obligation to pay for the defense of its insured Weitz by trying to shift 50% of those costs to TIG which had no contractual obligation to Weitz. For the reasons set forth above and in TIG's separate motion for summary judgment, Travelers' motion for summary judgment should be denied and it's claims against TIG should be dismissed on the merits.

### E.    Punitive Damages and Interest

#### 1. Travelers is Not Entitled to Punitive Damages or Interest Pursuant to Connecticut Law

The rule in Connecticut with respect to recovering punitive damages for a breach of contract

---

[15]    At a minimum, these issues preclude granting summary judgment in Travelers' favor on this motion.

claim provides that, "[p]unitive damages are not ordinarily recoverable for breach of contract. Absent an allegation that there is 'wanton and malicious injury, evil motive and violence' punitive damages are not available for a breach of contract claim." Morse v. Hopkins School, 1999 WL 130610 *1 (Conn. Super. 1999), citing Triangle Sheet Metal Works, Inc. v. Silver, 154 Conn. 116, 127, 222 A.2d 220, 225 (Conn. 1966).[16] See also, L.G. Defelice, Inc. v. Fireman's Ins. Co., 41 F. Supp.2d 152 (D. Conn. 1998), citing Gargano v. Heyman, 203 Conn. 616, 622, 525 A.2d 1343, 1347 (Conn.1987) ("the court has ultimate discretion as to whether to award punitive damages under Conn. Gen. Stat. §42-110g(a)"); Thyssen, Inc. v. S.S. Fortune Star, 777 F.2d 57, 63 (2d Cir. 1985), ("the award of punitive damages is discretionary with the trial court. This means only that even when the elements of a case for punitive damages have been established, the trial court is not bound to award them--not that a court may award punitive damages in a case where a settled rule of law prohibits such an award").

Furthermore, punitive damages are not properly granted on summary judgment. In re Infiltrator Systems, Inc., 248 B.R. 707 (D. Conn. 2000) ("the court, in the exercise of its discretion under Fed.R.Civ.P. 56(f), concludes that summary judgment on the issue of punitive damages is inappropriate and, therefore, denies the debtor's motion on the issue of punitive damages").

Also, parties claiming damages for breach of contract must have a statutory basis for a claim of interest. See, Foley v. Huntington Co., 42 Conn. App. 712, 682 A.2d 1026 (Conn. App.1996), citing Westport, supra, 235 Conn. at 36-44, 664 A.2d 719; The New York, New Haven & Hartford

---

[16]    The rule in Connecticut with respect to recovering punitive damages for a breach of contract claim provides that, "[p]unitive damages are not ordinarily recoverable for breach of contract." Triangle Sheet Metal Works, Inc. v. Silver, 154 Conn. 116, 127, 222 A.2d 220, 225 (1966). Absent an allegation that there is "wanton and malicious injury, evil motive and violence" punitive damages are not available for a breach of contract claim. Id.

Railroad Co. v. The Ansonia Land & Water Power Co., 72 Conn. 703, 703-704, 46 A. 157 (Conn. 1900); Nielsen v. Wisniewski, 32 Conn. App. 133, 140, 628 A.2d 25 (Conn. App. 1993). "Section 37-3a provides a substantive right that applies only to certain claims." Foley, 42 Conn. App. at 739, citing Paine Webber Jackson & Curtis, Inc. v. Winters, 22 Conn. App. 640, 651-53, 579 A.2d 545, cert. denied, 216 Conn. 820, 581 A.2d 1055 (Conn. 1990). "It does not allow prejudgment interest on claims that are not yet payable, such as awards for punitive damages; Westport, supra, 235 Conn. at 37, 664 A.2d 719; or on claims that do not involve the wrongful detention of money; Gionfriddo v. Avis Rent A Car System, Inc., 192 Conn. 301, 307, 472 A.2d 316 (Conn. 1984)." Foley, supra, 42 Conn. App. at 740.

Without citing any case law to support its position, Travelers argues that it is entitled to punitive damages based on defendant's alleged misrepresentations. The record here simply does not support any award, particularly on summary judgment where all inferences must be drawn in favor of the nonmoving party, TIG. Moreover, as a matter of law, Travelers cannot sustain its burden to establish entitlement to punitive damages or prejudgment interest. See, Venturi v. Savitt, Inc., 191 Conn. 588, 592, 468 A.2d 933, 935 (Conn. 1983) ("[T]he flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence."); Ames v. Sears, Roebuck & Co., 8 Conn. App. 642, 655, 514 A.2d 352, 359 (Conn. App. 1986) ("As a general rule, punitive damages may be awarded only for outrageous conduct"). See also, Nielsen v. Wisniewski, 32 Conn.App. 133, 139, 628 A.2d 25, 32 (Conn. App. 1993), (court determined that as a matter of law § 37-3a was inapplicable to claims for punitive damages because those damages do not become payable before judgment).

**F.    Equitable Contribution**

**1.  Travelers is Not Entitled to Equitable Contribution Because Weitz is Not an Additional Insured Under the TIG Policies**

The right of one insurer to seek contribution from another insurer only arises when the insurers have insured the same risk and interest, or common liability upon the same obligation. It is undisputed that Travelers had an obligation to defend Weitz and TIG does not.[17] It is only because of TIG's erroneous preliminary coverage position that Travelers is now claiming an entitlement to have its own undisputed obligation reduced by 50%, at the expense of TIG.  There is no insured/insurer relationship between Weitz and TIG. The only such relationship is between Weitz and Travelers.

Contribution is a "'payment made by each, or by any, of several having a common interest or liability of his share in the loss suffered, or in the money necessarily paid by one of the parties in behalf of the others.'" Crotta v. Home Depot, 249 Conn. 634, 732 A.2d 767 (Conn. 1999) (plaintiff had no basis upon which to assert common-law claim for contribution), citing Fidelity & Casualty Ins. Co. v. Sears, Roebuck & Co., 124 Conn. 227, 231, 199 A. 93 (Conn. 1938). Also, "in determining whether one insurer is entitled to contribution from another, 'courts should consider the nature of the claim, the relation of the insured to the insurers, the particulars of each policy and any other equitable considerations.'" Truck Insurance Exchange v. Unigard Ins. Co., 79 Cal. App.4th 966, citing Fire Ins. Exchange v. American States Ins. Co. 39 Cal. Rptr. 2d 135 (1995). Accord, Signal Companies, Inc. v. Harbor Ins. Co., 27 Cal.3d 359 (1980).  See Travelers Memo at 29-30.

---

[17]    Travelers is *not* asserting that TIG had an obligation under its policy to defend Weitz. See Complaint, ¶¶ 32, 34, 41 and 46 and discussion at pp. 5, 13   above.

An insurer seeking contribution must show that the other insurer was liable at the time of the loss upon a policy which covered the risk involved and no contribution can be had if the obligations of the insurers are essentially different. Exchange Mut. Indemnity Ins. Co v. Zurich General Accident, Fire & Life Ins. Co., 122 Misc. 386, 202 N.Y.S. 720 (1924) ("to justify contribution between parties they must be under a common burden or liability"), citing Hopkins v. Matchless Metal Polish Co., 121 A. 828 (Conn. 1923) ("it is doubtful if claimant could have succeeded in Connecticut").

Application of these equitable principles makes clear that Travelers is not entitled to contribution from TIG. Indeed, it is evident that requiring TIG to contribute 50% of the defense costs in order to reduce Travelers expenses would permit Travelers, which is Weitz's insurer, to reap an unwarranted windfall by having TIG pay for the defense of a party that is not covered by its policy. Sacharko v. Center Equities Limited, 2 Conn. App. 439, 447, 479 A.2d 1219, 1224 (Conn. App.1984) (the court noted that damages should not extend to the insured's other insurer because that would "convert a rule of compensation for loss into an opportunity for windfall").

Further, as discussed in the TIG's Memo at 14-16, had TIG made any payments based on the erroneous coverage opinion, it would have been entitled to recover those payments under an unjust enrichment theory of recovery. Travelers' undisputed obligations to Weitz would have been reduced by TIG's erroneous payments and an insurer that has provided a defense to an insured may seek reimbursement of the defense costs expended on uncovered claims. Thus, Travelers' alleged entitlement to equitable contribution fails.

## V.    CONCLUSION

For all of the foregoing reasons set forth herein, TIG Insurance Company respectfully moves

that the Court grant its motion for summary judgment as to all five counts of Travelers' Complaint.

Respectfully submitted,

FOR THE DEFENDANT

TIG INSURANCE COMPANY,

By: _____

Louis G. Corsi (ct 26157)

LANDMAN CORSI BALLAINE & FORD P.C.

120 Broadway - 27th Floor

New York, New York  10271-0079

Tel (212) 238-4800

Fax (212) 238-4848

E-Mail: lcorsi@LCBF.com

## CERTIFICATION

I hereby certify that on November 30, 2004 a copy of the foregoing **TIG INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO TRAVELER'S MOTION FOR SUMMARY JUDGMENT** was sent by overnight messenger, for delivery on December 1, 2004 to:

> Peter M. Nolin
> Sandak Friedman Hennessey & Greco, LLP
> 970 Summer Street
> Stamford, CT 06905

> Jeffrey Tinley
> Tinley Nastri Renehan & Dost, LLP
> 601 North Main Street, 2nd Floor
> Waterbury, Connecticut 06702

Louis G. Corsi