**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **TRAVELERS CASUALTY & SURETY** | : | |
| **COMPANY OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION  NO.** |
| **v.** | : | **302CV408(AWT)** |
| | : | |
| **TIG INSURANCE COMPANY,** | : | |
| | : | |
| **Defendant.** | : | **DECEMBER 1, 2004** |

<u>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**</u>
<u>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

The Plaintiff, Travelers Casualty & Surety Company of America ("Travelers"),

hereby objects to and submits its Memorandum in Opposition to Defendant's Motion for

Summary Judgment.  The Defendant, TIG Insurance Company, f/k/a Transamerica Insurance

Group ("TIG"), in its motion for summary judgment has wrongly characterized this suit as

being about insurance defense coverage by stating that "[i]n this lawsuit, Travelers is

claiming that TIG's offer to defend Weitz under a reservation of rights constitutes an

enforceable contract with Travelers."  (*See* TIG's Memorandum of Law in Support of Motion

for Summary Judgment, hereinafter "TIG's Memorandum," at pg. 3).  This is not what

Travelers is claiming in this suit, rather Travelers is claiming that TIG and Travelers entered

into an oral agreement to split the costs of defending Weitz and that TIG breached that

agreement by failing and refusing to pay any of the Weitz defense costs that Travelers has

incurred and paid since 1996.  This is not an insurance defense coverage case between an

insurer and its insured.  This case is about basic contract principles and the equitable remedies that are available when a breach of contract occurs.  TIG's arguments throughout its Memorandum make an effort to draw this Court's attention away from the real focus of this suit, TIG's breach of its oral agreement with Travelers to split the costs of defending Weitz in the Shoreline Action on a 50/50 basis.

Based on the record of Travelers' Motion for Summary Judgment including the affidavits and appendix submitted with that Motion, TIG's Motion for Summary Judgment must be denied and Travelers is entitled to summary judgment.  The arguments that TIG raises in its Motion and supporting Memorandum must fail for the following reasons: 1) TIG and Travelers entered into an oral agreement to split the Weitz defense costs and the agreement is enforceable as an oral contract; 2) Travelers did not mistakenly believe that TIG owed Weitz a defense in the Shoreline Action; rather as a result of uncertainty as to its coverage, TIG agreed to defend Weitz subject to a reservation of rights and then TIG repeatedly represented that Weitz was an additional insured and that it would participate in the defense of Weitz on a cost sharing basis with Travelers; 3) TIG has misinterpreted Travelers' misrepresentation claim to be a fraudulent misrepresentation claim when in fact Travelers has adequately plead and proven an intentional and/or negligent misrepresentation claim against TIG; and 4) TIG is estopped from withdrawing its promise to pay fifty percent of the Weitz defense costs and from withdrawing its defense of Weitz because Travelers changed its position in reliance on TIG's promise.

## ARGUMENT

**I.    BECAUSE TIG AND TRAVELERS EACH INDEPENDENTLY AGREED TO DEFEND WEITZ, THE FACT THAT TRAVELERS AGREED TO DEFEND WEITZ BEFORE ENTERING INTO THE ORAL AGREEMENT WITH TIG IS IRRELEVANT TO THE FACT THAT THE ORAL AGREEMENT IS ENFORCEABLE AS AN ORAL CONTRACT.**

In an effort to argue that no contract exists between TIG and Travelers because the exchange of promises was not supported by consideration, TIG has mistakenly placed an emphasis on the fact that Travelers agreed to defend Weitz before any communications took place between TIG and Travelers about sharing the Weitz defense costs.  TIG's argument must fail because TIG and Travelers both independently agreed to defend Weitz in the Shoreline Action under their own reservations of rights; therefore, the fact that Travelers agreed to defend Weitz before entering into the Oral Agreement[1] with TIG has no bearing on the fact that the Oral Agreement is enforceable as an oral contract.

**A.    Prior to entering into the Oral Agreement, TIG and Travelers each independently agreed to defend Weitz under a reservation of rights.**

In August 1996, Travelers agreed to provide Weitz with a defense of Shoreline's claims subject to a full reservation of rights, and Travelers retained the Connecticut firm of Milano & Wanat to defend Weitz in the Shoreline Action.  (*See* Affidavit of Gerald Zwick at

---

[1] The term "Oral Agreement" as used in this brief was defined on page 10 of  Travelers' Memorandum of Law in Support of Motion for Summary Judgment: "The September 1996 telephone conversation between Yeager on behalf of TIG and Zwick on behalf of Travelers in which they discussed and agreed that Travelers and TIG would split the costs of defending Weitz in the Shoreline Action on a 50/50 basis constituted an oral agreement (the "Oral Agreement").  (Affidavit of Gerald Zwick at ¶ 13, Rule 56 at ¶ 16)."

¶ 8, Rule 56 at ¶ 10).[2]  Prior to entering into the Oral Agreement with Travelers, TIG itself

had independently agreed to defend Weitz under a reservation of rights.  TIG states in its

Memorandum that TIG

> by letter dated September 6, 1996, advised Weitz that TIG
> would provide a defense for Weitz under a reservation or
> rights.  TIG offered to share in the defense of Weitz in the
> Shoreline Action on an 'equitable basis' with other insurers.
> Rule 56 Statement at ¶ 12 and Exhibit "G" letter dated
> September 6, 1996.

(TIG's Memorandum at pg. 6).  Thus, TIG and Travelers were in the same position.  Both

insurers questioned whether their policies provided coverage to Weitz and both agreed to

provide a defense subject to a later determination on coverage.  Thereafter, in September

1996 during a telephone conversation between Yeager on behalf of TIG and Zwick on behalf

of Travelers, the insurers discussed and agreed that Travelers and TIG would split the costs

of defending Weitz in the Shoreline Action on a 50/50 basis.  Therefore, the fact that

Travelers had agreed to defend Weitz under a reservation of rights before TIG agreed to

defend Weitz under a similar reservation of rights is irrelevant to the fact that the Oral

Agreement is enforceable as an oral contract.  Indeed, part of the reason each insurer agreed

to split costs is both insurers wanted to save part of the costs of defense because of their

questions about coverage.

In an attempt to negate the fact that the Oral Agreement is an enforceable oral

contract, TIG unpersuasively tries to correlate the issue of consideration with the fact that

---

[2] References and citations to affidavits in this brief refer to the affidavits attached to *Plaintiff's Motion for Summary Judgment*.  References and citations to "Rule 56" in this brief refer to Travelers' Rule 56(a)1 Statement of Material Facts Not in Dispute submitted along with *Plaintiff's Motion for Summary Judgment*.

Travelers had agreed to defend Weitz prior to entering into the cost splitting agreement with TIG. Following TIG's argument that no contract exists between TIG and Travelers because Travelers had agreed to defend Weitz under a reservation of rights prior to entering into an agreement with TIG to share the Weitz defense costs is illogical and is not supported by the law. The issue here is not which insurer agreed to defend Weitz first. That fact is simply irrelevant. Both insurers independently agreed to defend Weitz and it is because of those defense agreements that both insurers entered into the oral cost splitting agreement. There is sufficient consideration to support the Oral Agreement as an oral contract because TIG and Travelers exchanged promises to each pay fifty percent of the costs of defending Weitz in the Shoreline Action, and then, with full knowledge that each insurer questioned coverage, each agreed to let the other participate in the Weitz defense despite those coverage questions.

> **B.**    **Consideration for the Oral Agreement exists and is based on the mutual exchange of promises between TIG and Travelers as well as on Travelers' performance under the terms of the Oral Agreement.**

TIG's argument that there is no contract between TIG and Travelers because the exchange of promises was not supported by consideration must fail. Under Connecticut law consideration in the form of an exchange of promises between TIG and Travelers is adequate to support a contract. *See Osborne v. Locke Steel Chain Co.,* 153 Conn. 527, 218 A.2d 526, 531 (1966). *See also Town of Trumbull v. State of Connecticut,* 206 Conn. 65, 73, 537 A.2d 431 (1988); *Sartor v. Town of Manchester*, 312 F.Supp.2d 238, 244 (D.Conn. 2004). Moreover, further consideration exists in the form of Travelers allowing TIG to participate in

defense of Weitz and TIG avoiding the necessity of hiring its own defense counsel per its

promise to Weitz.  Consideration can also be a benefit to the party promising.  *Finlay v.*

*Swirsky,* 103 Conn. 624, 131 A. 420, 423 (1925).

To support its argument that no contract exists between TIG and Travelers because

the exchange of promises in September 1996 to split the Weitz defense costs was not

supported by consideration, TIG relies solely on the fact that in August 1996 Travelers had

agreed to defend Weitz.  While TIG does not directly state this in Part B of its Memorandum,

the inference can be made that what TIG is really saying is that by independently agreeing to

defend Weitz in August 1996, Travelers by the same token had agreed to pay the costs

associated with defending Weitz; therefore, consideration to support an oral contract between

Travelers and TIG to split the Weitz defense costs does not exist because Travelers had

already agreed to defend Weitz and to pay the costs of defending Weitz.  This type of circular

argument makes no sense.  The fact that Travelers agreed with Weitz to provide Weitz a

defense does not preclude an agreement between Travelers and TIG to split that defense.

Each insurer has a right to control the defense of the insured.  Here each ceded some control

and agreed between the two insurers to split the defense costs.  Indeed, in its reservation

letter TIG expressly advised Weitz that it might share defense costs with other insurers:

> With respect [to] the Shoreline lawsuit which TIG has agreed
> to defend subject to a  reservation of rights, one or more of the
> other carriers which insured Weitz during the relevant periods
> may also agree to defend Weitz.  If so, TIG anticipates working
> with those insurers to coordinate Weitz's defense.  Such
> coordination may include an agreement to share the costs of

> Weitz's defense in some equitable manner and to select
> counsel to defend Weitz in the lawsuit.

(*See* TIG's September 6, 1996 letter to Weitz, Exhibit G of TIG's Local Rule 56(a)1 Statement; also attached to Plaintiff's papers at Appendix Tab1).

Thereafter, TIG and Travelers agreed to alter their position in defending Weitz in the sense that now, because of the Oral Agreement, they would be sharing detailed information on the costs and activities of Weitz's defense counsel as well as sharing confidential attorney-client and work product documents relating to the Weitz defense. Moreover, TIG which had independently promised to defend Weitz, avoided the need to hire separate defense counsel. TIG's argument that consideration does not exist is therefore without merit because TIG ignores the fact that TIG and Travelers exchanged promises to each pay fifty percent of the costs of defending Weitz, that each agreed to let the other participate in the defense of Weitz, and that Travelers fully performed under the Oral Agreement.

The Oral Agreement that TIG and Travelers entered into in September 1996 was based on a mutual understanding exchanged between Yeager and Zwick that TIG and Travelers were each obligated to each other to pay their fifty percent share of the Weitz defense costs. Both Yeager on behalf of TIG and Zwick on behalf of Travelers recorded their recollection of the Oral Agreement made during their September 1996 telephone conversation. (*See* Appendix Tab 2, Rule 56 at ¶ 17; Appendix Tab 3, Rule 56 at ¶ 19).[3] Zwick confirmed the Oral Agreement in February 1998 by letter and Yeager subsequently

---

[3] References and citations to "Appendix Tab" in this brief refer to Plaintiff's Appendix to Local Rule 56(a)1 Statement of Material Facts Not in Dispute in Support of Plaintiff's Motion for Summary Judgment.

acknowledged that agreement in writing in March 1998.  (*See* Appendix Tabs 16 & 18, Rule 56 at ¶ 32 & 34).  After entering into the Oral Agreement, Travelers and TIG remained in constant communication through 2000 about the status of Weitz's defense and about the costs associated with it.  Therefore, consideration for the Oral Agreement exists and is based on the mutual exchange of promises between TIG and Travelers to equally share the costs of defending Weitz.

Consideration for the Oral Agreement exists and is also based on Travelers' performance under the terms of the Oral Agreement.  The terms of the Oral Agreement were that Travelers and TIG would equally share the costs associated with the Weitz defense. Travelers has performed more than it promised to do under the Oral Agreement because since 1996 it has incurred and subsequently paid all of the Weitz defense costs.  Furthermore, solely because of the Oral Agreement and in reliance upon TIG's representations from 1996 to 2000 that it was participating in the Weitz defense on a cost sharing basis with Travelers, Travelers from 1996 to April 2001 provided TIG with detailed records on the costs and activities of Weitz's defense counsel and permitted TIG to obtain copies of confidential attorney-client and work product communications between Weitz, Travelers and Milano & Wanat.  (*See* Appendix Tabs 16, 25, 30, 39, & 44,  Rule 56 at ¶¶ 32, 52, 53, 56, 64, 67, 70). If Travelers and TIG had not entered into the Oral Agreement, Travelers would have no incentive or obligation to give TIG access to records on the costs and activities of Weitz's defense counsel or access to confidential attorney-client and work product communications. Even though TIG and Travelers had both independently agreed to defend Weitz, without the

Oral Agreement there was no reason for them to share such privileged information with each other.  Indeed, but for the cost sharing agreement, TIG would have been obligated to hire separate counsel for Weitz at its own expense and would have had no access to Milano & Wanat's work.  Also, without the Oral Agreement, Travelers may have taken a difference course of action in the Weitz defense in terms of legal strategy or in terms of advancing funds for the Weitz defense.  The events that took place from 1996 through 2000 in terms of TIG's and Travelers' relationship with each other and their shared defense of Weitz are undisputed facts of this case which show that the Oral Agreement is an enforceable oral contract.

TIG's reliance on *Hipsky v. Allstate Ins. Co.*, 304 F.Supp.2d 284 (D.Conn. 2004) (TIG's Memorandum at pgs. 11-13) to support its argument that there was no consideration between Travelers and TIG is without merit.  First, the facts of *Hipsky* are not remotely similar to the facts of this case.  In *Hipsky*, a third-party claimant brought suit against an automobile insurer alleging breach of duty of good faith and fair dealing and violations of the Connecticut Unfair Insurance Practices Act (CUIPA) and the Connecticut Unfair Trade Practices Act (CUTPA); Allstate brought a motion for summary judgment.  The plaintiff in *Hipsky* did not bring a breach of contract claim.  The plaintiff was injured in a car accident also involving an Allstate insured, and after learning that the plaintiff was making a claim for damages against its insured, Allstate sent the plaintiff a form Quality Service Pledge (QSP) which stated that "'[b]ecause you have been in an accident with an Allstate policyholder, we will provide you with quality service.'"  *Id.* at 286.  The court stated that because he was not

a party to the Allstate policy, the plaintiff could only survive summary judgment on his breach of duty of good faith and fair dealing claim if there was some contract between himself and Allstate. *Id.* at 288. Hipsky claimed that the QSP constituted a contract but the court held that "Hipsky did not furnish any consideration to support a contract between the parties; Hipsky neither gave nor promised anything in exchange for the QSP." *Id.* at 289. The *Hipsky* court's holding is logical because Allstate sent Hipsky the QSP without bargaining about the terms of the QSP with him and without even speaking to him about the QSP. There was no exchange of promises between Allstate and Hipsky, there was no mutual understanding exchanged between Allstate and Hipsky. Indeed Hipsky was a party adverse to Allstate's insured and not a co-participant in the insured's defense.

The *Hipsky* case is inapposite to the facts of this case because TIG and Travelers exchanged promises and a mutual understanding that TIG and Travelers were obligated to each other to each pay their fifty percent share of the costs incurred in defending Weitz. As demonstrated above, consideration for the Oral Agreement exists and is based on the exchange of promises between Travelers and TIG to each pay fifty percent of the costs of defending Weitz and is also based on Travelers' performance under the terms of the Oral Agreement. Furthermore, the *Hipsky* court also stated that

> In the absence of consideration, "detrimental reliance may substitute for missing consideration." *Lestrange v. Kontout,* 1996 WL 166464, at *1 (citing *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,* 202 Conn. 206, 213, 520 A.2d 217 (1987)); *Nichols v. Clark,* 1997 WL 12420, *6 (Conn.Super., Jan. 2, 1997)("[w]hen detrimental reliance is demonstrated by the promisee's action or forbearance, the

> detrimental reliance satisfies the necessity of consideration
> required for a valid contract.").

*Id.* at 289.  Therefore, in the alternative, should this Court find that there was insufficient

consideration or no consideration to support the Oral Agreement, Travelers can justifiably

state that detrimental reliance can substitute for the missing consideration.  Travelers

detrimentally relied upon TIG's repeated representations from 1996 through 2000 that it

would honor its commitment to pay half of the costs of the Weitz defense.  That reliance is

demonstrated by Travelers' continued willingness to share defense information and to allow

TIG to participate in the defense.

### C.    TIG cannot impute to Travelers its own self-proclaimed mistake of believing that it owed Weitz a defense in the Shoreline Action.

In an attempt to minimize the fact that that it took TIG over four years from

September 1996 to April 2001 to conclude that it allegedly did not owe Weitz a defense in

the Shoreline Action, TIG erroneously tries to impute its own self-proclaimed mistake to

Travelers by arguing that both TIG and Travelers mistakenly believed that TIG owed Weitz a

defense in the Shoreline Action.[4]  Even though TIG has breached the Oral Agreement by

failing and refusing to pay Travelers fifty percent of the $887,256 that Travelers has incurred

and paid in legal fees to Milano & Wanat and in related costs in the defense of Weitz from

August 1996 through January 2003, TIG oddly devotes three pages of its Memorandum to

arguing that even if TIG had reimbursed Travelers for any defense costs pursuant to an

---

[4] Mistake is a special defense which needs to be pled.  *See Sudul v. Computer Outsourcing Services, Inc.*, 917 F.Supp. 1033, 1044 (S.D.N.Y. Mar 10, 1996).  TIG has never raised mistake, mutual or unilateral, as a defense.

agreement to split defense costs, TIG would have been entitled to recover those payments on

an unjust enrichment theory.

> A mutual mistake occurs when 'both parties to a bilateral
> transaction share the same erroneous belief and their acts do
> not in fact accomplish their mutual intent.' 21 N.Y.Jur.2d
> *Contracts* § 121 (1982). A 'unilateral mistake' occurs when
> 'only one of the parties to a bilateral transaction is in error.' *Id.*

*Healy v. Rich Products Corp.*, 981 F.2d 68, 73 (2d Cir. 1992). Here there was no mutual

mistake. Indeed there was no mistake whatsoever.

Travelers was not under a mistaken belief that TIG owed Weitz a defense in the

Shoreline Action under a reservation of rights. TIG itself notified Travelers that it had

agreed to defend Weitz under a reservation of rights by sending Travelers a copy of the

September 6, 1996 letter that TIG sent to Weitz advising it that TIG would provide a defense

for Weitz under a reservation of rights. (*See* pages 6-7 of TIG's Memorandum). Travelers

was not mistaken as to TIG's independent agreement to defend Weitz under a reservation of

rights. To the contrary, based on TIG's repeated representations from 1996 through 2000

that Weitz was an additional insured on TIG's policy and that TIG would honor its

commitment to pay fifty percent of the Weitz defense costs, Travelers reasonably understood

that TIG was providing a defense to Weitz under a reservation of rights. Nor was TIG

mistaken. Indeed, TIG itself claims that it new a year earlier that Weitz was not covered

under the Janazzo policy because it was not an additional insured on that policy. TIG Local

Rule 56(a)1 Statement at ¶ 10. TIG issued its reservation of rights letter precisely because it

had doubts or concerns about coverage.  The fact that it later claims it learned no coverage

exists did not change the fact that it agreed to defend Weitz while TIG researched coverage.

TIG relies on *Ficken v. Edward's Inc*., 23 Conn. Supp. 378 (Conn. Cir. 1962) for the

proposition that an erroneous payment made under a jointly shared or mutual mistake may be

recovered.  While the *Ficken* case does stand for this proposition, the important distinction to

be made is that here there was no mistake mutual or otherwise.  TIG was providing a defense

subject to reservation precisely because it believed coverage was in doubt.  The fact that it

now claims no coverage existed does not change that doubt, it simply confirms it.


II.   **TIG HAS MISINTERPRETED COUNT III OF TRAVELERS' COMPLAINT TO BE TO BE A FRAUDULENT MISREPRESENTATION CLAIM WHEN IN FACT TRAVELERS HAS ADEQUATELY PLED AND PROVEN INTENTIONAL AND/OR NEGLIGENT MISREPRESENTATION AGAINST TIG.**

TIG is wrong in characterizing Count III as a fraudulent misrepresentation claim

because Travelers has not alleged fraud against TIG and because a promise to perform a

future act can form the basis for a claim of negligent misrepresentation.  Travelers has

adequately pled and proven intentional and/or negligent misrepresentation against TIG

because TIG knew that its representations that it would honor its commitment to pay fifty

percent of the Weitz defense costs were false when made and that Travelers would rely on

these representations.

A.   **A promise to perform a future act can form the basis for a claim of negligent misrepresentation.**

TIG's argument that Count III of Travelers' Complaint is a fraudulent misrepresentation claim because misrepresentations of intent to perform future acts do not sound in negligent misrepresentation must fail because a promise to perform a future act can form the basis for a claim of negligent misrepresentation.  TIG on page 17 of its Memorandum cites to Kentucky cases to support its argument that Travelers' misrepresentation claim must be a fraudulent misrepresentation claim.  Although TIG does not articulate this, TIG's argument is based on the belief that the oral agreement entered into between TIG and Travelers was for the performance of an act in the future, i.e., splitting the costs of the Weitz defense on a 50/50 basis at some future time.  However, there is Connecticut case law which holds that a promise to perform a future act can form the basis for a claim of negligent misrepresentation.

In *Antignani v. United Home Care*, 1998 WL 417549, at *1 (Conn. Super. July 16, 1998), the defendant "argued that a promise to perform a future act cannot form the basis for a claim of negligent misrepresentation."  *Id.* at *2.  The court held that

> "Although the general rule is that a misrepresentation must relate to an existing or past fact, there are exceptions to this rule, one of which is that a promise to do an act in the future, when coupled with a present intent not to fulfill the promise, is a false representation."  *Paiva v. Vanech Heights Construction Co.*, 159 Conn. 512, 515, 271 A.2d 69 (1970).  The plaintiff has alleged that the defendant knew or should have known that the plaintiff would rely on its promises.  When viewing the allegations in the complaint in the light most favorable to the plaintiff, the plaintiff has alleged that the defendant made a promise while knowing it would not keep that promise.

14

*Id.*  In *Centi v. Lexington Health Care Center*, 1997 WL 240943, at *1 (Conn. Super. May 1, 1997), the plaintiff alleged that the defendants made misrepresentations to her about her future employment prospects, which she relied upon to her detriment.  The court recognized that

> A remedy for misrepresentation is considered to be independent of a remedy on a contract.  *Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 579, 657 A.2d 212 (1995).  Thus, a defendant who is not liable for representations based on contract or promissory estoppel can, nonetheless, be liable in tort for negligent misrepresentation.  *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School*, *supra*, 202 Conn. 218-19.

*Id.* at *7.  The court found that the plaintiff had stated a legally sufficient claim for misrepresentation and held:

> "Although the general rule is that a misrepresentation must relate to an existing or past fact, there are exceptions to this rule, one of which is that a promise to do an act in the future, when coupled with a present intent not to fulfill the promise, is a false representation."  *Paiva v. Vanech Heights Construction Co.*, 159 Conn. 512, 515, 271 A.2d 69 (1970).

*Id.*[5]  These cases show that a claim of negligent misrepresentation can be based on acts to be performed in the future.

---

[5] *See also*, *Killian v. McCulloch*, 850 F.Supp. 1239 (E.D.Pa. Apr 18, 1994) (Under Pennsylvania law, claim for negligent misrepresentation could be based on allegations that individual corporate officers made statements about future occurrences, including statements they would make payments required by profit sharing plan to participants, which officers should have known were untrue or likely to occur, and that they failed to exercise reasonable care in communicating information. Restatement (Second) of Torts §§ 552, 552(2)(a)).  The *Killian* court held that ". . . [the] Plaintiffs' claim for negligent misrepresentation [does not] fail because it is predicated on future promises. Defendants claim that the claim fails 'because one cannot negligently misrepresent his intention to carry out a promise in the future.'. . . [I]f Defendants made statements about future occurrences with regard to the Plan, which Defendants should have known were untrue or unlikely to occur, and they failed to exercise reasonable care in communicating this information, then negligent misrepresentations has occurred.

This Court should recognize as Connecticut courts have recognized that a promise to do an act in the future, coupled with a present intent not to fulfill the promise, can form the basis of a negligent misrepresentation claim.  Under Connecticut law, a plaintiff in order to prove claim for negligent misrepresentation must establish that it justifiably, or reasonably, relied on the alleged misrepresentation.  *Omega Engineering, Inc. v. Eastman Kodak Co.*, 908 F.Supp. 1084 (D.Conn. 1995).  Travelers has adequately pled a claim of negligent and/or intentional misrepresentation and has proven by the undisputed facts that it has justifiably and detrimentally relied upon TIG's repeated false representations that it would honor its commitment to pay fifty percent of the costs associated with the Weitz defense.

**B.    There is no genuine issue of material fact as to whether TIG misrepresented to Travelers that it would pay fifty percent of the Weitz defense costs.**

Travelers has not alleged a fraudulent misrepresentation claim against TIG in Count III because Travelers does allege that TIG made any fraudulent statements:

> Under Connecticut law, the elements of a claim for fraudulent representation are as follows: (1) a false representation was made as a statement of fact; (2) it was untrue and     known to be untrue by the person making it; (3) it was made to induce action by the other party; and (4) the other party did so act upon the statement to his or her detriment.    *Suffield Dev. Assocs. Ltd. P'ship v. National Loan Investors, L.P.,* 260 Conn. 766, 777,     802 A.2d 44 (2002); *Statewide Grievance Comm. v. Egbarin,* 61 Conn.App. 445, 454, 767 A.2d 732, *cert.*

---

Defendants present us with no authority that a claim for negligent misrepresentation cannot be made under these circumstances, and as such, we reject this argument."  *Id.* at 1254-1255.

> *denied,* 255 Conn. 949, 769 A.2d 64 (2001). . . The Second
> Circuit has held that a **complaint alleging fraud must (1)
> specify the statements Plaintiff      contends were
> fraudulent, (2) identify the speaker, (3) state when and
> where the statements were made, and (4) explain why the
> statements were fraudulent**. *Shields v. Citytrust Bancorp,
> Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994).

(Emphasis added).  *Bruce v. Home Depot, U.S.A., Inc*., 308 F.Supp.2d 72, 74-6 (D.Conn.

2004).  Arguing that Count III alleges fraudulent misrepresentation rather than

acknowledging that it really alleges negligent and/or intentional misrepresentation is a

strategic move by TIG because the burden of proof to prove fraud is higher than that required

for negligent or intentional misrepresentation:

> "[t]he party asserting such a cause of action must prove
> the existence of the first three of      [the] elements by a
> standard higher than the usual fair preponderance of the
> evidence, which higher standard we have described as 'clear
> and satisfactory' or 'clear, precise and unequivocal.' " *Barbara
> Weisman, Trustee v. Kaspar,* supra, 233 Conn. at 540, 661
> A.2d   530.

*Citino v. Redevelopment Agency of City of Hartford*, 51 Conn.App. 262, 276 (1998).  Rather,

Count III alleges intentional and/or negligent misrepresentation against TIG.

"The elements of a claim of intentional misrepresentation are: 1) that a false

representation was made as a statement of fact, 2) that it was untrue and known to be untrue

by the party making it, 3) that it was made to induce the other party to act, and 4) that the

latter did so act to its injury." *Zimmerman v. Cohen*, 2004 WL 877853 at *3 (D.Conn. Apr.

23, 2004).  To establish a claim of negligent misrepresentation a plaintiff must demonstrate

that "(1) the defendant made a misrepresentation; (2) the defendant knew, or reasonably

should have known that the statement was untrue; and (3) the plaintiff's reliance on the

misrepresentation was both justifiable and detrimental." *CLT Communications Corp. v.*

*Colonial Technologies Corp.*, 1999 WL 200700, at *6 (D.Conn. Mar. 21, 1999).

> To prevail on a claim of negligent misrepresentation, the
> plaintiffs must prove that, in the course of business, profession,
> or employment, (a) the defendants supplied false information
> for the plaintiffs' guidance; (b) that the defendants failed to
> exercise reasonable care or competence in obtaining or
> communicating the information; and (c) that the plaintiffs
> justifiably relied upon the information to their detriment.
> *D'Ulisse-Cupo v. Board of Directors of Notre Dame High
> School,* 202 Conn. 206, 217-18, 520 A.2d 217, (1987) (citing §
> 552 of the Restatement (Second) of Torts).

*MM Global Services, Inc. v. Dow Chemical Co*., 283 F.Supp.2d 689, 705, 706 (D.Conn.

2003).  Travelers has fully explained in its memorandum in support of its summary judgment

motion that it justifiably and detrimentally relied upon TIG's false representations that it

would pay fifty percent of the costs incurred in the Weitz defense.  From September 1996

through 1999, TIG repeatedly represented that it would honor its commitment to pay fifty

percent of the legal fees associated with the Weitz defense.  (*See* Appendix Tabs 10, 18, 21,

Rule 56 at ¶¶ 26, 34, 38).  TIG knew or should have known that its representations were false

when made and that Travelers would rely on these representations.  TIG argues that there is

an absence of detrimental reliance.  To the contrary, in reliance upon TIG's representations,

Travelers advanced funds for the defense of Weitz from August 1996 through January 2003,

for a total amount of $887,256.  (*See* Affidavit of Gerald E. Doak at ¶ 8, Rule 56 at ¶ 79).

Also, in reliance upon TIG's representations and in response to TIG's requests, Travelers

provided TIG with copies of confidential attorney-client and work product communications as well as with detailed time records evidencing hours worked and services provided by Milano & Wanat in defense of Weitz and records of other defense costs. (*See* Appendix Tabs 7, 11, 12, 15, 19, 22, 23, 24, 25, 26, 29, 32, 33, 35, 39, 42, 44 & 46, Rule 56 at ¶¶ 23, 27, 28, 31, 36, 39, 40, 41, 42, 43, 46, 53, 57, 60, 64, 67, 70, 72).  Therefore, Travelers justifiably and detrimentally relied upon TIG's false representations because without TIG's repeated representations, Travelers could have reevaluated its strategy in defending Weitz in terms of the amount of legal fees it was prepared to pay as a possible settlement and would not have provided TIG with confidential attorney-client and work product communications as well as with records on the status of the Weitz defense.

TIG does not recognize that Travelers only provided TIG with copies of confidential attorney-client and work product communications because it relied upon TIG's repeated representations that it would honor its commitment to pay fifty percent of the Weitz defense costs.  Had Travelers and TIG not entered into the Oral Agreement to share the Weitz defense costs, there would be no reason or right for Travelers to share attorney-client communications with TIG.  Absent the Oral Agreement, Travelers would not have been under an obligation to share any attorney-client communications with TIG.  The fact that two insurers agree to defend the same insured does not serve as a waiver to the attorney-client privilege.

> Connecticut has a long-standing, strong public policy of protecting attorney-client communications. See, e.g., *Doyle v. Reeves,* 112 Conn. 521, 523, 152 A. 882 (1931)(quoting

> common-law rule embodied in 5 J. Wigmore, Evidence [2d
> Ed.1923] § 2292). This privilege was designed, in large part, to
> encourage full disclosure by a client to his or her attorney so as
> to facilitate effective legal representation. *State v. Cascone,*
> 195 Conn. 183, 188, 487 A.2d 186 (1985). It is important not
> to weaken the privilege with  various exceptions because, as
> the United States Supreme Court has explained, even the threat
> of disclosure would have a detrimental effect on attorneys'
> ability to advocate for their clients while preserving their
> ethical duty of confidentiality. *Hickman v. Taylor,* 329 U.S.
> 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

*Metropolitan Life Ins. Co. v. Aetna Cas. and Sur. Co.,* 249 Conn. 36, 48-49 (1999).

Similarly, absent the Oral Agreement, Travelers would not have provided TIG with work

product communications because there would be no incentive or obligation to do so, even if

TIG and Travelers were both independently defending Weitz.

> The work product doctrine was first established by the court in
> *Hickman v. Taylor,* 329 U.S. 495, 510-11, 67 S.Ct. 385, 91
> L.Ed. 451 (1947) and protects discovery of memoranda,
> correspondence, briefs, mental impressions and personal
> beliefs prepared in anticipation of litigation. The purpose of the
> privilege is "to prevent a party from taking advantage of his
> adversary's efforts to gather material for litigation, and to foster
> the adversary system by providing a safe harbor within which
> an attorney can analyze and prepare his client's case." *U.S. v.
> Weissman,* No. S1 94 CR 760(CSH), 1995 WL 244522, at * 5
> (S.D.N.Y. April 26, 1995) (citations omitted).

*Hildebrand v. Wal-Mart Stores, Inc.*, 194 F.R.D. 432, 434 (D.Conn. 2000).  "By establishing

a zone of privacy for strategic litigation planning, the work product doctrine prevents one

party from piggybacking on the adversary's preparation. *United States v. Adlman,* 68 F.3d

1495, 1501 (2d Cir.1995)."  *Nationwide Mut. Fire Ins. Co. v. Smith*, 174 F.R.D. 250, 252

(D.Conn.1997).

Even though from September 1996 through April 2001, TIG and Travelers were both defending Weitz under a reservation of rights, it would not have been in Travelers' interest to share attorney-client and work product communications with TIG if there was no agreement between them to share the costs of the Weitz defense.  Indeed, absent the agreement between them, TIG would have had to retain another defense counsel for Weitz at its own expense. Those counsel might or might not have shared information.  Certainly Milano & Wanat would not have provided detailed billing information to TIG absent the fee splitting agreement.  Therefore, Travelers only provided TIG with confidential attorney-client and work product communications because it relied upon TIG's repeated representations that it would honor its commitment to pay fifty percent of the Weitz defense costs.

III.    **BECAUSE TRAVELERS CHANGED ITS POSITION IN RELIANCE UPON TIG'S PROMISE TO PAY FIFTY PERCENT OF THE WEITZ DEFENSE COSTS, TIG IS ESTOPPED FROM WITHDRAWING ITS PROMISE AND FROM WITHDRAWING ITS DEFENSE OF WEITZ.**

TIG is estopped from withdrawing its promise to pay fifty percent of the costs of defending Weitz and from withdrawing its defense of Weitz because Travelers changed its position in reliance on TIG's promise.  TIG argues in its Memorandum that Travelers cannot show that it changed its position in reliance upon something that TIG did.  For over four years, from 1996 through 2001, TIG repeatedly represented in its communications to Milano & Wanat and Travelers that Weitz was an additional insured and that it was participating in the defense of Weitz on a cost sharing basis with Travelers.  TIG's promise was clear and

definite, and TIG  must have reasonably expected that its promise would induce Travelers' reliance on the promise.

Travelers, in reliance on TIG's clear and definite promise that it would honor its commitment to pay fifty percent of the Weitz defense costs, changed its position in the Weitz defense by providing TIG with privileged and confidential information and by permitting TIG to assist in guiding the defense.  First, without TIG's clear and definite promise, there would have been no incentive or obligation for Travelers to share any attorney-client or work-product communications with TIG.  In fact, as was stated in the preceding section, if TIG had not repeatedly promised that it would honor its commitment to pay fifty percent of the Weitz defense costs, it would have been in Travelers interest not to share any attorney-client or work-product communications with TIG because TIG and Travelers could have potentially become adversaries at some point in the future, for instance if either TIG or Travelers brought a suit for equitable contribution against the other.  Secondly, without TIG's clear and definite promise, TIG would not have permitted or had the incentive to allow TIG to assist in guiding the defense.  Just because at one point, from September 1996 through April of 2001, TIG and Travelers were both defending Weitz under a reservation of rights, there was no obligation for them to collaborate in the defense of Weitz.  TIG could have hired its own counsel to defend Weitz at any time it chose to do so.  It was only because TIG promised and then repeatedly represented that it would split the defense costs with Travelers, that Travelers permitted TIG to communicate with and direct Milano & Wanat in their defense of Weitz..

Indeed, TIG used its promise to secure direct cooperation from Milano & Wanat, the

Travelers selected defense counsel.  In his letter to Milano & Wanat dated August 13, 1997,

Mr. Yeager stated:

> TIG is participating in the defense of the insured with the
> Aetna Insurance Company on a cost sharing basis. As such,
> TIG is entitled to copies of all reports generated by appointed
> defense counsel.  If you do not wish to furnish me with reports,
> I will discuss with Aetna and The Weitz Company whether it is
> appropriate to continue with your representation of the defense
> of The Weitz Company.

(*See* Appendix Tab 10,  Rule 56 at ¶ 27).  Clearly this was a threat to defense counsel to

provide TIG with information or face removal as defense counsel. This threat clearly

evidences TIG's manifest participation in and exercise of control over the defense from a

very early stage.  By letter dated September 5, 1997, Milano & Wanat promptly responded

with a letter enclosing "correspondence we have submitted to the Aetna Insurance Company

since February of 1997." (*See* Appendix Tab 11, Rule 56 at ¶ 27).  Thereafter, TIG's

representatives continually called and wrote counsel for Weitz and received pleadings,

letters, and strategy documents.  (*See* Appendix Tabs 12, 15, 19, 22, 23, 24, 25, 26, 29, 32,

33, 35, 39, 42, 44 & 46, Rule 56 at ¶¶ 27, 28, 31, 36, 39, 40, 41, 42, 43, 46, 53, 57, 60, 64,

67, 70, 72).  Further, TIG received detailed billing records of Milano & Wanat's work. (*See*

Appendix Tabs 16, 25, 30, 39, & 44, Rule 56 at ¶¶ 32, 52, 53, 56, 64, 67, 70).

TIG's promise to Travelers is binding because injustice can only be avoided by

enforcement of the promise.  TIG got the benefit of its participation in the defense and

avoided the expense of having to hire its own counsel to represent Weitz.  Travelers received

no benefit because TIG never delivered on its promise to split defense costs.  If the Court

does not declare that TIG is estopped from withdrawing its promise to pay fifty percent of the

Weitz defense costs and from withdrawing its defense of Weitz, injustice will occur because

Travelers will not be reimbursed for fifty percent of the $887,256 that Travelers incurred and

paid in legal fees to Milano & Wanat and in related costs in the defense of Weitz from 1996

through January 2003 in complete reliance upon TIG's prior promises.  (*See* Affidavit of

Gerard E. Doak at ¶ 7, Rule 56 at ¶ 79).

<u>**CONCLUSION**</u>

For the foregoing reasons, this Court should grant Travelers' summary judgment

motion and should deny TIG's summary judgment motion.

**THE PLAINTIFF,**
**TRAVELERS CASUALTY &**
**SURETY COMPANY OF AMERICA**


By_____**/S/**_____
Peter M. Nolin (ct 06223)
**Sandak Hennessey & Greco LLP**
707 Summer Street
Stamford, CT  06901-1026
(203) 425-4200
(203) 325-8608 (fax)
pnolin@shglaw.com

## **CERTIFICATION**

I certify that a copy of the foregoing was sent via first class mail on this 1st day of

December, 2004 to:

Louis G. Corsi (ct 26157)
Landman Corsi Ballaine & Ford P.C.
120 Broadway, 27th Floor
New York, NY 10271

Jeffrey J. Tinley
Tinley Nastri Renehan & Dost LLP
60 North Main Street, 2nd floor
Waterbury, CT  06702-1403


_____**/S/**_____
Peter M. Nolin