UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA, : : : | CIVIL ACTION NO.: 302CV408AWT |
| Plaintiff, : : | DECEMBER 1, 2004 |
| v. : : | |
| TIG INSURANCE COMPANY, : : | |
| Defendant : : : | |

## LIST OF UNPUBLISHED CASES CITED IN DEFENDANT'S OPPOSITION TO PLAINTIFF'S MEMORANDUM OF LAW

Exhibit A:  <u>Vinco Inc. v. Royal Ins. Co. of America</u>, 2002 WL 337988 (Conn. 2002) at p. 5.

Exhibit B:  <u>Devino v. Maryland Casualty</u>, 2004 WL 1965788 (Conn. Super. 2004) at p. 11.

Exhibit C:  <u>Zamora v. Safeco Ins. Co.</u>, 1997 WL 785601 (Conn. Super. 1997) at p. 11.

Exhibit D:  <u>Berkowitz v. City of Stamford</u>, 2001 WL 103971 (Conn. Super. 2001) at p. 11.

Exhibit E:  <u>Merrry Charters, LLC v. Town of Stonington</u>, 2004 WL 2471524 (D. Conn. 2004) at p. 11.

Exhibit F:  <u>Webster Bank v. Acquisitions Un-Ltd.</u>, 1998 WL 389258 (Conn. Super. 1998) at p. 12.

Exhibit G:  <u>Blue Ridge Ins. Co. v. Honegan</u>, 2000 WL 1227307 (Conn. Super. 2000) at p. 12.

Exhibit H:  Continental Cas. Co. v. Bank of Southeastern Connecticut, 1995 WL 871829 (D. Conn. 1995) at p. 12.

Exhibit I:  CLT Telecommunications Corp. v. Colonial Technologies Corp., 1999 WL 200700 (Conn. 1999) at p. 15.

Exhibit J:  Stackpole Moore Tryon Co. v. Career Path, Inc., 1990 WL 283913 (Conn. Super. 1999) at p. 15.

Exhibit K:  Underkofler v. Community Health Care Plan, Inc., 1999 WL 464530 (D. Conn 1999) at p. 10, 18.

Exhibit L:  Wesconn Co. v. ACMAT Corp., 2001 WL 438711 (Conn. Super. 2001) at p. 20.

Exhibit M:  Hood v. Aerotek, Inc., 2002 WL 294762 (D. Conn. 2002) at p. 24.

Exhibit N:  Mongelli v. Chicago Ins. Co., 2002 WL 32096578 (E.D.N.Y. 2002) at p. 24.

Exhibit O:  Morse v. Hopkins School, 1999 WL 130610 (Conn. Super. 1999) at p. 27.

# Exhibit "A"

29 Fed.Appx. 753                      Page 1
29 Fed.Appx. 753, 2002 WL 337988 (2nd Cir.(Conn.))
**(Cite as: 29 Fed.Appx. 753, 2002 WL 337988 (2nd Cir.(Conn.)))**
C

Briefs and Other Related Documents

This case was not selected for publication in the Federal Reporter.

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Second Circuit Rules § 0.23. (FIND CTA2 s 0.23.)

United States Court of Appeals,
Second Circuit.

VINCO INC., Plaintiff-Appellant,
v.
ROYAL INSURANCE COMPANY OF AMERICA, Royal Group, Inc., Royal and Sun Alliance,
and Globe Indemnity Co., Defendants-Appellees.

Docket No. 01-7411.

March 4, 2002.

General contractor sued subcontractor's liability insurer for construction project, seeking indemnification as additional insured for accident in which subcontractor's employee was injured at construction site. Following bench trial, the United States District Court for the District of Connecticut, Stefan R. Underhill, J., ruled that contractor was not additional insured under subcontractor's policy at time of accident. Contractor appealed. The Court of Appeals held that: (1) contractor failed to show that subcontractor's insurance broker was acting as insurer's agent when it issued certificate of insurance incorrectly identifying contractor as additional insured on subcontractor's policy, and (2) judicial estoppel did not apply to preclude insurer from arguing that contractor was not covered as additional insured under subcontractor's policy.

Affirmed.

West Headnotes
[1] Insurance ⬅ 1609
217k1609 Most Cited Cases
General contractor failed to show that subcontractor's insurance broker was acting as agent for subcontractor's liability insurer when it issued certificate of insurance incorrectly identifying contractor as additional insured on subcontractor's policy for construction project, and therefore insurer was not bound by certificate, which was issued at subcontractor's request and was not policy or binder, and was not required to indemnify contractor with respect to construction site accident in which subcontractor's employee was injured.
[2] Estoppel ⬅ 68(2)
156k68(2) Most Cited Cases
To the extent that judicial estoppel was available under Connecticut law, it did not apply to preclude insurer from arguing, in general contractor's action for indemnification, that general contractor was not covered as additional insured under subcontractor's liability policy for construction project, based on stipulation by insurer's attorney in related state-court action that contractor was insured at time of underlying accident, given that attorney's representation was not adopted by state court; rather, contractor voluntarily and without prejudice withdrew its claim against subcontractor, in that action, for breaching contract by failing to add contractor as additional insured under policy.
*753 Appeal from the United States District Court for the District of Connecticut, Stefan R. Underhill, Judge.

Villa B. Hayes, Hughs, Hubbard, & Reed; William J. Beausoleil, of counsel, New York,

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




NY, for Appellant.

*754 John B. Farley, Halloran & Sage, LLP; John W. Lemega & Elizabeth A. Fitzsimmons, of counsel, Hartford, CT, for Appellee.

Present SACK, KATZMANN, and B.D. PARKER, Circuit Judges.

SUMMARY ORDER

**1 UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of said District Court be, and it hereby is, affirmed.

The plaintiff, Vinco, Inc., appeals from a judgment entered in the United States District Court for the District of Connecticut, following a bench trial, holding that the defendant insurance companies (collectively "Royal") [FN1] are not required to indemnify Vinco for liability it incurred with respect to a December 1991 accident at a Norwalk Community College construction project. On appeal, Vinco argues that the district court's finding that Vinco was not covered as an additional insured in December 1991 under a policy issued by Royal that would have covered the accident was in error. Vinco further asserts that even if it was not covered by a Royal policy in December 1991, Royal is judicially estopped from arguing that Vinco was not covered because an attorney Royal hired to represent another party in a related state court action stipulated that such coverage was in effect. Both of these arguments are without merit.

> FN1. The insurance policy in question was issued by Royal Group Inc., d/b/a the Royal Insurance Co. In or about 1996, Royal Group, Inc. merged with another corporation to form Royal & Sun Alliance. Globe Indemnity Corporation is a wholly owned subsidiary of Royal & Sun Alliance.

Vinco was a general contractor, and Hilton Mechanical Contractors, Inc. a subcontractor, on a construction project for the State of Connecticut at the Norwalk Community College. Under its subcontract, Hilton was required to add Vinco as an additional named insured on a liability insurance policy covering work on that project. It is undisputed that Hilton obtained an insurance policy from Royal that covered the Norwalk project. The central question in this case is whether Vinco had been added to this policy as an additional insured prior to December 1991 when an employee of Hilton, who later sued Vinco, was injured at the construction site.

Vinco asserts that it was added as an additional insured. To support its claim, Vinco presented evidence at trial that, in response to a faxed request from Hilton, the insurance broker Corroon & Black ("Corroon")--who had a formal agency agreement with Royal but was also Hilton's regular broker--issued a Certificate of Insurance on March 18, 1991. The Certificate was issued to the State of Connecticut on a State of Connecticut form. The Certificate certifies that Royal has issued Hilton a policy for the Norwalk project, that the policy "is in force on this date," and that Vinco "is named as Additional Insured" under this policy. The Certificate was signed by Corroon as the "Authorized Agent" of Royal. Copies of this Certificate were sent to the State of Connecticut and Vinco.

Following the bench trial, the district court held that the Certificate did not impose contractual obligations on Royal in light of the fact that Vinco failed to present evidence that Corroon was acting as Royal's agent in issuing the Certificate. According to the district court, the evidence required the conclusion that Corroon was acting as Hilton's agent in doing so. In addition, the district court concluded that even if Corroon were functioning *755 as Royal's agent, Royal is not bound by the Certificate because Corroon was acting outside of the scope of its authority when it issued the Certificate. The district court reasoned that the agency agreement between Royal and Corroon only allowed Royal to issue insurance policies and binders. The Certificate is neither.

**2 [1] We agree with the district court's holding that Royal failed to present sufficient evidence at trial to establish that Corroon was

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

 

29 Fed.Appx. 753                                             Page 3
(Cite as: 29 Fed.Appx. 753, *755, 2002 WL 337988, **2 (2nd Cir.(Conn.)))

acting as Royal's agent in issuing the Certificate. Vinco presented evidence that Hilton faxed Corroon a request for a certificate of insurance that listed Vinco as an additional insured. But Vinco never offered evidence to establish that Hilton sought or obtained additional insurance coverage for Vinco from Royal, its agent, or anyone else prior to the accident in question. And there is insufficient evidence in the record to support a finding that Corroon intended to extend coverage to Vinco by issuing the Certificate or that Corroon was supposed to issue simultaneously a policy or binder extending coverage to Vinco as an additional insured.

A certificate of insurance is a purely informational document. *See Taylor v. Kinsella,* 742 F.2d 709, 711 (2d Cir.1984) (explaining that a certificate of insurance is generally only notice that a policy of insurance had been issued); 17 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 242:33 (3d ed. 2000) ("Where an entity requires another to procure insurance naming it an additional insured, that party should not rely on a mere certificate of insurance, but should insist on a copy of the policy. A certificate of insurance is not part of the policy--if it states that there is coverage but the policy does not, the policy controls."). The Certificate in this particular case was issued to inform the State of Connecticut that Vinco was an additional insured under Hilton's policy with Royal. While Vinco may have thought that it was an additional insured under Hilton's policy because of the representation on the Certificate (and even assuming that this belief was reasonable), Royal cannot be bound by the Certificate because it was issued at Hilton's request and was not itself a policy or binder. There was no evidence presented establishing that Royal permitted its agents to issue certificates of insurance. It is also significant that the insurance policy between Royal and Hilton contained a merger agreement, which explicitly stated that the contract of insurance consisted solely of the declarations, forms, and endorsements contained within the contract. Royal therefore is not required to indemnify Vinco for the accident in question.

[2] Finally, Vinco asserts that Royal is judicially estopped from arguing that Vinco was not covered by Royal as an additional insured because Ken Mulvey, the attorney hired by Royal to represent Hilton in a related state court action, stipulated before the state court that Vinco was insured by Royal at the time of the December 1991 accident. While Vinco relied on Mulvey's stipulation when in the course of the litigation it voluntarily withdrew its claim that Hilton had breached its contract by failing to add Vinco as an additional insured, Vinco's judicial estoppel claim is without merit. First, it is not clear that Connecticut recognizes the doctrine of judicial estoppel. *See Rogers Inv. Co. v. F.W. Woolworth Co.,* 161 Conn. 6, 11, 282 A.2d 882, 885 (1971) (holding that judicial estoppel did not apply to bar the plaintiff from denying validity of certain exhibits despite plaintiff's reliance on the exhibits in an earlier proceeding); *SKW Real Estate Ltd. v. Mitsubishi Motor Sales of Am., Inc.,* 56 Conn.App. 1, 8, 741 A.2d 4, 9 (Conn.App.1999) ("We do not have to determine **\*756** whether Connecticut recognizes the doctrine of judicial estoppel because there is no factual basis to apply any estoppel principles here."). But even if it does, Vinco's claim fails because Mulvey's representation was not adopted by the state court. *See Bates v. Long Island R.R.,* 997 F.2d 1028, 1038 (2d Cir.1993). Rather, Vinco voluntarily and without prejudice withdrew its claim against Hilton.

**\*\*3** Vinco's sense that it is aggrieved is understandable. It was told by Corroon that it was insured by Royal with respect to the Norwalk Community College project when it was not and allegedly suffered a substantial loss as a result. Perhaps it had or has a viable claim against Hilton for apparently failing to obtain insurance for Vinco as required by its contract with Vinco, or against Corroon for certifying the existence in force of insurance coverage that apparently did not exist, or against Mulvey for assuring Vinco that Royal would indemnify Vinco when it had no such obligation or intention. But Vinco had and has no claim against Royal, which never undertook to insure it with respect to the project.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




29 Fed.Appx. 753                                                                                  Page 4
(Cite as: 29 Fed.Appx. 753, *756, 2002 WL 337988, **3 (2nd Cir.(Conn.)))

We have reviewed Vinco's additional arguments and find them to be without merit. The judgment of the District Court is hereby AFFIRMED.

29 Fed.Appx. 753, 2002 WL 337988 (2nd Cir.(Conn.))

Briefs and Other Related Documents (Back to top)

. 2001 WL 343820670riginal Image of this Document (PDF)

. 2001 WL 343820680riginal Image of this Document (PDF)

. 2001 WL 343820660riginal Image of this Document (PDF)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




# Exhibit "B"

Not Reported in A.  
2004 WL 1965788 (Conn.Super.), 37 Conn. L. Rptr. 819  
(Cite as: 2004 WL 1965788 (Conn.Super.))

Page 1

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut,  
Judicial District of Waterbury.

Kenneth DEVINO d/b/a  
v.  
MARYLAND CASUALTY CO. et al.

No. CV030180185S.

July 30, 2004.

O'Keefe Phelan & Jackson, Hartford, for Kenneth M. Devino.

Halloran & Sage, Hartford, for Maryland Casualty Company and Northern Insurance Company of New York.

MATASAVAGE, J.

*1 This matter is before the court on cross motions for summary judgment in a declaratory judgment action regarding two insurance companies' duty to defend in a pending lawsuit. The plaintiff, Kenneth Devino, doing business as Industrial Development Group (IDG), in its amended complaint filed on October 14, 2003, alleges that the defendants, Maryland Casualty Company (Maryland) and Northern Insurance Company of New York (Northern), have a duty to defend it in the pending case of *Perkins v. Devino,* Superior Court, judicial district of Waterbury, Docket No. CV 01 0165269. On November 20, 2003, IDG filed a motion for summary judgment accompanied by a memorandum of law in support. On January 7, 2004, Maryland and Northern filed a consolidated motion for summary judgment that also serves as their memorandum in opposition to IDG's motion. All parties thereafter filed numerous supplemental memoranda.

In the underlying action, the plaintiff, Sarah Perkins, filed a complaint against Industrial Development Group. According to her amended complaint, she was an employee of Luxnet, Inc., a commercial tenant on a property owned by IDG. She alleges that she was standing on a cement platform in a common area of the property under the exclusive control of IDG. She claims that when she stepped off the platform, she fell into a one-foot hole obstructed by leaves and twisted her knee, which ultimately required surgery and left her with a partial permanent disability. Perkins alleges that IDG was negligent in failing to properly inspect and maintain the grounds.

Luxnet then filed an intervening complaint against IDG pursuant to General Statutes § 31-293. As permitted by the statute, Luxnet joined Perkins' action against IDG to recover the money it paid Perkins for workers' compensation. The intervening complaint alleges that Perkins is an employee of Luxnet who was injured while acting in the course of her employment.

"The court may address the merits of a declaratory judgment action upon a motion for summary judgment." (Internal quotation marks omitted.) *England v. Reliance Ins. Co.,* Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. CV 02 0079606 (February 24, 2004, Carroll, J.) (36 Conn. L. Rptr. 581). "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Rocco v. Garrison,* 268 Conn. 541, 548, 848 A.2d 352 (2004). "Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment." (Internal quotation marks omitted.) *Great Country Bank v. Pastore,* 241 Conn. 423, 436, 696 A.2d 1254 (1997), citing Practice Book § 17-46.

IDG moves for summary judgment against Maryland and Northern on the grounds that the allegations in Perkins' complaint and Luxnet's intervening complaint establish a basis for either or both of the insurance companies to defend it based on the language

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




of the insurance policy. IDG claims that they are entitled to a defense because they are listed as an additional insured and also because of the "insured contract" provision of the policy. IDG submits the following evidence: 1) Perkins' amended complaint; 2) Luxnet's intervening complaint; 3) an authenticated copy of the lease between Luxnet and IDG; 4) a copy of the insurance policy produced by Northern in the underlying action; 5) a certified copy of Perkins' deposition in the underlying action; 6) an unauthenticated certificate of insurance, and 7) two unauthenticated web pages from the California and Maine departments of insurance.

*2 Northern and Maryland move for summary judgment on several grounds. First, they argue that the insurance policy was issued by Northern, not Maryland, and assert that the certificate of insurance that IDG received from Maryland confers no rights. Second, they argue that IDG is not an "insured" under the insurance policy issued by Northern because the injuries alleged in the Perkins complaint do not satisfy the language of the additional insured endorsement. Third, they maintain that IDG cannot claim to be an "insured" under the "insured contract" because the additional insured endorsement controls, and even it did not, the terms of the lease between IDG and Luxnet demonstrates that IDG maintained responsibility for its own negligence. In addition, they challenged the admissibility of IDG's evidentiary submissions. As evidence, they submit Perkins' amended complaint and an authenticated copy of the insurance policy.

SUMMARY JUDGMENT--MARYLAND CASUALTY

IDG moves for summary judgment against Maryland on the basis that Maryland is either the insurer or co-insurer along with Northern. Northern and Maryland also move for summary judgment on the basis that the certificate of insurance confers no rights and that the policy itself specifies that it was issued by Northern alone. The insurance policy, as Northern and Maryland correctly assert, does not include any reference to Maryland. The only evidence that IDG submits is an unauthenticated certificate of insurance issued by Maryland to IDG. The certificate of insurance, however, is unauthenticated, and only evidence admissible at trial may be used to support a motion for summary judgment. *Great Country Bank v. Pastore, supra,* 241 Conn. at 423, 436. With the certificate of insurance excluded, IDG has no evidence to support its motion against Maryland. IDG's motion for summary judgment as to Maryland is therefore denied and Maryland's motion for summary judgment as to IDG is granted.

SUMMARY JUDGMENT--NORTHERN INSURANCE

The grounds for both motions for summary judgment with regard to Northern have overlapping arguments regarding the interpretation of the insurance policy and the duty to defend standard. This court will handle both motions in one integrated discussion.

The Insurance Policy

"The interpretation of an insurance policy is based on the intent of the parties, that is, the coverage that the insured expected to receive coupled with the coverage that the insurer expected to provide, as expressed by the language of the entire policy ... The words of the policy are given their natural and ordinary meaning, and any ambiguity is resolved in favor of the insured." (Citations omitted.) *Wentland v. American Equity Ins. Co.,* 267 Conn. 592, 600-01, 840 A.2d 1158 (2004). "It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy." (Internal quotation marks omitted.) *Board of Education v. St Paul Fire & Marine Ins. Co.,* 261 Conn. 37, 42, 801 A.2d 752 (2002).

*3 "The court must interpret the insurance contract as a whole with all relevant provisions considered together ... In construing an endorsement to an insurance policy, the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




endorsement and policy must be read together, and the policy remains in full force and effect except as altered by the words of the endorsement; conversely the endorsement modifies, to the extent of the endorsement the terms and conditions of the original insurance contract ... If any irreconcilable conflict exists between provisions of the policy and provisions of an endorsement then the latter must control." (Citations omitted; internal quotation marks omitted.) *Schultz v. Hartford Fire Ins. Co.*, 213 Conn. 696, 705, 569 A.2d 1131 (1990).

The insurance policy in question here is a commercial general liability policy [FN1] with Luxnet as the named insured and IDG is listed as an additional insured. Section I of the policy seems to provide coverage for the type of "bodily injury" that Perkins sustained. Section II of the policy defines "who is an insured" under the policy.

> FN1. The parties dispute which version of the insurance policy the court should consider as evidence. IDG submits a copy of the insurance policy produced by Luxnet in response to a request for production in the underlying case. This produced copy does not include the additional endorsement form, but a supplemental declarations page does list it as comprising part of the policy. Northern and Maryland submit a copy of the policy which does include the additional endorsement. IDG asks the court to exercise its discretion pursuant to Practice Book § 13-14 to hold Northern to the policy it submitted in the underlying action and prohibit Northern from introducing its own version of the policy into evidence. This court declines to do so. Though Northern's failure to produce the additional endorsement was careless, it does not seem deliberate, particularly since IDG's version does list the endorsement. This court will admit the additional endorsement along with the policy.

IDG claims that it is an insured by virtue of being listed specifically as an additional insured and also because of the language in subsection three of Section II. Subsection three states: "With respect to COVERAGE A. BODILY INJURY ... any person or organization with whom you agree, because of a written 'insured contract' ... is an insured, but only with respect to liability arising out of your operations 'your work' or facilities owned or used by you." The insured contract that applies here is the lease agreement between Luxnet and IDG.

Northern and Maryland counter that subsection three is modified by additional endorsement form CG 20 10 which states: "Who is an Insured (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured." IDG is the entity listed in the referenced schedule.

It is clear from the language of this endorsement that it is directed only to IDG and intended to limit the scope of the insurer's liability to it. With respect to IDG, allowing this additional endorsement to coexist with subsection three creates an irreconcilable conflict. *Schultz v. Hartford Fire Ins. Co., supra,* 213 Conn. at 705. Allowing IDG to rely on subsection three to become an insured party would render the additional endorsement superfluous since the endorsement has no other purpose but to limit the insured status of IDG. Given that the endorsement language controls in the event of such a conflict, IDG cannot rely on the "insured contract" provision under Section II to argue that it is an insured under the policy. IDG's motion for summary judgment as to that ground is denied.

### Duty to Defend

"[A]n insurer's duty to defend, being much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the [underlying] complaint ... The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability ... It necessarily follows that the insurer's duty to defend is measured by

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




the allegations of the complaint ... Moreover, [i]f an allegation of the complaint falls *even possibly* within the coverage, then the insurance company must defend the insured ... In contrast to the duty to defend, the duty to indemnify is narrower while the duty to defend depends only on the allegations made against the insured, the duty to indemnify depends upon the facts established at trial and the theory under which judgment is actually entered in the case." (Citations omitted; emphasis in original; internal quotation marks omitted.) *DaCruz v. State Farm Fire & Casualty Co.,* 268 Conn. 675, 687-88, 846 A.2d 849 (2004).

**\*4** "Thus, the duty to defend is triggered whenever a complaint alleges facts that potentially could fall within the scope of coverage, whereas the duty to indemnify arises only if the evidence adduced at trial establishes that the conduct actually was covered by the policy. Because the duty to defend is significantly broader than the duty to indemnify, where there is no duty to defend, there is no duty to indemnify ..." (Internal quotation marks omitted.) *Id.,* at 688.

Though the duty to defend is normally decided by comparing the policy language to the allegations of the complaint, IDG cites *Keithan v. Massachusetts Bonding & Ins. Co.,* 159 Conn. 128, 267 A.2d 660 (1970), to demonstrate that where the issue is whether the party is an "insured" under the policy, the court may look at evidence beyond the allegations of the complaint. *Keithan* involved a declaratory judgment action regarding a duty to defend stemming from the underlying case of *Werner v. Keithan.* Before the *Keithan* trial court considered the issue of the duty to defend, the *Werner* court had already rendered a final judgment on the merits and the Supreme Court had decided the appeal. The *Keithan* trial court ultimately found that a duty to defend did not exist, relying in part on the Supreme Court's finding of fact in the underlying action.

The plaintiff appealed the trial court's ruling on the ground that the trial court should only have considered the allegations of the complaint in adjudicating the duty to defend. The *Keithan* court noted that the "precise narrow issue" before it involved an omnibus insurance clause. *Id.,* at 141. An omnibus insurance clause, the court explained, gives the named insured "a wide capacity to determine who will be accorded the status of an insured and under what circumstances coverage will be extended" and presents "hazards of proof on an issue of the existence of permission." *Id.,* at 140-41. After considering a split in authorities on that precise issue, the court sided with those agreeing that "[i]f the defendant is neither the named insured nor an omnibus insured there is clearly no obligation to defend regardless of the allegations of the petition and irrespective of the soundness or groundlessness of the claim asserted." (Internal quotation marks omitted.) *Id.,* at 141.

The present case, however, involves neither the same insurance clause nor the same type of evidence. The *Keithan* court explicitly limited its holding to the "precise narrow issue" raised by omnibus insurance clauses. *Id.,* at 141. The additional insured endorsement at issue here is not an omnibus clause nor does it act as a functional equivalent. The language of the endorsement does not expose the insurance company to a potentially unlimited and unbounded class of additional insureds like an omnibus clause. In fact, nearly the opposite is true: the endorsement here is Northern's attempt to further limit the insured status of a single, explicitly identified party, IDG, to a specific range of liability.

**\*5** Moreover, the additional evidence considered in *Keithan* was a *court's finding of fact* in the underlying case. No such decisions have been issued yet in *Perkins v. Devino.* The evidence that the plaintiff asks the court to consider here, such as the deposition transcript, is merely additional unproven allegations. Given these distinguishing factors and *Keithan's* expressly narrow holding, this court declines to look beyond Perkins' and Luxnet's underlying complaints.

The Additional Insured Endorsement

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




Maryland and Northern argue that they do not have a duty to defend because the underlying complaints do not allege facts that would establish IDG as an "insured" under the additional insured endorsement language. They assert that the additional endorsement language is not ambiguous and clearly refers to Luxnet's obligations to IDG as specified in the lease. Toward this end, they seek to introduce the terms of the lease as evidence to show that IDG had exclusive control over the portion of the property on which Perkins was injured. Since Luxnet did not perform any ongoing operations for IDG with respect to this part of the property, they argue, the allegations of the complaint do not fall within the policy language. This court will analyze "arising out of" and "your ongoing operations performed for that insured" separately.

The phrase "arising out of" is common in insurance policies and our Supreme Court has defined it in that context. "[I]t is generally understood that for liability for an accident or an injury to be said to 'arise out of' [an occurrence or offence], it is sufficient to show only that the accident or injury 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to' [that occurrence or offence], in order to meet the requirement that there be a causal relationship between the accident or injury and [that occurrence or offence]." *Board of Education v. St. Paul Fire & Marine Ins. Co.,* 261 Conn. 37, 48, 801 A.2d 752 (2002) (commercial automobile insurance); *QSP, Inc. v. Aetna Casualty & Surety Co.,* 256 Conn. 343, 374, 773 A.2d 906 (2001) (commercial general liability insurance and excess insurance); *Hogle v. Hogle,* 167 Conn. 572, 577, 356 A.2d 172 (1975) (homeowners' insurance). "Under this standard of causation, it need not be shown that the incident in question was proximately caused ... The plaintiff must allege only that the injury originated in, grew out of or flowed from [that occurrence or offence)." (Citations omitted.) *Board of Education v. St. Paul Fire & Marine Ins. Co., supra,* 261 Conn. at 48.

The phrase "your ongoing operations performed for that insured," however, has not been previously interpreted in Connecticut.

With the names of the parties inserted, it reads "Luxnet's ongoing operations performed for IDG." The only relationship between IDG and Luxnet is that of lessor and lessee. The few courts that have construed this language in the context of a lessor and lessee have drawn different conclusions.

*6 In *Balch Enterprises v. Ins. Co. of Pennsylvania,* United States District Court, Docket No. C 03-01783 (N.D.Cal., March 12, 2004), Balch Enterprises (BEI), built a warehouse which it financed through a loan from Fremont Bank. Under the terms of that loan, BEI had an obligation to keep the property free from liens. BEI subsequently leased the warehouse to 360networksUSA, Inc., which in turn hired Howard S. Wright Construction Company (Wright) to renovate the warehouse. 360networksUSA later defaulted on its payment for the renovations, which prompted Wright to record a mechanic's lien on the building and to file suit against BEI to foreclose the lien. BEI asserted an affirmative defense that it had posted notices of nonresponsibility for the improvements made by 360networksUSA. BEI then filed an action against 360networksUSA's insurance company arguing that it was an additional insured under 360networksUSA's policy. The court held, among other reasons, that BEI did not qualify as an additional insured because the issue of the notices did not arise out 360networksUSA's "ongoing operations performed for" BEI. Instead, the court construed this phrase to refer to the lease between BEI and 360networksUSA.

In *Fleniken v. Entergy Corp.,* 790 So.2d 64 (La.App.2001), Safeway Transportation, Inc. (Safeway), a trucking company, leased an office building and half of a truck-washing facility from TMI Enterprises, Inc. (TMI), the owner. Wilburn Fleniken, an employee of Safeway, parked his rig on a concrete block near the truck-washing facility. While inspecting the top of his rig to see if it had been washed properly, he walked into an electrical wire and was knocked unconscious. Fleniken filed an action against TMI, Safeway and others for damages. TMI filed a declaratory judgment action and appealed the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




trial court's decision that it was not covered under Safeway's commercial general liability policy as an additional insured. The appellate court reversed the trial court and interpreted the endorsement language as follows.

> The facts of the accident meet the endorsement's requirement that TMI's potential liability arose out of Safeway's "ongoing operations." We note the portion of Safeway's ongoing operation being performed by Mr. Fleniken at the time of the accident was directly related to Safeway's use of the wash-rack building it was leasing from TMI. Mr. Fleniken was inspecting the Safeway trailer through the hatch on the roof of the trailer to determine whether it had been cleaned in the wash-rack building sufficiently for the trailer to be used for the assigned haul. Mr. Fleniken's inspection inured to the benefit of TMI by making Safeway's lease of the wash-rack building from TMI a viable portion of its trucking operations. Because of the direct relationship between Mr. Fleniken's performance of his duties as the assigned operator of the tractor-trailer unit and Safeway's use of TMI's premises as TMI's lessee, it can be said that TMI's potential liability arose out of ongoing operations performed for TMI ...
> 
> *7 To read the endorsement language, "performed for," so as to exclude Mr. Fleniken's work in the instant case is to restrict unduly the coverage intended by the parties to the insurance contract. If the provision is read as [the insurance company] suggests, TMI would never be covered under the insurance policy; Safeway never hauled commodities for TMI because TMI was not a manufacturer. Thus, Safeway would have paid a premium for the addition of TMI as an insured, but the insurer would have provided no coverage for which it charged the premium ... The fact that the haul was being "performed for" another company did not bar the operation from being "performed for" TMI as well.
> 
> Id., at 69-70.

As the two conflicting decisions in *Balch Enterprises* and *Fleniken* indicate, this additional endorsement language is not as clear as Northern and Maryland suggest, and is at best awkward when applied to a strictly lessor-lessee relationship. This endorsement is most commonly and naturally applied in cases where the named insured is a contractor or subcontractor who is actually performing some labor or service, such as construction, for the additional insured. See, e.g., *Pro Con Construction Co. v. Acadia Ins. Co.*, 147 N.H. 470, 794 A.2d 108 (2002); *G.E. Tignall & Co. v. Reliance National Ins. Co.*, 102 F.Sup.2d 300 (D.Md.2000). Luxnet, like Safeway in *Fleniken*, does not perform a labor or service for IDG in this traditional sense: it is a manufacturer of light bulbs. As a result, whichever interpretation this court chooses will necessarily be strained.

One solution, as advocated by Northern and Maryland and mentioned in *Balch*, would be to construe the underlying lease to determine what duties Luxnet performs for IDG. Doing so, however, would require this court to violate the well-settled principle that the intent of the parties must be "derived from the four corners of the policy." (Internal quotation marks omitted.) *Board of Education v. St. Paul Fire & Marine Ins. Co., supra,* 261 Conn. at 42. It is true that in *Sacharko v. Center Equities Ltd. Partnership,* 2 Conn.App. 439, 442, 479 A.2d 1219 (1984), our Appellate Court turned to the lease to interpret an additional insured endorsement. The endorsement in that case, however explicitly limited liability to the leased property: "liability arising out of ownership, maintenance or use of that part of the premises designated below leased to the Named Insured ..." *Id.,* at 442. The language in the endorsement at issue here makes no such explicit reference, and therefore this court is not directed by the policy language to consider the lease.

Moreover, interpreting this language to hinge on the provisions of a lease would run the risk that a lessee would not be an additional insured under any situation. Depending on the terms of the lease, the lessee may not be required to perform any "ongoing operations" for the named insured, or the lessee's duties may be so innocuous there could be no liability arising from them. The potential for such an interpretation to render the additional




Not Reported in A. Page 7
(Cite as: 2004 WL 1965788, *7 (Conn.Super.))

insured provision meaningless is an additional reason to refuse to consider the lease.

*8 Finally, in viewing the policy in its entirety, this court notes that it is a commercial liability policy, not a premises liability policy. The general purpose of such a policy is to insure against liabilities stemming from the insured's business activities. Interpreting this provision as Northern and Maryland request would essentially convert a commercial liability policy to a premises liability policy with respect to IDG without any explicit policy language to manifest that intent. The existence of other additional insured endorsement forms that do explicitly restrict liability to the leased premises demonstrates that insurance companies know how to express such intent when they wish to do so. [FN2] Given the ambiguous language in the endorsement at hand, turning to the lease runs against the very purpose of the policy.

> FN2. For example, additional endorsement form CG 20 24, which is a basic endorsement for commercial leases) grants insured status only "with respect to liability arising out of the ownership, maintenance or use of that part of the land leased to you." See Joseph P. Postel, Additional Insured Coverage Under Commercial General Liability Insurance Policies (November 17, 2003) (unpublished manuscript presented at the International Risk Management Institute Construction Risk Conference), at http:// www.irmi.com/Conferences/Crc/Handouts/Crc23/Crt/AddlInsuredCovUnderCglPolicies.pdf.

Given these issues, this court chooses to follow the interpretation and standard announced in *Fleniken* for lessees and lessors under this endorsement: where there is a direct relationship between an employee's duties and the lessee's use of the lessor's premises as a lessee, the liability arises out of the lessee's ongoing operations performed for the lessor. This standard is consistent with the principle that any ambiguity in the policy language must be construed in favor of the insured. *Wentland v. American Equity Ins. Co., supra,* 267 Conn. at 600-01. Also, the requirement of a direct relationship insulates the insurance companies from having to cover the additional insured for all activities involving the named insured.

Before applying this standard to the allegations of the complaints, it is important to note that the issue in *Fleniken* was whether the additional insured was covered under the policy, not whether the insurance company had a duty to defend. Under the duty to defend standard, if the allegations in the complaints "fall *even possibly* within the coverage, then the insurance company must defend the insured." (Emphasis in original; internal quotation marks omitted.) *DaCruz v. State Farm Fire & Casualty Co., supra,* 268 Conn. at 675, 687-88.

The Perkins complaint alleges that Sarah Perkins was an employee of Luxnet and that she injured herself after stepping into a hole on a part of the property in the exclusive control of IDG. The complaint does not allege specifically that Perkins as an employee, was performing duties directly related to Luxnet's use of the premises as a lessee. Nevertheless, the allegations that she was an employee of Luxnet and injured on the property does raise a sufficient possibility that the complaint falls within the coverage afforded by the policy.

Luxnet's intervening complaint is more specific. It not only alleges that Perkins was an employee of Luxnet, but also alleges that her injury occurred while acting in the course of her employment. Such allegations also raise the possibility that the complaint falls within the policy coverage. Therefore, Northern has a duty to defend IDG on both the Perkins and Luxnet complaints.

*9 For the foregoing reasons, Maryland and Northern's motion for summary judgment is granted as to Maryland and denied as to Northern. IDG's motion for summary judgment is granted as to Northern and denied as to Maryland.

2004 WL 1965788 (Conn.Super.), 37 Conn. L. Rptr. 819

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




# Exhibit "C"

Not Reported in A.  
1997 WL 785601 (Conn.Super.), 21 Conn. L. Rptr. 131  
**(Cite as: 1997 WL 785601 (Conn.Super.))**

Page 1

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

Patricia ZAMORA et al.  
v.  
SAFECO INSURANCE CO. et al.

No. CV 960154770S.

Dec. 15, 1997.

MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (# 116)

KARAZIN, J.

*1 This is an action by the plaintiffs, Miguel Martinez and Patricia Zamora, against the defendant, Safeco Insurance Company of America, Inc., to collect uninsured motorist benefits to which the plaintiffs allege they are entitled. On July 28, 1997, the defendant filed a motion for summary judgment with supporting documentation and an affidavit. The plaintiffs have replied with a memorandum and affidavits in opposition.

Summary judgment is appropriate only "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 384; *Suarez v. Dickmont Plastics Corp.*, 229 Conn. 99, 105, 639 A.2d 507 (1994).

The following facts are undisputed: On September 26, 1993, the plaintiffs were involved in a minor motor vehicle accident. Zamora was driving the vehicle involved in the minor accident. The car, however, was owned and insured by Augusto Hernandez. Martinez was a passenger in that car. Following this mishap, the plaintiffs, pursuant to a police officer's instruction, were sitting in the back of a police cruiser. While the plaintiffs were seated in the cruiser, the cruiser was struck in the rear by an uninsured motorist not party to this action.

The plaintiffs applied to the defendant for uninsured motorist benefits under Hernandez's policy. The applications for benefits were refused by the defendant.

The subject policy states: "We will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury' ... [s]ustained by an 'insured'; and ... [c]aused by an accident ..."

The policy further states, in relevant part: " 'Insured' as used in this [p]art means ... [y]ou or any 'family member' [or] ... [a]ny other person 'occupying' 'your covered auto.' " The definition Section of the policy defines "you" as "[t]he 'named insured' shown in the Declarations ..." "occupying" is defined as "in, upon, getting in, on, out or off."

The only named insured on the declarations page is Hernandez. Zamora, however, is listed as a driver on the application for insurance submitted to the defendant by Hernandez. In fact, the application contains a handwritten sentence stating: "Note that insured is owner of this vehicle[,] but is not driver. Vehicle driven exclusively by Patricia Zamora as listed." Martinez is nowhere listed on the documents provided.

The defendant argues, without citation, that summary judgment should be granted against Zamora because "[t]he [p]laintiff does not appear as a named insured" on the policy and therefore "does not meet the definition of a covered person under [the uninsured section of] the [subject] policy."

"It is the function of the court to construe the provisions of the contract of insurance ... An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy ... The determinative question is the intent of the parties, that is,

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




Not Reported in A. Page 2
(Cite as: 1997 WL 785601, *1 (Conn.Super.))

what coverage the ... [plaintiff] expected to receive and what the defendant was to provide, as disclosed by the provisions of the policy ..." (Citations omitted.) *O'Brien v. United States Fidelity & Guaranty Co.*, 235 Conn. 837, 842, 669 A.2d 1221 (1996).

**\*2** In the present case, notably missing is an affidavit from Hernandez indicating what his understanding was regarding Zamora's coverage under the policy. It is undisputed that Zamora is not listed on the Declarations page of the policy. Nevertheless, the handwritten remarks on the application for insurance is enough to convince the court that there exists a genuine issue of material fact. That fact is whether it was understood and intended by Hernandez and the defendant that Zamora be entitled to uninsured motorist benefits. In other words, there is genuine issue of material fact whether Zamora is an "insured" as defined in the subject policy. See *Picataggio v. Romeo,* 36 Conn.App. 791, 794, 654 A.2d 382 (1995). ("A question of intent raises an issue of material fact, which cannot be decided on a motion for summary judgment.")

The defendant argues, again without citation, [FN1] that Martinez is also not a "covered person" under the policy. The plaintiffs admit that Martinez is not a named insured in the subject policy. The plaintiffs argue, however, that Martinez fits the portion of the policy that defines an insured as "[a]ny other person 'occupying' 'your covered auto.' " The issue presented is simply whether Martinez's presence in the police cruiser at the time of the accident constituted "occupying" the "covered auto" such that he is an "insured" as defined by the insurance policy.

> FN1. "When a memorandum of law fails to cite any legal authority, the memorandum is functionally equivalent to no memorandum at all." (Internal quotation marks omitted.) *Raub v. Dream Factory Inc.*, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 315846 (May 28, 1996, Hauser, J.). See also *Gaynor v. Union Trust Co.*, 216 Conn. 458, 482, 582 A.2d 190 (1990).

The plaintiffs cite *Allstate Insurance Co. v. Howe,* 31 Conn.App. 132, 623 A.2d 1031, cert. denied, 226 Conn. 911, 628 A.2d 983 (1993), as supporting their argument. In *Allstate,* the court examined the meaning of " 'in, on, getting into or out of' the insured vehicle." *Id.*, 137, 623 A.2d 1031. The appellate court held that the trial court had improperly denied an injured passenger underinsured motorist benefits. *Id.*, 140, 623 A.2d 1031. The plaintiffs claim that essential to the appellate court's finding was that "[t]he defendant had an intent to reenter the vehicle after a brief interruption in her travels. She was not simply standing by the car. She had exited the car for reasons related to its operation and was returning directly to resume her travels when the accident occurred." *Id.*, 138-39, 623 A.2d 1031. Therefore, the plaintiffs reason that Martinez is entitled to benefits in the present case because he intended to return to the vehicle in which he was originally riding following the hiatus in the police cruiser where he was injured.

The plaintiffs ignore, however, the language in *Allstate* that states that: "the defendant's actual physical contact with the vehicle at the time of the accident would ... appear to afford coverage." *Id.,* 138, 623 A.2d 1031. This language indicates *Allstate* is inapplicable to the present case. Here, Martinez was "occupying" a completely different vehicle than the one owned by the policy holder. Martinez was not in "actual physical contact" with the covered vehicle.

**\*3** The plaintiff also argues that *Agosto v. Aetna Casualty & Surety Co.,* 239 Conn. 549, 687 A.2d 1267 (1996), applies to the present case because the definition of " 'occupying' [in *Agosto* ] was identical to the instant case."

In *Agosto,* the Supreme Court reversed a trial court's ruling denying uninsured motorist benefits to a police officer. *Agosto v. Aetna Casualty & Surety Co., supra,* 239 Conn. 552. The basis of the Court's decision was that the "uninsured motorist endorsement [contained] language referring to individuals and family members when the named insured was a governmental entity." *Id.* This limited issue

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




Not Reported in A.  
(Cite as: 1997 WL 785601, *3 (Conn.Super.))

and holding does not apply to the present case.

"If the words in the policy are plain and unambiguous the established rules for the construction of contracts apply, the language ... must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." *O'Brien v. United States Fidelity & Guaranty Co., supra,* 235 Conn. 842.

The policy defines "occupying" as "in, upon, getting in, on, out or off." It is undisputed that Martinez was sitting in the police cruiser at the time of the accident giving rise to the present action. Martinez was not "in, upon, getting in, on, out or off" the Hernandez vehicle. The plaintiffs are asking this court to extend the definition of "occupying" far beyond "its natural and ordinary meaning." The court will not do so. Therefore, Martinez is not an "insured" as defined in the policy.

There is no genuine issue of material fact regarding whether Martinez meets the definition of "insured" as set forth in the insurance policy. As a matter of law, Martinez is not entitled to benefits under the Safeco policy.

Based on the above discussion, the defendant's motion for summary judgment against the plaintiff Patricia Zamora is denied. The defendant's motion for summary judgment against the plaintiff Miguel Martinez is granted.

1997 WL 785601 (Conn.Super.), 21 Conn. L. Rptr. 131

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.


