# Exhibit "D"

Not Reported in A.
2001 WL 103971 (Conn.Super.)
**(Cite as: 2001 WL 103971 (Conn.Super.))**

**Page 1**

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

Jeffrey BERKOWITZ,
v.
CITY of STAMFORD.

No. CV970158193S.

Jan. 22, 2001.

*MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (# 130) CROSS MOTION FOR SUMMARY JUDGMENT (# 142 )*

HICKEY.

**\*1** On April 8, 1997, the plaintiff, Jeffery Berkowitz, filed a single count complaint against the defendant, the city of Stamford. The complaint arises from a slip and fall incident that occurred in a parking lot at the Brennan Golf Course, which is owned and operated by Stamford. On December 8, 1997, the plaintiff moved to cite in as a party defendant Buckett & Zezima's 19th Hole, Inc., which motion the court, *Karazin, J.,* granted on January 5, 1998. Buckett & Zezima's runs the concession restaurant next to the golf course. On January 9, 1998, the plaintiff filed a two-count complaint in which he alleges that Stamford breached its statutory duty prescribed by General Statutes § 13a-149 and that Buckett & Zezima's 19th Hole, Inc. was negligent in maintaining premises it possessed, maintained and/or controlled. The plaintiff further alleges that he was injured because of the defendants' negligence.

On April 23, 1999, Stamford served a third-party complaint on GNY in which Stamford alleges that GNY has a duty to defend the city under an insurance policy GNY issued to Buckett & Zezima's 19th Hole, Inc. On June 28, 1999, GNY filed its answer and special defense, in which it claims that the policy issued to Buckett & Zezima's limits Stamford's additional insured status to liability arising out of the ownership, maintenance or use of that part of the premises leased to Buckett & Zezima's as shown on the schedule. GNY further claims that the only part of the premises leased to Buckett & Zezima's is the restaurant, whereas Stamford maintained control over the parking lot serving the restaurant.

On January 26, 2000, GNY moved for summary judgment on the ground that "the policy of insurance it issued to the co-defendant Buckett & Zezima's 19th Hole does not cover Stamford's alleged liability in this matter." [FN1] On June 23, 2000, Stamford filed its memorandum in opposition to GNY's motion. [FN2] Stamford also filed a motion for permission to file a cross motion for summary judgment, using its memorandum of law in opposition for support thereof. On August 14, 2000, Stamford filed its cross motion for summary judgment, supported by its memorandum in opposition to GNY's motion and supporting documents attached thereto.

FN1. GNY's motion is accompanied by a memorandum of law in support of the motion and the following documents: (1) a copy of portions of certified deposition testimony of Stephen Buckett; (2) unauthenticated copy of the defendant, Stamford's response to a July 12, 1999 request for admission; (3) unauthenticated copy of bid documents for concession for the 19th Hole Restaurant; and (4) unauthenticated copy of an insurance policy issued to Zezima's 19th Hole, Inc..

FN2. Stamford's memorandum in opposition is accompanied by: (1) the affidavit of Michael Dale, manager of the public golf course; (2) the affidavit of Allan Brown, Stamford's risk manager until 1997; (3) the affidavit of Frederick Quittell, Stamford's risk manager since 1997; (4) GNY's letter to Stamford's office of legal affairs dated December 18, 1997, informing Stamford that GNY is unable to provide a defense to Berkowitz's claim against Stamford; (5) an additional excerpt from the certified deposition testimony of Stephen Buckett; (6) a portion of the certified transcript of deposition testimony of Robert

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




Not Reported in A.
(Cite as: 2001 WL 103971, *1 (Conn.Super.))

**Page   2**

N. Reuter, manager of GNY's New England office.

Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Miles v. Foley,* 253 Conn. 381, 386, 752 A.2d 503 (2000) . "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law ... and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted; internal quotation marks omitted.) *Appleton v. Board of Education,* 254 Conn. 205, 209, 757 A.2d 1059 (2000). "The existence of the genuine issue of material fact must be demonstrated by counter affidavits and concrete evidence." (Internal quotation marks omitted.) *Pion v. Southern New England Telephone Co.,* 44 Conn.App. 657, 663, 691 A.2d 1107 (1997).

The following facts are undisputed. Stamford owns the land and buildings located at 451 Stillwater Avenue in Stamford, Connecticut. The premises consists of a golf course, a restaurant and a lot that serves as the parking facilities for the golf course and the restaurant. Buckett & Zezima's 19th Hole operates the restaurant at the location under a concession agreement with Stamford. Under the concession agreement, Buckett & Zezima's 19th Hole is required to carry Stamford and its agents and employees as additional insureds under its policy of insurance for liability coverage. The policy, held with GNY, states that Stamford is an additional insured only with respect to liability arising out of the ownership, maintenance or use of the part of 451 Stillwater Road leased to Buckett & Zezima's 19th Hole.

*2 The plaintiff alleges that after exiting the 19th Hole restaurant on a February night, he slipped and fell on ice in the parking lot at 451 Stillwater Road. The plaintiff further alleges that Stamford owned, possessed, maintained and/or controlled the parking lot and alleges that Buckett & Zezima's 19th Hole possessed, maintained and/or controlled the parking lot.

GNY moves for summary judgment on the ground that "the policy of insurance it issued to the co-defendant Buckett & Zezima's 19th Hole does not cover Stamford's alleged liability in this matter." Stamford cross moves for summary judgment, relying on its submission in opposition to GNY's motion. Thus, the. issue raised by the third-party plaintiff's and the third-party defendant's motions is whether GNY has the duty to defend Stamford on the underlying complaint in this matter. To decide this issue, the court turns to the language contained in the insurance policy. "[C]onstruction of a contract of insurance presents a question of law for the court." *Aetna Life & Casualty Co. v. Bulaong,* 218 Conn. 51, 58, 588 A.2d 138 (1991).

Attached to GNY's motion as Exhibit D is a copy of an insurance policy issued by GNY for Zezima's 19th Hole, Inc., for the policy period December 19, 1995 to December 19, 1996. An endorsement is attached to the policy that amends the named insured to read "Zezima's 19th Hole, Inc., Brennan's Golf Course and Buckett & Zezima DBA." (GNY's Memorandum, Exhibit D, p. GNY 003.) The address for the location and building is 451 Stillwater Ave., Stamford, CT and applies to general liability property. (GNY's Memorandum, Exhibit D, p. GNY 002.) Another endorsement to the policy designates the premises leased as 451 Stillwater Avenue, Stamford, CT and names as additional insured the City of Stamford, its agents and EM. (GNY's Memorandum, Exhibit D, endorsement number CG 20 11 01 96.)

"[A]n insurer's duty to defend, being much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the [underlying] complaint ... The obligation of the insurer to defend does not depend on whether the injured

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




Not Reported in A.
(Cite as: 2001 WL 103971, *2 (Conn.Super.))

party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability ... It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint ... Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer must defend." (Internal quotation marks omitted.) *Community Action for Greater Middlesex County, Inc. v. American Alliance Ins. Co.,* 254 Conn. 387, 395, 757 A.2d 1074 (2000). If the underlying complaint has alleged a mere possibility of coverage under the policy, the insurer must defend. *Edelman v. Pacific Employers Insurance Co.,* 53 Conn.App. 54, 59, 728 A.2d 531, cert. denied, 249 Conn. 918, 733 A.2d 229 (1999).

The court finds that genuine issues of material fact exist which preclude the court from granting GNY's motion. The policy names Zezima's 19th Hole, Inc., Brennan Golf Course, Buckett & Zezima DBA and Stamford as named insureds. (GNY's Memorandum, Exhibit D, p. GNY 003 and endorsement number CG 20 11 01 96.) The designated premises listed in the policy is 451 Stillwater Ave., Stamford, CT. (GNY's Memorandum, Exhibit D, p. GNY 002.) The policy does not narrow the location of the designated premises at 451 Stillwater Ave. Therefore, an issue of ambiguity exists as to the exact premises covered under the policy. "Well established rules of contract construction counsel us, in the event of ambiguity, to construe the terms of an insurance policy in favor of insurance coverage because it is the insurance company that has drafted the terms of the policy." *Streitweiser v. Middlesex Mutual Assurance Co.,* 219 Conn. 371, 375, 593 A.2d 498 (1991). In this case, there is ambiguity in the policy as to whether the designated premises includes the parking lot where the alleged accident occurred. Thus, there is a genuine issue of material fact as to whether the insurance policy covers the incident underlying the plaintiff's claim in this case and the court hereby denies GNY's motion for summary

judgment as to the duty to defend. [FN3] Stamford's cross motion for summary judgment as to GNY's duty to defend, however, is hereby granted because, as a matter of law, the insurance policy names Stamford and Brennan's Golf Course as additional insureds and the underlying complaint alleges facts that fall well within the realm of a possibility of coverage for Stamford under the insurance policy. See *Edelman v. Pacific Employers Insurance Co., supra,* 53 Conn.App. 59, cert. denied, 249 Conn. 918, 733 A.2d 229 (1999). The question of whether GNY has a duty to defend Stamford is purely a question of law, determined by comparing the allegations of the plaintiff's complaint with the terms of the insurance policy. *Community Action for Greater Middlesex County, Inc. v. American Alliance Ins. Co., supra,* 254 Conn. 395. The plaintiff's complaint alleges in count one that Stamford possessed, maintained and/or controlled the parking lot and in count two that Buckett & Zezima's 19th Hole possessed, maintained and/or controlled the parking lot. The complaint sets forth a cause of action against Stamford that falls within the scope of the insurance policy. Because the underlying complaint sets forth a possibility of coverage, the court finds that, as a matter of law, GNY has a duty to defend Stamford in the underlying action.

FN3. Both parties rely on a number of cases from outside jurisdictions that discuss the issue of whether a tenant's insurance company has a duty to defend a landlord where the accident occurs outside the leased premises in a common area controlled and maintained by the landlord. It is submitted that these cases are inapposite to the present action because it is unclear from the language used in the insurance policy the extent of the premises that is covered by the policy. Thus, because the intent of the parties of what premises should be covered involves questions of fact, it is submitted that summary judgment is inappropriate. See *Community Action for Greater Middlesex County, Inc. v. American Alliance Ins. Co., supra,* 254 Conn. 399 ("The [i]nterpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy ... The determinative question is the intent of the parties, that is, what coverage the ... [insured]

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.





Not Reported in A.
(Cite as: 2001 WL 103971, *2 (Conn.Super.))

expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy ... It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy ... The policy words must be accorded their natural and ordinary meaning ... [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy ... A necessary predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous ... The fact that the parties advocate different meanings of the [insurance policy] does not necessitate a conclusion that the language is ambiguous").

**\*3** Finally, GNY's motion raises the issue of whether the relevant insurance policy affords coverage for Stamford's liability in the underlying complaint. Any possible duty GNY may have to indemnify Stamford under the policy depends on whether Stamford is liable to the plaintiff and that question is properly decided at trial or at another fact-finding stage. See *Smedley Co. v. Empoyers Mutual Liability Ins. Co.*, 143 Conn. 510, 516, 123 A.2d 755 (1956) (distinction between liability and coverage should be noted, duty to indemnify depends on insured's ultimate liability). Accordingly, GNY's motion, to the extent it argues GNY's duty to indemnify Stamford, is hereby denied because a genuine issue of material fact regarding Stamford's liability to the plaintiff in the underlying action remains unresolved at this stage in the proceedings.

For the foregoing reasons, GNY's motion for summary judgment as to its duty to defend and its duty to indemnify Stamford is hereby denied because there are issues of material fact regarding the scope of the relevant insurance policy. Furthermore, the court hereby grants Stamford's cross motion for summary judgment as to its duty to defend because the facts alleged in the underlying complaint set forth the possibility of coverage and GNY, therefore, has a duty to defend Stamford, a named insured in the insurance policy.

2001 WL 103971 (Conn.Super.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.





# Exhibit "E"

2004 WL 2471524
--- F.Supp.2d ---
(Cite as: 2004 WL 2471524 (D.Conn.))

**Page    1**

Motions, Pleadings and Filings

Only the Westlaw citation is currently
available.

United States District Court,
D. Connecticut.

MERRY CHARTERS, LLC and Carl Shillo,
Plaintiffs,
v.
TOWN OF STONINGTON, et al., Defendants.

No. 3:02CV336 (MRK).

Oct. 27, 2004.

**Background:** Harbor tour operator sued town,
claiming that town violated its equal
protection and substantive due process rights
by denying variance to allow operation of
tours from dock lacking on-site parking. Town
moved for **summary judgment.**

Holdings: The District Court, Kravits, J.,
held that:
(1) operator's equal protection rights were
not violated;
(2) notes of alleged planning and zoning
commission action were not **admissible** over
hearsay objection as public records; and
(3) substantive rights of operator were not
violated.
Judgment for town.

[1] Constitutional Law ⚫➤ 228.2
92k228.2 Most Cited Cases
Harbor tour boat operator was not denied
equal protection when town zoning board of
appeals (ZBA) would not grant variance
eliminating zoning requirement that there be
five on-site parking spaces before tours could
be operated from dock, while advising another
operator that three or four spaces were
sufficient; second operator was seeking advice
rather than variance, in denying variance
ZBA maintained that there be at least one on-
site space, a requirement applicable to both
operators, and there was rational basis for
requirement that there be at least one on-site
space. U.S.C.A. Const.Amend. 14.

[1] Zoning and Planning ⚫➤ 509
414k509 Most Cited Cases
Harbor tour boat operator was not denied
equal protection when town zoning board of
appeals (ZBA) would not grant variance
eliminating zoning requirement that there be
five on-site parking spaces before tours could
be operated from dock, while advising another
operator that three or four spaces were
sufficient; second operator was seeking advice
rather than variance, in denying variance
ZBA maintained that there be at least one on-
site space, a requirement applicable to both
operators, and there was rational basis for
requirement that there be at least one on-site
space. U.S.C.A. Const.Amend. 14.

[2] Evidence ⚫➤ 318(1)
157k318(1) Most Cited Cases
[2] Evidence ⚫➤ 333(1)
157k333(1) Most Cited Cases
Notes by spectator at town planning and
zoning commission hearing, indicating that
restaurant had 21 parking spaces on adjacent
street and none on-site, would not be
considered in deciding harbor tour operator's
claim of denial of equal protection arising
from rejection of special use application to
utilize dock lacking on site parking for harbor
tour purposes; notes were hearsay, as they
were offered to prove truth of statement
regarding parking availability, and they were
not covered by public records exception. Fed.
Rules Evid., Rule 803(8)(C).

[3] Constitutional Law ⚫➤ 228.2
92k228.2 Most Cited Cases
Equal protection rights of harbor tour boat
operator were not violated when town
planning and zoning commission denied
special use permit to operate tours, due to lack
of on-site parking; restaurant claimed to be
similarly situated, which operated without on-
site parking, had never applied for use permit,
another tour boat operation was pre-existing
nonconforming use, precluding its use as
similarly situated entity, and requirement
that there be on-site parking was rational.
U.S.C.A. Const.Amend. 14.

[3] Zoning and Planning ⚫➤ 387
414k387 Most Cited Cases
Equal protection rights of harbor tour boat

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




2004 WL 2471524
(Cite as: 2004 WL 2471524 (D.Conn.))

Page    2

operator were not violated when town planning and zoning commission denied special use permit to operate tours, due to lack of on-site parking; restaurant claimed to be similarly situated, which operated without on-site parking, had never applied for use permit, another tour boat operation was pre-existing nonconforming use, precluding its use as similarly situated entity, and requirement that there be on-site parking was rational. U.S.C.A. Const.Amend. 14.

[4] Constitutional Law ⬤═ 278.2(1)
92k278.2(1) Most Cited Cases
Town planning and zoning commission did not violate substantive due process rights of harbor tour boat operator by denying zoning variance to operate tours from dock due to absence of on-site parking, for which operator sought to substitute satellite parking lot; commission had broad discretion in accepting or rejecting variances, precluding existence of any property right in variance protectable by due process requirement, and action was not gross abuse of government authority, as required for substantive due process violation. U.S.C.A. Const.Amend. 14.

[4] Zoning and Planning ⬤═ 509
414k509 Most Cited Cases
Town planning and zoning commission did not violate substantive due process rights of harbor tour boat operator by denying zoning variance to operate tours from dock due to absence of on-site parking, for which operator sought to substitute satellite parking lot; commission had broad discretion in accepting or rejecting variances, precluding existence of any property right in variance protectable by due process requirement, and action was not gross abuse of government authority, as required for substantive due process violation. U.S.C.A. Const.Amend. 14.

Frank J. Szilagyi, Josephine A. Spinella, Silvester, Daly & Delaney, Hartford, CT, Scott Roger Chadwick, Murdo T. Smith, Christopher R. Stone, Chadwick, Libbey & Stone, East Hartford, CT, for Plaintiff.

Thomas R. Gerarde, Beatrice S. Jordan, Howd & Ludorf, Hartford, CT, for Defendants.

MEMORANDUM OF DECISION

KRAVITZ, District J.

*1 Plaintiffs Merry Charters, LLC ("Merry Charters") and Carl Shillo ("Mr.Shillo") bring this action against the Town of Stonington, the Stonington Planning and Zoning Commission (the "Commission"), Edward T. Sullivan (Chairman of the Commission at all times relevant to this action), and George Thayer (Chairman of the Stonington Zoning Board of Appeals (the "ZBA") at all times relevant to this action). The lawsuit arises from Defendants' denial of Plaintiffs' applications for special use permits and for a variance. Plaintiffs claim that these actions violated their rights to equal protection and due process under the Fourteenth Amendment and also contravened Connecticut's common law. Defendants have moved for summary judgment and to strike an exhibit offered in support of Plaintiffs' Local Rule 56(a)(2) Statement [doc. # 60]. For the reasons stated below, the Court GRANTS Defendants' Motion for Summary Judgment [doc. # 49] and Defendants' Motion to Strike [doc. # 65].

I.

In the summer of 2000, Mr. Shillo began operating a commercial tour boat business called "Merry Charters" from a dock owned by Mr. Robert Valenti located on the Mystic River in Stonington, Connecticut. Defs.' Local Rule 56(a)(1) Statement at ¶ 4 [doc. # 51]. [FN1] Because Mr. Valenti's dock was subject to a Commission-imposed stipulation requiring a zoning permit if the dock were to be used commercially, on August 11, 2000, Plaintiffs applied to the Commission for a special use permit to run a tour boat operation from the Valenti dock. Id. at ¶¶ 10, 12 & Ex. F. The Commission held public hearings on the application on October 5 and 17, 2000. Id. at ¶¶ 22-23 & Ex. J.

In connection with those proceedings, the Connecticut Department of Environmental Protection ("DEP") raised concerns about a number of aspects of Plaintiffs' application in a letter to the Town Planner. In particular, the DEP expressed concerns about reconciling the tour boat operation with an existing public

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




2004 WL 2471524
(Cite as: 2004 WL 2471524, *1 (D.Conn.))

Page   3

access easement at the site, handling sewage generated by the tour boat, and determining whether state coastal permits for the dock and pier had been previously issued. *Id.* at ¶ 24 & Ex. K.

Another problematic aspect of Plaintiffs' application was that it did not provide for any on-site parking for tour boat customers or employees. Section 7.10 of the Stonington Zoning Regulations (the "Zoning Regulations") on "Off-street Parking Requirements" states that "parking shall be a required accessory use for each use proposed and shall be shown on all site plans and evaluated in terms of need and sufficiency of design," and Section 7.10.1.2 emphasizes that parking spaces must be on-site. *Id.* at ¶ 24 & Ex. UU ("Required spaces shall be on the lot proposed for development and be under single ownership and control."). Section 7.10.4 further states:

*Parking Space Requirements by District.* Parking spaces shall be provided in sufficient number to accommodate the motor vehicles of all occupants, employees, customers and any others normally visiting the premises at any one time as may be required by the Commission. Spaces shall be provided in not less than the number indicated in Table 7-10.

*2 *Id.* Because Table 7-10 of the Zoning Regulations does not specifically list parking requirements for tour boats, the Commission exercised its powers under Section 7.10.4.1 to determine the appropriate number of required on-site parking spaces for a tour boat operation. [FN2] The Commission decided that the parking requirements for restaurants (which are found in Table 7-10 of the Zoning Regulations) should be applied to Plaintiffs' tour boat operation. As such, the Commission determined that Plaintiffs' tour boat operation would require fifteen on-site parking spaces. *Id.* at ¶¶ 29- 31.

Because of DEP's concerns and Plaintiffs' failure to provide for any on-site parking, the Commission on October 17, 2000 denied Plaintiffs' application for a special use permit without prejudice to renewal. *Id.* at ¶ 32. Plaintiffs submitted a second application for a special use permit on November 16, 2000. *Id.*

at ¶ 33 & Ex. O. The DEP informed the Commission that Plaintiffs' new application adequately addressed DEP concerns. *Id.* at ¶ 34 & Ex. P. As to on-site parking, Plaintiffs' second application proposed satisfying that requirement by leasing fifteen parking spaces from St. Patrick's Church, located approximately 1200 to 1300 feet from the Valenti dock. *Id.* at ¶¶ 35- 36. Plaintiffs also asked the Commission to use its discretion under Section 7.10.2 of the Zoning Regulations to reduce the on-site parking requirements from fifteen to zero. [FN3] *Id.* at ¶ 38.

The Commission sought an opinion from the Town Attorney on whether it could reduce the on-site parking requirements to zero as Plaintiffs requested. The Town Attorney advised the the Commission that it had discretion to do so under the Zoning Regulations and that it had further discretion to impose substantial conditions on the special use permit specifically related to the use of the off-site parking at St. Patrick's Church. [FN4] *Id.* at ¶¶ 40-43 & Ex. Z.

Mary Villa, the Town Planner at the time, submitted a memorandum to the Commission recommending denial of Plaintiffs' application. *Id.* at ¶ 46 & Ex. S. Ms. Villa arrived at this recommendation in part because (1) there was no existing contractual agreement between Plaintiffs and St. Patrick's Church for the lease of the fifteen parking spaces at the church; (2) the Stonington Board of Police Commissioners had expressed their concern about Plaintiffs' application due to the lack of adequate parking in the area; (3) satellite or off-site parking was not expressly permitted by the Zoning Regulations, and therefore should be considered prohibited; (4) the public on-street parking adjacent to the site had already been counted toward the parking requirements of other area businesses; and (5) the Town would have difficulty monitoring compliance with use of the off-site parking at the church, especially considering that most people would prefer to park as close as possible to their destination. *Id.* at Ex. S.

*3 Robert Granato, a member of the





2004 WL 2471524
(Cite as: 2004 WL 2471524, *3 (D.Conn.))

**Page 4**

Commission at the time, also submitted a memorandum to the Commission recommending denial of Plaintiffs' application. *Id.* at ¶ 47 & Ex. BB. Mr. Granato's memorandum noted the following factors that led to his recommendation: (1) on-site parking requirements are important in maintaining the balance between business needs, the density of the area, and traffic considerations; (2) commercial use of the fifteen spaces at St. Patrick's Church would constitute an impermissible change from the parking lot's intended use as church parking; (3) two prior cases where off-site parking was approved by the Commission involved nearby parking (100 yards in one case, and diagonally across the street in the other) that could only be used by employees (not patrons) of the business; and (4) allowing the off-site parking proposed by Plaintiffs would set a precedent for every other business in Mystic and might lead to uncontrolled density use in the area. *Id.*

The Commission considered Plaintiffs' second application on May 15, 2001, and denied it by a vote of three to two. *Id.* at ¶¶ 45-48 & Ex. DD. The Commission offered the following reasons for denying Plaintiffs' second application:

1. No on-site parking provided as required by [Zoning Regulation] 7.10.
2. The applicant was unable to provide adequate and appropriate parking.
3. The off-site parking proposed is not expressly permitted in the Regulations and therefore is prohibited.
4. There are existing and well documented parking problems and congestion in the vicinity of the proposed activity, which is in downtown Mystic. Approval of this project may contribute to such existing problems and thereby threaten the safety of residents and merchants, as well as visitors to the downtown area.

*Id.* at Ex. DD. Plaintiffs appealed the Commission's denial to the Connecticut Superior Court on June 4, 2001. *Id.* at ¶ 50 & Ex. EE.

On June 15, 2001, Plaintiffs applied to the ZBA for a variance from the parking regulations, requesting that the required number of on-site parking spaces for the tour boat operation be reduced to zero. *Id.* at ¶ 51 & Ex. FF. On July 31, 2001, Defendant George Thayer (Chairman of the Commission) sent a memorandum to Defendant Edward T. Sullivan (Chairman of the ZBA) expressing the Commission's opposition to Plaintiffs' variance application. *Id.* at Ex. LL. On August 14, 2001, the ZBA held a public hearing on Plaintiffs' application, and the ZBA denied the variance request on September 11, 2001, by a vote of three in favor, and two opposed. *Id.* at ¶ 63 & Ex. NN. According to Section 8.10.7 of the Zoning Regulations, a supermajority vote of four out of five votes was required to approve a variance. *Id.* at Ex. UU. The ZBA's stated reason for denying Plaintiffs' variance application was as follows: "No parking provided--commercial ventures require at least one designated spot." *Id.* at Ex. NN. Plaintiffs also appealed the ZBA's decision to the Connecticut Superior Court. *Id.* at ¶ 69.

*4 The Connecticut Superior Court rejected Plaintiffs' appeals from the denial of their applications for a special use permit and for a variance. *See Merry Charters, LLC v. Stonington Planning & Zoning Com'n,* 2002 WL 1376054, *1-2 (Conn.Super., May 29, 2002); *Merry Charters, LLC v. Town of Stonington Zoning Bd. of Appeals,* 2002 WL 1455709, *1-2 (Conn.Super., May 29, 2002). The court held that Plaintiffs failed to establish "aggrievement"--a "specific, personal and legal interest in the subject matter of the decision" that had been "specially and injuriously affected"--because, by the time their appeals were heard, Plaintiffs no longer had a lease for the Valenti dock. *Id.*

On February 4, 2002, Plaintiffs filed this action in Connecticut Superior Court seeking damages from Defendants, and Defendants removed this action to this Court on February 26, 2002. *See* Notice of Removal [doc. # 1]. Following discovery, Defendants filed a **motion** for **summary judgment**.

II.

**Summary judgment** is appropriate when

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.





there is no dispute as to a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party carries the burden of demonstrating that there is no genuine material dispute of fact. *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 133 (2d Cir.2000). "[I]n determining whether a genuine issue has been raised, the inferences to be drawn from the underlying facts revealed in the affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Tomka v. Seiler,* 66 F.3d 1295, 1304 (2d Cir.1995).

Plaintiffs challenge the Commission's and ZBA's actions on two constitutional grounds: equal protection and substantive due process. *See* Second Am. Compl., Counts 1-4 [doc. # 35]. Plaintiffs also assert two state common law claims. *See id.,* Counts 5-6.

**A. Equal Protection**

Plaintiffs assert a "class of one" selective enforcement equal protection claim based upon the Supreme Court's decision in *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). To establish their selective enforcement claim, Plaintiffs must show "(1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Harlen Associates v. Village of Mineola,* 273 F.3d 494, 499 (2d Cir.2001) (internal quotation omitted). As to the first prong, "[a]s a general rule, whether items are similarly situated is a factual issue that should be submitted to the jury. This rule is not absolute, however, and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." *Id.* at 499 n. 2 (citations omitted). As to the second prong, a "class of one" plaintiff may survive a

summary judgment motion by showing that "there was no rational basis for the unequal treatment received." *Id.* at 500 (citing *Olech,* 528 U.S. at 565). [FN5]

**\*5** [1] 1. Variance. Applying the equal protection standards of *Harlen Associates* to the ZBA's denial of Plaintiffs' variance request, this Court must first determine whether there is evidence of any parties similarly situated to, yet treated differently from, Plaintiffs. Plaintiffs allege that the tour boat *Mystic River Queen* was similarly situated because it was also a tour boat operation that submitted an application to the ZBA regarding parking regulations. *See* Pls.' Opp'n Defs.' Mot. Summ. J. at 17-18 [doc. # 59].

The parties agree that in 1990 the *Mystic River Queen* asked the ZBA to determine the number of on-site parking spaces it would need for its tour boat operation and that on or about May 30, 1990, the ZBA determined that the *Mystic River Queen* would require three to four on-site parking spaces. *See* Defs.' Local Rule 56(a)(1) Statement at Ex. S [doc. # 51]; Pls.' Opp'n Defs.' Mot. Summ. J. at 18 [doc. # 59]. However, from the record before the Court and counsels' representations at oral argument, it appears that the *Mystic River Queen* merely requested an interpretation of the Zoning Regulations, not a variance. Because neither party could provide the Court with a clear record that the *Mystic River Queen* actually sought and received a variance from the ZBA-- such as a notice of decision issued by the ZBA-- the *Mystic River Queen* cannot be considered similarly situated to Plaintiffs, since Plaintiffs sought a variance and it appears that *Mystic River Queen* did not.

In any event, even if the Court assumed that the *Mystic River Queen* did seek a variance from the on-site parking Zoning Regulations and thus was similarly situated to Plaintiffs in that they were both tour boat operations that sought variances from the Zoning Regulations regarding parking requirements, the record shows that *Mystic River Queen* was not treated differently from Plaintiffs. In denying Plaintiffs' variance request, the ZBA stated that "commercial ventures require at least one

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.





designated spot," a ruling that is ·not inconsistent with the ZBA's advice to the *Mystic River Queen* that it needed three to four on-site parking spaces for its operation. Indeed, if anything, by requiring only "at least one designated spot," the ZBA treated Plaintiffs more generously than the *Mystic River Queen*.

Even assuming that the *Mystic River Queen* and Plaintiffs were similarly situated yet treated differently, the question would still remain whether there was a rational basis for the ZBA's alleged unequal treatment of the Plaintiffs. According to the Second Circuit, "a zoning board's decision can be considered irrational only when the board acts with no legitimate reason for its decision." *Harlen Associates*, 273 F.3d at 500 (citing *Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir.1996)) (internal quotations omitted). Plaintiffs must produce evidence from which a trier of fact could conclude that there was no rational basis for the alleged unequal treatment. Yet, Plaintiffs have provided no such evidence. The ZBA's requirement of at least one designated parking spot for a commercial venture such as Plaintiffs' proposed tour boat operation appears on its face to be a legitimate reason for the ZBA's denial of Plaintiffs' variance request. *See Bloom v. Zoning Bd. of Appeals of City of Norwalk*, 233 Conn. 198, 206-07, 658 A.2d 559 (1995) ("Courts are not to substitute their judgment for that of the [ZBA] ... and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing.... A variance constitutes permission to act in a manner that is otherwise prohibited under the zoning law of the town.... It is well established, however, that the granting of a variance must be reserved for unusual or exceptional circumstances.") (internal quotations and citations omitted).

**\*6** Because Plaintiffs have failed to establish either of the two prerequisites for their equal protection claim relating to the ZBA's denial of Plaintiffs' variance request, Defendants are entitled to judgment on that claim.

[2] 2. Special Use Permits. Turning next to the Commission's denial of the Plaintiffs' special use permits, the Court first must determine whether there are any parties similarly situated to Plaintiffs, yet treated differently by the Commission. Plaintiffs allege that Anthony J's restaurant and the *Argia* tour boat are similarly situated to the Plaintiffs. *See* Pls.' Opp'n Defs.' **Mot.** Summ. J. at 17, 19-20 [doc. # 60].

Before turning to Plaintiffs' claim regarding Anthony J's, the Court must address Defendants' **motion** to strike certain **evidence** that Plaintiffs submitted in **support** of that claim. *See* **Motion** to Strike Exhibit 10 of Plaintiffs' Local Rule 56(a)(2) Statement [doc. # 65]. "A **motion** to strike is the correct vehicle to challenge materials submitted in connection with a **summary judgment motion**." *Newport Elec., Inc. v. Newport Corp.*, 157 F.Supp.2d 202, 208 (D.Conn.2001). "The principles governing **admissibility** of **evidence** do not change on a **motion** for **summary judgment**.... Therefore, only **admissible evidence** need be considered by the **trial** court in ruling on a **motion** for **summary judgment**." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir.1997). "[A] **motion** to strike is appropriate if documents submitted in **support** of a **motion** for **summary judgment** contain inadmissible hearsay or conclusory statements, are incomplete, or have not been properly authenticated." *Spector v. Experian Information Services Inc.*, 321 F.Supp.2d 348, 352 (D.Conn.2004).

Plaintiffs' Exhibit 10 consists of notes and a hand-drawn schematic created by a member of the community, Mr. Kirkpatrick, purportedly relating to a Commission hearing on a special use permit application by a business called Trader Jacks. Even though the document was created in connection with Trader Jacks' hearing, Plaintiffs produced this document in an attempt to establish from it that Anthony J's restaurant had 21 parking spaces on the street adjacent to the restaurant and no on-site parking. *See* Pls.' Local Rule 56(a)(2) Statement at 13 ¶ 35 [doc. # 60].

Defendants allege that the information presented in Exhibit 10 is unreliable,

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




unauthenticated, hearsay that would not be **admissible** at **trial** under the Federal Rules of **Evidence**. *See* Defs.' **Mot.** to Strike at 1-2 [doc. # 65]. "Hearsay is a statement, other than one made by the declarant while testifying at **trial** or hearing, offered in **evidence** to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Plaintiffs offered these notes to prove the truth of the matter asserted in them, and as such the document is clearly inadmissible hearsay unless a hearsay exception applies.

Even though Plaintiffs refer to Exhibit 10 as "Commission's Notes," they were created by a member of the public attending a Commission hearing and as such are clearly not official records of the Commission's proceedings. Plaintiffs appear to acknowledge this because they assert that the notes were submitted to the Commission and marked as an exhibit during the Trader Jacks public hearing, and that therefore the notes are admissible under the public records exception to the hearsay rule. *See* Fed.R.Evid. 803(8)(C). Rule 803(8)(C) states in relevant part that the following is not excluded by the hearsay rule: "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... [ (C) ] factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." On its face, Exhibit 10 is not a record of a public agency setting forth factual findings, and in any event Exhibit 10's source indicates a lack of trustworthiness. Therefore, Exhibit 10 is inadmissible hearsay, and the Defendants' Motion to Strike [doc. # 65] is granted.

**\*7** [3] Although now struck from the record, even if the Court were to have accepted all of the Plaintiffs' information regarding Anthony J's restaurant as true, the Court's conclusion would not change because Plaintiffs and Anthony J's were not, in fact, similarly situated. The documents before this Court show that Anthony J's never applied for a special use permit regarding its parking requirements, *see* Pls.' Objection to Defs.' Mot. to Strike Pls.' Ex. at 8 [doc. # 67]; Defs.'

Reply to Pls.' Opp'n at 3 [doc. # 64], and at oral argument, the parties agreed. Because Anthony J's neither applied for nor needed a special use permit related to its parking, Anthony J's cannot be considered similarly situated to Plaintiffs for purposes of their equal protection claim.

As to Plaintiffs' claim that they are similarly situated to the *Argia* tour boat, it is undisputed that the *Argia* 's dock was a pre-existing nonconforming use that did not require a special permit in order to support a commercial tour boat operation. *See* Pls.' Local Rule 56(a)(2) Statement at 14 ¶¶ 40-41 [doc. # 60]. As such, the *Argia* was in an entirely different situation from Plaintiffs. The dock Plaintiffs intended to use--the Valenti dock-- not only was not a preexisting nonconforming use, but also was subject to a specific stipulation demanded by the Commission that required a special use permit if the dock were ever used by a commercial entity. Defs.' Local Rule 56(a)(1) Statement at ¶¶ 10, 12 & Ex. F [doc. # 51]. Because the *Argia* neither applied for nor needed a special use permit related to its parking, the *Argia* cannot be considered similarly situated to Plaintiffs for purposes of their equal protection claim.

In sum, Plaintiffs have failed to produce a single similarly situated party that sought and was granted a special use permit from the Commission to reduce its on-site parking requirements to zero or to use off-site parking roughly 1200 to 1300 feet away as a substitute for the on-site parking requirements. Therefore, Plaintiffs' equal protection claim fails as a matter of law.

Even if Plaintiffs had satisfied the similarly situated prong of their equal protection claim, they would still have to produce evidence from which a trier of fact could conclude that there was no rational basis for the treatment Plaintiffs received from the Commission. As stated above, "a zoning board's decision can be considered irrational only when the board acts with no legitimate reason for its decision." *Harlen Associates,* 273 F.3d at 500 (citing *Crowley,* 76 F.3d at 52) (internal quotations omitted). While Plaintiffs allege that the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




2004 WL 2471524
(Cite as: 2004 WL 2471524, *7 (D.Conn.))

Page   8

Commission behaved arbitrarily and maliciously, *see* Pls.' Opp'n to Defs.' Mot. Summ. J. at 24-30 [doc.# 59], [FN6] they fail to produce any evidence demonstrating that the Commission had "no legitimate reason for its decision." On the contrary, the stated reasons for the Commission's denials of the Plaintiffs' first application--environmental concerns and a lack of on-site parking--as well as Plaintiffs' second application--a lack of on-site parking, the determination that off-site parking at St. Patrick's Church was prohibited, and the existing parking problems and congestion in the vicinity--appear entirely rational and legitimate, and Plaintiffs have produced no evidence to the contrary. Indeed, the legitimacy of the Commission's concerns was all but conceded by Plaintiffs at oral argument, and this Court need not delve more deeply into the reasons offered by a local zoning authority. As the Second Circuit has sensibly emphasized, "federal courts should not become zoning boards of appeal to review nonconstitutional land-use determinations by the Circuit's many local legislative and administrative agencies." *Zahra v. Town of Southold,* 48 F.3d 674, 679-80 (2d Cir.1995) (internal quotations omitted).

**\*8** Because Plaintiffs failed as a matter of law to establish either of the two prerequisites for their equal protection claim against the Commission, Defendants are entitled to judgment on that claim as well.

B. Substantive Due Process

[4] To survive a motion for summary judgment on a substantive due process challenge to the decisions of a local zoning authority, "a plaintiff must show both (1) that he had a valid property interest in the granting of the permit, and (2) that the defendants infringed that property interest in an arbitrary or irrational manner." *Harlen Associates,* 273 F.3d at 503. The Second Circuit applies a "strict 'entitlement test' in land use regulation cases to determine if the abridgement of an asserted property right is cognizable under the substantive component of the Due Process Clause ." *Id.* As a general rule, "entitlement turns on whether the

issuing authority lacks discretion to deny the permit, i.e., is required to issue it upon ascertainment that certain objectively ascertainable criteria have been met." *Natale v. Town of Ridgefield,* 170 F.3d 258, 263 (2d Cir.1999). As to the second requirement, a denial by a local zoning authority violates substantive due process standards only if the denial "is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale,* 170 F.3d at 263. On the basis of the undisputed facts in the record, Plaintiffs cannot satisfy either of these requirements.

As the Second Circuit noted in *Natale,* whether Plaintiffs have established a valid property interest in an application for a variance or special use permit hinges on whether the decisionmaking body had discretion to deny the application. Section 8.10.3 of the Zoning Regulations empowers the ZBA to grant variances in cases of hardship, stating as follows:

*Hardship.* Where there is difficulty or unreasonable hardship, but not economic hardship, in the way of carrying out the strict letter of the Zoning Regulations, the Zoning Board of Appeals shall have power in a specific case to vary the application of any bulk provision of the ordinance, if such variance will be in harmony with the general purpose and intent of the ordinance, the Town Plan of Development, and if the public health, safety and welfare will be served and substantial justice done.

Defs.' Local Rule 56(a)(1) Statement at Ex. UU [doc. # 51]. According to Section 8.10.1 of the Zoning Regulations, the power to grant variances in cases of hardship (and, indeed, any other power or duty of the ZBA) "shall be exercised subject to appropriate conditions and safeguards in harmony with the purpose and intent of these [zoning] regulations, the Plan of Development, and in accordance with the promotion of the health, safety, welfare and maintenance of property values in the Town of Stonington." *Id.*

It is readily apparent from the text of Sections 8.10.3 and 8.10.1 that the ZBA is vested with broad discretion to grant or deny a

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




variance. The ZBA's broad discretion is also confirmed by case law. *See, e.g., Crowley* 76 F.3d at 52 (holding that similar language in the Village of Southampton Zoning Regulations "vested the Zoning Board with extremely broad discretion to grant or deny a variance."); *Pleasant View Farms Development, Inc. v. Zoning Bd. of Appeals,* 218 Conn. 265, 269, 588 A.2d 1372 (1991) ("In reviewing the actions of a zoning board of appeals we note that such a board is endowed with a liberal discretion, and its actions are subject to review by the courts only to determine whether they were unreasonable, arbitrary or illegal.") (internal quotations and citations omitted). In fact, at argument, Plaintiffs' counsel conceded that the ZBA has discretion in ruling on variance requests.

**\*9** Plaintiffs' sole argument that they were entitled to a variance is founded on their claim that their application met all the guidelines in Section 6.4 of the Zoning Regulations, see Pls.' Opp'n to Defs.' Mot. Summ. J. at 34 [doc.# 59]. But this argument is unavailing. A variance, by definition, allows a ZBA to exercise its discretion and deviate from the Zoning Regulations for those who specifically do not comply with the Zoning Regulations and can demonstrate hardship. Plaintiffs' assertion that they met all the Zoning Regulations would have obviated the need for a variance, not entitled them to one. In fact, by seeking a variance, Plaintiffs essentially admitted that they did not conform to the Zoning Regulations, and the ZBA had broad discretion to determine whether it would relieve Plaintiffs of those Zoning Requirements.

So, too, did the Commission have discretion to evaluate and deny Plaintiffs' applications for special use permits. Section 6.4 of the Zoning Regulations outlines the "Standards for Granting a Special Permit," stating in relevant part:

After a public hearing held according to applicable Statutes, the Commission must find that the following conditions are fulfilled by the proposal [for a special use permit]: ...
6.4.3 That transportation services are adequate and no undue traffic generation will

result that would cause a deleterious effect on the local welfare or the safety of the motoring public....
6.4.5 That no adverse effect will result to the character of the district, property values, historic features, prosperity, nor to the public health, safety and welfare of the residence of the area or the Town.

Defs.' Local Rule 56(a)(1) Statement at Ex. UU [doc. # 51]. Section 6.5 of the Zoning Regulations outlines the "Commission Powers Relative to Action on a Special Permit Use," providing in relevant part that the "Commission shall have the power to approve, deny or modify any proposal and set forth special stipulations of approval or modification." *Id.*

The Connecticut Supreme Court has long "recognized that the special permit process is, in fact, discretionary." *Irwin v. Planning & Zoning Comm'n,* 244 Conn. 619, 626, 711 A.2d 675 (1998). *See also Double I Ltd. Partnership v. Plan & Zoning Comm'n,* 218 Conn. 65, 72, 588 A.2d 624 (1991) ("In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal.") (internal citations and quotations omitted). As is relevant to this case, the Connecticut Supreme Court has also held that "before [a] zoning commission can determine whether [a] specially permitted use is compatible with the uses permitted as of right in [a] particular zoning district, it is *required to judge whether any concerns, such as parking or traffic congestion, would adversely impact the surrounding neighborhood.*" *Barberino Realty & Development Corp. v. Planning & Zoning Comm'n,* 222 Conn. 607, 613, 610 A.2d 1205 (1992) (emphasis added). Only if the Commission determined that a special permit met all of the applicable zoning requirements would the Commission no longer have had discretion to deny a special permit. As the Connecticut Supreme Court explained in *Irwin:*

**\*10** Although it is true that the zoning commission does not have discretion to deny a special permit when the proposal meets the standards, it does have discretion to

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.





determine *whether* the proposal meets the standards set forth in the regulations. If, during the exercise of its discretion, the zoning commission decides that all of the standards enumerated in the special permit regulations are met, then it can no longer deny the application. The converse is, however, equally true. Thus, the zoning commission can exercise its discretion during the review of the proposed special exception, as it applies the regulations to the specific application before it.

*Irwin*, 244 Conn. at 628, 711 A.2d 675 (emphasis in original). Therefore, Connecticut law establishes that the Commission, at the very least, had discretion to determine whether Plaintiffs' special use permit proposal satisfied the relevant standards set forth in the Zoning Regulations.

Despite Plaintiffs' argument they were entitled to their special use permits because their applications met all the guidelines in Section 6.4 of the Zoning Regulations, see Pls.' Opp'n Defs.' Mot. Summ. J. at 34 [doc.# 59], the undisputed facts show that neither of Plaintiffs' applications for a special use permit met all the applicable Zoning Regulations. As evident from the undisputed facts outlined above, both special use permit applications sparked considerable concern and discussion by the Commission and other interested parties such as the DEP regarding parking, traffic generation and environmental issues. The record certainly does not establish that either application met all the guidelines of Section 6.4 of the Zoning Regulations as submitted. In any event, under Connecticut law, the Commission had discretion to determine whether Plaintiffs' special use permit proposal satisfied the relevant standards set forth in the Zoning Regulations, and the Commission exercised that discretion to conclude that the applications did not satisfy those standards.

Furthermore, as described above, Plaintiffs' August 11, 2000 application required the Commission to exercise its discretion in determining how many on-site parking spaces were needed for the tour boat operation, because this use had not been expressly addressed in the Zoning Regulations. The Plaintiffs' November 16, 2000 application explicitly asked the Commission to exercise its discretion under Section 7.10.2 of the Zoning Regulations to reduce the number of on-site spaces required. By invoking Section 7.10.2, Plaintiffs effectively acknowledged that the Commission had discretion to retain the number of required on-site parking spaces at fifteen, and therefore also had discretion to deny Plaintiffs' application for a special permit. Similarly, the Plaintiffs' proposed off-site parking at St. Patrick's Church was an alternative arrangement not explicitly provided for in the Zoning Regulations. Therefore, with respect to the off-site parking at St. Patrick's Church, the Commission was required to exercise its discretion in interpreting the Zoning Regulations by evaluating the potential impact of such an arrangement on traffic generation, public safety, and local welfare, among other concerns.

*11 In sum, because both the ZBA and the Commission had discretion to deny Plaintiffs' applications for a variance and a special use permit, Plaintiffs cannot show that they had a "valid property interest" in the granting of either. *See Harlen Associates,* 273 F.3d at 503. Therefore, Plaintiffs have failed to satisfy the first requirement of their substantive due process claims.

Furthermore, even if (contrary to relevant regulations and case law) the ZBA's and Commission's decisions were not solely within their discretion, Plaintiffs' substantive due process challenge would still fail because they cannot show that Defendants' decisions were "outrageously arbitrary" and thus constituted a "gross abuse of governmental authority." *Natale,* 170 F.3d at 263. Both parties agreed at oral argument that this was an issue for the Court to decide as a matter of law, based on the submissions of the parties.

Plaintiffs allege that the Defendants' decisions were arbitrary and irrational because they failed to follow the Zoning Regulations and they failed to apply their own precedent on special parking arrangements

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




2004 WL 2471524
(Cite as: 2004 WL 2471524, *11 (D.Conn.))

Page  11

and tour boat operations. *See* Pls.' Opp'n to Defs.' Mot. Summ. J. at 34 [doc.# 59]. As to Plaintiffs' first argument, the preceding discussion highlighted the fact that there were no clear guidelines in the Zoning Regulations on tour boat operations or on substituting distant off-site parking for on-site parking. Since the ZBA and Commission had no specific guidelines to follow, they legitimately exercised their discretion under the Zoning Regulations to interpret and apply the general principles of the Zoning Regulations to the Plaintiffs' special parking requests. Characterized thusly, the ZBA and the Commission followed the Zoning Regulations and came to their decisions in a rational manner. Plaintiffs' second argument that Defendants failed to follow precedent is equally without merit because it is nothing more than Plaintiffs' equal protection argument in due process guise, and this Court has already rejected Plaintiffs' claim that they were irrationally treated differently from similarly situated parties. In sum, a review of the record before the Court reveals no evidence that either the ZBA or the Commission acted in a manner that might remotely be considered "outrageously arbitrary" or a "gross abuse of governmental authority." *Natale,* 170 F.3d at 263; *see also Harlen Associates,* 273 F.3d at 503. Therefore, Plaintiffs' due process claims fail as a matter of law, and Defendants are entitled to judgment.

C. State Law Claims

Having disposed of the federal claims in this case, the Court has discretion to dismiss the state claims as well under 28 U.S.C. § 1367(c)(3). "In exercising its discretion with respect to retaining supplemental jurisdiction, the district court balances several factors 'including considerations of judicial economy, convenience, and fairness to litigants.'" *Correspondent Services Corp. v. First Equities Corp. of Florida,* 338 F.3d 119, 126 (2d Cir.2003) (quoting *Purgess v. Sharrock, M.D.,* 33 F.3d 134, 138 (2d Cir.1994)). While considerations of judicial economy and convenience do not lean strongly in either direction, the nature of the case and

Defendants' status as state actors suggest that it would be more appropriate and fair for a state court to determine whether the behavior of the town officials in this case was sufficient to violate state law. In fact, both parties agreed at oral argument that if this Court were to dismiss all the federal claims, the Court should not exercise supplemental jurisdiction over the state law claims. The Court agrees. Accordingly, the Court will decline the exercise of supplemental jurisdiction over Plaintiffs' state law claims. The state claims are dismissed without prejudice.

III.

*12 The Court GRANTS Defendants' Motion for Summary Judgment [doc. # 49] and Defendants' Motion to Strike [doc. # 65]. The Clerk shall enter judgment for Defendants on Plaintiffs' equal protection and due process claims--Counts One through Four of Plaintiffs' Second Amended Complaint [doc. # 35]. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims--Counts Five and Six of Plaintiffs' Second Amended Complaint [doc. # 35]--and therefore a judgment shall enter dismissing these Counts without prejudice to Plaintiffs' right to pursue those claims in state court. The Clerk is directed to close this file.

IT IS SO ORDERED.

FN1. Merry Charters' tour boat--the *Mystic Belle*-- had a maximum capacity of 57. Pls.' Local Rule 56(a)(2) Statement at 8-9 ¶¶ 1-3 [doc. # 60].

FN2. Section 7.10.4.1 of the Zoning Regulations states as follows: "The Commission shall determine the required parking for all uses not included in Table 7-10. Standards as promulgated by the Institute of Traffic Engineers shall be used as a guide in determining such required parking." Defs.' Local Rule 56(a)(1) Statement at Ex. UU [doc. # 51].

FN3. Section 7.10.2 of the Zoning Regulations states in relevant part:
*Reductions.* In DB-5 ... Districts, the total parking requirement may be reduced by an amount equal to the public parking area immediately adjacent to the site, or an amount or area deemed proper for that

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.





2004 WL 2471524
(Cite as: 2004 WL 2471524, *12 (D.Conn.))

**Page  12**

use in question by the Commission. The Commission shall use the findings from Special Use Permit requirements as guidelines.
Defs.' Local Rule 56(a)(1) Statement at Ex. UU [doc. # 51].

FN4. The Town Attorney suggested the following conditions be placed on Plaintiffs' use of the off-site parking at St. Patrick's Church:
1. St. Patrick's lot must remain open during the hours of operation[;] if the parking lot is closed the operation must close;
2. A written agreement for the 15 spaces with St. Patrick's Church in which the church and the applicant will notify the Town of Stonington if the agreement is terminated.
3. If the applicant represents that a certain number of patrons will arrive by bus, the applicant should be made to keep records of the clients and whether they arrived by bus, car and if by car, where did they park. Only in this way will the Town be able to evaluate the representation made by the applicant that a specific percentage of patrons will come by bus rather than by car.
4. Since it can be expected that St. Patrick's parking lot may be full during its mass schedule, perhaps no cruises should be scheduled during the mass schedule of St. Patrick's.
Defs.' Local Rule 56(a)(1) Statement at Ex. Z [doc. # 51].

FN5. There is an open question in the Second Circuit whether a "class of one" plaintiff must also show that the "denial of the application was motivated by animus." *Harlen Associates,* 273 F.3d at 500. The Second Circuit has indicated in dicta that "proof of subjective ill will is not an essential element of a 'class of one' equal protection claim." *Jackson v. Burke,* 256 F.3d 93, 97 (2d Cir.2001). Because Plaintiffs cannot demonstrate that there was no rational basis for the alleged unequal treatment, the Court has no need to address whether a showing of personal animus is also required.

FN6. In support of their claims of malice, bad faith, and arbitrariness on the part of the Commission, Plaintiffs allege, *inter alia,* that the Commission (1) maliciously led Plaintiffs to believe that their application would be approved, even though it eventually was not; (2) misinterpreted the Zoning Regulations with respect to both the on-site parking requirements and the prohibition on off-site parking

at St. Patrick's Church; (3) did not conduct a study of how much the Plaintiffs' operation would impact the safety and traffic congestion concerns; (4) did not follow the opinion of the Town Attorney in the Plaintiffs case, even though they had purportedly followed his opinion in all prior cases; and (5) interfered with the Plaintiffs' rights to apply to the ZBA for a variance. *See* Pls.' Opp'n to Defs.' Mot. Summ. J. at 24-30 [doc.# 59]. Regardless whether any of these allegations are true, they at most question the Commission's process and do little to demonstrate that the reasons offered by the Commission for denying Plaintiffs' application were irrational.

2004 WL 2471524 (D.Conn.)

Motions, Pleadings and Filings (Back to top)

.          3:02CV00336          (Docket)
(Feb. 26, 2002)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




# Exhibit "F"

Not Reported in A.
1998 WL 389258 (Conn.Super.)
**(Cite as: 1998 WL 389258 (Conn.Super.))**

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

WEBSTER BANK
v.
ACQUISITIONS UN-LTD. et al.

No. CV 97-0571774S.

July 2, 1998.

Memorandum of Decision Re: Cross-Motions for Summary Judgment of the Plaintiff (# 131) and Defendant (# 136)

TELLER, J.

## I.    FACTUAL    AND    PROCEDURAL HISTORY

**\*1** This action arises out of a 1988 mortgage transaction between the defendant Bristol Savings Bank, now Webster Bank (Webster), and Acquisitions Un-Ltd. [FN1] The defendant, Robert M. Levin (Levin), Michael Dworetsky (Dworetsky), and the defendant Robert H. Weinstein (Weinstein), were guarantors on the note. On September 20, 1989, when Levin separated from Acquisitions Un-Ltd, Dworetsky and Weinstein executed "Hold Harmless and Indemnification" agreements by which they assumed Levin's obligation on the guaranty and agreed to hold him harmless from any liability arising out of the guaranty. In December 1994, Dworetsky, who also left Acquisitions Un-Ltd, negotiated a written release of liability from Webster as to his obligations on the note and guaranty in exchange for the payment of $38,700. On June 10, 1997, Webster brought this action against Levin as a guarantor on the note when Acquisitions Un-Ltd defaulted on its scheduled installment payments. Thereupon, Levin filed a third-party complaint against Dworetsky for indemnification based on their 1989 agreement. Dworetsky then filed a cross-

complaint against Webster. Webster moved for summary judgment against Levin, and Levin cross moved for summary judgment against Webster. Both motions were accompanied by memoranda of law and documentary exhibits. Levin filed a memorandum of law in opposition to Webster's motion for summary judgment. Webster and Levin filed supplemental memoranda of law in opposition to the other's motion for summary judgment, and in support of their own motions for summary judgment. On May 4, 1998, and May 14, 1998, Webster and Levin submitted supplemental memoranda on a Uniform Commercial Code issue as requested by the court. On May 20, 1998, Dworetsky filed an objection to Webster's motion for summary judgment with an accompanying memorandum of law and supporting affidavit. For the reasons that follow, both motions must be denied.

FN1. This is an action on a note and guaranty against the defendant Acquisitions Un-Ltd., the maker of the note, and the note's guarantors Levin and Weinstein. A default was entered as to Weinstein, and for all practical purposes, Levin is the sole defendant.

## II.    STANDARD    FOR    SUMMARY JUDGMENT

"[S]ummary judgment procedure is designed to eliminate the delay and expense incident to a trial where there is no real issue to be tried ..." (Citation omitted; internal quotation marks omitted.) *Mac's Car City, Inc. v. American National Bank,* 205 Conn. 255, 261, 532 A.2d 1302 (1987). "[S]ummary judgment is appropriate if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is appropriate only if a fair and reasonable person could conclude only one way." (Citation omitted; internal quotation marks omitted.) *Miller v. United Technologies Corp.,* 233 Conn. 732, 751, 660 A.2d 810 (1995). "The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of

Copr. ® 2004 West. No Claim to Orig. U.S. Govt. Works.




Not Reported in A.
(Cite as: 1998 WL 389258, *1 (Conn.Super.))

any genuine issue of material fact ...` [A] summary disposition ... should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party. [A] directed verdict may be rendered only where, on the evidence *viewed in the light most favorable to the nonmovant,* the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." (Citation omitted; emphasis in the original.) *Id* ., 751-52, 660 A.2d 810. The movant has the burden of demonstrating the absence of any genuine issue of material fact. *Gupta v. New Britain General Hospital,* 239 Conn. 574, 582, 687 A.2d 111 (1996). "[S]ummary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions." (Internal quotation marks omitted.) *Suarez v. Dickmont Plastics Corp.,,* 229 Conn. 99, 111, 639 A.2d 507 (1994). See also *Picataggio v. Romeo,* 36 Conn.App. 791, 794, 654 A.2d 382 (1995) ("[a] question of intent raises an issue of material fact, which cannot be decided on a motion for summary judgment"). "[E]ven with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact." *Wadia Enterprises, Inc. v. Hirschfeld,* 224 Conn. 240, 250, 618 A.2d 506 (1992).

### III. DISCUSSION

*2 The third-party defendant Dworetsky filed an objection to Webster's motion for summary judgment. The threshold issue is whether the facts and evidence submitted present a genuine issue of material fact concerning the parties' intent as to the scope of the release in question.

Dworetsky states that the release from his obligation on the guaranty was intended to be a complete release of all obligations thereon, which would include Levin's obligation, as well. Otherwise, Dworetsky argues, he would continue to be obligated on the guaranty pursuant to the indemnification agreement he gave to Levin, and the release he bargained

for would be illusory.

Webster argues that it did not intend that, in releasing Dworetsky from his obligation on the guaranty, Levin would also be released. The issue of intent, therefore, is raised as to the agreement of release Dworetsky and Webster effected.

Our Supreme Court has held, when considering the effect of a general release for personal injuries, that the identity of the persons actually released from liability depends upon the intent of the parties to the release agreement. See *Donner v. Kearse,* 234 Conn. 660; 674, 662 A.2d 1269 (1995). "[T]he contracting parties' intent, not the operation of a legal rule, determines the scope of a release ... [T]his approach provides for consideration of extrinsic evidence of the parties' actual intent and does not confine interpretation of the release to its four corners." *Sims v. Honda Motor Co.,* 225 Conn. 401, 413, 623 A.2d 995 (1993).

"A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction ... [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words ... Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms ... [A]ny ambiguity in a contract must emanate from the language used in the contract ..." (Citations omitted; internal quotation marks omitted.) *Pesino v. Atlantic Bank of New York,* 244 Conn. 85, 91-92, 709 A.2d 540 (1998). "It is a fundamental principle of contract law that the existence and terms of a contract are to be determined from the intent of the parties ... The parties' intentions manifested by their acts and words are essential to the court's determination of whether a contract was entered into and what its terms were." *Suffield Dev. Assoc., Ltd. v. Society for Savings,* 243 Conn. 832, 847, 708 A.2d 1361 (1998).

In the present case, the language of the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




Not Reported in A.
**(Cite as: 1998 WL 389258, \*2 (Conn.Super.))**

release is ambiguous, boilerplate, and couched in general terms. It is not possible to ascertain the intent of the parties as to the scope of the release by a fair and reasonable construction of the plain words of the release. Whether the parties intended that the release of Dworetsky from his obligation on the guaranty would likewise serve to release Levin from his obligation on the guaranty is inappropriate for summary judgment. The scope of the Dworetsky release and whether it operated to release Levin from liability under the guaranty, therefore, are questions to be resolved by the trier of fact. Other issues presented by the parties are premature to a resolution of the matter of intent. Accordingly, neither party has sufficiently demonstrated the nonexistence of a genuine issue of material fact, and neither is entitled to judgment as a matter of law.

CONCLUSION

**\*3** Based on the foregoing, the cross-motions for summary judgment of the plaintiff and defendant Levin are denied.

1998 WL 389258 (Conn.Super.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



