# Exhibit "L"

Not Reported in A.
2001 WL 438711 (Conn.Super.)
**(Cite as: 2001 WL 438711 (Conn.Super.))**
c

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

WESCONN CO.,
v.
ACMAT CORPORATION, et al.

No. CV990594760S.

April 11, 2001.

MEMORANDUM OF DECISION RE: FUSCO CORPORATION'S MOTION TO STRIKE

HALE.

**\*1** This is an action brought by Wesconn Co., against ACMAT Corporation, the State of Connecticut, Fusco Corporation, Konover Construction Corporation and ACSTAR Insurance Company. In a Second Amended Complaint dated October 25, 2000, six of nineteen counts are brought against Fusco Corporation. In Count Seven, Nine, Ten, Eleven, Thirteen and Fifteen, the plaintiff alleges breach of oral contract, negligent misrepresentation, intentional misrepresentation, unjust enrichment, quantum meruit, and tortious interference with the plaintiff's business.

The defendant, Fusco, has filed a motion to strike and a memorandum of law in support of same. The plaintiff has filed an objection to Fusco's motion to strike and a supporting memorandum.

The State of Connecticut received bids from various contractors to act as the prime contractor for the state in a project involving the construction of a library at Eastern Connecticut State University. Defendant, ACMAT, was awarded the contract for the project. The State of Connecticut hired two construction managers to represent its interest

on the project. One was defendant, Fusco Corporation, and the other was Konover Corporation.

During the course of the project, ACMAT hired various subcontractors to perform portions of the work. On or about August 17, 1996 plaintiff, Wesconn Company was hired by ACMAT to perform fireproofing. Wesconn along with the numerous other subcontractors performed its work and the project achieved substantial completion by November 3, 1998.

Plaintiff has sued virtually all entities associated with the project contending that they failed to adhere to the plans and specifications for the project thereby causing plaintiff to perform extra work, less efficient work, and work outside the scope of the contract.

The State, although originally a party, was subsequently dismissed from the case on the grounds of sovereign immunity.

Each of the parties in their memoranda correctly state the standards for a motion to strike. A motion to strike contests the legal sufficiency of the allegations of a complaint to state a claim upon which relief can be granted. *Novametrix Medical Systems, Inc. v. BOC Group Inc.,* 224 Conn. 210, 214, 215, 618 A.2d 25 (1992), *Waters v. Autuori,* 223 Conn. 820, 825 (1996). In ruling on a motion to strike the Court is limited to the facts alleged in the complaint and the grounds specified in the motion. *Blancato v. Feldspar Corp.,* 203 Conn. 34, 44, 522 A.2d 1235 (1987). All facts well pled are admitted. *Verdon v. Transamerica Insurance Company,* 187 Conn. 363, 356 (1982), *Mingachos v. C.B.S., Inc.,* 196 Conn. 91, 108, 491 A.2d 368 (1985). The Court must construe the facts in the complaint most favorably to the plaintiff. *Waters v. Autuori, supra, Parsons v. United Technologies Corp.,* 243 Conn. 66, 68, 700 A.2d 655 (1997). Legal conclusions unsupported by facts are insufficient to survive a motion to strike. *Malonui v. Conroy,* 208 Conn. 392, 394, 545 A.2d 1059, *Novametrix, supra, Verdon v. Transamerica Insurance Company,*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




Not Reported in A.
(Cite as: 2001 WL 438711, *1 (Conn.Super.))

*supra.*

In Count Seven of the second amended complaint plaintiff alleges an oral contract. Both parties agree as to the applicable law, that is, to state a claim for breach of contract the party must allege 1) existence of a contract, 2) its breach, and 3) damages resulting from the breach. *O'Hara v. State,* 218 Conn. 628, 590 A.2d 948 (1991). The defendant maintains that nowhere in the complaint does the plaintiff make the basic allegation of any contractual relationship between Wesconn and Fusco. The Court is in agreement with the defendant. The plaintiff brings up the contract between itself and ACMAT, the general contractor, but fails to allege that Fusco was a party to that contract. Plaintiff maintains that Fusco was the construction manager for the property at all times and was an agent, employee, servant or contractor or subcontractor representative of the state awarding authority, for the project; that the plaintiff was "led to believe that Fusco and others" would adhere to the conditions of plaintiff's "proposal" and to the plaintiff's specifications for the project. These allegations failed to allege the existence of even the most basic agreement between Wesconn and Fusco.

**\*2** In the opinion of the Court there is no mutual understanding or meeting of the minds as to the essential elements of a contract--offer, acceptance and consideration. While as alleged in Paragraph 12 of Count Seven other directives were given by Fusco and Konover directly to plaintiff, there is no indication of a contractual arrangement between Fusco and the plaintiff. The plaintiff in Paragraph 13 of Count Seven, pleads that the plaintiff was led to believe and did believe that if he did not perform in accordance with the instruction he would not be permitted to conclude the project and in Paragraph 19 of Count Seven the plaintiff claims damages against Fusco for breach of its "oral contract to pay" for labor, service and materials. There is nothing in the allegations to indicate that Fusco had any authority to make any statements with regard to pay.

In the opinion of the Court the claim of an "oral contract to pay" without facts to substantiate the claim fails to make out an oral contract and the motion to strike is granted.

In the Ninth and Tenth Counts of the second amended complaint the plaintiff alleges negligent misrepresentation and intentional misrepresentation. To state a claim for negligent misrepresentation one must allege 1) a false representation was made as a statement of fact, 2) it was made for the guidance of another, 3) the party making the representation fails to exercise reasonable care in obtaining or communicating the information, and 4) another party justifiably relies on the representation to their detriment. *Beverly Hill Concepts v. Shatz, Ribicoff, and Cocton,* 247 Conn. 48, 57, 717 A.2d 724 (1998). A claim of intentional misrepresentation requires the same elements except misrepresentation is made intentionally rather than negligently. *Weisman v. Kaspar,* 233 Conn. 531, 539, 661 A.2d 530 (1995). While the defendant, Fusco, recognizes that the Connecticut state courts do not maintain the same particularity requirements for fraud pleading as are observed in the federal courts, *Connecticut National Bank v. Rytmann,* 241 Conn. 24, 694 A.2d 1246, 1255 (1997), Connecticut does require fact pleading in which a party must provide a plain and concise statement of material facts on which it relies to support its claim, *Connecticut Practice Book Sec.* 10-1.

Defendant maintains that the plaintiff does not reference a single fact that Fusco represented as true and was proved to be false. The plaintiff, however, in its Ninth and Tenth Counts incorporates paragraphs 1-17 of Count One and in Count One plaintiff alleges in Paragraph 6 that at the time its agreement was entered into he was led to believe that the defendant, Fusco, and others, would adhere to the conditions of the plaintiff's proposal, to the conditions set out in the subcontract and to the plaintiff's specification, and in Paragraph 7 it alleges that the defendant Fusco failed to adhere to the conditions of the proposal, to the subcontract and to the conditions of the plans and specifications and thereby caused plaintiff

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




Not Reported in A.
(Cite as: 2001 WL 438711, *2 (Conn.Super.))

subcontractor to perform extra work outside the scope of the construction contract, utilize extra crew, and incur cost overruns. The plaintiff then recites the various types of work that it was ordered to perform that were extra.

**\*3** In arriving at its conclusions, the defendant has gone outside the facts alleged in the complaint, stating that Fusco as the construction manager had no interest, financial or otherwise, in what specific contractors ACMAT hired and had no interest in inducing plaintiff to submit the low bid for the job.

In the opinion of the Court the facts alleged in plaintiff's Second Amended Complaint dated October 25, 2000, at Count Nine fairly and adequately apprised the defendant, Fusco of plaintiff's intention to pursue a claim for negligent misrepresentation. As to this count, therefore, the Motion to Strike is denied.

The reasoning with respect to Paragraph 10, intentional misrepresentation is the same as that with respect to Paragraph 9 except for the fact that in order to fulfil the requirements for intentional misrepresentation the plaintiff must allege that the defendant made the representations knowing they were untrue. The elements of intentional misrepresentation are 1) that a false representation was made as a statement of fact, 2) that it was untrue and known to be untrue by the party making it, 3) that it was made to induce the other party to act, and 4) that the latter did so act to its injury. *Miller v. Appleby,* 183 Conn. 51, 54-55, 438 A.2d 811 (1981). Thus the elements to establish the cause of action in intentional misrepresentation are identical to that of negligent misrepresentation except that the plaintiff must plead intentional conduct rather than negligent conduct. In Paragraphs 18 and 19 of Count Ten, in the opinion of this Court, the plaintiff has adequately made such allegations. Therefore, the Motion to Strike Count Ten is denied.

The plaintiff in Count Eleven alleges unjust enrichment and in Count Thirteen quantum meruit. Both are challenged by the defendant Fusco.

One seeking recovery for unjust enrichment must prove 1) that the defendant was benefitted, 2) that the defendant unjustly did not pay the plaintiff for the benefit, and 3) that the failure of payment was to the plaintiff's detriment. *Ayotte Brothers Construction Co. v. Finney,* 42 Conn.App. 578, 581, 680 A.2d 330 (1996). Unjust enrichment results when it is contrary to equity and good conscience for the defendant to retain a benefit that has come to him at the expense of the plaintiff. *Pokorny v. Getta's Garage,* 219 Conn. 439, 462, 594 A.2d 446 (1991). Unjust enrichment is a quasi contract claim based on equitable principles. *Brighenti v. New Britain Shirt Corporation,* 167 Conn. 403, 407, 356 A.2d 181 (1974).

Quantum meruit applies whenever justice requires compensation to be given for property or services rendered under a contract and no remedy is available by an action on the contract. *Williston Contracts* (rev. Ed.) Section 1479, *CBS Surgical Group Incorporated v. Holtz,* 37 Conn.Supp. 555, 557, 426 A.2d 819 (1981). Three essential elements must be established, 1) a benefit conferred upon the defendant by the plaintiff, 2) an appreciation or a knowledge by the defendant of the benefit, 3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value. *CBS Surgical Group, Inc., v. Holtz, supra* 558.

**\*4** In neither Count Eleven nor in Count Thirteen is there any indication that the defendant had an obligation to pay the plaintiff or that Fusco benefitted in any way. Without such allegations neither count would stand and the Court, therefore, grants a Motion to Strike with reference to Count Eleven and Count Thirteen.

In Count Fifteen of this second amended complaint the plaintiff alleges tortious interference with a contractual relationship. Citing *Contrad v. Erickson,* 41 Conn.App. 243, 245-46, 675 A.2d 906, (1996), the plaintiff states that the necessary elements of a cause of action in tortious interference with business relations are 1) the existence of a business

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.





Not Reported in A.
(Cite as: 2001 WL 438711, *4 (Conn.Super.))

relationship, 2) an intentional and improper interference with that relationship, and 3) a resulting loss of benefits of the relationship. It further states that for a plaintiff successfully to prosecute such an action it must prove that defendant's conduct was in fact tortious. *Robert S. Weiss & Associates, Inc. v. Wiederlight,* 208 Conn. 525, 536, 546 A.2d 216 (1988). The plaintiff maintains that this element may be satisfied by proof that the defendant was guilty of fraud, *misrepresentation* (emphasis added), intimidation, or molestation, or that the defendant acted maliciously citing *Weiss, supra.* The defendant essentially agrees with the plaintiff's citation of the law quoting *Merick v. Kuhn,* 52 Conn.App. 724, 752, 737 A.2d 456, stating that the elements of tortious interference are 1) the existence of a contractual or beneficial relationship, 2) the defendant's knowledge of that relationship, 3) the defendant's intent to interfere with it, and 4) that consequent actual loss was suffered by the plaintiff. It further states that the third element, intent, requires proof that defendant's conduct was in fact tortious. Quoting from *Daly v. Aetna Life & Casualty Co.,* 249 Conn. 766, 805, 734 A.2d 112 (1999), "this element may be satisfied by proof that the defendant was guilty of fraud, *misrepresentation* (emphasis added), intimidation, or molestation, or that the defendant acted maliciously." The defendant alleges that although plaintiff claims that Fusco acted intentionally in interfering with the plaintiff's contract with ACMAT these allegations of intentional interference made clear that the requisite malice has not been alleged.

In the opinion of the Court the complaint as a whole in reference to Fusco and Count Fifteen in particular make clear that the plaintiff has in fact fulfilled all the requisites of a claim of tortious interference with business. That being the case, the Court denies the Motion to Strike Paragraph 15.

**\*5** In summation, it appears to this Court that the plaintiff had no contractual relationship with the defendant, Fusco. However, it does appear that Fusco was in a position to make, and according to plaintiff did make, both negligent and intentional misrepresentations to the plaintiff to its damage. However, there are insufficient allegations to show that the defendant had any type of obligation to pay the plaintiff or obtained any unjust enrichment, nor did plaintiff have a contract with defendant which would warrant the application of quantum meruit. However, despite the lack of any contractual arrangement or any obligation to pay the plaintiff it was entirely conceivable and has been properly alleged that the defendant was in a position to make misrepresentations and cause tortious interference with the plaintiff's contract. As to the counts of misrepresentation and tortious interference the Court's final determination will depend upon the plaintiff's ability to prove its allegations, but the Court finds the allegations to be sufficient.

In conclusion, the Court grants the Motion to Strike Counts Seven, Eleven and Thirteen, and the Court denies the Motion to Strike Counts Nine, Ten and Fifteen.

2001 WL 438711 (Conn.Super.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




# Exhibit "M"

Not Reported in F.Supp.2d
2002 WL 294762 (D.Conn.)
**(Cite as: 2002 WL 294762 (D.Conn.))**
н

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Linda HOOD, Plaintiff
v.
AEROTEK, INC. and Thomas Verardi, Defendants.

No. CIV.A. 398CV1524CFD.

Feb. 19, 2002.

RULING ON MOTION FOR SUMMARY JUDGMENT

DRONEY, District J.

*1 The plaintiff, Linda Hood, brings this action against the defendants, Aerotek, Inc. ("Aerotek"), and its employee, Thomas Verardi, alleging breach of contract, negligent misrepresentation, promissory estoppel, intentional infliction of emotional distress, and negligent infliction of emotional distress, in connection with the staffing of Hood as a Clinical Research Associate at Bristol-Myers Squibb in Connecticut. This action was originally brought in the Connecticut Superior Court, Judicial District of Waterbury, but was removed by the defendants to this Court on July 31, 1998, on the basis of diversity of citizenship. [FN1]

FN1. As the parties do not dispute diversity of citizenship, this Court has subject matter jurisdiction under 28 U.S.C. § 1331. Additionally, the parties do not dispute the existence of personal jurisdiction or venue, or that Connecticut state law applies.

On June 25, 1999, the defendants filed a motion to dismiss Counts II and VI through X of the amended complaint. The defendants' motion to dismiss was denied on March 14, 2000. Subsequently, the defendants filed a motion for summary judgment as to all claims in the amended complaint [Doc. # 32]. For the reasons stated below, the motion is GRANTED IN PART, and DENIED IN PART.

I. *Background* [FN2]

FN2. The facts are taken from the complaint, Rule 9(c) statements, and other summary judgment papers and are undisputed unless otherwise indicated.

At various points during her career in clinical research, Linda Hood ("Hood") obtained temporary employment as a contractor through Aerotek, a Maryland corporation in the business of providing temporary technical staffing to companies throughout the United States. On November 10, 1997, while living in California, Hood was contacted by Melissa Baker, an employee of Aerotek, concerning working on a temporary contract basis as a Clinical Research Associate for Bristol-Myers Squibb ("BMS") in Wallingford, Connecticut. Hood later spoke with Thomas Verardi ("Verardi"), another Aerotek employee, regarding this employment. On November 12, 1997, Hood had a telephone interview with BMS for the position of Clinical Research Associate. Following the interview, Verardi informed Hood that BMS wished to retain her for the position. Hood and the defendants dispute, however, whether Verardi told Hood that the position was to begin with a two-week trial period or that the position was a firm one-year commitment. It is undisputed, however, that in the following weeks, Verardi assisted Hood in purchasing a used automobile from his brother, and Verardi rented her, on a month-to-month lease, a furnished condominium apartment he owned in Waterbury, Connecticut. Aerotek paid for Hood to fly from California to Connecticut on November 29, 1997.

On December 2, 1997, Hood began working at BMS. On that same day, Hood signed an employment agreement with Aerotek concerning the job at BMS. The agreement provided, in relevant part:
1. *Ratification*--You understand that this offer of temporary employment with Aerotek is subject to final approval by the Client and that you shall not be entitled to any wages or employment unless actually hired by Aerotek

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




Not Reported in F.Supp.2d
(Cite as: 2002 WL 294762, *1 (D.Conn.))

Page    2

to work the specific assignment pursuant to this agreement. You also understand that this agreement does not go into effect until you actually work on said specific assignment. You acknowledge and agree that your employment with Aerotek is 'at will', with no certain term of employment being offered or promised, and that you or Aerotek may terminate your employment, with or without cause at any time. You agree that by reporting or remaining at work after signing this agreement that you have ratified the same. In addition, you represent and warrant to Aerotek that your employment with Aerotek will not violate the terms or conditions of any other agreement to which you are a party.

*2 ....

8. *Termination*--You shall give a minimum of (5) days notice should you decide to terminate your position with Aerotek. You understand that the length of the assignment is subject to the discretion and needs of the Client and, therefore, a five day notice from Aerotek may not be possible and Aerotek is not required to provide such notice. Upon termination, and to the extent permitted by applicable law, you acknowledge and agree that any amounts owed to you by Aerotek will be deducted from any remaining wages owed to you and refunded to Aerotek.

On December 12, 1997, at the end of Hood's second week of employment, BMS informed Verardi that it did not wish Hood to continue as a contract employee and she was terminated from the position. Hood then brought this lawsuit against Aerotek and Verardi.

II. *Standard*

In the context of a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that

there is no genuine issue as to any material fact." *Miner v. City of Glens Falls*, 999 F.2d 655, 661 (2d Cir.1993) (internal quotation marks and citation omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (internal quotation marks omitted), *cert. denied*, 506 U.S. 965 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U .S. 317, 323 (1986).

"The nonmovant must do more than present evidence that is merely colorable, conclusory, or speculative and must present 'concrete evidence from which a reasonable juror could return a verdict in his favor.' " *Alteri v. General Motors Corp.*, 919 F.Supp. 92, 94-95 (N.D.N.Y.1996) (quoting *Anderson*, 477 U.S. at 256). A party may not create its own "genuine" issue of fact simply by presenting contradictory or unsupported statements. *See Securities & Exch. Comm'n v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978). When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact." *Soto v. Meachum*, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D.Conn. Aug. 28, 1991).

In ruling on a motion for summary judgment, the Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich*, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991), *cert. denied*, 502 U.S. 849 (1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992).

III. *Discussion*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




Not Reported in F.Supp.2d                                                      **Page   3**
(Cite as: 2002 WL 294762, *3 (D.Conn.))

**\*3** In their motion for summary judgment, the defendants assert that there are no genuine issues of material fact that they are entitled to judgment as a matter of law on all of Hood's claims. The claims-breach of contract, promissory estoppel, negligent misrepresentation, intentional infliction of emotional distress, and negligent infliction of emotional distress-are each discussed below. [FN3]

> FN3. Counts I and II allege breach of contract against Aerotek and Verardi, respectively; Counts III and IV allege negligent misrepresentation against Aerotek and Verardi, respectively; Counts V and VI allege promissory estoppel against Aerotek and Verardi, respectively; Counts VII and VIII allege intentional infliction of emotional distress against Aerotek and Verardi, respectively; and Counts IX and X allege negligent infliction of emotional distress against Aerotek and Verardi, respectively.

A. Breach of Contract

In Counts I and II of the amended complaint, Hood alleges that the defendants, through Verardi, orally agreed to provide her with a one-year contract of employment with BMS. Hood claims that the defendants breached this oral agreement when she was terminated by BMS after only two weeks. The defendants claim that they are entitled to judgment as a matter of law on this claim because the undisputed facts establish that Hood and Aerotek entered into a written employment agreement on December 2, 1997, that this agreement covered the entire terms and conditions of her employment with BMS, and clearly indicated she would be an "at will" employee, with no commitment to a set period of employment. Even assuming that Hood has presented enough evidence to support her allegations of the prior oral agreement, assert the defendants, as the written agreement was an integrated one, parol evidence is not admissible to vary or contradict the express terms of the agreement.

As Connecticut courts have often noted, the parol evidence rule is not a rule of evidence, but a substantive rule of contract law. *See, e.g., TIE Communications, Inc. v. Kopp,* 589 A.2d

329, 333 (Conn.1991); *Security Equities v. Giamba,* 553 A.2d 1135, 1138 (Conn.1989); *Damora v. Christ-Janer,* 441 A.2d 61, 64 (Conn.1981). The rule is premised upon the idea that "when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages [etc.], in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme." *Tallmadge Bros., Inc. v. Iroquois Gas Transmission System. L.P.,* 746 A.2d 1277, 1290 (Conn.2000) (internal quotations omitted). The parol evidence rule does not of itself forbid the proffer of "parol evidence," that is, evidence outside the four corners of the contract concerning matters governed by an integrated contract, but forbids the use of such evidence to vary or contradict the terms of that contract. "Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant." *TIE Communications,* 589 A.2d at 333.

In order for the bar against the admission of parol evidence to apply, the writing at issue must be integrated, that is, it must have been intended by the parties to be "a final expression of one or more terms of [the] agreement ...." *Associated Catalog Merchandisers, Inc. v. Chagnon,* 557 A.2d 525, 528 (Conn.1989) (internal quotations omitted). "Whether the written contract was actually the final repository of the oral agreements and dealings between the parties depends on their intention, evidence as to which is sought in the conduct and language of the parties and the surrounding circumstances." *Id.* (internal quotations omitted). A party can establish that a written agreement is integrated and thus operates to exclude evidence of an alleged oral communication, "if the subject matter of the latter is mentioned, covered or dealt with in the writing ...." *Id.*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.





Not Reported in F.Supp.2d
(Cite as: 2002 WL 294762, *3 (D.Conn.))

**Page   4**

**\*4** Here, the subject matter of the alleged oral communications, that is, the length of the term of employment extended to Hood, is dealt with in the written agreement. The agreement provides that Hood's employment was " 'at will' ... with no certain term of employment being offered or promised, and that [Hood] or AEROTEK may terminate [Hood's] employment, with or without cause, at any time." Thus, the written contract is presumed to have been the final agreement of Hood and Aerotek as to the term of length of employment. Hood's evidence of oral communications that occurred prior to the parties' reducing their agreement to writing, even if accurate, does not contradict a finding that the parties intended the subsequent writing to be the final version of the agreement. Hood has presented no other evidence suggesting the parties did not intend the written agreement to be the parties' final expression of their agreement. As well, the fact that the written agreement did not contain an integration clause is not enough by itself to create a genuine issue of material fact as to whether the parties intended the written agreement to be the parties' final expression of the term of length of employment. Accordingly, the Court finds the written contract to be integrated. As the evidence offered by Hood regarding the oral communications of a one-year contract clearly contradicts the terms of the written agreement, the evidence is barred by the parol evidence rule as inadmissible and irrelevant.

The Court also finds that *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 662 A.2d 89 (Conn.1995), cited by Hood, is distinguishable from the instant case. In *Torosyan,* the plaintiff was provided with oral representations and an employment manual which stated that he may be discharged "for cause." Two years later, the plaintiff was provided with an updated copy of the defendant's employee manual, which eliminated the "for cause" language of the original manual. The Connecticut Supreme Court upheld the trial court's findings that an implied contract existed, based on the oral representations and original employment manual, and that the employer was bound to

the "just cause" requirement because the implied contract was not modified by the later manual as the modifications would have "substantially interfered with the plaintiff's legitimate expectations under his preexisting contract" and were not assented to by the plaintiff. *Id.* at 99.

The instant case is different from *Torosyan,* however. Here, notwithstanding the plaintiff's claims that she was orally informed earlier that she had a one-year contract term, the written agreement she executed on the first day of her employment specifically provided an "at will" term. It is undisputed that she signed that agreement that day, as she commenced her job. Unlike *Torosyan,* the plaintiff here does not argue that a modification of that written agreement was subsequently imposed on her. Therefore, as no reasonable juror could find breach of contract, the motion for summary judgment is GRANTED as to Counts I and II.

B. Promissory Estoppel

**\*5** In Counts V and VI of the amended complaint, the plaintiff alleges a cause of action in promissory estoppel, maintaining that the defendants promised her a position for one year and that she relied on this promise to her detriment. The defendants claim that they are entitled to judgment as a matter of law on this claim because, again, even assuming Verardi made a promise of a one-year term of employment, a cause of action under promissory estoppel may not lie where there is a written contract that sets forth the agreement of the parties.

In order to prevail on a claim for promissory estoppel, Hood must establish 1) a clear and definite promise, 2) a change in position in reliance on the promise, and 3) resulting injury. *See D'Ulisse-Cupo v. Bd. of Directors of Notre Dame High School,* 520 A .2d 217, 221 (Conn.1987). The promise must be sufficiently clear and definite such that the promisor could reasonably expect to induce reliance. *See id.* at 221.

Promissory estoppel, though a cause of action

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




Not Reported in F.Supp.2d
(Cite as: 2002 WL 294762, *5 (D.Conn.))

Page 5

"off the contract," and thus, available to enforce promises outside the scope of a valid contract, may not be used to create obligations that contradict those explicitly set forth in a written agreement. *See NCC Sunday Inserts, Inc. v. World Color Press, Inc.,* 759 F.Supp. 1004, 1011 (S.D.N.Y.1991) ("An action for promissory estoppel generally lies when there is no written contract, or the contract cannot be enforced for one reason or another."); *General Elec. Capital Corp. v. DirecTv, Inc.,* 94 F.Supp.2d 190, 201 (D.Conn.1999) ("Promissory estoppel is also available to enforce promises *outside the scope of the Agreement,* provided there was 1) a clear and definite promise that defendants could reasonably expect would induce reliance; and 2) detrimental reliance by plaintiff.") (emphasis added). Allowing promissory estoppel when the alleged promise contradicts a promise located in an integrated agreement would provide an end-run around the parol evidence rule. *See All-Tech Telecom, Inc. v. Amway Corp.,* 174 F.3d 832, 869 (7th Cir.1999) (Posner, J.); *Walker v. KFC Corp.,* 728 F.2d 1215, 1220 (9th Cir.1984) ("Promissory estoppel is not a doctrine designed to give a party ... a second bite at the apple in the event it fails to prove a breach of contract"). Accordingly, as the promises which are the basis of Hood's promissory estoppel claim contradict promises within the written contract, her promissory estoppel cause of action may not lie, and the motion for summary judgment is GRANTED as to Counts V and VI.

C. Negligent Misrepresentation

In Counts III and IV of the amended complaint, the plaintiff alleges that the defendants negligently made misrepresentations to Hood regarding the term of her employment and that she relied on those misrepresentations to her detriment. The defendants claim that the undisputed material facts show that there were no material false representations nor reasonable reliance by the plaintiff upon such alleged representations.

**\*6** Connecticut recognizes the tort of

negligent misrepresentation in the employment context as set forth in the Restatement (Second) of Torts § 552: "[o]ne who, in the course of his business, profession or employment ... supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *D'Ulisse-Cupo,* 520 A.2d at 223 (quoting Restatement (Second) of Torts § 552 (1977)). "The plaintiff need not prove that the representations made by the [employer] were promissory. It is sufficient ... that the representations contained false information." *Id.* (recognizing a cause of action for negligent misrepresentation although the court found that plaintiff failed to state a cause of action for breach of contract and promissory estoppel).

As the Court finds that genuine issues of material fact exist as to whether the defendants made such misrepresentations and whether Hood relied on them, the motion for summary judgment is DENIED as to Counts III and IV.

D. Intentional Infliction of Emotional Distress

In Counts VII and VIII of the amended complaint, Hood claims intentional infliction of emotional distress based on the defendants' conduct in promising her a one-year contract of employment and then breaching that promise on which she relied. The defendants maintain that their actions do not rise to the level of intentional infliction of emotional distress as a matter of law.

In order for Hood to prove her claim of intentional infliction of emotional distress, she must establish four elements: (1) that the defendants intended to inflict emotional distress, or that they knew or should have known that emotional distress was a likely result of their conduct, (2) that the conduct was extreme and outrageous, (3) that the defendants' conduct was the cause of Hood's distress, and (4) that the emotional distress

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




Not Reported in F.Supp.2d
(Cite as: 2002 WL 294762, *6 (D.Conn.))

sustained by Hood was severe. *See Petyan v. Ellis,* 510 A.2d 1337, 1342 (Conn.1986). Connecticut courts have relied on the Restatement (Second) of Torts in interpreting what constitutes "extreme and outrageous" conduct. *See Petyan,* 510 A.2d at 1342. "The 'extreme and outrageous' standard is a high one: 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." ' *Reed v. Town of Branford,* 949 F.Supp. 87, 91 (D.Conn.1996) (quoting Restatement (Second) of Torts § 46, comment d (1965)). The question whether the defendants' conduct rises to the level of extreme and outrageous conduct is to be determined by the Court in the first instance. *Reed,* 949 F.Supp. at 91.

Here, Hood has presented evidence that Verardi knew Hood was to begin the position at BMS on a trial basis, yet maintained that the position was for one year, assisted her in purchasing a used automobile from his brother, and rented her an apartment in Connecticut at monthly rate $100 higher than he charged other tenants. Verardi engaged in such actions, Hood maintains, for his own personal benefit, including the commission he obtained for hiring Hood. Even assuming the evidence presented by Hood is accurate, it is insufficient to create a genuine issue of material fact as to whether the defendants' conduct was extreme and outrageous.

**\*7** Connecticut courts have circumscribed the boundaries of "extreme and outrageous conduct" very narrowly. Actions which may be harmful or quite distressing to plaintiffs have been deemed to fall outside these parameters. *See Appleton v. Board of Educ. of Town of Stonington,* 757 A.2d 1059, 1063 (Conn.2000) (allegations that school officials made derogatory comments concerning teacher's performance and ability to read in front of other employees, contacted plaintiff's daughter to recommend that plaintiff take some time off because she was acting erratically, had teacher escorted by police off school property, required her to take

psychiatric examinations, forced her to take a leave of absence and, ultimately, forced her to resign, did not amount to "extreme and outrageous" conduct); *Emanuele v. Baccaccio & Susanin,* No. CV900379667S, 1994 WL 702923, at *2 (Conn.Super.Ct. Dec. 1, 1994) (allegations that employer made false statements regarding plaintiff's work performance, and used coercion, threats, and intimidation to force her to sign a document against her will, all for the purpose of depriving her of benefits and compensation did not constitute "extreme and outrageous conduct"); *Whitaker v. Haynes Construction Comp., Inc.,* 167 F.Supp.2d 251 (D.Conn.2001) (employer's alleged actions of hiring employee with intent of firing him once employer's affirmative action plan was approved and firing him on the same day the employer's affirmative action plan obtained state approval not held to constitute "extreme and outrageous" conduct). Here, the Court cannot conclude that the alleged conduct can be regarded as "extreme and outrageous" in light of the stringent standard the Court must apply. Therefore, the defendants' motion for summary judgment on this basis is GRANTED as to Counts VII and VIII.

E. Negligent Infliction of Emotional Distress

In Counts IX and X of the amended complaint, the plaintiff alleges that the defendants' conduct also amounted to negligent infliction of emotional distress. Again, the defendants maintain they are entitled to judgment as a matter of law on this claim.

In the employment context, the cause of action for negligent infliction of emotional distress only arises where the defendant engaged in unreasonable conduct in the termination process. *Parsons v. United Tech. Corp.,* 700 A.2d 655, 667 (Conn.1997) (quoting *Morris v. Hartford Courant Co.,* 513 A.2d 66, 69 (Conn.1986)); *see also Belanger v. Commerce Clearing House,* 25 F.Supp.2d 83, 84 (D.Conn.1998). However, the Second Circuit, in dictum, has stated that it is unclear whether the Connecticut Supreme Court would continue to limit the tort of negligent

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.





Not Reported in F.Supp.2d
(Cite as: 2002 WL 294762, *7 (D.Conn.))

infliction of emotional distress to actions taken in the course of an employee's termination. *See Malik v. Carrier Corp.*, 202 F.3d 97, 103-04 n. 1 (2d Cir.2000); *see also Karanda v. Pratt & Whitney Aircraft*, No. CV-98-582025S, 1999 WL 329703, at *5 (Conn.Super.Ct. May 10, 1999), *criticized by Dorlette v. Harborside Healthcare Corp.*, No. CV 990266417, 1999 WL 639915, at *3 (Conn.Super.Ct. Aug. 9, 1999). Nevertheless, it appears that most Connecticut courts continue to adhere to the ruling limiting negligent infliction of emotional distress claims to conduct arising in the termination process, and the Connecticut Supreme Court has not changed the approach of *Parsons*. *See Franco v. Yale University*, 161 F.Supp.2d 133, 140 (D.Conn.2001) (citing cases). Thus, this Court will follow the *Parsons* standard.

*8 Accordingly, in order to sustain a claim of negligent infliction of emotional distress in this setting, Hood must allege that the harmful conduct was engaged in during the course of the employment termination process. As Hood maintains that "the basis for the claim of negligent infliction of emotional distress lies in the nature of the representations, omissions and motive of the Defendants in inducing [her] to leave her home and come to Connecticut to work," it is apparent that she is not alleging that the defendants' conduct in the course of termination process caused her emotional distress. Consequently, the motion for summary judgment is GRANTED as to Counts IX and X.

IV. *Conclusion*

For the foregoing reasons, Aerotek's motion for summary judgment [Doc. # 32] is GRANTED IN PART, and DENIED IN PART. Only Hood's negligent misrepresentation claim remains.

2002 WL 294762 (D.Conn.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




# Exhibit "N"

Not Reported in F.Supp.2d
2002 WL 32096578 (E.D.N.Y.)
(Cite as: 2002 WL 32096578 (E.D.N.Y.))
c

**Page 1**

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.

Michael F. MONGELLI II, Plaintiff,
v.
CHICAGO INSURANCE COMPANY,
Defendant.

No. 99 CV 8149 SJ.

Jan. 15, 2002.

Michael F. Mongelli II, P.C., Flushing, NY, By: Edward J. Pavia, Jr, for Plaintiff.

Steinberg & Cavaliere, L.L.P., White Plains, NY, By: Steven A. Coploff, for Defendants.

*MEMORANDUM & ORDER*

JOHNSON, J.

**\*1** Plaintiff Michael Mongelli (hereinafter "Plaintiff" or "Mongelli") brought this action against Defendant Chicago Insurance Company (hereinafter "Defendant" or "CIC"), seeking a declaratory judgment regarding the legal rights and duties of the parties toward one another under a professional liability insurance policy issued to Plaintiff by Defendant. Pursuant to 28 U.S.C. § 1441(b), Defendant removed the action to this Court from the Supreme Court of the State of New York. Presently before the Court is Plaintiff's motion for a preliminary injunction compelling Defendant to continue to indemnify and defend Plaintiff in an underlying action in state court entitled *Blodnick Abramowitz & Blodnick, et al. v. O'Connor, et al.,* Index no. 96/002836, and Defendant's cross-motion for summary judgment declaring that CIC has no duty to continue to defend or indemnify Plaintiff in this state action. For the following reasons, this Court denies Plaintiff's motion for

preliminary injunction and grants Defendant's cross-motion for summary judgment.

PRELIMINARY INJUNCTION

This Court finds that Plaintiff has failed to make an adequate showing for the issuance of a preliminary injunction. In order to obtain a preliminary injunction, Plaintiff must show: (1) irreparable injury; and (2) either a likelihood of success on the merits or that there are sufficiently serious questions going to the merits to make them a fair ground for litigation and that the balance of hardships tips in Plaintiff's favor. *Hasbro Inc. v. Lanard Toys, Ltd.,* 858 F.2d 70, 73 (2d Cir.1988); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979). Financial burdens do not constitute irreparable harm, since a monetary award would compensate for the injury suffered. *The Southland Corp. v. Froelich,* 41 F.Supp.2d 227, 230 (E.D.N.Y.1999). The Court finds that Plaintiff fails to demonstrate that he will suffer irreparable injury should a preliminary injunction not issue. Plaintiff's alleged injury is purely financial-the cost of retaining different counsel at this stage of his ongoing litigation in the *Blodnick* matter. Plaintiff argues that the *Southland* holding is not applicable here, since no action for a monetary award is pending and capable of compensating him. Yet if Plaintiff had succeeded on the merits of his claim for declaratory judgment, he would have had a later opportunity to bring an action against Defendant under his insurance policy contract. Plaintiff also fails to meet the second prong: the Court herein dismisses this action on its merits. Accordingly, Plaintiff's motion for preliminary injunction is DENIED.

SUMMARY JUDGMENT

The Court grants Defendant's cross-motion for summary judgment. Summary judgment is appropriate if there is no genuine factual issue and if the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the burden of showing that no genuine

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




Not Reported in F.Supp.2d
(Cite as: 2002 WL 32096578, *1 (E.D.N.Y.))

factual dispute exists. *See Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir.1995). Once the moving party has made a showing that there are no genuine issues of material fact to be tried, the burden shifts to the non-moving party to raise triable issues of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Mere conclusory allegations will not suffice. The non-moving party must present "significant probative supporting evidence" that there is a factual dispute. *Id.* at 249. A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the non-moving party. *Id.* at 248. Furthermore, in conducting its analysis, the court must draw all inferences and view all evidence in the light most favorable to the non-moving party. *Id.* at 254-255.

**\*2** The Court finds that Defendant has met its initial burden of showing that no genuine issue of material fact remains. In Plaintiff's Verified Complaint and Supporting Affidavit and Defendant's and Plaintiff's Rule 56.1 Statements, the parties agree on the following facts: Defendant CIC issued a lawyer's professional liability policy to Plaintiff Mongelli which covered the period from December 12, 1995 to December 12, 1997. In the course of his professional activities, Mongelli brought suit against the law firm of Blodnick Abromiwitz & Blodnick on behalf of his client, Brian O'Connor. That action ultimately resolved favorably for the Blodnick firm, and in March 1996, the Blodnick firm commenced causes of action for abuse of process, malicious prosecution, intentional infliction of emotional distress, tortious interference with contractual relations, slander, and fraud against Plaintiff. Plaintiff timely notified Defendant of these claims, and Defendant responded by letter of April 1996. In that letter, Defendant indicated that it had assigned counsel to defend Plaintiff in the *Blodnick* action, reminded Plaintiff of the limits of coverage contained in the policy, and reserved its rights under the policy. Counsel assigned to Plaintiff by Defendant did defend Plaintiff in the *Blodnick* action until November 1999, during which time the state court dismissed each cause of action against Plaintiff Mongelli, but reinstated the cause of

action for abuse of process. By letter dated October 22, 1999, Defendant notified Plaintiff that it would no longer indemnify or defend Plaintiff in the *Blodnick* action. Since only the abuse of process claim remained, Defendant asserted that its obligation under the policy had ended. Section VII(B) of the policy specifically excludes "Claims ... arising out of any dishonest, fraudulent, criminal or malicious act, omission or deliberate misrepresentation committed by, at the direction of, or with the knowledge of any Insured." (Pl.'s Aff., Ex. D). In his complaint and affidavit, Plaintiff does not allege that the policy covers the remaining claim against him. [FN1]

> FN1. Plaintiff does raise the allegation in motions papers. See footnote 3 and discussion on pages 7-10.

The burden now shifts to Plaintiff to raise triable issues of fact supported by "significant probative" evidence, not mere conclusory allegations. Plaintiff first alleges a factual dispute regarding the interpretation of the language of the April 1996 letter in which Defendant assigned counsel and reserved its rights. Disputes about the interpretation of legal instruments are legal questions that must be decided by the Court, not by a jury. [FN2] *Hartford Accident & Indemnity Co. v. Wesoloski,* 305 N.E.2d 907, 909 (N.Y.1973) ("the courts have declared on countless occasions that it is the responsibility of the court to interpret written instruments."). The Second Circuit has long held that "the meaning of plain words, whether contained in a contract, statute, or other writing, is for the court, and that such matters of interpretation or signification are commonly called questions of law." *First Nat. Bank of Litchfield v. Pipe & Contractors' Supply Co.,* 273 F.105, 107 (2d Cir.1921).

> FN2. In a diversity case, a district court must apply the choice-of-law of the state in which it sits. *See Sheldon v. PHH Corp.,* 135 F.3d 848, 852 (2d Cir.1998) (citing *Klaxon Co. v.. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941)). In contract cases, "New York courts will normally apply the law of the jurisdiction having the greatest interest in the litigation, as measured by that jurisdiction's contacts

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.





Not Reported in F.Supp.2d
(Cite as: 2002 WL 32096578, *2 (E.D.N.Y.))

Page   3

with the litigation." *Gaston & Snow v. Erkins,* 243 F.3d 559, 607-608 (2d Cir.2001). Here, New York has the greatest interest in the litigation, since Plaintiff's place of business is in New York, the insurance contract was executed in New York, and all of the relevant activity took place in New York. Hence, New York law will apply.

**\*3** Plaintiff initially challenged only the language of the reservation of rights letter and did not dispute the coverage or exclusions laid out in the policy itself. Plaintiff argues that "nothing contained in the letter allows CIC the right to discontinue defending [Mongelli] for any reason." (Pl.'s Mem. Opp'n. Summ. J. at 6). In support, Plaintiff quotes paragraphs five and seven of the 1996 letter reserving the right not to "indemnify" for punitive or exemplary damages or intentional misconduct, and notes the absence of the term "defense" in those two paragraphs. (Pl.'s Mem. Opp'n. Summ. J. at 5-6, quoting Pl.'s Aff., Ex. E). Defendant counters that the reservation of rights was expressly applied to "coverage" under the policy, not merely "indemnity." (Def.'s Opp'n. Summ J. at 3.) This Court is not moved by Plaintiff's conclusory allegations based on strained interpretations of the language of the letter. Instead, the Court adopts Defendant's reading that the reservation applies to "coverage," which includes both the duties to indemnify and defend insureds. Indeed, paragraph 10 of that document expressly cautions Plaintiff: "please by advised that Chicago Insurance Co. is providing your firm *coverage* under a Reservation of Rights." (Pl.'s Aff., Ex. E (emphasis added).) There is no reason to believe that Defendant intended "coverage" to have a different meaning in the letter than in the policy. The language of the insurance policy is clear and unambiguous. Read as a whole, the contract clearly sets out the insurer's duties of indemnification and defense of the insured. Section I on Coverage explains: "The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages for Claims first made against the Insured ... arising out of any *negligent act, error, omission* or Personal Injury in the rendering of or failure to render Professional Services by an

Insured covered under this policy." The next paragraph begins: "The Company shall have the right and duty to defend any suit against the Insured seeking Damages *to which this insurance applies* even if any of the allegations of the suit are groundless, false or fraudulent." (Pl.'s Aff., Ex. D (emphasis added).) Reading both clauses together, this Court finds that "coverage" under the policy includes both indemnification and the duty to defend, and that the duty to defend follows from any suit alleging conduct that is covered by the policy. Plaintiff's interpretation of the letter goes against the plain meaning of the language contained therein. Accordingly, the Court finds that CIC's April 1996 letter adequately reserved its rights to withdraw its defense of Mongelli if the alleged conduct was found to be excluded from coverage by the policy.

Plaintiff later offered a reinterpretation of the policy itself and the nature of the underlying claim to suggest that an abuse of process claim might be covered by the policy after all. [FN3] Plaintiff opposes Defendant's request for summary judgment on the ground that "CIC has not sustained its burden of demonstrating that the underlying claim is excluded from coverage under the policy." (Pl.'s Mem. Opp'n. Summ. J. at 10.) This Court disagrees. "The construction and effect of a contract of insurance is a question of law to be determined by the court where there is no occasion to resort to extrinsic proof.... Unless otherwise defined by the policy, words and phrases are to be understood in their plain, ordinary, and popularly understood sense, rather than in a forced or technical sense." *Hartford Insurance Co. of the Midwest v. Halt,* 646 N.Y.S.2d 589, 594 (N.Y.App.Div.1996). *See also Goldberg v. Lumber Mutual Casualty Ins. Co. of New York,* 77 N.E.2d 131, 132 (N.Y.1948); *Paul K. Rooney, P.C. v. Chicago Insurance Co.,* 2001 WL 262703 (S.D.N.Y.2001), \*4. "The parties' intent is to be ascertained by examining the policy as a whole, and by giving effect and meaning to every term of the policy." *Halt,* at 594. "Although any ambiguities must be resolved in favor of the insured, where the provisions of an insurance contract are clear and unambiguous, they must be enforced as written." *Id. See also*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




Not Reported in F.Supp.2d
(Cite as: 2002 WL 32096578, *3 (E.D.N.Y.))

*Morales v. Allcity Insurance Co.,* 713 N.Y.S.2d 227 (App.Div.2000); *Slayco v. Security Mutual Insurance Co.,* 728 N.Y.S.2d 282 (App.Div.2001). Here, the policy clearly states that CIC's duty to defend an insured is limited to claims arising out of negligence or personal injury, and specifically excludes, among others, any claim arising out of "fraudulent, criminal or malicious act, omission or deliberate misrepresentation." (Pl.'s Aff., Ex. D.)

> FN3. Defendant complains that Plaintiff raises this theory for the first time in motion papers. Some courts have held that a party cannot amend his complaint simply by alleging new facts and theories in the memoranda opposing summary judgment. *See Hanson v. Beloit Newspapers, Inc.,* 1995 WL 646808, *11 n.1 (D.Kan. Sept. 15, 1995). *See also Schott Motorcycle Supply. Inc. v. American Honda Motor Co., Inc.,* 976 F.2d 58, 61 (1st Cir.1992) (in affirming grant of summary judgment for defendant, court relies on an admission in plaintiff's complaint and asserts that "plaintiff should not be allowed to contradict its express factual assertion in an attempt to avoid summary judgment"); *Davis v. A.G. Edwards and Sons, Inc.,* 823 F.2d 105, 108 (5th Cir.1987) (rejecting affidavit proof allegedly creating an issue of fact and reasons that "irrespective of which document contains the more accurate account, the … [plaintiffs] are bound by the admissions in their pleadings"). Nevertheless, since Plaintiff did not specifically concede in his complaint that the policy would exclude the action for abuse of process, the Court will consider his claim on the merits.

**\*4** If the remaining claim against Plaintiff had alleged conduct that was covered by the policy, CIC would have a duty to defend its insured. An insurer's duty to defend the insured arises whenever the underlying complaint alleges conduct which would, if proved, establish liability of the insurance carrier under the policy. *C.W. Davis Supply Co. Inc. v. Newark Insurance Co.,* 304 N.Y.S.2d 124, 127 (Sup.Ct.1969); *McGroarty v. Great American Insurance Co.,* 351 N.Y.S.2d 428, 438 (App.Div.1974). This duty arises when the allegations "potentially give rise to a covered claim." *Frontier Insulation Contractors Inc. v. Merchants Mutual Ins.,* 667 N.Y.S.2d 982, 984 (1997). However, "[a]n insurer cannot be

obliged to defend if there is no legal or factual allegation in the underlying complaint for which the insurer might eventually have to indemnify the insured." *Commercial Union Assurance Co. v. Oak Park Marina, Inc.,* 198 F.3d 55, 59 (2d Cir.1999). *See also Rooney,* 2001 WL 262703, at *6 (finding that "[t]he defendant had no duty to indemnify the plaintiff under the Policy because the plaintiff was not the subject of a Claim, which required an allegation of negligence of which there was none. Therefore, the defendant had no duty to defend the plaintiff from the sanctions order."); *Direct Travel, Inc. v. Aetna Casualty & Surety Co.,* 625 N.Y.S.2d 221 (Sup.Ct.1995) (holding that "defendant was relieved of its duty to defend and indemnify plaintiff in the underlying action since it demonstrated that the allegations of the complaint fell outside the scope of the coverage provided by the primary and umbrella policies issued to plaintiff.").

As noted above, the policy specifically excludes coverage for actions arising out of intentional misconduct. However, Plaintiff now argues that an action for "abuse of process" could conceivably lie in negligent conduct, which would be covered by the policy. Plaintiff apparently relies on a dictionary definition of "negligence" to argue that the alleged conduct may be covered by the policy: "One can reasonably interpret the allegation that Plaintiff [Mongelli] 'omitted' certain material facts from his affirmation in the underlying action, as alleging *negligent* conduct on behalf of Plaintiff as opposed to intentional misconduct." (Pl.'s Mem. Opp'n. Summ. J. at 11 (Emphasis in original).) Plaintiff cites to *Allstate Insurance Company v. Mugavero,* 581 N.Y.S.2d 142 (1992), apparently for the proposition that where a complaint alleges conduct that could lie in both negligence or intentional misconduct, the insurer may not be relieved of its obligation to defend the insured, since the alleged conduct may be covered under the policy. Plaintiff, however, overlooks that "where it can be determined from the factual allegations that 'no basis for recovery within the coverage of the policy is stated in the complaint, [a court] may sustain [the insurer's] refusal to defend." ' *Id.* at 147

 

Not Reported in F.Supp.2d
(Cite as: 2002 WL 32096578, *4 (E.D.N.Y.))

Page 5

(quoting *Lionel Freedman, Inc. v. Glens Falls Ins. Co.,* 27 N.Y.2d 364, 368 (1971)). Indeed, the New York Court of Appeals made such a finding in *Mugavero* itself, noting that the underlying complaint "sets forth the totally inconsistent assertion that these intentional acts were committed 'negligently and carelessly, and with wanton disregard of others'. No different or additional facts are pleaded. Nor do any of defendants' motion papers suggest that there is the least evidentiary support for the conclusory characterization of Mugavero's conduct as negligent or provide an explanation of how the intrinsically intentional acts ... could be negligently performed." *Id.* at 148. The instant case involves a similar situation. In fact, the New York Supreme Court reinstated the cause of action for abuse of process against Mongelli upon the specific finding that the *Blodnick* complaint alleged "that an attorney has issued lawful process with the deliberate premeditated intention of inflicting economic injury on a third person without economical or social excuse or justification." (Pl.'s Aff., Ex. H at 2.) Thus, the only remaining cause of action in the complaint alleges intentional misconduct, not negligence. "[A]n abuse of process claim has three elements: '(1) regularly issued process, either civil or criminal, (2) an *intent* to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." ' *Kuriakose v. City of Mount Vernon,* 41 F.Supp.2d 460, 468 (S.D.N.Y.1999) (quoting *Curiano v. Suozzi,* 480 N.Y.S.2d 466, 468 (1984)) (emphasis added). There is no alleged claim remaining that would be covered by Defendant's policy, hence Defendant cannot be obligated to defend under the policy.

**\*5** In the alternative, Plaintiff argues that having once undertaken Plaintiff's defense in the original action and then continued that defense for two years after the sole remaining cause of action was for abuse of process, Defendant should be estopped from discontinuing at this point. (Pl.'s Aff. ¶ 7; Pl.'s Mem. Opp'n. Summ J. at 6.) The common law remedy of equitable estoppel [FN4] may be available in situations where insurance

carriers undertake the defense of policyholders without reserving their rights to disclaim coverage in advance of undertaking the defense. *See Indemnity Insurance Co. of North America v. Charter Oak Insurance Co.,* 653 N.Y.S.2d 135 (App.Div.1997). *See also American Transit Insurance Co. v. Mendon Leasing Corp.,* 660 N.Y.S.2d 725 (App.Div.1997); *Hartford Accident & Indemnity Co. v. Insurance Co. of North America,* 436 N.Y.S.2d 777 (App.Div.1981). This remedy may be available even where the insurer would not be liable for uncovered conduct under normal contract law principles. *Travelers Property Casualty v. Weiner,* 666 N.Y.S.2d 392, 394-95 (Sup.Ct.1997). Estoppel thus serves to protect insureds who might otherwise be given the false impression that coverage is present, *Id.* at 395, lose control of their own defenses, *Globe Indemnity Co. v. Franklin Paving Co.,* 430 N.Y.S.2d 109 (App.Div.1980), or be prejudiced by the actions of insurers who assumed, then withdrew, their defense, *Smith Jean, Inc. v. Royal Globe Insurance Companies,* 526 N.Y.S.2d 604, 605 (App.Div.1988). But where the insurance carrier expressly reserves its rights under the policy, the original decisions to undertake and continue the defense of a policy-holder do not normally estop the insurance carrier from discontinuing such defense when the activity is found to lie outside the coverage of the policy. *General Accident Insurance Company v. 35 Jackson Avenue Corp.,* 685 N.Y.S.2d 774, 775 (App.Div.1999); *Smith Jean,* 526 N.Y.S.2d at 605. However, where a carrier undertakes a defense that gives false comfort to the insured or creates a conflict of interest between insurer and insured, the carrier must promptly inform the insured of its decision to withdraw its defense once it discovers the facts affecting coverage. *Weiner,* 666 N.Y.S.2d at 395.

FN4. Neither Plaintiff nor Defendant expressly acknowledges the elements required for equitable estoppel under New York law. "The elements of estoppel are material misrepresentation, reasonable reliance, and provable damages." *Bennett v. United States Lines, Inc.,* 64 F.3d 62, 65 (2d Cir.1994). *See also Schneider v. Canal Insurance Co.,* 1999 WL 689476, \*13 (E.D.N.Y.). Plaintiff also fails to demonstrate these elements: Defendant's reservation

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




of rights letter clearly disclaims liability for the uncovered acts of Plaintiff, so no charge of material misrepresentation may lie.

In the instant case, Defendant CIC did reserve its rights prior to undertaking the defense of Plaintiff in the *Blodnick* action. Despite Plaintiff's contrary assertion, this Court finds Defendant's reservation to have been complete, covering both indemnification and the duty to defend. Nor does Defendant's continued representation of Plaintiff, two years after the covered negligence causes of action were dismissed, estop Defendant from withdrawing now. In *Weiner,* the New York court held that regardless of a reservation of rights letter, the insurance carrier was estopped from terminating its coverage of the insured where the insurer continued to represent the insured after insured's criminal conviction that would preclude coverage for the same activity. However, in that case, the court found that the insurer's continued representation constituted a conflict of interest between insurer and insured and may have prejudiced the insured's position in the civil suit. *Id.* at 394-95. Neither of these concerns exists in the instant case. At no time did Defendant's and Plaintiff's interest in the case differ. Counsel appointed by CIC successfully defended Mongelli against most of the claims against him. Plaintiff makes no allegation that it will be prejudiced by Defendant's withdrawal. And the only harm alleged by Plaintiff is that Plaintiff will now have to pay for legal expenses incurred in the future that had once been funded by Defendant. The Court finds that the doctrine of equitable estoppel may not be asserted against Defendant in this case.

**\*6** Plaintiff has failed to sustain his burden of demonstrating genuine issues for trial. This Court finds that on the facts presented in the pleadings, no reasonable jury could find in Plaintiff's favor. Accordingly, Defendant's motion for summary judgment is hereby GRANTED.

## CONCLUSION

For the foregoing reasons, Plaintiff's request

for a preliminary injunction requiring Defendant to indemnify and defend him in the state court action is hereby DENIED. Defendant's request for summary judgment is hereby GRANTED. The Clerk of the Court is ordered to enter judgment for Defendant.

SO ORDERED.

2002 WL 32096578 (E.D.N.Y.)

Motions, Pleadings and Filings (Back to top)

. 1:99CV08149 (Docket) (Dec. 13, 1999)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




# Exhibit "O"

Not Reported in A.
1999 WL 130610 (Conn.Super.), 24 Conn. L. Rptr. 87
**(Cite as: 1999 WL 130610 (Conn.Super.))**
**H**

**Page    1**

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Connecticut.

Victoria E. MORSE,
v.
HOPKINS SCHOOL et al.

No. CV 970404269S.

Feb. 26, 1999.

Memorandum of Decision Re: Motion to Strike
(# 106)

DELVIN.

**\*1** Plaintiff, Victoria E. Morse ("Morse"), filed
a substitute complaint dated July 22, 1998
against the defendants, Hopkins School
("Hopkins") and Thomas Rodd, Jr. ("Rodd").
Count One alleges a cause of action for breach
of contract of employment and Count Two
alleges a cause of action for violation of the
covenant of good faith and fair dealing.
Among other relief requested, Morse seeks
exemplary damages as to both counts of the
substitute complaint. Hopkins and Rodd move
to strike the claim for exemplary damages on
the grounds that exemplary damages are not
recoverable for breach of contract claims. For
the reasons set forth below, the motion to
strike is granted.

"The motion to strike ... replaced the
demurrer in our practice. Its function, like
that which the demurrer served, is to test the
legal sufficiency of a pleading." *R.K.
Constuctors, Inc. v. Fusco Corp.*, 231 Conn. 381,
384, 650 A.2d 153 (1994). Practice Book
section 10-39 provides, "whenever any party
wishes to contest ... the legal sufficiency of any
prayer for relief in any ... complaint that party
may do so by filing a motion to strike the
contested pleading or part thereof. A motion to
strike a prayer for relief is properly granted
where, "assuming the truth of the allegations
in the complaint, the relief sought could not be
legally awarded to the plaintiff." *Kavarco v.*

*T.J.E., Inc.*, 2 Conn.App. 294, 298 n. 4, 478
A.2d 257 (1984).

The rule in Connecticut with respect to
recovering punitive damages for a breach of
contract claim provides that, "[p]unitive
damages are not ordinarily recoverable for
breach of contract." *Triangle Sheet Metal Works,
Inc. v. Silver*, 154 Conn. 116, 127, 222 A.2d 220
(1966). Absent an allegation that there is
"wanton and malicious injury, evil motive and
violence" punitive damages are not available
for a breach of contract claim. Id. Morse does
not assert any of these allegations in her
breach of contract claim.

The rule in Connecticut with respect to
recovering punitive damages for a violation of
the covenant of good faith and fair dealing
claim provides that punitive damages are not
recoverable in employment cases. *Barry v. Posi-
Seal International, Inc.*, 40 Conn.App. 577, 672
A.2d 514, *cert. denied* 237 Conn. 917, 676 A.2d
1373 (1996). In *Barry,* the Appellate Court
stated that "where there is no allegation or
proof that the termination of employment is
violative of an important public policy,
punitive damages cannot be recovered on a
claim that a termination constituted a breach
of the implied covenant of good faith and fair
dealing ..." *Id.*, at 587-838. Morse does not
allege any violation of public policy in her
allegation of violation of the covenant of good
faith and fair dealing claim.

**\*2** Morse asserts that notwithstanding *Barry,*
punitive damages should be available in cases
such as this that involve the breach of an
express contract of employment in a manner
that is tortious. While acknowledging that
*Barry* forecloses such damages, Morse argues
that *Barry* was wrongly decided in light of the
contrary view expressed in the Restatement of
Contracts. This court, however, is bound by
the holding in *Barry* and must therefore grant
the motion to strike the claim for exemplary
damages.

In addition to the above, the file reflects that
a substantially similar motion addressed to

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.




Not Reported in A.
**(Cite as: 1999 WL 130610, \*2 (Conn.Super.))**

Page    2

the original complaint was ruled upon by the Honorable Howard Zoarski. Judge Zoarski granted the motion to strike the claim for punitive damages in the original complaint. Morse then pled over after Judge Zoarski's ruling again claiming punitive damages and the defendants, in turn, have again moved to strike. While the substitute complaint is more detailed, it does not change the essence of the allegation made in the original complaint. Given this procedural posture, Judge Zoarski's ruling, while not absolutely binding, is entitled to deference by this court. See *Carotheis v. Capozziello*, 215 Conn. 82, 107, 574 A.2d 1268 (1990) (A judge should hesitate to change his own rulings in a case and, should be even more reluctant to overrule those of another judge).

Accordingly, the motion to strike is granted.

So Ordered at New Haven, Connecticut this 24th day of February, 1999.

1999 WL 130610 (Conn.Super.), 24 Conn. L. Rptr. 87

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.


