## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **TRAVELERS CASUALTY & SURETY** | : | |
| **COMPANY OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION  NO.** |
| **v.** | : | **302CV408(AWT)** |
| | : | |
| **TIG INSURANCE COMPANY,** | : | |
| | : | |
| **Defendant.** | : | **DECEMBER 13, 2004** |

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Plaintiff, Travelers Casualty & Surety Company of America ("Travelers"), hereby submits its Reply Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment.  The Defendant, TIG Insurance Company, f/k/a Transamerica Insurance Group ("TIG"), in its Memorandum of Law in Opposition to Travelers' Motion for Summary Judgment dated December 1, 2004 (hereinafter "TIG's Opposition Brief"), further mischaracterizes this suit as being about insurance defense coverage.  TIG's Opposition Brief blatantly disregards the undisputed facts of this case and further highlights its attempt to steer this Court away from the real focus of this case, TIG's breach of its oral agreement with Travelers to split the costs of defending Weitz in the Shoreline Action on a 50/50 basis.

Instead of clarifying its position and bolstering its argument for summary judgment, TIG's Opposition Brief undermines not only its summary judgment motion but also its own

credibility in defending this suit based on the factual record and based on the law.  By

repeatedly asserting throughout its Opposition Brief that in this suit Travelers is seeking a

"windfall at the expense of TIG" it is evident that TIG seeks to erroneously characterize itself

as the victim in this case.  (*See* TIG's Opposition Brief at pgs. 19, 26, 30).  In a miscalculated

effort to strengthen its summary judgment motion, TIG spends a considerable part of its

Opposition Brief dismissing facts as irrelevant in this case while failing to discuss the rest of

the factual record, which is largely based on TIG's own documents.  (*See* TIG's Opposition

Brief at pgs. 7-10).  Also, TIG has objected on the grounds of relevance to 61 out of the 81

paragraphs in Travelers' Local Rule 56(a)1 Statement of Material Facts Not in Dispute.  (*See*

TIG's Statement Pursuant to Local Rule 56(a)2 in Opposition to Plaintiff's Local Rule 56(a)1

Statement).  However, TIG has failed to provide *any* evidence contrary to these 61

paragraphs by way of counter affidavit or documents.[1]  Thus, this Court should deem each of

these 61 paragraphs of Travelers' Local Rule 56(a)1 Statement of Material Facts Not in

Dispute, as "undisputed."  Based on these and the other undisputed facts the Court should

---

[1] "[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.... In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party.... 'A material fact is a fact that will make a difference in the outcome of the case.... Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue.... It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact ... are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court....' (Citations omitted; internal quotation marks omitted.) *Yancey v. Connecticut Life & Casualty Ins. Co.,* 68 Conn.App. 556, 558-59, 791 A.2d 719 (2002)."  *Christian v. Gouldin*, 72 Conn. App. 14, 18-19 (2002).

grant Travelers' Motion for Summary Judgment and should deny TIG's cross motion for

summary judgment.

## ARGUMENT

**I.    TIG MISCHARACTERIZES TRAVELERS' INDEPENDENT AGREEMENT TO DEFEND WEITZ UNDER THE INAPPOSITE PRE-EXISTING DUTY RULE.**

In an effort to argue that no enforceable contract exists between Travelers and TIG

because TIG's offer was not based on consideration, TIG mischaracterizes Travelers'

independent agreement to defend Weitz under a reservation of rights as a pre-existing duty

that would preclude a finding of consideration for the Oral Agreement.[2]   TIG's argument

must fail because Connecticut case law makes it clear that the pre-existing duty rule does not

apply to a case such as this where two insurers independently agree to defend the same

insured and later enter into a contract to split the costs of defending that insured.  Travelers'

independent agreement to defend Weitz cannot be characterized as a pre-existing duty

because prior to entering into the Oral Agreement with TIG, Travelers was not under a duty

to split the Weitz defense costs with TIG on a 50/50 basis and was under no pre-existing duty

to allow TIG to participate in that defense.

---

[2] The term "Oral Agreement" as used in this brief was defined on page 10 of Travelers' Memorandum of Law in Support of Motion for Summary Judgment: "The September 1996 telephone conversation between Yeager on behalf of TIG and Zwick on behalf of Travelers in which they discussed and agreed that Travelers and TIG would split the costs of defending Weitz in the Shoreline Action on a 50/50 basis constituted an oral agreement (the "Oral Agreement").  (Affidavit of Gerald Zwick at ¶ 13, Rule 56 at ¶ 16)."

A.    **TIG mischaracterizes the pre-existing duty rule.**

By definition the pre-existing duty rule only applies when the same two parties are involved in a contract and subsequently a new promise is made by one of the parties to the contract based on the originally specified contractual performance.

> It is an accepted principle of law in this state that when a party agrees to perform an obligation for another to whom that obligation is already owed, although for lesser remuneration, the second agreement does not constitute a valid, binding contract. See, e.g., *Dahl v. Edwin Moss & Son, Inc.,* [supra, at 147, 69 A.2d 562]; *Gruber v. Klein,* 102 Conn. 34, 127 A. 907 [1925]; *Warren v. Skinner,* 20 Conn. 559 [1850]. The basis of the rule is generally made to rest upon the proposition that in such a situation he who promises the additional [work] receives nothing more than that to which he is already entitled and he to whom the promise is made gives nothing that he was not already under legal obligation to give. 1 Williston on Contracts, § 130. *Blakeslee v. Board of Water Commissioners,* 106 Conn. 642, 652, 139 A. 106 [1927]. *Brian Construction & Development Co. v. Brighenti,* 176 Conn. 162, 166, 405 A.2d 72 (1978). *Simone v. Kirschner,* supra [at 429, 124 A. 20]." (Internal quotation marks omitted.) *Thermoglaze, Inc. v. Morningside Gardens Co.,* supra, 23 Conn.App. at 745-46, 583 A.2d 1331.

*New England Rock Services, Inc. v. Empire Paving, Inc.*, 53 Conn. App. 771, 776-777 (1999), *cert. denied*, 250 Conn. 921 (1999).

> Although an exchange of promises usually will satisfy the consideration requirement; *Taft Realty Corp. v. Yorkhaven Enterprises, Inc.,* 146 Conn. 338, 342, 150 A.2d 597 (1959); "a promise to do that which one is already bound by his contract to do is not sufficient consideration to support an additional promise by the other party to the contract." *New England Rock Services, Inc. v. Empire Paving, Inc.,* 53 Conn.App. 771, 776, 731 A.2d 784, cert. denied, 250 Conn. 921, 738 A.2d 658 (1999). "A modification of an agreement must be supported by valid consideration and requires a party to do, or promise to do, something further than, or different from, that which he is already bound to do." (Internal quotation marks omitted.) Id.

*Christian v. Gouldin*, 72 Conn. App. 14, 23 (2002). *See also*, *Lattanzio v. University of Harvard*, 1994 WL 271400 at *1 (Conn.Super. Jun 07, 1994).

The *Christian* case makes it clear that the pre-existing duty rule refers to when party A, who has entered into a contract with party B, promises to party B to do that which party A is already bound by the contract to do for that party B.  Therefore, as the *Christian* case points out, the pre-existing duty rule applies when one party to a contract tries to modify the existing contract with a new promise.  The pre-existing duty rule does not apply here because the Oral Agreement created a new duty for TIG and Travelers to split the Weitz defense costs with each other and to share in their respective duty to defend Weitz.  The agreement to split the Weitz defense costs was not an attempt by TIG or by Travelers to modify an existing contract between TIG and Travelers, rather it was a new contract between the two insurers.

> **B.    The pre-existing duty rule does not apply in this case because TIG and Travelers took on new duties in their Oral Agreement**

TIG's argument that there is no consideration for the agreement between TIG and Travelers to split the costs of the Weitz defense must fail because the pre-existing duty rule does not apply here.  For lack of a better argument to make regarding consideration for the Oral Agreement, TIG continues to belabor the fact that Travelers independently agreed to provide Weitz with a defense in the Shoreline Action under a reservation of rights:

> "The undisputed material facts here establish that prior to TIG's September 6, 1996 offer to participate in paying for the defense of Weitz, Travelers was already contractually obligated to provide that defense and had begun to fulfill that obligation by retaining Milano & Wanat to defend Weitz.  Connecticut case law, . . ., is clear that TIG's offer, as well as the follow-up communications between Travelers and TIG, did not create an enforceable contract to share the defense costs in the Shoreline Action because Travelers was already obligated to provide the defense and TIG's subsequent 'agreement' was not supported by consideration."

(TIG's Opposition Brief at pgs. 14-15).  Without actually stating this, what TIG is arguing is that Travelers' independent agreement to defend Weitz under a reservation of rights is a pre-existing duty that Travelers has to defend Weitz in the Shoreline Action and that this pre-existing duty precludes a finding of consideration for the Oral Agreement.

Travelers' independent agreement to defend Weitz under a reservation of rights is not is not a pre-existing duty as defined by the pre-existing duty rule.  The law on the pre-existing duty rule makes it clear that the pre-existing duty rule only applies when the same parties are involved in a contract and subsequently a new promise is made by one of the parties to the contract to do what he is already contractually bound to do under that contract.  Travelers' agreement with Weitz to provide a defense for Weitz in the Shoreline Action subject to a full reservation of rights was only an agreement to defend Weitz.  There was nothing in Travelers agreement to defend Weitz under a reservation of rights, about whether and how Travelers would split the Weitz defense costs or share its defense obligation with TIG.    Travelers' agreement with TIG was subsequent and wholly independent of its agreement with Weitz.  Therefore, Travelers' agreement to defend Weitz did not create any kind duty for Travelers to split or not the Weitz defense costs with TIG.

The September 1996 telephone conversation between Yeager on behalf of TIG and Zwick on behalf of Travelers in which they discussed and agreed that Travelers and TIG would split the costs of defending Weitz in the Shoreline Action on a 50/50 basis constituted an oral agreement that created a new duty for TIG and Travelers that they now owed to each other to split the costs of the Weitz defense and share in that defense.  TIG's and Travelers'

independent reservation of rights letters in which they each agreed to defend Weitz created a duty for each insurer to provide insurance coverage for Weitz. The Oral Agreement on the other hand created a financial duty for TIG and Travelers to split the Weitz defense costs with each other while they shared in the management of the Weitz defense being provided by Milano & Wanat. Just as Traveler's agreement to defend Weitz did not create any duty for it to split the Weitz defense costs with TIG, TIG's agreement to defend Weitz did not create any duty for it to split the Weitz defense costs with Travelers. By entering into the Oral Agreement, TIG and Travelers were not agreeing for the first time to provide Weitz with a defense, they were agreeing to split the costs of and share the management of the Weitz defense that each had previously committed to providing to the insured. Therefore, the pre-existing duty rule does not apply here.

Because the pre-existing duty rule does not apply in this case, Travelers will not devote a significant portion of this brief distinguishing the cases which TIG cites to support its pre-existing duty argument. It is sufficient to say that the cases TIG cites are wholly inapposite and do not support TIG's pre-existing duty argument: *CLT Telecommunications Corp. v. Colonial Technologies Corp.*, 1999 WL 200700 at *4 (D.Conn. Mar 21, 1999) (The main reason the court granted the defendant's summary judgment motion as to the plaintiff's breach of contract claim was not because of the pre-existing duty rule, rather it was because it found that no actual offer was made and therefore no actual agreement existed between the parties: ". . . , the record is devoid of any evidence that the parties actually discussed or agreed upon any of the terms of this alleged oral contract. . . . the court cannot find that an

offer was even made to CLT." *Id.* at *5.); *State Nat. Bank of Connecticut v. Dick,* 164 Conn. 523 (1973) (The case concerned a modification of a contract. The court held that "where mortgagors agreed from the beginning to pay interest at floating rate of one-half per cent above bank's prime rate and at all times paid interest at such floating rate, and original mortgaged land was only land ever deposited as collateral for the mortgage, oral extension agreement for payment of loan in question was unsupported by any consideration."); *Hipsky v. Allstate Ins. Co*., 304 F.Supp.2d 284 (D.Conn. 2004) (Travelers has discussed and distinguished this case at length on pages 9 through 11 of its Memorandum in Opposition to Defendant's Motion for Summary Judgment); *New England Rock Services, Inc. v. Empire Paving, Inc.*, 53 Conn. App. 771 (1999) (The case concerned a modification of a contract: "[b]lasting subcontractor brought action against general contractor and surety to recover payment based on modification of the contract."); *Stackpole Moore Tryon Co. v. Career Path, Inc.*, 1990 WL 283913 at *1 (Conn.Super. Jul 31, 1990) (The case concerned a modification of a contract: "Under the facts as alleged in the complaint the plaintiff did not promise to do something 'further than, or different from' what he was already bound to do, namely, to pay the full amount of the defendant's bill. Accordingly, there was no consideration for the promise to extend the time for payment in order to qualify for the refund of the payment under the original agreement." *Id*.).

TIG has failed to prove that the pre-existing duty rule applies here and has presented no evidence to support its theory that the cost splitting agreement between TIG and Travelers is not supported by consideration.  Travelers has established in its two prior briefs that the

undisputed facts in the record prove that the Oral Agreement is enforceable as an oral contract. Consideration for the Oral Agreement exists and is based on the mutual exchange of promises between TIG and Travelers, the benefit that TIG received in reducing its own defense obligation and avoiding the need to hire separate defense counsel for Weitz, as well as on Travelers' performance of the terms of the Oral Agreement. Therefore, there is no genuine issue of material fact as to whether there is consideration to support the Oral Agreement and likewise there is no genuine issue of material fact to as to whether the Oral Agreement is enforceable as an oral contract.

## II.    TRAVELERS HAS SUFFERED SUBSTANTIAL MONETARY DAMAGES AS A RESULT OF TIG'S BREACH OF THE ORAL AGREEMENT.

The undisputed factual record demonstrates that TIG has breached the Oral Agreement by representing repeatedly during the period from September 1996 through April 2001 that TIG would contribute its committed 50% share toward the reasonable costs of the Weitz defense, subject to a review of the hourly time records for Milano & Wanat, and then by refusing in April 2001 to pay any defense costs or to continue sharing in the defense of Weitz. Travelers has suffered substantial monetary damages as a result of TIG's breach of contract in an amount equal to fifty percent of the costs incurred by Travelers in defending Weitz. As of April 6, 2001 when TIG reneged on the Oral Agreement, Travelers had incurred and subsequently paid attorneys' fees and disbursements in the defense of Weitz to Milano & Wanat in the amount of $491,728.33. After TIG's April 6, 2001 letter, Milano &

Wanat continued to defend Weitz through the completion of a trial in late 2002. On November 15, 2002, Milano & Wanat obtained a judgment in the favor of Weitz after a court trial. (*See* Affidavit of Christopher Wanat at ¶ 15)[3]. (Appendix Tab 48, Rule 56 at ¶ 78). Travelers incurred and paid legal fees to the firm of Milano & Wanat and related costs in the defense of Weitz from August 1996 through termination of the action in January 2003 after judgment in the total amount of $887,256. (*See* Affidavit of Gerard E. Doak at ¶ 7, Rule 56 at ¶ 79). To this day, TIG has paid no part of the defense costs incurred and paid by Travelers on behalf of Weitz. (*See* Affidavit of Gerard E. Doak at ¶ 8).

TIG's argument that "Travelers has not suffered any damages from TIG's offer to participate in paying for the defense of Weitz because Travelers would have had to pay the defense costs whether or not TIG made a contribution" is meritless. (TIG's Opposition Brief at pg. 19). The issue is not the fact that by agreeing to defend Weitz, Travelers agreed to pay for the costs of defending Weitz. The issue is that TIG and Travelers entered into a subsequent agreement to split the costs incurred in defending Weitz, and TIG has breached this agreement by failing to pay its fifty percent share of the Weitz defense costs. Moreover, TIG's argument that had TIG reimbursed Travelers for any payments related to the Weitz defense, it would be entitled to repayment from Travelers is completely without merit and

---

[3] References and citations to affidavits in this brief refer to the affidavits attached to *Plaintiff's Motion for Summary Judgment*. References and citations to "Rule 56" in this brief refer to Travelers' Rule 56(a)1 Statement of Material Facts Not in Dispute submitted along with *Plaintiff's Motion for Summary Judgment*. References and citations to "Appendix Tab" in this brief refer to Plaintiff's Appendix To Local Rule 56(a)1 Statement Of Material Facts Not In Dispute In Support Of Plaintiff's Motion For Summary Judgment.

without legal support.  TIG has cited no authority for the proposition that an insurer may agree to split the defense with another insurer under a reservation of rights and then recoup some or all its defense costs if it later discovers it had a defense to its coverage obligation to the insured.

TIG to this day has not reimbursed Travelers for a dime of the costs incurred and paid by Travelers in the Weitz defense.  It is TIG, not Travelers as TIG unpersuasively argues on page 19 of its Opposition Brief, which is attempting to obtain a windfall here at the expense of Travelers.  TIG's blatant disregard for the undisputed factual record, which is largely based on its own documents, and its baseless arguments which have no foundation in the law, shows an insurer which is desperately seeking to shift the financial liability for its own self-proclaimed mistake of believing that it owed Weitz a defense in the Shoreline Action.  The whole point of its reservation of rights was that TIG was uncertain of its coverage position and therefore promised to defend Weitz while it investigated coverage.  TIG's current arguments are a shameless attempt to mask the fact that without the Oral Agreement, TIG would have had to hire its own counsel to represent Weitz because it had independently agreed to defend Weitz under its reservation of rights and would have borne the costs of defending Weitz for at least four years from September 1996 through April 2001.

Travelers' substantial monetary damages are real and are supported by the undisputed factual record; TIG's arguments are based upon TIG's self-serving reconstruction of the facts in this case.  Clearly Travelers has a concrete monetary loss.  In contrast, TIG avoided years

of defense costs by its refusal to either independently defend Weitz or to pay its 50% share of Travelers' incurred defense costs.

**III.    THE FACTUAL RECORD SHOWS THAT TRAVELERS JUSTIFIABLY AND DETRIMENTALLY RELIED UPON TIG'S FALSE RERPESENTATIONS.**

   **A.    Travelers has adequately pled and proven a claim of intentional and/or negligent misrepresentation against TIG.**

TIG's argument that Travelers cannot satisfy the elements of an intentional or negligent misrepresentation claim must fail.  The undisputed factual record shows that there is no genuine issue of material fact as to whether TIG represented to Travelers that it would honor its commitment to pay fifty percent of the costs incurred in defending Weitz, that TIG knew or should have known that its representations were false when made, and that Travelers would rely on these representations.  The crux of TIG's flawed argument to defeat Travelers' misrepresentation claim is that there was no detrimental reliance by Travelers based on any representation made by TIG.  (TIG's Opposition Brief at pgs. 20-21).  Travelers has explained at length in its memorandum in support of its summary judgment motion (pgs. 21-25) and in its memorandum in opposition to defendant's motion for summary judgment (pgs. 13-21) that it justifiably and detrimentally relied upon TIG's false representation that it would pay fifty percent of the costs incurred in the Weitz defense.

From September 1996 through 1999, TIG repeatedly represented that it would honor its commitment to pay fifty percent of the legal fees associated with the Weitz defense.  (*See* Appendix Tabs 10, 18, 21, Rule 56 at ¶¶ 26, 34, 38).  For over four years from 1996 through

2001 TIG never advised Travelers that it was reserving the right to rescind or withdraw retroactively from its agreement to pay fifty percent of the costs of defending Weitz. TIG knew or should have known that Travelers would rely on its representations that it would pay fifty percent of the Weitz defense costs. TIG has presented no evidence to dispute that it knew or should have known that Travelers would rely on its representations. In reliance upon TIG's representations, Travelers advanced funds for the defense of Weitz from August 1996 through January 2003, for a total amount of $887,256. (*See* Affidavit of Gerald E. Doak at ¶ 8, Rule 56 at ¶ 79). In reliance upon TIG's representations and in response to TIG's requests, Travelers provided TIG with copies of confidential attorney client and work product communications as well as with detailed time records evidencing hours worked and services provided by Milano & Wanat in defense of Weitz and records of other defense costs. (*See* Appendix Tabs, 7, 11, 12, 15, 19, 22, 23, 24, 25, 26, 29, 32, 33, 35, 39, 42, 44 & 46, Rule 56 at ¶¶ 23, 27, 28, 31, 36, 39, 40, 41, 42, 43, 46, 53, 57, 60, 64, 67, 70, 72).

Without TIG's repeated representations, Travelers could have reevaluated its strategy in defending Weitz in terms of the amount of legal fees it was prepared to pay as a possible settlement and would not have provided TIG with confidential attorney-client and work product communications, and other records on the status of the Weitz defense. Without TIG's repeated representations, there was no incentive or obligation for Travelers to share attorney-client and work product communications with TIG. Moreover without TIG's representations Travelers would not have allowed TIG to participate in controlling the defense as it in fact did. Further, TIG continues to ignore and even deny that absent the Oral

Agreement, TIG would have had to retain another defense counsel for Weitz at its own expense as it expressly committed to do when it issued it reservation of rights to Weitz. That position is refuted by TIG's own reservation of rights letter which clearly indicates that TIG committed to defending Weitz, subject to its ability to share the costs of defense with other insurers. (*See* Appendix Tab 1, Rule 56 at ¶ 11-12). Therefore, TIG's argument that Travelers cannot prove detrimental reliance is without merit because Travelers only provided TIG with confidential attorney-client and work product communications and allowed it to share in the control of the defense provided by Milano & Wanat because Travelers relied upon TIG's repeated representations that it would honor its commitment to pay fifty percent of the Weitz defense costs.

> **B.     Because TIG now claims that there was never an agreement between TIG and Travelers to split the Weitz defense costs, TIG's representations from 1996 through 2001 that there was an agreement are misrepresentations about a past fact, not misrepresentations about a future performance.**

For the first time, in its Opposition Brief, TIG disputes that there was ever an agreement between TIG and Travelers to split the Weitz defense costs on a 50/50 basis. TIG obviously ignores its communications to Travelers and Milano & Wanat and also ignores its own numerous internal documents which reference that TIG was sharing in defense costs with Travelers (or Aetna). Throughout its Opposition Brief TIG now refers to TIG's "offer" to Travelers to split the Weitz defense costs without ever acknowledging that TIG and Travelers mutually agreed to split the Weitz defense costs on a 50/50 basis:

> "From its initial (but erroneous) **offer,** TIG reserved the right to withdraw from the defense."  (TIG's Opposition Brief at pg. 13) (Emphasis added).

14

"The undisputed material facts here establish that prior to TIG's September 6, 1996 **offer** to participate in paying for the defense of Weitz, Travelers was already contractually obligated to provide a defense. . ."  (Id. at pg. 14) (Emphasis added).

"Travelers cannot now claim that TIG's mistaken **offer,** a month after Travelers had already hired counsel and agreed to provide a defense to Weitz, constitutes consideration for Travelers undertaking that defense."  (Id. at pg. 18) (Emphasis added).

". . ., Travelers has not suffered any actual damages from TIG's **offer** to participate in paying for the defense of Weitz . . . Given TIG's right to recover any such payments, Travelers' attempt to pursue a recovery under the **purported 'agreement'** is not supported by Connecticut law . . ."  (Id. at pg. 19) (Emphasis added).

". . ., Travelers agreed to defend Weitz before TIG mistakenly **offered** to   participate, therefore Travelers cannot claim that TIG induced Travelers to act based on its mistake."  (Id. at pg. 21) (Emphasis added).

"Travelers advanced funds for the defense of Weitz because it had a contractual obligation to defend Weitz in the Shoreline Action under its policies and had committed to do so before TIG ever **offered** to participate in the defense."  (Id. at pg. 23; emphasis in original) (Emphasis added).

"Travelers was already obligated to pay for Weitz's defense, therefore any expenses Travelers incurred had nothing to do with TIG's participation, thereby negating any causation arising from TIG's **offer** to participate in the defense."  (Id. at pg. 23) (Emphasis added).

". . .TIG's withdrawal of its **offer** to participate in the defense did not prejudice Weitz."  (Id. at pg. 24) (Emphasis added).

"TIG's **offer** did not change Travelers' contractual obligation in any way, . . ."  (Id. at pg. 25) (Emphasis added). [4]

---

[4] Despite all of its characterizations of the Oral Agreement as merely an "offer" by TIG "to participate in the defense," in one section of its Opposition Brief TIG slips up and reveals the falsity of its claim that no agreement ever existed between Travelers and TIG to split the Weitz defense costs:

"Moreover, whether or not TIG had a 'basis' to rescind the **agreement** (which it did and was explained in TIG's counsel's letters) does not prove that Travelers suffered monetary damages. . . The **offer** by TIG to participate in the defense and subsequent withdrawal did not increase Travelers obligations or

TIG's logic in trying to characterize the agreement with Travelers to split the Weitz defense costs as a mere offer by TIG to participate in the defense of Weitz is flawed and cannot be followed.  An offer and an agreement are two distinct things.  An "offer" is made by one party and is the "[t]he act or an instance of presenting something for acceptance." Black's Law Dictionary, Pocket Ed., 1996, at pg. 453.  An "agreement" is "a mutual understanding between two or more persons regarding their relative rights and duties as to past of future performance."  (Id. at pg.25).  TIG's assertion that its "offer" was "to participate in the Weitz defense" is incomplete because the offer that TIG and Travelers made to each other was that they would spilt the Weitz defense costs on a 50/50 basis. Furthermore, TIG and Travelers each accepted the offer to split the Weitz defense costs and indeed mutually agreed that they would split the Weitz defense costs on this 50/50 basis.

As a further demonstration of TIG's erroneous and illogical claim that there was never an agreement between TIG and Travelers to split the Weitz defense costs, TIG inexplicably disputes the relevance of its own document.  In Travelers' Local Rule 56(a)1 Statement of Material Facts Not in Dispute, Travelers put forth the following facts as being undisputed:

32.    By letter dated February 26, 1998, Zwick wrote to Yeager and stated in part:

---

otherwise cause monetary damage to Travelers."  (Id. at pgs. 19-20) (Emphasis added).

Curiously, in the first sentence cited above, TIG acknowledges that there was an agreement and that it rescinded the agreement.  However, in the following sentence cited above, TIG once again refers to its "offer" "to participate in the defense."

> My notes reflect that your carrier and the Travelers, because of overlapping coverage, were to split the costs of defense in this matter.  To date we have expended the sum of $64,161.33 in the defense of this most involved case.
>
> Since it is my recollection that your carrier would agree to share defense costs in this matter, please advise your carrier that we are seeking reimbursement in the amount of $32,080.66 to be made payable to The Travelers Property Casualty Company.

Appendix Tab16 (Bates TIG965). (See Affidavit of Gerald Zwick at ¶ 18).

34.     By letter dated April 2, 1998, Yeager on behalf of TIG responded to Zwick at Travelers in a letter in which he questioned the amount of defense costs incurred, sought detailed billing records, and correspondence from defense counsel and also stated:

> On receipt of this documentation, TIG will honor its commitment, but will limit its indemnification to actual time incurred as supported by pertinent documentation.

Appendix Tab 18 (Bates TIG964). (*See* Affidavit of Gerald Zwick at ¶ 19).

(*See* Travelers' Local Rule 56(a)1 Statement of Material Facts Not in Dispute at ¶¶ 32 and

34).  In TIG's Statement Pursuant to Local Rule 56(a)2 in Opposition to Plaintiff's Local

Rule 56(a)1 Statement, TIG objects to Travelers' paragraphs 32 and 34 of its Local Rule

56(a)1 Statement of Material Facts Not in Dispute "on the grounds of relevance."  Travelers'

February 26, 1998 letter expressly confirmed there was an agreement to split the Weitz

defense costs on a 50/50 basis.  TIG's April 2, 1998 letter confirmed that TIG "will honor its

commitment" on fees in response to Travelers' letter on the 50/50 split.  Therefore, TIG's

argument that there was never an agreement makes no sense and is contrary to the undisputed

evidence.  Furthermore, TIG's objection to Traveler's paragraphs 32 and 34 on the grounds

of relevance also makes no sense.  If the agreement is in dispute, then logically all subsequent communications about the agreement are relevant.[5]  Indeed what could be more relevant than a letter from Travelers to TIG reminding it of the 50/50 split agreement or a letter which confirms and in no way disputes that agreement?

Travelers has demonstrated based on the undisputed factual record that there is an agreement between TIG and Travelers to split the Weitz defense costs.  TIG has offered no evidence or affidavits to support its claim that there was never an agreement between TIG and Travelers to split the Weitz defense costs.  Therefore, its claim that there never was an agreement between TIG and Travelers must fail.

> "A material fact is a fact that will make a difference in the outcome of the case.... Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue.... **It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact ... are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court**...." (Citations omitted; internal quotation marks omitted.) *Yancey v. Connecticut Life & Casualty Ins. Co.,* 68 Conn.App. 556, 558-59, 791 A.2d 719 (2002).

*Christian v. Gouldin*, 72 Conn.App. 14, 18-19 (2002)  (Emphasis added).  TIG's claim that there never was an agreement, while illogical and disputed by the factual record, only serves to strengthen Traveler's misrepresentation claim against TIG.

---

[5] The factual record, which is largely based on TIG's own documents, shows that TIG and Travelers entered into an agreement to split the Weitz defense costs; however, if the agreement is in dispute then Travelers intends to conduct discovery on this issue.  If there are fact issues which must be explored in discovery, then TIG's summary judgment motion must be denied.

In its memorandum in support of summary judgment, TIG argued that Count III of Travelers' Complaint is a fraudulent misrepresentation claim because misrepresentations of intent to perform future acts do not sound in negligent misrepresentation. (TIG's Memorandum of Law in Support of Motion for Summary Judgment at pgs. 17-22). In its opposition brief, Travelers refuted this argument with Connecticut case law which holds that a promise to perform a future act can form the basis for a claim of negligent misrepresentation. (Travelers' Memorandum in Opposition to Defendant's Motion for Summary Judgment at pgs. 13-21).

> "Although the general rule is that a misrepresentation must relate to an existing or past fact, there are exceptions to this rule, one of which is that a promise to do an act in the future, when coupled with a present intent not to fulfill the promise, is a false representation."

*Paiva v. Vanech Heights Construction Co*., 159 Conn. 512, 515, 271 A.2d 69 (1970). *See also*, *Antignani v. United Home Care*, 1998 WL 417549, at *2 (Conn. Super. July 16, 1998); *Centi v. Lexington Health Care Center*, 1997 WL 240943, at *7 (Conn. Super. May 1, 1997).

Further, from 1996 through 2001 TIG represented that there was an agreement that TIG and Travelers would split the Weitz defense costs. TIG now claims that there never was an agreement. If that fact is true, this is not a dispute about future performance, rather it is a misrepresentation about a past fact. If TIG was telling Travelers there was an agreement when in fact TIG's internal position was that there never was an agreement, the misrepresentation of past fact is obvious. This fact takes TIG's representations out of misrepresentation about a future performance and into misrepresentation about a past fact.

Therefore, TIG's argument that a promise to perform a future act cannot form the basis for a claim of negligent misrepresentation has not only been refuted by Travelers with Connecticut case law but is now completely irrelevant since TIG itself is arguing that the representations were about a past fact.

**IV.** **TIG WAS ESTOPPED FROM WITHDRAWING ITS PROMISE TO PAY FIFTY PERCENT OF THE COSTS OF DEFENDING WEITZ AND FROM WITHDRAWING ITS DEFENSE OF WEITZ BECAUSE TRAVELERS CHANGED ITS POSITION IN RELIANCE ON TIG'S PROMISE.**

TIG was estopped from withdrawing its defense of Weitz and from withdrawing its promise to pay fifty percent of the costs associated with the Weitz defense because in reliance on TIG's clear and definite promise, Travelers altered its position in the Weitz defense and suffered injuries as a result. In its Opposition Brief, TIG once again unpersuasively argues that Travelers cannot show that it changed its position in reliance upon something that TIG did. Travelers has explained at length in its memorandum in support of its summary judgment motion (at pgs. 25-27) and in its memorandum in opposition to TIG's motion for summary judgment (at pgs. 21-24) how it changed its position in reliance on TIG's promise that it would pay fifty percent of the Weitz defense costs. In its two previous briefs, Travelers has explained that without TIG's clear and definite promise, there would not have been any incentive or obligation for Travelers to provide TIG with privileged and confidential information or to permit TIG to assist in guiding in the defense.

What TIG is missing in its attempt to defeat the promissory estoppel claim is that it is estopped from withdrawing its promise to Travelers and from withdrawing its defense of

Weitz because it entered in to a contract (the Oral Agreement) with Travelers and it has breached this contract. TIG makes the argument that an insurer is not estopped from withdrawing a defense if it has reserved the right to withdraw. While that statement is true in an ordinary situation where an insurer agrees to defend its insured under a reservation of rights, this is not the case where two insurers with the same insured enter into a contract to split the costs of defending the insured and one of the insurers takes all the benefits for four and a half years and then tries to withdraw without tending any of its promised performance. TIG states that Travelers has not explained its understanding of TIG's position as reflected in TIG's September 6, 1996 letter where it agreed to provide a defense for Weitz under a reservation of rights. (TIG's Opposition Brief at pgs. 25-26). Travelers fully understands that TIG agreed to provide a defense for Weitz under a full reservation of rights, just as Travelers had agreed to do. The issue is not that TIG and Travelers each agreed to defend Weitz under a full reservation of rights. The issue is that TIG and Travelers entered into an agreement to split the Weitz defense costs and that for over four years from September 1996 through April 2001, TIG repeatedly represented in its communications with Milano & Wanat and Travelers that Weitz was an additional insured and that it was participating in the defense of Weitz on a cost sharing basis with Travelers.

Without providing any evidence to support its argument, TIG simply states that there is no factual basis for Travelers assertion that TIG reaped the benefits of its Oral Agreement with Travelers while refusing and failing to provide anything in return. The factual record is replete with evidence showing that for over four years from September 1996 through April

2001 TIG did not have to hire its own defense counsel for Weitz because it used its promise to Travelers to split the Weitz defense costs to secure direct cooperation from Milano & Wanat, Travelers' selected defense counsel. Even though TIG now proclaims that it made a mistake in providing a defense to Weitz, this is irrelevant to the fact that without the Oral Agreement, TIG without a doubt would have to hire its own defense counsel for Weitz. Even if TIG was investigating whether it owed Weitz a defense during the time period from September 1996 through April 2001, the bottom line is that in September 1996 it independently agreed to defend Weitz under a reservation of rights and therefore, without the Oral Agreement, it would have had to hire its own defense counsel for Weitz. It is TIG, not Travelers as TIG asserts on page 26 of its Opposition Brief, which is trying to secure a windfall here because to this day TIG has not spent one dime pursuant to its express promise to defend Weitz that it issued in September 1996 and did not purport to withdraw until April 2001. Therefore, if the Court does not declare that TIG is estopped from withdrawing its promise to pay fifty percent of the Weitz defense costs and from withdrawing its defense of Weitz, injustice will occur because Travelers will not be reimbursed for fifty percent of the $887,256 that Travelers incurred and paid in legal fees to Milano & Wanat and in related costs in the defense of Weitz from 1996 through January 2003 in complete reliance upon TIG's clear and definite promises. (See Affidavit of Gerard E. Doak at ¶ 7, Rule 56 at ¶ 79).

**V.    IT IS FOR THE COURT TO DECIDE WHETHER TRAVELERS IS ENTITLED TO PUNITIVE DAMAGES OR INTEREST PURSUANT TO CONNECTICUT LAW.**

TIG's argument that Travelers is not entitled to punitive damages or interest pursuant to Connecticut law is without merit.  First both of these issues may be addressed after the Court rules on the merits of the claims.  Second,  "[i]t is within the trial court's discretion whether or not to award punitive damages. See *Barber v. Mulrooney,* 61 Conn.App. 108, 762 A.2d 520 (2000)."  *Rodriguez v. Stage East, LLC*, 2003 WL 22853820 at *3 (Conn.Super. Nov 17, 2003).  Travelers has brought a claim for intentional misrepresentation that would permit an award of punitive damages under Connecticut law.  *Glaser Realty Associates v. Joshua Morris Pub., Inc.,* 1997 WL 30278 (Conn. Super., Jan 15, 1997).  If the Court finds that TIG is guilty of intentional misrepresentation as TIG itself now appears to admit with its claim that there never was an agreement to split fees when its representatives repeatedly told Travelers such an agreement existed, then a punitive award is well within this Court's discretion.

Interest is available by Connecticut statute when a fixed or certain sum is found to be owing.  *See* Conn. Gen. Stat. §37-3a.  It for the Court to decide whether or not to award such interest.  "The purpose of an award of interest is to compensate a party for a wrong. *Neiditz v. Morton S. Fine & Associates, Inc*., 199 Conn. 683, 691-92, 508 A.2d 438 (1986). Such an allowance is primarily an equitable determination within the discretion of the trial court. *Milgrim v. Deluca*, 195 Conn. 191, 201, 487 A.2d 522 (1985); *Bertozzi v. McCarthy*, 164 Conn. 463, 467, 323 A.2d 553 (1973)."  *Nielsen v. Wisniewski*, 32 Conn.App. 133, 139

(1993).  Here TIG promised to contribute 50% of the defense costs and has wrongfully

withheld those amounts for years.  The Court could address the issue of interest after it

determines the merits of the claims.  Nevertheless, the Court may properly award interest, if

it finds liability on such facts and should at a minimum award 10% interest on $245,864,16,

the amount TIG should have paid since April 6, 2001 or in the alternative should award 10%

interest on 50% of the $887,256, ($443,628) that TIG has owed since January 2003.

## CONCLUSION

For the foregoing reasons, this Court should grant Travelers' summary judgment

motion and should deny TIG's summary judgment motion.

**THE PLAINTIFF,**
**TRAVELERS CASUALTY &**
**SURETY COMPANY OF AMERICA**

By_____**/S/**_____
Peter M. Nolin (ct 06223)
**Sandak Hennessey & Greco LLP**
707 Summer Street
Stamford, CT  06901-1026
(203) 425-4200
(203) 325-8608 (fax)
pnolin@shglaw.com

**<u>CERTIFICATION</u>**

I certify that a copy of the foregoing was sent via first class mail on this 13th day of

December, 2004 to:

Louis G. Corsi (ct 26157)
Landman Corsi Ballaine & Ford P.C.
120 Broadway, 27th Floor
New York, NY 10271

Jeffrey J. Tinley
Tinley Nastri Renehan & Dost LLP
60 North Main Street, 2nd floor
Waterbury, CT  06702-1403


_____**/S/**_____
Peter M. Nolin